## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:02-CV-04373-RLB |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

_____

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOLEDO MACK SALES & SERVICE, INC., and | : | JURY TRIAL DEMANDED |
| | : | |
| PAI INDUSTRIES, INC., 950 Northbrook Parkway, Suwanee, GA, | : | |
| | : | |
| Defendants. | : | |

## ANSWER AND COUNTERCLAIMS OF DEFENDANT MACK TRUCKS, INC.

       Defendant, Mack Trucks, Inc. ("Mack"), by and through its undersigned counsel, answers the Complaint in this action, responding in like numbered paragraphs and asserting affirmative defenses, and, further, asserting counterclaims against plaintiff, Toledo Mack Sales & Services, Inc. ("Toledo Mack"), and PAI Industries, Inc. ("PAI"), which is joined as a defendant in Mack's counterclaims.   All averments of the Complaint not specifically admitted or denied below are hereby denied.

## FIRST DEFENSE

## Introduction

Mack admits only that Toledo Mack is, and has been for twenty years, an authorized distributor of Mack's products and that Toledo Mack purports to sue as described. The remaining averments of the Introduction are either conclusions of law to which no response is required or are denied.

1.      It is admitted that Toledo Mack is an authorized Mack dealer.  After reasonable investigation, Mack is without knowledge or information sufficient to form a belief as to the truth or falsity of the remainder of the allegations contained in Paragraph 1, which are accordingly denied.

2.      Admitted.

3.      The allegations contained in Paragraph 3 are conclusions of law to which no response is required.

4.      The allegations contained in Paragraph 4 are conclusions of law to which no response is required.

5.      The allegations contained in Paragraph 5 are conclusions of law to which no response is required.

6.      Admitted, except for the allegations of fact as to Mack's market share, which are denied.

7.      Admitted only that such a network has been one of several channels of distribution utilized by Mack.

8.      Admitted.

9.      After reasonable investigation, Mack is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 9, which are accordingly denied.

10.    Mack admits that among the Mack products that Toledo Mack sells or leases are new heavy-duty Mack truck chassis.  After reasonable investigation, Mack is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 10, which are accordingly denied.

11.    After reasonable investigation, Mack is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 11, which are accordingly denied.

12.    Mack admits only that it sells chassis directly to McClain Industries, Inc., Heil Environmental Industries, Ltd. and McNeilus Companies, Inc.  The remaining allegations contained in Paragraph 12 are denied.

13.    Mack admits only that some body manufacturers have purchased chassis from authorized Mack distributors.  The remaining allegations contained in Paragraph 13 are denied.

14.    Admitted except for the allegations that body manufacturers and their authorized distributors perform far more limited and less valuable distribution and support functions than Mack's authorized distributors, which are denied.

15.    Denied.

16.    Denied.

17.    Denied.

18.    Admitted only that Mack sells directly to certain customers, including those listed by name, and that some of those customers lease and resell trucks to end users.  The remaining allegations in Paragraph 18 are denied.

19.    Denied.

20.     Admitted except for the allegations that National Accounts perform far more limited and less valuable distribution and support functions than Mack's authorized distributors, which are denied.

21.     Mack admits only that it sells directly to certain customers and that some of those customers lease and resell trucks to end users.  The remaining allegations contained in Paragraph 21 are denied.

22.     Denied.

23.     Denied.

24.     Mack admits that it has previously sold Mack trucks and components to certain franchised Mack dealers at lower prices than Mack sells similar trucks and components to Toledo Mack.  Mack denies that such prices resulted from any practice or program that was not equally available to Toledo Mack, or that such sales were on more favorable terms.  Mack denies the remaining allegations in Paragraph 24.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Mack admits only that the Distributor Agreement between Mack and Toledo Mack does not restrict the geographic area in which Toledo Mack may resell Mack products.  The remaining allegations contained in Paragraph 28 are denied.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.    Denied.

## FIRST CLAIM FOR RELIEF

35.    Mack incorporates its responses to Paragraphs 1-34 as if fully set forth herein.

36.    The allegations contained in Paragraph 36 are conclusions of law to which no response is required.

37.    The allegations contained in Paragraph 37 are conclusions of law to which no response is required.

38.    The allegations contained in Paragraph 38 are conclusions of law to which no response is required.

39.    To the extent that the allegations contained in Paragraph 39 are conclusions of law, no response is required.  The factual allegations contained in Paragraph 39 are denied.

