**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:02-CV-04373-RLB |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : | |
| | : | |
| Counterclaim Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| TOLEDO MACK SALES & SERVICE, INC. and | : | |
| | : | |
| PAI INDUSTRIES, INC., 950 Northbrook Parkway, Suwanne, GA, | : | |
| | : | |
| Counterclaim Defendants. | : | |

**PLAINTIFF TOLEDO MACK SALES & SERVICE, INC.'S
MEMORANDUM IN OPPOSITION TO (1) DEFENDANT'S MOTION
FOR A PRELIMINARY INJUNCTION AND (2) DEFENDANT'S
MOTION FOR EXPEDITED DISCOVERY**

## I.    INTRODUCTION

The pending Motion for a Preliminary Injunction which defendant, Mack Trucks, Inc.

("Mack"), has brought against plaintiff, Toledo Mack Sales & Service, Inc. ("Toledo Mack"),

and counterclaim defendant, PAI Industries, Inc. ("PAI") relates to Mack's assertion that Toledo

Mack and PAI have improperly obtained, or shared with one another, Mack's MACSPEC 2001

software system for Mack parts. Mack's Motion should be denied from two independent reasons.

First, while Mack goes so far as to describe Toledo Mack's conduct as part of "the theft of MACSPEC 2001," the simple facts reveal that no one, let alone Toledo Mack, "stole" MACSPEC 2001 from Mack. Indeed, the facts are that Mack itself provided MACSPEC 2001 to PAI pursuant to Mack's own established procedures for a party such as PAI to order and lease that software; that Toledo Mack's few very limited actions relating to ordering MACSPEC 2001 on behalf of PAI per Mack's own procedures were taken with Mack's knowledge and pursuant to Mack's own express directions; that there is no license agreement between Toledo Mack and Mack relating to MACSPEC 2001; that MACSPEC 2001 is not "confidential" and does not constitute a "trade secret" in the first instance; and that Toledo Mack has no copies of, or access to, MACSPEC 2001. Accordingly, Mack has no probability of success on its counterclaims of misappropriation of trade secrets, copyright infringement or civil conspiracy.

Second, entirely independent of the merits or lack of merits of Mack's counterclaims, it is significant that Mack's present Motion seeks relief which would be futile and is unnecessary, at least with regard to Toledo Mack. On the present Motion, the sole form of relief which Mack requests against Toledo Mack is that Toledo Mack be enjoined from "distribution of copies of MACSPEC 2001 . . . and of any unlock codes for any copies of MACSPEC 2001." See Mack's Proposed Form of Order at ¶ 3. However, the indisputable fact is that Toledo Mack does not possess and does not have access to any copies of MACSPEC 2001 or the "unlock codes" for any such copies. Mack has the power itself to achieve the stated goal of its Preliminary Injunction Motion simply by controlling Toledo Mack's access to MACSPEC 2001 in the future.

Mack has no need for the form of relief which it has requested against Toledo Mack on the present Motion.

For those basic reasons, all of the factors related to consideration of a motion for a preliminary injunction weigh heavily against this Court issuing the requested relief to Mack, and Mack's Motion for a Preliminary Injunction should be denied.

Mack also has brought an accompanying Motion for Expedited Discovery premised on the view that Mack requires expedited discovery for purposes of the resolution of the Motion for Preliminary Injunction. Because the underlying Motion for Preliminary Injunction should be denied, and because Toledo Mack should be permitted the opportunity to answer and/or to move to dismiss Mack's counterclaims before Toledo Mack is burdened with providing discovery on Mack's counterclaims, Mack's Motion for Expedited Discovery also should be denied.

## II.    STATEMENT OF FACTS

### A.    The Original MACSPEC In 1994

Since 1982, Toledo Mack has been an authorized distributor and dealer of Mack trucks and parts. See Declaration of David M. Yeager at ¶ 2, attached hereto as Exhibit A. In the early to mid-1990s, Mack began to offer to its distributors a computer containing a program developed by Mack which included, among other things, a detailed parts catalogue for Mack parts. Id. at ¶ 3. The original program from Mack was called "MACSPEC." While Mack offered MACSPEC to its authorized distributors, Mack would not license MACSPEC to its distributors' customers. Id. At the same time Mack offered MACSPEC to its distributors, Mack also made available microfiche copies of its parts catalogue for use by its distributors' customers as well as by any distributors which chose not license MACSPEC. Id. at ¶ 4. In 1994, Toledo Mack entered into a license agreement with Mack for MACSPEC. Id. at ¶ 5.

**B.**    **MACSPEC II In 1996**

In 1996, Mack introduced a new software package for Mack parts to replace MACSPEC. That new software was called "MACSPEC II." Id. at ¶ 7. Like with the original MACSPEC, Mack only offered MACSPEC II to its authorized distributors, including Toledo Mack. As was the case when MACSPEC was introduced, the customers of distributors could not license or otherwise obtain MACSPEC II from Mack. Again, Mack made available microfiche copies of its parts catalogue to the distributors' customers. Id. at ¶ 8.