40.    The allegations contained in Paragraph 40 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

41.    The allegations contained in Paragraph 41 are conclusions of law to which no response is required.

## SECOND CLAIM FOR RELIEF

42.    Mack incorporates its responses to Paragraphs 1-41 as if fully set forth herein.

43.    The allegations contained in Paragraph 43 are conclusions of law to which no response is required.

44.    To the extent that the allegations contained in Paragraph 44 are conclusions of law, no response is required.  Mack admits only that Toledo Mack's Area of Responsibility includes one county in Michigan.  The remaining factual allegations are denied.

45.    To the extent that the allegations contained in Paragraph 45 are conclusions of law, no response is required.  Mack  admits only that it sells its products to the types of customers described.  The remaining factual allegations are denied.

46.    The allegations contained in Paragraph 46 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

47.    The allegations contained in Paragraph 47 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

**THIRD CLAIM FOR RELIEF**

48.    Mack incorporates its responses to Paragraphs 1-47 as if fully set forth herein.

49.    The allegations contained in Paragraph 49 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

50.    Mack sells some trucks and components across state lines in the United States, as well as some trucks and components which are sold in the state in which they are manufactured, and that Toledo Mack purchased Mack trucks from Mack for resale.  The remaining allegations contained in Paragraph 50 are conclusions of law to which no response is required.

51.    The allegations contained in Paragraph 51 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

52.    The allegations contained in Paragraph 52 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

53.    The allegations contained in Paragraph 53 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

54.    The allegations contained in Paragraph 54 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

55.    The allegations contained in Paragraph 55 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

56.    The allegations contained in Paragraph 56 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

57.    The allegations contained in Paragraph 57 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

58.    The allegations contained in Paragraph 58 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

59.    The allegations contained in Paragraph 59 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

60.    The allegations contained in Paragraph 60 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

61.    The allegations contained in Paragraph 61 are conclusions of law to which no response is required.

## FOURTH CLAIM FOR RELIEF

62.    Mack incorporates its responses to Paragraph 1-61 as if fully set forth herein.

63.    The allegations contained in Paragraph 63 are conclusions of law to which no response is required. To the extent that they are allegations of fact, they are denied.

64.    The allegations contained in Paragraph 64 are conclusions of law to which no response is required. To the extent that they are allegations of fact, they are denied.

65.    The allegations contained in Paragraph 65 are conclusions of law to which no response is required. To the extent that they are allegations of fact, they are denied.

66.    It is admitted only that LCOE trucks are made with the cab placed over or in front of the engine, and that heavy duty LCOE trucks are capable of carrying heavy payload capacities or gross vehicle weights and are used in some heavy hauling applications such as trash collection, home heating oil delivery, aircraft refueling concrete pumping and other vocational market applications. The remaining allegations contained in Paragraph 66 are conclusions of law to which no response is required. To the extent that they are allegations of fact, they are denied.

67.    The allegations contained in Paragraph 67 are conclusions of law to which no response is required. To the extent that they are allegations of fact, Mack, after reasonable investigation, is without knowledge or information sufficient to form a belief as to their truth or falsity, and they are accordingly denied.

68.    The allegations contained in Paragraph 68 are conclusions of law to which no response is required. To the extent that they are allegations of fact, they are denied.

69.    The allegations contained in Paragraph 69 are conclusions of law to which no response is required. To the extent that they are allegations of fact, they are denied.

70.    The allegations contained in Paragraph 70 are conclusions of law to which no response is required. To the extent that they are allegations of fact, they are denied.

71.    The allegations contained in Paragraph 71 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

72.    The allegations contained in Paragraph 72 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

73.    The allegations contained in Paragraph 73 are conclusions of law to which no response is required.

## FIFTH CLAIM FO RELIEF

74.    Mack incorporates its responses to Paragraphs 1-73 as if fully set forth herein.

75.    Mack does not know what "business relationships and business expectancies with customers" are referenced in Paragraph 75 and, after reasonable investigation, is without knowledge and information sufficient to form a belief as to the truth or falsity of the allegations, which are accordingly denied.

76.    Denied.

77.    Denied.

78.    The allegations contained in Paragraph 78 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

79.    Denied.

## SIXTH CLAIM FOR RELIEF

80.    Mack incorporates its responses to Paragraph 1-79 as if fully set forth herein.

81.      The allegations contained in Paragraph 81 are based on documents which speak for themselves, and no response is required.