**C.**    **The Licensing Of MACSPEC II To Toledo Mack**

On February 26, 1996, Toledo Mack entered into a license agreement with Mack relating to MACSPEC II ("the 1996 License Agreement"). Id. at ¶ 9. See Exhibit A to Defendant's Answer and Counterclaims. *The 1996 License Agreement for* **MACSPEC II** *is the document which Mack repeatedly misrepresents as a "license agreement for MACSPEC 2001" throughout its papers in support of the present Motion for Preliminary Injunction*. See, e.g. Defendant's Mem. in Support of Prel. Inj. Motion ("Defendant's Mem.") at 3-4.[1]

As the text of the agreement itself made explicit, the 1996 License Agreement only related to the MACSPEC II. For instance, the 1996 license was entitled –

LICENSE AGREEMENT AND LIMITED WARRANTY

MACSPEC II

---

[1]    In the Motion for Preliminary Injunction, Mack does not mention the *date* of the license agreement on which it relies so heavily or the fact that license was entered into five (5) years before MACSPEC 2001 was even developed by Mack.

See  Exhibit A to Defendant's Answer and Counterclaims at 1.   The stated effect of the

agreement was that, "The MACSPEC II parts information system, consisting of both the

operating software and the parts database on CD-ROM ('SOFTWARE') is licensed to you [i.e.,

Toledo Mack]."  Id.  The 1996 License Agreement further provided that Toledo Mack would be

required to return the MACSPEC II software to Mack "upon the expiration or termination of this

license." Id.   There is no provision or language whatsoever in the 1996 License Agreement

indicating that the terms of that license would be extended to any software programs other than

MACSPEC II or to any new software programs which Mack might develop in the future.  Id.

At all times when Toledo Mack used the MACSPEC II system, Toledo Mack maintained

the confidentiality of MACSPEC II and did not provide or share the system with any other party.

See Exhibit A at ¶¶ 11-12.  Mack has made no allegation, and there is absolutely no evidence,

that Toledo Mack ever violated the confidentiality of MACSPEC II or that Toledo Mack ever

violated the 1996 license by providing or sharing MACSPEC II with any other parties.

### D.    Mack's Misquoting From The 1996 License For MACSPEC II

Mack suggests that the 1996 license explicitly identified MACSPEC 2001 as

"confidential" and explicitly precluded Toledo Mack from providing MACSPEC 2001 to any

other parties.  See Defendant's Mem. at 3-4.  Mack supports that position by brazenly

misquoting from Section 3.1 of the 1996 license agreement and replacing the defined term

"SOFTWARE" in Section 3.1 with the bracketed words "MACSPEC 2001."  Compare Exhibit

A to Defendant's Answer and Counterclaims at 1-2, § 3.1 with Defendant's Mem. at 4.

Contrary to Mack's misquoting of the 1996 License Agreement, Section 3.1 actually

reads as follows:

> You may use the SOFTWARE only in connection with your parts
> and service business in accordance with your MACK distributor

> agreement.  You will treat the SOFTWARE and the information
> contained in the SOFTWARE as confidential and proprietary to
> MACK.  You will not permit access to the SOFTWARE to anyone
> other than your authorized employees or MACK's authorized
> representatives without first obtaining written approval from
> MACK.

See Exhibit A to Defendant's Answer and Counterclaims at 1-2, § 3.1.  As noted above, the term

"SOFTWARE" is specifically and exclusively defined as "[t]he MACSPEC II parts information

system, consisting of both the operating software and the parts database on CD-ROM."  Id. at 1

(introductory paragraph).

A simple reading of the 1996 License Agreement for MACSPEC II (which is Exhibit A

to Mack's own Answer and Counterclaims) establishes that Mack has no plausible basis for

arguing that Section 3.1 of the 1996 License Agreement applies or has any relevance whatsoever

to MACSPEC 2001, let alone a satisfactory explanation for actually misquoting  Section 3.1 of

the 1996 License Agreement on the present Motion and suggesting that the term "SOFTWARE"

was defined in that agreement to mean MACSPEC 2001.  See Defendant's Mem. at 4.

### E.     Toledo Mack Began Using "MACKnet" In 2000

In late 2000, Toledo Mack started to use an "extranet" service offered by Mack in order

to review and order Mack parts.  See Exhibit A at ¶ 13.  That extranet system is called

"MACKnet" and it is only available to authorized Mack distributors, such as Toledo Mack.  Id.

at ¶ 14.  At present, Toledo Mack pays Mack approximately $1,800 per month for distributor

technology, which includes the use of MACKnet.  Id. at ¶ 15.  Once Toledo Mack started using

MACKnet in 2000, it no longer had any need for MACSPEC II and there was no reason for

Toledo Mack to continue to pay the monthly licensing fee for MACSPEC II.  Id. at ¶ 16.

**F.    Toledo Mack Canceled Its License For MACSPEC II**

In January 2001, Toledo Mack contacted Mack and canceled its license for MACSPEC II.  Id. at ¶ 17.  Pursuant to the terms of the 1996 license, Toledo Mack returned all of its disks and software for MACSPEC II to Mack on January 26, 2001.  Id. at ¶ 18.  See also Inventory of MACSPEC II Disks Returned to Mack dated January 26, 2001, attached hereto as Exhibit B.  On February 2, 2001, Mack's Manager for Publications and Product Information sent a letter to Toledo Mack "to confirm the cancellation and return of your MACSPEC II system."  See Letter from Bob Yuzuik to Toledo Mack dated February 2, 2001, attached hereto as Exhibit C; see also Exhibit A at ¶ 19.