82.      The allegations contained in Paragraph 82 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, Mack admits only that it sells its products to customers who are not distributors.  The remaining allegations of fact in Paragraph 82 are denied.

83.      The allegations contained in Paragraph 83 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

84.      The allegations contained in Paragraph 84 are based on documents which speak for themselves, and no response is required.

85.      The allegations contained in Paragraph 85 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

86.      The allegations contained in Paragraph 86 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

### SEVENTH CLAIM FOR RELIEF

87.      Mack incorporates its responses to Paragraphs 1-86 as if fully set forth herein.

88.      The allegations contained in Paragraph 88 are based on documents which speak for themselves, and no response is required.

89.      Denied.

90.      The allegations contained in Paragraph 90 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, Mack admits only that it sells its products to customers who are not distributors.  All other allegations of fact are denied.

91.    After reasonable investigation, Mack is without knowledge or information sufficient to form a belief as to the truth or falsity of Toledo Mack's alleged expectations.  The remaining allegations in Paragraph 91 are denied.

92.    After reasonable investigation, Mack is without knowledge or information sufficient to form a belief as to the truth or falsity of Toledo Mack's alleged expectations.  The remaining allegations in Paragraph 92 are denied.

93.    After reasonable investigation, Mack is without knowledge or information sufficient to form a belief as to the truth or falsity of Toledo Mack's alleged expectations.  The remaining allegations in Paragraph 93 are denied, and are deemed denied to the extent that they are conclusions of law.

94.    The allegations contained in Paragraph 94 are conclusions of law to which no response is required.  To the extent that they are allegations of fact, they are denied.

## SECOND DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

Toledo Mack is barred from recovering damages or obtaining injunctive relief on the claims asserted in the Complaint by the doctrines of estoppel, waiver, laches and/or unclean hands.

## FOURTH DEFENSE

Toledo Mack's claims are barred, in whole or in part, by the applicable statutes of limitation.

## FIFTH DEFENSE

Toledo Mack's claims are barred because it has not suffered any damages as a result of matters alleged in the Complaint.

### SIXTH DEFENSE

Toledo Mack's claims for injunctive relief are invalid and improper in that Toledo Mack is incapable of demonstrating irreparable harm and/or the absence of any adequate remedy at law.

### SEVENTH DEFENSE

There is no direct and proximate causal connection between any claim of harm or injury alleged by Toledo Mack and any acts alleged to have been committed by Mack.

### EIGHTH DEFENSE

Toledo Mack is barred, in whole or in part, from pursuing damages for the claims asserted in the Complaint because it failed to mitigate its damages or to otherwise take commercially reasonable steps to limit any risks and losses.

### NINTH DEFENSE

Mack has met the requirement of good faith conduct under the Ohio Motor Vehicle Law.

### TENTH DEFENSE

Mack has not competed with Toledo Mack in the sale, lease or servicing of any motor vehicle and, even if it did so, any such competition was fair.

### ELEVENTH DEFENSE

Mack has not engaged in any predatory or discriminatory conduct.

### TWELTH DEFENSE

Toledo Mack is not located in Michigan and thus has no claim for relief under the Michigan Franchise Investment Law.

## THIRTEENTH DEFENSE

Any sales of new motor vehicles made directly by Mack were not to retail customers as the term "retail customers" is construed under the Michigan Franchise Investment Law.

## FOURTEENTH DEFENSE

Toledo Mack has suffered no antitrust injury.

## FIFTEENTH DEFENSE

All of Mack's product prices and promotional programs were functionally available to Toledo Mack on equal terms with any other purchaser of the same quality and grade of goods.

## SIXTEENTH DEFENSE

If Mack sold goods to Toledo Mack at higher prices than other purchasers of the same quality and grade of goods, Toledo Mack was neither in competition with the allegedly "favored" purchasers nor suffered any competitive injury.

## SEVENTEENTH DEFENSE

Any difference in prices charged to Toledo Mack and another purchaser are covered by the meeting competition defense to the Robinson Patman Act.

## EIGHTEENTH DEFENSE

Any difference in prices charged to Toledo Mack and another purchaser are covered by the cost justification defense to the Robinson Patman Act.

## NINETEENTH DEFENSE

Any difference in prices charged to Toledo Mack and another purchaser are covered by the functional discount defense to the Robinson Patman Act.