Toledo Mack's cancellation and return of the MACSPEC II system to Mack in early 2001 was to signal and to affect the termination of the 1996 License Agreement.  See Exhibit A to Defendant's Answer and Counterclaims at 1.  In this way, the very license agreement on which Mack relies so heavily in the present Motion was terminated as of February 2, 2001 when Mack itself confirmed "the cancellation and return of [Toledo Mack's] MACSPEC II system."  See Exhibit C.

**G.    Mack's Introduction Of MACSPEC 2001**

**1.    Mack's Memorandum Of January 29, 2002**

Almost a full year after Toledo Mack returned MACSPEC II to Mack and the 1996 license was terminated, Mack sent a memorandum to Toledo Mack and other Mack distributors announcing that Mack would no longer be producing its product and parts catalogues on microfiche.  See Exhibit A at ¶ 20.  In the memorandum dated January 29, 2002, Mack stated that "effective January 1, 2002" Mack's product and parts information would only be available either through MACKnet or through Mack's new software system called MACSPEC 2001.  See

Memorandum from Bob Yuzuik dated January 29, 2002, attached hereto as Exhibit D. Mack

also announced that all subscriptions for the microfiche (which was the only way a distributor's

customers could have access to Mack's parts catalogue until that time) "have been canceled." Id.

    Unlike the original MACSPEC, MACSPEC II or MACKnet, Mack indicated in the

memorandum received by Toledo Mack that the new MACSPEC 2001 system could be used by

both distributors and by their customers, who previously had to use the microfiche catalogues.

Id. In its January 29, 2002 memorandum, Mack explicitly stated:

> If you have a Parts/Service Dealer or customer(s) that utilizes this
> information, they may wish to order a MACSPEC 2001 system for
> their location.

Id. (emphasis added).   The memorandum further noted that there "are several Parts/Service

Dealers and customers  that already utilize the MACSPEC 2001 system . . . ." Id. (emphasis

added).  Mack's memorandum to Toledo Mack and other distributors concluded by stating that ,

"To place a new order for MACSPEC 2001 simply utilize the attached order form." Id.; see also

Order Form for MACSPEC 2001 dated January 29, 2002, attached hereto as Exhibit E.

## 2.    Mack's Internet Website

    In addition to the January 2002 memorandum sent to Mack's distributors, Mack also

advertises the MACSPEC 2001 system to the public at large on Mack's internet website. See

Excerpts from Mack's website, www.macktrucks.com, accessed on September 3 and 4, 2002,

attached hereto as Exhibit F.  MACSPEC 2001 is among the available products which are

advertised on Mack's website. Id. (list of parts publications).  Mack's website does not indicate

that there are any restrictions or limitations on who can obtain MACSPEC 2001 or any of the

other listed products. Id.  To the contrary, Mack's website suggests that any of the listed

publications, including MACSPEC 2001, can be ordered simply by contacting an authorized

Mack dealer, such as Toledo Mack.  Id. (instructions for ordering parts publications).  Among

other things, the website states:

> The information contained in this section of the Mack web site is
> your GUIDE TO ORDERING PARTS PUBLICATIONS.  Any of
> the publications to be ordered, either Class 8 or Mid-Liner, are to
> be ordered through the Mack dealer in your area.  The quickest
> way to locate a dealer in your area is to go to the Dealer and
> Service Locations [section of the website].

Id.  In turn, Toledo Mack is listed under the "Dealer and Service Location" section of Mack's

website.  Id. (page for authorized dealers in Ohio).

In this regard, Mack's website is consistent with the representation in Mack's January 29,

2002 memorandum to its distributors that MACSPEC 2001 is not to be restricted just to Mack's

distributors but has been, and can be, leased by customers of Mack parts generally, although

orders for MACSPEC 2001 generally should be placed through an authorized distributor.

### H.    Toledo Mack's Orders For MACSPEC 2001 On Behalf Of Its Customers

Because it has been using MACKnet since 2000, Toledo Mack itself has no use or need

for MACSPEC 2001.  See Exhibit A at ¶ 21.  However, after Toledo Mack had received Mack's

memorandum of January 29, 2002, two of Toledo Mack's customers expressed an interest in

obtaining the MACSPEC 2001 system for themselves.  Id. at ¶ 22.  PAI was one of those two

customers which asked Toledo Mack to order MACSPEC 2001 for them.  See Exhibit A at ¶ 23.

Subsequently, Toledo Mack called Mack's Manager for Publications and Product

Information, Bob Yuzuik,[2] and told him that two of Toledo Mack's customers were interested in

leasing MACSPEC 2001.  See Exhibit A at ¶ 24.  Mr. Yuzuik did not ask Toledo Mack to

---

[2]    Mr. Yuzuik was the author and signatory of Mack's memorandum of January 29, 2002
announcing, among other things, that customers, such as PAI, could now order the
MACSPEC 2001 for their own use.

identify the two customers which wanted MACSPEC 2001, and he did not indicate that Mack

had to approve or authorize any customer's order for MACSPEC 2001.  Id.  Mr. Yuzuik told

Toledo Mack that it only needed to fill out and to submit the order form attached to Mack's

January 29, 2002 memorandum in order to place the order for Toledo Mack's two customers.  Id.

 Toledo Mack filled out the order form, as Mr. Yuzuik had instructed, and submitted it to

Mack.  Id. at ¶ 25; Exhibit E.  Mack's own order form for MACSPEC 2001 did not ask the

dealer submitting the form to identify on whose behalf the order is being placed.  Id.  Toledo

Mack provided all of the information which Mack requested in ordering the two copies of

MACSPEC 2001 for its two customers.  Id.; Exhibit A at ¶ 25.