### TWENTIETH DEFENSE

Any difference in prices charged to Toledo Mack and another purchaser are covered by the changing market conditions defense to the Robinson Patman Act.

### TWENTY-FIRST

If Mack sold goods to a favored purchaser at discriminatory price, such sale was not in interstate commerce and thus is not subject to the Robinson Patman Act.

### TWENTY-SECOND DEFENSE

Mack has not engaged in any concert, combination or conspiracy to restrain trade.

### TWENTY-THIRD DEFENSE

Toledo Mack has failed to plead that it purchased Mack's products in any properly defined market or sub-market.

### TWENTY-FOURTH DEFENSE

Mack lacks market power in any relevant market or sub-market.

### TWENTY-FIFTH DEFENSE

Toledo Mack's claims are barred, in whole or in part, because any conduct engaged in by Mack has been reasonable and based on independent, legitimate business and economic justifications.

### TWENTY-SIXTH DEFENSE

Mack has never intentionally interfered with the performance of an existing contract, or the formation of a prospective contract, between Toledo Mack and a third party.

### TWENTY-SEVENTH DEFENSE

If Mack intentionally interfered with the performance of an existing contract, or the formation of a prospective contract, between Toledo Mack and a third party, its actions were privileged, justified and proper.

### TWENTY-EIGHTH DEFENSE

If Mack engaged in any tortious conduct, its actions were not willful, malicious and intentional.

### TWENTY-NINTH DEFENSE

Mack did not breach any contract with Toledo Mack and discharged all of its contractual obligations in good faith.

### THIRTIETH DEFENSE

Toledo Mack's claims are barred due to its own material breach of contract.

### THIRTY-FIRST DEFENSE

Toledo Mack lacks standing to sue for relief under the statutes as to which its claims are alleged.

### COUNTERCLAIMS

For its counterclaims against Toledo Mack and PAI, Mack alleges as follows:

### Parties

1.     Mack is a Pennsylvania corporation with its principal place of business at 2100 Mack Boulevard, Allentown, Pennsylvania.

2.     According to its Complaint, Toledo Mack is an Ohio corporation with its principal place of business at 2124 Front Street, Toledo, Ohio.

3.     PAI is a Florida corporation with its principal place of business at 950 Northbrook Parkway, Suwanee, Georgia.

4.     PAI is joined as a defendant to Mack's counterclaims pursuant to Rules 13(h), 19(a) and/or 20(a) of the Federal Rules of Civil Procedure because Mack's claims against both Toledo Mack and PAI arise out of the same transaction and occurrence and Mack cannot be accorded complete relief without the presence of PAI in this action.

## Jurisdiction and Venue

5.     This Court has jurisdiction over Mack's counterclaim for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over Mack's state law counterclaims pursuant to 28 U.S.C. § 1332 by virtue of the complete diversity of the parties and the fact that each state law counterclaim concerns an amount in controversy in excess of $75,000.00, exclusive of interests and costs.  In the alternative, this Court has jurisdiction over Mack's state law counterclaims pursuant to 28 U.S.C. § 1367(a) because the state law counterclaims arise out of the same transaction and occurrence as Mack's counterclaims for copyright infringement.

6.     Jurisdiction over Mack's counterclaims is further supported by Rule 13(b) of the Federal Rules of Civil Procedure, relating to permissive counterclaims.

7.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a)(2), (b)(2), because the trade secrets, confidential business information and copyrights which are the subject of Mack's counterclaims are located at, and were stolen from, Mack's principal place of business in Allentown, Pennsylvania.

## Factual Background

8.     Mack is a leading manufacturer of truck chassis and truck parts in the United States, including after-market truck replacement parts.

9. Mack sells its after-market truck parts primarily through its network of authorized distributors, including Toledo Mack.

10. The after-market is highly competitive and is comprised of name-brand manufacturers, like Mack, and copy cat manufacturers of generic parts, like PAI. The copy cat manufacturers can often undercut the price of the name-brand manufacturers, but only if they competently gather technical information about the parts and their applications. With "perfect" information, they could successfully take market share from the name-brand manufacturers because they could efficiently determine quantity and timing of large manufacturing runs and could provide superior customer service.

11. In order to improve its competitive position, Mack, through its contractor GGS Information Services, Inc. ("GGS"), developed a computerized parts databases for its dealers.