 Shortly after the order was sent to Mack, Toledo Mack received two sets of the

MACSPEC 2001 software from Mack.  Id. at ¶ 26.  Upon receiving that software, Toledo Mack

immediately shipped one copy of MACSPEC 2001 to PAI and the other copy to the second

customer which had requested it.  Id.  Toledo Mack did not copy, use, access or download the

MACSPEC 2001 software in any way.  Id. at ¶ 27.  In fact, in light of Mack's "unlock" feature

for MACSPEC 2001, Toledo Mack could not have copied, used, accessed or downloaded

MACSPEC 2001 before passing it onto its two customers.  Id.  Other than the few hours between

when the software was received from Mack and when it was shipped to PAI and the other

customers, Toledo Mack has not possessed MACSPEC 2001.  Id. at ¶ 28.

 There is no license agreement between Mack and Toledo Mack for MACSPEC 2001.  Id.

at ¶¶ 34-35.  Mack never asked Toledo Mack to enter into a license agreement for MACSPEC

2001 (id. at ¶ 35), and Toledo Mack has never entered into any license agreement with Mack for

MACSPEC 2001.  Id. at ¶ 34.

Furthermore, Toledo Mack has no knowledge of what, if anything, PAI has done with MACSPEC 2001 after PAI received it.  Id. at ¶ 31.  Toledo Mack also has no knowledge of any communications between PAI and Mack regarding MACSPEC 2001.  Id. at ¶¶ 32-33.

### I.    Toledo Mack Does Not Have MACSPEC 2001

At present, Toledo Mack does not possess or have access to MACSPEC 2001.  Id. at ¶ 29.  Toledo Mack does not possess or have access to any "unlock codes" for MACSPEC 2001.  Id.  Toledo Mack has never used, and does not presently use, MACSPEC 2001.  Id. at ¶ 30.  As noted above, Toledo Mack only had a copy of MACSPEC 2001 for the few hours between when it received the copies from Mack and when it immediately shipped the copies to PAI and its other customer as it had told Mack it would be doing.  Id. at ¶ 28.

### J.    Toledo Mack Did Not And Could Not Provide PAI With The "Unlock Code" For MACSPEC 2001

While Toledo Mack has no knowledge of PAI's use of MACSPEC 2001, Mack's assertion that Toledo Mack provided "the necessary unlock code to PAI" clearly is false.  See Defendant's Mem. at 10.  That assertion is inconsistent with how Mack itself designed the "unlock" feature of MACSPEC 2001 to work.

According to Mack's "MACSPEC 2001 User's Guide," the "unlock code" is not supplied along with the MACSPEC 2001 CD-ROM disks but rather can only be obtained after the user begins to download the MACSPEC 2001 software onto its own computer and then telephones Mack to get the necessary "unlock code" directly from Mack itself.  In pertinent part, Mack's "User's Guide" states:

> The first time you run the MACSPEC 2001 application you will need to "Unlock" the software.

*    *    *

> **You will need to call the MACSPEC 2001 Unlock Code**
> **Support number to receive the unlock code <u>while the</u>**
> **<u>"Registration Key" dialog is on your screen</u>** . . . This system
> can only be loaded on one PC, and only one unlock code will be
> issued.  Networking will not work on this system . . .

<u>See</u> MACSPEC 2001 User's Guide at 20-21 (emphasis in original), attached hereto as Exhibit G.

In order to obtain an "unlock code" from Mack, the user must begin the software application on

the single computer to which that copy of MACSPEC 2001 is being downloaded, telephone

Mack's "support person" at the number provided in the User's Guide, and read the "Registration

Key" displayed on the user's computer screen to the "support person."  <u>Id.</u>  Only at that point

will Mack's "support person" then give the "unlock code" to the user.  <u>Id.</u>

Similarly, the image which appears on the user's computer screen when MACSPEC 2001

is to be "unlocked" and used for the first time states:

> **Welcome to MACSPEC 2001 CD!**
>
> **To Unlock your MACSPEC 2001 CDs and begin access**
> **please call the MACSPEC 2001 Help Desk at**
> **1-800-XXX-XXXX**
> **to receive an Unlock Code.**

<u>See</u> Exhibit G (emphasis in original; telephone number redacted).

Based on Mack's own description of how the "unlock" feature of the MACSPEC 2001

software works, Toledo Mack clearly could not have provided an "unlock code" to PAI.  As

described above, that is simply not how Mack itself designed the "unlock" feature of MACSPEC

2001 to work.  In fact, to the extent PAI was able to "unlock" the software, only Mack itself

could have provided an "unlock code" to PAI for MACSPEC 2001.

## III.    ARGUMENT

### A.    The Standard For A Preliminary Injunction

On a motion for a preliminary injunction, the Court must consider the following factors: (1) whether the moving party has shown a reasonable probability of success on the merits; (2) whether the moving party will be irreparably harmed by denial of the requested relief; (3) whether granting the requested relief will result in even greater harm to the nonmoving party; and (4) whether granting the requested relief would be in the public interest.  Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3rd Cir. 1999).  All four factors weigh heavily against granting Mack's present Motion.

### B.    Mack Has No Probability Of Success On The Merits

On the present Motion, Mack argues that it has a reasonable probability of success on the merits of its counterclaims for misappropriation of trade secrets and confidential business information, copyright infringement and civil conspiracy.