12. The databases included the MACSPEC 2001© system, which is comprised of 28 CD ROM discs containing vehicle-specific parts configuration data for nearly every truck chassis manufactured by Mack since approximately 1966. The MACSPEC 2001© system contains special software source codes to permit a user to easily search the parts database vehicle identification number ("VIN Number"), part number, partial part number, arrangement number, partial arrangement number or major unit serial number

13. This quick-search capability gives Mack and its distributors a significant edge in selling after-market truck parts because the distributors can search quickly and accurately for the parts necessary to meet a particular customer's needs. Without MACSPEC 2001©, Mack distributors would have to engage in detailed and time consuming investigations of which part is appropriate for which truck.

14.    The compilation of the data and the software codes is and always has been kept secret precisely because it gives Mack and its distributors a significant competitive edge. Mack's  secrecy is necessary because companies like PAI could use this information to steal Mack's customers and market share without doing original market, products or design research. Competitors could also use this information to give customers the false but comforting illusion that the competitors  have the capability of legally and quickly identifying what parts go into what Mack models.

15.    Mack is the owner of the copyrights for the MACSPEC 2001© system's parts database and source code.  Mack currently has an application pending to register its copyrights for the MACSPEC 2001© system with the United States Copyright Office.  A copy of that application is attached hereto as Exhibit "A."

16.    In order to protect the secrecy of the MACSPEC 2001© system, Mack has developed a system of "unlock codes."  A third party other than Mack (or its contractor) cannot access the MACSPEC 2001© system without an unlock code.  Each "unlock code" is specific to each copy of the MACSPEC 2001© system.  Moreover, each "unlock code" integrates itself onto the computer hard drive on which it is first used, such that it can never be used on any other computer.

17.    Mack has only authorized GGS, Mack's contractor which administers the MACSPEC 2001© system, to distribute unlock codes to dealers approved by  Mack.  As part of procedures to protect the confidentiality of MACSPEC 2001©, only two employees of GGS are authorized to distribute unlock codes.  Similarly, at the end of each week, GGS submits a report to Mack detailing each distribution of a new unlock code for a copy of MACSPEC 2001©.

18.     Dealers are permitted to order more than one copy of MACSPEC 2001©, but only for use by subdealers approved by Mack.

19.     For each new copy of the system, the dealer receives a new unlock code. Any replacement code for existing software can only be issued with Mack's explicit written approval.

## Toledo Mack's Licensing of MACSPEC 2001

20.     Toledo Mack possesses and operates its MACSPEC 2001© system pursuant to a license agreement with Mack.  A copy of the license agreement is attached hereto as Exhibit "B."

21.     Under the terms of its license agreement with Mack, Toledo Mack agreed to the following restrictions on its use of the MACSPEC 2001© system:

> You may use [MACSPEC 2001©] only in connection with your parts and service business in accordance with your MACK distributor agreement.  You will treat [MACSPEC 2001©] and the information in [MACSPEC 2001©] as confidential and proprietary to [Mack].  You will not permit access to [MACSPEC 2001©] to anyone other than your authorized employees or [Mack's] authorized representatives without first obtaining written approval from [Mack].

22.     Further, under the terms of its license agreement with Mack, Toledo Mack may not sublicense, rent, lend, lease, donate, sell, loan, pledge, encumber, transfer or distribute, even on a temporary basis, any of its copies of the MACSPEC 2001© system.

23.     Under the agreement Toledo Mack may not copy the operating software for MACSPEC 2001© except for backup purposes.

## Toledo Mack and PAI Conspire to Steal MACSPEC 2001

24.     On July 24 and 25, 2002,  Mack discovered that Toledo Mack had secretly conspired with PAI, Mack's competitor, to steal and misappropriate MACSPEC 2001©.

25.    On July 24, 2002, Bill Black, a GGS employee working the MACSPEC 2001© Help Desk, received a telephone inquiry about the MACSPEC 2001© system.  Mr. Black received the telephone call in York, Pennsylvania.

26.    The woman who called Mr. Black identified herself as "Yolanda May" and she deliberately and fraudulently led Mr. Black to conclude that she was calling on behalf of a Mack dealer or subdealer who rightfully possessed MACSPEC 2001©.   Ms. "May" represented that she was having difficulty using the Arrangement and VIN locator disc in the MACSPEC 2001© system.