#### 1.    There Is No Merit To Mack's Counterclaim For Misappropriation Of Trade Secrets

With regard to a claim for misappropriation of trade secrets, Pennsylvania follows the standard set forth in Restatement of Torts § 757.  Den-Tal-Ez, Inc. v. Siemens Capital Corp., 566 A.2d 1214, 1228-29 (Pa. Super. 1989).  Section 757 provides: "One who discloses or uses another's trade secret, without privilege to do so, is liable to the other if: (a) he discovered the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him."  Den-Tal-Ez, Inc., 566 A.2d at 1228-29 (quoting Restatement of Torts § 757).

### a.    MACSPEC 2001 Is Not A "Trade Secret"

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  Restatement of Torts § 757, comment b.  Accord Den-Tal-Ez, Inc., 566 A.2d at  1228.  In addition to having a competitive value to the owner, the other "crucial" attribute of a trade secret is "substantial secrecy."  Id.  Accordingly, "matters of public knowledge or of general knowledge in an industry" are not "trade secrets" for which one can be held liable for disclosing to others.  Restatement of Torts § 757, comment b.

In the present case, Mack's MACSPEC 2001 "is an electronic service parts catalog system . . . that contains chassis records, service parts lists, parts suspension and major unit serial number data."  See Exhibit F.  This is the very information which Mack has made available to the public at large through microfiche catalogs in the past.  See Exhibit A at ¶¶ 4 and 8; Exhibit D.  In fact, MACSPEC 2001 was intended to replace the microfiche parts catalogs and, for that very reason, Mack told its distributors that their customers could order and obtain MACSPEC 2001 for themselves.  See Exhibit D.  Furthermore, the same substantive information, although in a different form, is available to the public at large in other Mack parts publications.  See Exhibit F (listing various Mack parts catalogs available in paper form and other computer based forms).  As a parts catalog system, MACSPEC 2001 is nothing more than a catalog of the very products which Mack markets and sells to the public.  There simply is nothing "secret" about the substance of such a catalog.  See Restatement of Torts § 757, comment b ("Matters which are completely disclosed by the goods which one markets cannot be his [trade] secret.").

Furthermore, Mack has advertised the availability of MACSPEC 2001 effectively to the entire world.  On its internet website, Mack advertises MACSPEC 2001 and how an interested

party can order it through his or her local authorized Mack dealer.  <u>See</u> Exhibit F.  Mack's

website also provides a link where parties interested in acquiring MACSPEC 2001 can find an

authorized dealer to order the software for them, and someone using that link on Mack's website

can find contact information for various authorized dealers, specifically including Toledo Mack.

<u>Id.</u>  Mack itself has admitted that customers, and not just authorized dealers themselves, have

already, and can now, obtain MACSPEC 2001 for their own locations.  <u>See</u> Exhibit D.  Mack's

problem in the present case clearly is with PAI's possession of MACSPEC 2001 in particular,

and not with customers and non-authorized Mack dealers having possession of MACSPEC 2001

in general, as evidenced by the fact that Mack has already leased MACSPEC 2001 to non-dealers

(<u>id.</u>) and is actively soliciting the public at large to inquire about and to order MACSPEC 2001.

<u>See</u> Exhibit F.  This is all inconsistent with Mack's assertion that MACSPEC 2001 is a "trade

secret."  <u>See</u> Restatement of Torts § 757, comment b ("a substantial element of secrecy must

exist, so that, except by the use of improper means, there would be difficulty in acquiring the

information").

  As a fall-back position, Mack also asserts that MACSPEC 2001 constitutes "confidential

business information" (to the extent it is not a "trade secret") covered by Restatement of Torts §

759.  <u>See</u> Defendant's Mem. at 7.  However, for the same reasons that there is nothing "secret"

about MACSPEC 2001, as discussed immediately above, there is nothing "confidential" about it

which warrants protection under Section 759 of the Restatement.  <u>See</u> Restatement of Torts §

759, comment b ("if one freely gives full information to . . . others who request it, the possession,

disclosure or use of the same information by one who procured it through improper means can

hardly cause him harm").

Moreover, with regard to Toledo Mack specifically, it is significant that Section 759 only renders a party who "procures by improper means" another's confidential business information liable for its subsequent use or disclosure of such information (see Restatement of Torts § 759), and Mack has made no argument whatsoever that Toledo Mack "procured" MACSPEC 2001 "by improper means." See generally Defendant's Mem. at 8-9 (arguing only that PAI acquired MACSPEC 2001 by improper means). Mack's complaint against Toledo Mack is that, once Toledo Mack ordered and obtained MACSPEC 2001 through Mack's proper procedures, Toledo Mack then sent it to PAI in alleged "contravention of the confidence which Mack reposed in Toledo Mack." Id. at 8. Accordingly, the only basis of Mack's misappropriation counterclaim against Toledo Mack must be as a "trade secret" under Section 757 of the Restatement and not as merely "confidential business information" under Section 759 of the Restatement.

> **b.    Toledo Mack's Actions In Providing MACSPEC 2001 To PAI Were Privileged**

As noted above, a party who discloses another's trade secret to a third party can only be liable for misappropriation if the party was "without a privilege to do so." Den-Tal-Ez, Inc., 566 A.2d at 1228 (quoting Restatement of Torts § 757). Under Section 757 of the Restatement, a "privilege to disclose or use another's trade secret may arise from the other's consent or from other conduct on his part by which he is estopped from complaining." Restatement of Torts § 757, comment d.