27.    After further discussion, Mr. Black, who continued to be tricked into believing Ms. May, agreed to send a replacement disc that would have no value to anyone who did not already possess the MACKSPEC 2001© system.

28.    Ms. May asked that GGS address the package containing the replacement disc to "Nancy's Trucking," which subsequent investigation has revealed not to be an authorized Mack distributor.  Ms. May told Mr. Black that the said "Nancy's Trucking" had a mailing address of 950 Northbrook Parkway, Suwanee, Georgia 30024--which subsequent investigation has revealed to really be the address of PAI's principal place of business.  Ms. May left a return telephone number of (770) 822-1000--which subsequent investigation has revealed to be PAI's telephone number.

29.    The next morning, Mr. Black telephoned Ms. "May" at the number that she had given him, in order to confirm that she had received the replacement disc and that it was functioning properly.   During their conversation, Ms. May put Mr. Black on hold.  While on hold, Mr. Black heard a message touting PAI and its products.

30.     Suspicious, Mr. Black visited PAI's web page and learned that PAI and "Nancy's Trucking" had the exact same address and telephone number.

31.     Mr. Black called Ms. May back and asked for her dealer code.  Ms. May said she did not know the dealer code, but replied that her company had received its MACSPEC 2001© CD ROM discs from Toledo Mack.

32.     Upon information and belief, Toledo Mack fraudulently and in violation of its license agreement with Mack, delivered MACSPEC 2001© to Mack's competitor PAI in exchange for illegal payments or other surreptitious business favors.

**MACK Continues to Suffer Irreparable Harm as a Result of PAI's Theft**

33.     The theft of the MACSPEC 2001© system causes Mack irreparable harm each and every day which its competitor PAI can use Mack's carefully guarded trade secrets to undercut Mack's products and services in the marketplace.  Upon information and belief, PAI is now using Mack's own database and software--developed at considerable expense by Mack--to give it a crucial advantage in the marketplace and to destroy Mack's after market parts business by unfairly developing generic substitutes for Mack parts, and to respond to customer inquiries with accuracy and alacrity possible only with a sophisticated database system like MACSPEC 2001©.

34.     Upon information and belief, PAI continues to distribute, copy and prepare derivative works based on MACSPEC 2001©, in violation of Mack's exclusive rights as a copyright holder.

35.      Upon information and belief, PAI and Toledo Mack continue to conspire to steal Mack's trade secrets, confidential business information and intellectual property, causing

irreparable harm as PAI reaps illicitly the rewards of Mack's investments in producing superior products and service.

## Count I (Misappropriation of Trade Secrets and Confidential Business Information) (As Against Toledo Mack and PAI)

36.    Mack incorporates Paragraphs 1 through 35 of its Counterclaims as if fully set forth herein.

37.    Mack expended considerable expense and labor in developing the MACSPEC 2001© system, which consists of an intricate and sophisticated compilation of information about truck parts and computer software to search and use that compilation.

38.    The information on the MACSPEC 2001© system, including particularly Mack's non-public compilation and organization of truck parts information, is confidential and proprietary to Mack.  The information contained on the MACSPEC 2001© system is not disseminated to the general public.  Mack goes to significant lengths to maintain the secrecy of the information contained in the MACSPEC 2001©, including, without limitation, binding licensees to strict confidentiality agreements and restricting access to copies of MACSPEC 2001© through the distribution of individual copy-specific unlock codes.

39.    The information contained on the MACSPEC 2001© system provides Mack with a competitive advantage in the marketplace since it permits Mack's dealers to determine what parts are needed to service particular trucks quickly and efficiently, resulting in higher parts sales for Mack.  Mack's competitors lack the advantages of the comprehensive and easily searchable MACSPEC 2001© parts database.  With this information, PAI can make major manufacturing and marketing decisions, and provide artificial "Mack-quality" service to its customers.

40.    Mack only authorized Toledo Mack to receive a copy of MACSPEC 2001© and an unlock code on the express agreement that Toledo Mack was to maintain the secrecy and confidentiality of the MACSPEC 2001© system.  Toledo Mack promised not to permit any person employed by a third party to have access to MACSPEC 2001©.

41.    In breach of  both that agreement and the confidence which Mack reposed in it, Toledo Mack distributed one of its copies of the MACSPEC 2001© system to PAI and provided PAI with the necessary unlock code to access the system.

42.    PAI further perpetrated its theft by fraudulently representing itself to Mack as an authorized dealer named "Nancy's Trucking" so that it could trick Mack and its contractor into providing technical assistance to continue operating the stolen discs.