In the present case, the facts establish that Mack effectively consented to Toledo Mack's giving MACSPEC 2001 to PAI. Mack has admitted that its distributor's customers are eligible to lease MACSPEC 2001 and that some have already done so. See Exhibit D. On behalf of PAI and another customer, Toledo Mack contacted Mack and inquired about ordering two copies of MACSPEC 2001. See Exhibit A at ¶¶ 22-24. Of course, Mack knew that Toledo Mack itself

was using MACKnet (for which Toledo Mack pays a significant monthly fee to Mack) and, therefore, that Toledo Mack had no need for MACSPEC 2001 itself.  Id. at ¶¶ 15 and 21.  Toledo Mack specifically told Mack that the order for MACSPEC 2001 would be on behalf of two of Toledo Mack's customers.  Id. at ¶ 24.  Mack did not ask for the names of those two customers and did not indicate that Mack had to approve of particular customers receiving MACSPEC 2001.  Id.  Mack simply told Toledo Mack to fill out and to submit the MACSPEC 2001 Order Form.  Id.  Toledo Mack then followed Mack's instructions, provided all of the information requested on the Order Form, and submitted the order to Mack.  Id. at ¶ 25.  Mack then sent the two copies of the software to Toledo Mack, which forwarded them to PAI and the other customer.  Id. at ¶ 26.  Mack never asked Toledo Mack to enter into a license agreement for MACSPEC 2001.  Id. at ¶¶ 34-35.  As Mack's own User's Guide for MACSPEC 2001 demonstrates, only Mack itself (or its agent) could have supplied the so-called "unlock code" to PAI or any other user of MACSPEC 2001.  See Exhibit G.

Against this background, it is clear that Toledo Mack's actions were done pursuant to Mack's own procedures for ordering MACSPEC 2001.  Toledo Mack actually went beyond Mack's established procedures by calling and specifically telling Mack that its order would be for two of Toledo Mack's customers.  Mack's actions in discussing the customers' orders with Toledo Mack, instructing Toledo Mack that all that needed to be done was for Toledo Mack to fill out and submit Mack's Order Form, shipping two copies of MACSPEC 2001 knowing that Toledo Mack would thereafter provide them to the two customers, and presumably providing PAI with the "unlock code" for MACSPEC 2001 pursuant to the procedure in the MACSPEC 2001 User's Guide, all establish that Mack consented to Toledo Mack's giving MACSPEC 2001 to PAI and/or that Mack should be equitably estopped from complaining about Toledo Mack's

actions.  Either way, Toledo Mack's actions were privileged and, therefore, unactionable under Restatement of Torts § 759.

**c.    Toledo Mack Did Not Breach Any Confidence Of Mack**

The final element of claim for misappropriation of a trade secret which Mack would have to prove is that Toledo Mack's disclosure of MACSPEC 2001 to PAI "constitutes a breach of confidence reposed" in Toledo Mack by Mack.  Den-Tal-Ez, Inc., 566 A.2d at 1228 (quoting Restatement of Torts § 757).

Mack argues that there is a license agreement between Mack and Toledo Mack that required Toledo Mack "to maintain the confidentiality of MACSPEC 2001 and to restrict access to MACSPEC 2001 to only Mack and Toledo Mack employees."  See Defendant's Mem. at 8.  The problem with Mack's argument is the simple and indisputable fact that no such license agreement exists in the first instance.

Rather than deal directly with that glaring hurdle to its misappropriation counterclaim, Mack actually goes so far as to represent on the present Motion that the 1996 License Agreement between Toledo Mack and Mack for MACSPEC II is actually a current license agreement for MACSPEC 2001.  See Defendant's Mem. at 3-4 and 8-9 (referencing Exhibit A to Defendant's Answer and Counterclaims).  However, as demonstrated above, that 1996 License Agreement related only to MACSPEC II (see Exhibit A to Defendant's Answer and Counterclaims) and, indeed, that license was terminated by February 2001 when Toledo Mack returned MACSPEC II to Mack and Mack canceled Toledo Mack's license for MACSPEC II.  See Exhibits B and C.  It is false and misleading for Mack to argue that the 1996 License Agreement for MACSPEC II was a license agreement for MACSPEC 2001, and it is particularly shocking that Mack actually misquoted the confidentiality section of the 1996 License Agreement by replacing the term

18

which was specifically and exclusively defined to mean MACSPEC II with the words "MACSPEC 2001."

There simply was no license agreement for MACSPEC 2001 between Mack and Toledo Mack, and Mack never even asked Toledo Mack to enter into such a license. See Exhibit A at ¶¶ 34-35. Accordingly, Toledo Mack did not breach any confidentiality restriction in any such non-existent license, and Toledo Mack did not breach any confidence of Mack, when it forwarded MACSPEC 2001 to PAI.

For any and all of the foregoing reasons, Mack has no probability, let alone the requisite reasonable probability, of success on the merits of its misappropriation of trade secrets counterclaim against Toledo Mack.