43.    PAI's improper acquisition of MACSPEC 2001© and Toledo Mack's distribution of MACSPEC 2001© to PAI in violation of Mack's confidence and its license agreement constituted a misappropriation of Mack's trade secrets and confidential business information.

44.    PAI and Toledo Mack's actions were malicious, willful and outrageous.

45.    Upon information and belief, Toledo Mack and PAI are continuing to conspire to use MACSPEC 2001© and other Mack confidential business information and trade secrets to develop parts products which will undercut Mack's own products and is using MACSPEC 2001© to deliver the same rapid response to customer service inquiries as an authorized Mack dealer using MACSPEC 2001©.

<u>**Count II (Copyright Infringement)**</u>
<u>**(As Against Toledo Mack and PAI)**</u>

46.    Mack incorporates Paragraphs 1 through 45 of its Counterclaims as if fully set forth herein.

47.    MACSPEC 2001© is a computer program consisting of original source code and a compilation of pre-existing information about individual truck parts in an original manner.

48.    Mack is the owner of the copyright on the MACSPEC 2001© system's parts database and source code.

49.    Mack has filed an application to register its copyrights on the MACSPEC 2001© system's parts database and source code with the United States Copyright Office.

50.    Upon information and belief, without authorization from Mack, Toledo Mack distributed the copyrighted MACSPEC 2001© system to PAI for its own direct or indirect commercial advantage.

51.    Upon information and belief, PAI induced Toledo Mack to distribute the MACSPEC 2001© system to it by offering consideration to Toledo Mack.

52.    PAI also fraudulently induced Mack to send it part of the MACSPEC 2001© system by falsely claiming to be an authorized dealer, by providing the false name of "Nancy's Trucking," and by providing a false mailing address--all of which acts were designed to trick Mack into believing that PAI was an authorized licensee of Mack's copyrights in the MACSPEC 2001© system.

53.    Upon information and belief, PAI continues to distribute, copy and prepare derivative works based on MACSPEC 2001©.  Moreover, every time that PAI accesses its illicitly acquired copy of MACSPEC 2001©, PAI infringes on Mack's copyrights.

24

54.    These acts have all infringed on Mack's exclusive rights as the owner of the copyrights on the MACSPEC 2001© system's parts database and source code.

### Count III (Breach of Contract)
### (As Against Toledo Mack)

55.    Mack incorporates Paragraphs 1 through 54 of its Counterclaims as if fully set forth herein.

56.    Mack and Toledo Mack entered into a licensing agreement whereby Toledo Mack would receive a copy of the MACSPEC 2001© system and an unlock code in exchange for the payment of fees and an agreement to restrict access by third parties to the MACSPEC 2001© system and to maintain the confidentiality of the MACSPEC 2001© system.

57.    In the license agreement, Toledo Mack promised that it would not distribute MACSPEC 2001© to third parties or permit any person other than a Toledo Mack or Mack authorized employee to access MACSPEC 2001© without Mack's prior written consent.

58.    In breach of this agreement Toledo Mack distributed MACSPEC 2001© to PAI without Mack's prior written consent.

59.    In further breach of this agreement Toledo Mack permitted PAI employees to access the MACSPEC 2001© by providing the relevant unlock code to PAI.  Toledo Mack never received prior written consent from Mack for  distribution of the unlock code.

60.    As a direct and proximate result of Toledo Mack's breach of contract Mack continues to lose the competitive advantages it derived from its investment in the development of the MACSPEC 2001© system as PAI exploits its trade secrets further each day, resulting in a loss of value in its trade secrets, intellectual property, goodwill and competitive position.

## Count IV (Tortious Interference with Existing Contractual Relations)
## (As Against PAI)

61.    Mack incorporates Paragraphs 1 through 60 of its Counterclaims as if fully set forth herein.

62.    Mack and Toledo Mack have entered into a license agreement regarding Toledo Mack's receipt of the MACSPEC 2001© system, whereby, among other things, Toledo Mack agreed to maintain the secrecy and confidentiality of the MACSPEC 2001© system.

63.    PAI either was aware or should have been aware of the contract between Mack and Toledo Mack.

64.    PAI intentionally interfered with the license agreement between Mack and Toledo Mack by inducing Toledo Mack to distribute to PAI a copy of the MACSPEC 2001© and its unlock code, in violation Toledo Mack's agreement with Mack.