### 2.    There Is No Merit To Mack's Counterclaim For Copyright Infringement

On the present Motion, the only grounds which Mack asserts for its copyright infringement claim against Toledo Mack is that Toledo Mack gave a copy of MACSPEC 2001 to PAI in "blatant contravention of the terms of the license" and "[t]hat distribution was copyright infringement." See Defendant's Mem. at 10-11. As demonstrated above, the fallacy of Mack's argument is that Mack does not have a license agreement with Toledo Mack for MACSPEC 2001. Mack cannot point to a prior license agreement relating to a wholly different product (see 1996 license for MACSPEC II attached as Exhibit A to Defendant's Answer and Counterclaims), which was terminated one year before Mack introduced MACSPEC 2001 (see id. and Exhibits B and C), and then legitimately argue that the terms of that earlier, now terminated license agreement for MACSPEC II have any bearing on Toledo Mack's actions regarding placing an order for MACSPEC 2001 on behalf of PAI pursuant to Mack's very own procedures, instructions and forms.

Absent a license for MACSPEC 2001 between Mack and Toledo Mack limiting Toledo Mack's ability to give the software to another party, there is no basis for a copyright infringement claim against Toledo Mack. Without such a restrictive license, a party in Toledo Mack's position is not restricted under the copyright laws from passing the single copy of the relevant product which is legitimately in its possession onto a third party.  See generally Adobe Systems v. One Stop Micro, Inc., 84 F. Supp.2d 1086 , 1090-91 (N.D. Cal. 2000) (copyright holder's right to distribute copyrighted material provided in 17 U.S.C. § 106(3) only precludes defendant who lawfully obtained copy of material from holder from providing that copy to third party if license agreement between copyright holder and defendant specifically restricted such transfer).  Accordingly, the entire premise of Mack's copyright infringement counterclaim against Toledo Mack is flawed, and Mack has no probability of success on the merits of its copyright infringement claim against Toledo Mack.

### 3.     There Is No Merit To Mack's Counterclaim For Civil Conspiracy

Under Pennsylvania law, in order to establish a claim for civil conspiracy, a plaintiff must show that "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means" and that "some overt act is done in pursuance of the common purpose or design" from which "actual legal damage results."  GMH Assocs., Inc. v. Prudential Realty Group, 752 A.2d 889, 905 (Pa. Super.), appeal denied, 795 A.2d 976 (Pa. 2000).  In addition, "[p]roof of malice, i.e., an intent to injure, is essential in proof of a conspiracy."  Skipworth v. Lead Industries Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997).  Mack clearly cannot prove its counterclaim for civil conspiracy.

First, Mack's entire theory that Toledo Mack did something "unlawful" or "otherwise lawful by unlawful means" rests on the false premise that Toledo Mack allegedly violated the

confidentiality term in a non-existent license for MACSPEC 2001 when PAI was given that parts catalog software.  As demonstrated above, no such license for MACSPEC 2001 exists, and there is no evidence that Toledo Mack did anything unlawful.

Second, Mack's own knowledge and actions regarding Toledo Mack's ordering of two copies of  MACSPEC 2001 for two of its customers demonstrates that Mack should be equitably estopped from asserting any claims against Toledo Mack.  See 4 Nimmer on Copyright § 13.07 (2002) ("defense of estoppel is clearly available if the plaintiff aided the defendant in the acts of alleged infringement").  Mack itself was fully aware that Toledo Mack would be forwarding MACSPEC 2001 onto two of its customers and that Toledo Mack itself would not be using MACSPEC 2001 itself.  Also, according to Mack's own materials on MACSPEC 2001, PAI could only have gotten the "unlock code" for the software from Mack itself, and Toledo Mack has absolutely no knowledge of, let alone any active involvement in, PAI's accessing MACSPEC 2001.

Finally, Mack does not even argue, let alone present any evidence, that Toledo Mack acted with "malice."  Toledo Mack just followed Mack's own procedures and instructions for ordering MACSPEC 2001 on behalf of its customers, told Mack it was ordering MACSPEC 2001 for customers and not itself, and provided Mack with all of the requested information regarding the order on the form provided by Mack.  Clearly, Toledo Mack's actions were not taken with any nefarious intent to injure or harm Mack.

Accordingly, Mack has no probability of success on the merits of its civil conspiracy counterclaim.

C.    **Toledo Mack Is Not Doing Anything Relating To MACSPEC 2001 And Is
Not Inflicting Irreparable Harm On Mack**

Mack's sole theory of irreparable harm is that Mack is being harmed by PAI's ability "to exploit Mack's investment in MACSPEC 2001." See Defendant's Mem. at 12-13. While that assertion is clearly overstated and not supported by the facts as PAI or anyone else presumably could obtain the same information contained on MACSPEC 2001 from the other parts publications which Mack offers to the public (see Exhibit F), it is most significant that Mack has failed to mention how Toledo Mack at present is harming Mack in anyway and has failed even to argue that Mack is suffering irreparable harm as a result of Toledo Mack's present actions.[3]

Moreover, because Toledo Mack does not use, possess or have any access to MACSPEC 2001 (see Exhibit A at ¶¶ 27 and 29-30), it is impossible for Toledo Mack presently to be harming Mack's rights to MACSPEC 2001. What, if anything, Toledo Mack has done or could do with regard to MACSPEC 2001 is in the past and is not ongoing. Mack has made no allegation and has presented no evidence to the contrary. With regard to Toledo Mack at least, Mack has failed to demonstrate, or even try to demonstrate, the requisite element of irreparable harm without which a preliminary injunction cannot be granted.