65.    PAI's conduct, which constituted, among other wrongs, theft of trade secrets and confidential business information and copyright infringement, was improper, unjustified and unprivileged.

66.    PAI's conduct was willful, malicious and outrageous.

67.    As a direct and proximate result of PAI's tortious interference with its agreement with Toledo Mack, Mack continues to lose the competitive advantages it derived from its investment in the development of the MACSPEC 2001© as PAI exploits its trade secrets further each day, resulting in a loss of value in its trade secrets, intellectual property, goodwill and competitive position.

## Count V (Fraudulent and Intentional Misrepresentation)
## (As Against PAI)

68.     Mack incorporates Paragraphs 1 through 67 of its Counterclaims as if fully set forth herein.

69.     PAI acquired part of the MACSPEC 2001© system by falsely claiming to be an authorized distributor named "Nancy's Trucking" and by providing a false mailing address.

70.      PAI knew that it was not, in fact, "Nancy's Trucking" when it made its representation to Mack.

71.     PAI only claimed to be "Nancy's Trucking" so that it could induce Mack into distributing part of the MACSPEC 2001© system to it.  PAI knew that Mack would not distribute MACSPEC 2001© to a competitor.

72.     Mack was justified in relying on PAI's representation that PAI was an authorized distributor named "Nancy's Trucking."

73.     As a direct and proximate result of PAI's misrepresentation, Mack was induced to send a disc from the MACSPEC 2001© system to PAI.

74.     PAI's conduct was willful, malicious and outrageous.

75.     As a direct and proximate result of PAI's acquisition of the MACSPEC 2001© system, Mack continues to lose the competitive advantages it derived from its investment in the development of the MACSPEC 2001© as PAI exploits its trade secrets further each day, resulting in a loss of value in its trade secrets, intellectual property, goodwill and competitive position.

**Count VI (Civil Conspiracy)
(As Against Toledo Mack and PAI)**

76.     Mack incorporates Paragraphs 1 through 75 of its Counterclaims as if fully set forth herein.

77.    Toledo Mack and PAI agreed to work together to misappropriate Mack's trade secrets and confidential business information and to infringe its copyrights.

78.    Toledo Mack and PAI entered into this agreement with the intent of injuring Mack.

79.    Toledo Mack and PAI engaged in overt acts in furtherance of their conspiracy, including, without limitation, Toledo Mack's sending of a copy of the MACSPEC 2001© system and relevant unlock code to PAI.

80.    The fruits of the conspiracy have so far included, at a minimum, the theft of the MACSPEC 2001© system.  Upon information and belief, Toledo Mack and PAI continue to act in furtherance of their conspiracy against Mack.

81.    As a result of this conspiracy, Mack continues to lose the competitive advantages it derived from its investment in the development of the MACSPEC 2001© as PAI exploits its trade secrets further each day, resulting in a loss of value in its trade secrets, intellectual property, goodwill and competitive position.

## PRAYER FOR RELIEF

WHEREFORE, Mack requests the following relief on all claims and counterclaims in this action:

1.    That the claims of the Complaint be dismissed with prejudice;

2.    That the Court award Mack relief on all of its counterclaims;

3.    That the Court preliminarily and permanently enjoin Toledo Mack and PAI from their unlawful conduct, including, without limitation, their misappropriation of Mack's trade secrets and confidential business information and their infringement of Mack's copyrights;

4.      That the Court order the impounding and destruction of all goods infringing Mack's copyrights pursuant to 17 U.S.C. § 503;

5.      That the Court order that Toledo Mack specifically perform its licensing agreement for the MACSPEC 2001 system;

6.      That the Court award Mack compensatory damages as a result of Toledo Mack and PAI's unlawful conduct;

7.      That the Court further award Mack punitive damages to punish Toledo Mack and PAI's willful, malicious and outrageous conduct and to deter others from engaging in such conduct in the future;

8.      That the Court award Mack costs and attorney's fees pursuant to 17 U.S.C. § 505;

9.      For any such other or further relief which the Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), demand is hereby made for trial by jury on all issues so triable.


Respectfully submitted,


_____
Jon A. Baughman (14043)
Jeremy Heep (75607)
Barak A. Bassman (85626)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799
215.981.4000

Attorneys for Defendant Mack Trucks, Inc.

Dated: _____