D.    **The Balance Of Harms Weighs Against A Needless Injunction Against
Toledo Mack**

Mack notes that "the only relief being requested is that the illegally acquired database . . . be impounded and that PAI no longer be permitted to the use of stolen property." See Defendant's Mem. at 13. This assertion, which Mack makes in connection with the balance of

---

[3]    In the section of its Memorandum in Support of the Preliminary Injunction Motion devoted to "irreparable harm" (Defendant's Mem. at 12-13), Mack does not mention Toledo Mack's name or even make a passing allusion to Toledo Mack.

hardship prong of the preliminary injunction standard, exposes another fundamental flaw in Mack's attempt to enjoin Toledo Mack on the present Motion.

Mack's complaint concerning MACSPEC 2001, whether it is legitimate or not, is really a dispute only between Mack, the owner of that software, and PAI, a party which currently possesses it. Mack's complaint clearly is based on the fact that PAI is Mack's alleged competitor (see Defendant's Mem. at 12-13), and not on the fact that a non-authorized Mack dealer has a copy of MACSPEC 2001. See Exhibit F (advertising MACSPEC 2001 to public at large) and Exhibit D (admitting that not just authorized dealers already use and are permitted to lease MACSPEC 2001). Again, Toledo Mack does not possess or have access to MACSPEC 2001. A preliminary injunction ordering PAI to return MACSPEC 2001 and not to use it would have no effect whatsoever on Toledo Mack. Mack has no legitimate reason or need for having Toledo Mack included as a party on such an injunction.

Accordingly, Mack will not be harmed in the least if Toledo Mack is not enjoined, while Toledo Mack will have suffered harm to its reputation and potentially to its business if the requested injunction is issued against Toledo Mack. At least as between Mack and Toledo Mack, the balance of hardships weighs heavily in favor of Toledo Mack and against granting the present Motion.

### E.    It Is Not In The Public Interest To Issue A Frivolous Injunction

As discussed above, Mack is shooting at the wrong target when it seeks to have Toledo Mack preliminarily enjoined in this action. Such an injunction would be futile and have no practical effect as Toledo Mack does not have MACSPEC 2001 and, therefore, Toledo Mack could not copy or distribute that software as a practical matter. It surely is not in the public interest to have federal courts take their valuable time to consider whether or not to issue

preliminary injunctions which would be futile and would have no practical effect if granted. It also is not in the public interest for a party to bring a frivolous motion for relatively dramatic relief, such as a preliminary injunction, when the party has absolutely no need for the requested relief. At least with regard to Mack's inclusion of Toledo Mack as a target of the present Motion, the public interest weighs heavily in favor of denying the requested relief and in favor of rejecting Mack's burdening this Court, as well as Toledo Mack, with such a frivolous and futile motion.

For these reasons, Mack cannot satisfy any of the four required elements for a preliminary injunction in the present case.

### F.    Mack's Motion For Expedited Discovery Should Be Denied

In connection with its Motion for Preliminary Injunction, Mack also seeks expedited discovery on its counterclaims from Toledo Mack. As the foregoing discussion of the reasons for denying Mack's Preliminary Injunction Motion demonstrate, Mack has absolutely no need or legal basis for preliminarily enjoining Toledo Mack as requested. In addition, as part of the requested expedited discovery, Mack seeks to depose David Yeager, the principal owner of Toledo Mack, who is from Toledo, Ohio. Mack has noticed Mr. Yeager's deposition for Philadelphia. At this point in the proceedings, it would be unreasonably burdensome to require Mr. Yeager to travel to Philadelphia for purposes of such a deposition. Moreover, Toledo Mack should be permitted to file an appropriate response to Mack's counterclaims in due course, either in the form of an answer or a motion to dismiss, before Toledo Mack is put to the additional burden of providing discovery on those counterclaims. Accordingly, Mack has no reason for expedited discovery and its Motion for Expedited Discovery should be denied.

To the extent the Court would disagree with Toledo Mack and would allow expedited discovery on Mack's Motion for Preliminary Injunction, Toledo Mack reserves the right, and would request the opportunity, to depose Mr. Bob Yuzuik, Mack's Manager for Parts Publications, who was the author of the January 29, 2002 memorandum announcing the availability of MACSPEC 2001 (Exhibit D hereto) and the individual who spoke to Toledo Mack concerning the order for Toledo Mack's two customers, possibly as well as other representatives of Mack.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Mack's Motion for Preliminary Injunction should be denied.  In addition, Mack's Motion for Expedited Discovery should be denied.

Respectfully submitted,


Date: September 9, 2002                   _____
                                          Wayne A. Mack
                                          Mark B. Schoeller
                                          J. Manly Parks
                                          DUANE MORRIS LLP
                                          One Liberty Place
                                          Philadelphia, PA  19103
                                          215-979-1000 (telephone)
                                          215-979-1020 (telefax)


                                          Attorneys for Plaintiff,
                                          Toledo Mack Sales & Service, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of September 2002, a true and correct copy of the foregoing document was served on the counsel of record listed herein by first class mail, postage prepaid:

Jon A. Baughman
Jeremy Heep
Barak A. Bassman
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799

Joseph Schumacher
Wiggin & Dana LLP
1001 Hector Street
Conshohocken, PA  19428

Stephen M. Dorvee
Scott E. Taylor
Arnall Golden & Gregory LLP
2800 One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3450

_____
Mark B. Schoeller