## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:02-CV-04373-RLB |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

---

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOLEDO MACK SALES & SERVICE, INC., and | : | JURY TRIAL DEMANDED |
| | : | |
| PAI INDUSTRIES, INC., 950 Northbrook Parkway, Suwanee, GA, | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, upon consideration of the Motions to Dismiss of Counterclaim Defendants

Toledo Mack Sales & Service, Inc. and PAI Industries, Inc., dated September 17, 2002 and

September 16, 2002, respectively, and Counterclaim Plaintiff Mack Trucks, Inc.'s Memorandum

of Law in Opposition thereto, it is hereby ORDERED that Counterclaim Defendants' Motions to

Dismiss are DENIED.

BY THE COURT:

_____

Judge Ronald L. Buckwalter

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : : : | |
| Plaintiff, | : : | Civil Action No. 2:02-CV-04373-RLB |
| v. | : : | JURY TRIAL DEMANDED |
| MACK TRUCKS, INC., | : : | |
| Defendant. | : | |

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : : | |
| Plaintiff, | : : | |
| v. | : : | |
| TOLEDO MACK SALES & SERVICE, INC., and | : : | JURY TRIAL DEMANDED |
| PAI INDUSTRIES, INC., 950 Northbrook Parkway, Suwanee, GA, | : : : | |
| Defendants. | : | |

**COUNTERCLAIM PLAINTIFF MACK TRUCKS, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO COUNTERCLAIM
DEFENDANTS' MOTIONS TO DISMISS**

## I.    INTRODUCTION

Counterclaim Plaintiff Mack Trucks, Inc. ("Mack") has brought suit against

Toledo Mack Sales & Service, Inc. ("Toledo Mack") and PAI Industries, Inc. ("PAI") to stop the

theft of its secret MACSPEC 2001 computer parts database system by its competitor, PAI.  As

Mack explains in its Counterclaims, Toledo Mack and PAI conspired to steal MACSPEC 2001,

which Mack only licenses to authorized Mack distributors like Toledo Mack.

Toledo Mack has moved to dismiss Mack's Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Toledo Mack's argument is that it was not bound by a license agreement with Mack for MACSPEC 2001, and thus supposedly can dispose of Mack's trade secret and copyrighted computer software however it pleases. This argument is without merit for two reasons: first, Toledo Mack had no right to distribute MACSPEC 2001 to PAI under copyright or trade secret law, regardless of the existence of any formal written agreement; second, Toledo Mack *is* bound by the license agreement.

PAI has also moved to dismiss Count V of Mack's Counterclaims on the basis that its *admitted* fraudulent activity did not harm Mack. This argument is likewise unfounded, because, absent its misrepresentations, PAI would not possess a complete, functioning copy of MACSPEC 2001 that enables it to violate the law to Mack's detriment every day.

## II.   STATEMENT OF FACTS

### A.   The Allegations of the Counterclaims

#### 1.   MACSPEC 2001

Mack is a leading manufacturer of truck chassis and truck parts in the United States, including after-market truck replacement parts. Counterclaims at ¶ 8. The highly competitive truck parts market is comprised of brand name manufacturers, such as Mack, and generic manufacturers, like PAI, which manufacture imitations of the brand name parts. Id. at ¶ 10. The generic manufacturers can undercut the price of the name brand manufacturers, but only if they competently gather technical information about parts and their applications. With "perfect information," they could successfully take market share from the name brand manufacturers because they could efficiently determine quantity and timing of large manufacturing runs and could provide equivalent or perhaps superior customer service as compared to the brand name manufacturer. Id.

2

To improve its competitive position, Mack developed a computerized parts database for its distributors, including a system called MACSPEC 2001, which is comprised of 28 CD ROM discs containing vehicle-specific parts configuration data for nearly every truck chassis manufactured by Mack since 1966. Id. at ¶ 12. The MACSPEC 2001 system contains special software source codes to permit a user to easily search the parts database vehicle identification number ("VIN Number"), part number, partial part number, arrangement number, partial arrangement number or major unit serial number. Id. at ¶¶ 11-12. This quick-search capability gives Mack and its distributors a significant edge in selling after-market parts because the distributors can search quickly and accurately for the parts necessary to meet a particular customer's needs. Without MACSPEC 2001, Mack distributors would have to engage in detailed and time consuming investigations of which part is appropriate for which truck. Id. at ¶13.

2.    **Protection of the Copyright in and Secrecy of MACSPEC 2001**

Mack is the owner of the copyrights for the MACSPEC 2001 system's parts database and source code. Id. at ¶ 15. The compilation of the data and the software codes is and always has been kept secret because it gives Mack and its distributors a significant competitive edge. Mack's secrecy is necessary because companies like PAI could use this information to steal Mack's customers and market share without doing original market, products or design research. Competitors could also use this information to give customers the false but reassuring impression that the competitors have the capability of legally and quickly identifying what parts go into what Mack model vehicles. Id. at ¶ 14.

In addition to the copyright, Mack protects the secrecy of the MACSPEC 2001 system through a series of "unlock codes." Each unlock code is specific to each copy of the MACSPEC 2001 system and integrates itself onto the computer hard drive on which it is first

3

used, such that it can never be used on any other computer. Id. at ¶ 16. As part of the procedures
to protect the confidentiality of MACSPEC 2001, only two employees are authorized to
distribute unlock codes, and an internal weekly report sets forth each new distribution of an
unlock code. Id. at ¶ 17.

In addition to these protections, the counterclaims specifically allege that Toledo
Mack, like other Mack distributors, "possesses and operates its MACSPEC 2001 system
pursuant to a license agreement with Mack." Id. at ¶ 20. It is also alleged that this agreement
requires that Toledo Mack treat the information in MACSPEC 2001 as "confidential and
proprietary" and not permit access "to anyone other than [Mack's] authorized representatives."
Id. at ¶ 21. The counterclaims similarly allege that this specific license agreement prohibits
sublicensing, renting or transfer of MACSPEC 2001. Id. at ¶ 22. The license agreement that
Mack specifically alleged to govern possession and operation of MACSPEC 2001 was attached
to the counterclaims.

### 3.    Conspiracy to Steal MACSPEC 2001

On July 24 and 25, 2002, Mack discovered that Toledo Mack had secretly
conspired with PAI, Mack's competitor, to misappropriate MACSPEC 2001. Id. at ¶ 24. In
particular, Mack's Help Desk contractor received a call from PAI's Yolanda May, who
deliberately and fraudulently led the contractor to believe that she was calling on behalf of a
Mack distributor or authorized subdistributor who rightfully possessed MACSPEC 2001. Id. at
26. During this call and a subsequent communication, Ms. May told the contractor that she was
calling on behalf of "Nancy's Trucking," and not PAI, and otherwise tricked the contractor into
sending her a replacement disc to keep PAI's fraudulently acquired MACSPEC 2001 system
operating. Id. at ¶¶ 26-32. The counterclaims allege that PAI and Toledo Mack acted together,
and are continuing to act together, to steal MACSPEC 2001 in violation of copyright law, the

4

license agreement *and* the confidence that Mack reposed in Toledo Mack. Id. at ¶¶ 41.    The

causes of action pleaded were misappropriation of trade secrets (Count 1); copyright

infringement (Count 2); breach of contract (Count 3); tortious interference with contractual

relations (Count 4); fraudulent and intentional misrepresentation (Count 5); and civil conspiracy

(Count 6).

### 4.    Admissions of PAI and Toledo Mack

In response to Mack's Motion for Preliminary Injunction and Expedited

Discovery, Toledo Mack and PAI have admitted the following:

> a.    Toledo Mack procured MACSPEC 2001 from Mack for the specific purpose of delivering it to PAI, Mack's competitor, and in fact did so.  See Toledo Mack's Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery at 9-10.

> b.    In procuring MACPEC 2001 from Mack, Toledo Mack represented to Mack that it was merely ordering the system for a "customer" and not Mack's competitor.  Id.

> c.    Toledo Mack specifically instructed PAI not to reveal its true identity to Mack with regard to MACSPEC 2001.  See PAI Mem. of Law in Opp. to Mot. for Preliminary Injunction at 7.

At the present, the precise time of the beginning of the conspiracy and the precise

role of each conspirator, beyond the specific events described above, is unknown to Mack – and

can only be determined through discovery.  Given these admissions however, it is a reasonable

inference that both Toledo Mack and PAI have been involved since the initial trickery cast upon

Mack to procure the system and that such trickery has continued through this very day.

### 5.    Allegations of Harm to Mack

The counterclaims allege that the theft of MACSPEC 2001 causes Mack

irreparable harm each and every day.  Specifically, Mack believes that PAI is using MACSPEC

2001 to give PAI a crucial advantage in the marketplace and to destroy Mack's after market parts

business by unfairly developing generic substitutes for Mack parts and by responding to customer inquiries with accuracy and alacrity possible only with a sophisticated database system like MACSPEC 2001. Id. at ¶ 33. It is further alleged that PAI continues to distribute derivative works based on MACSPEC 2001 and that "PAI and Toledo Mack continue to conspire to steal Mack's trade secrets, confidential business information and intellectual property." Id. at ¶ 35. Facing irreparable harm, Mack brought a motion for preliminary injunction with regard to its claims of copyright infringement, trade secret misappropriation and civil conspiracy. See generally Mack's Mem. of Law in Supp. of Mot. for Preliminary Injunction.

**B.    The Fallacious Factual Allegations of the Motions to Dismiss**

Unable to challenge the pleadings on their face, Toledo Mack instead goes beyond them, claiming that its license agreement with Mack is no longer in effect, thus giving it the right to sublease MACSPEC 2001 to whomever it pleases. See Toledo Mack Mem. of Law in Supp. of Mot. to Dismiss ("TM Mem.") at 2-3. Toledo Mack does not deny that it did have an agreement, and that its agreement says "MACSPEC", but rests its argument on the fact that its agreement says "II" instead of "2001". Id. Then, Toledo Mack puts on the pre-discovery case that it "had no further need for MACSPEC II," and therefore "canceled its license . . . in January 2001." Id. at 4-5. In support of this factual allegation, it relies on a self-serving affidavit by its principal, David Yeager, and a series of appended exhibits purporting to show MACSPEC II's return, which in its words, "signaled and affected the termination of the [MACSPEC II] License Agreement." Id. at 4-5; see Exh. A to Toledo Mack Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery. Further citing to the MACSPEC 2001 User's Guide, Toledo Mack states that it could not have provided PAI with any unlock code, as alleged in the counterclaims, because Mack's procedures require that Mack be telephoned directly to get the unlock code. Id. at 7, n. 3. Finally, Toledo Mack cites to a Mack letter that purportedly

6

changed Mack's practice and policy to allow "customers" to order MACSPEC 2001 for their own use. Id. at 5, n. 2.

### C.    Mack's Counter Allegations of Fact

Toledo Mack's "Statement of Facts" is telling more for what it omits than for what it reveals. First, it omits that MACSPEC 2001 was a simple upgrade of MACSPEC II that permits the software to run on Windows 98. Affidavit of Robert Yuzuick ("Yuzuik Aff."), a copy of which is attached hereto as Exhibit A, at ¶ 8. In all material respects, as the MACSPEC name suggests, the software is identical. Id. No new license agreement was issued to Toledo Mack or any other distributor for the simple reason that this was unnecessary. Id. at ¶ 10. No other distributor has ever claimed that it is no longer bound by the MACSPEC II agreement; indeed such a claim would be inconsistent with the trust and confidence that Mack reposes in its distributors. Id. Even without a license agreement, the information in MACSPEC 2001 is widely understood to be proprietary and confidential. Id. at ¶ 11.

The documents relied upon by Toledo Mack suggest that it returned its MACSPEC II disks to Mack at the end of January 2001. See Exh. B to Toledo Mack Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery. Omitted from Toledo Mack's "Statement of Facts", however, is that the return of these discs was merely in anticipation of the forthcoming upgrade, much like a lessee would turn his car into the distributor for the replacement of a recalled part to make it function better in light of new information or requirements in the market place. Minutes from a meeting of Mack distributors shortly before Toledo Mack returned a set of MACSPEC II discs show that the Mack distributors were aware that MACSPEC 2001 was soon coming. Yuzuik Aff. at ¶ 9; see Exh. B to Yuzuik Aff. Failure to turn in the nearly obsolete discs would result in fines or penalties. Id. at ¶ 9. Accordingly,

7

Mack's acknowledgment of the return of the discs was just that – and not a cancellation of Toledo Mack's license agreement. Id.[1]

Toledo Mack similarly omits the obvious from its selective citation to the MACSPEC 2001 User Guide: that the cover page was addressed to authorized Mack distributors – which PAI is not. See Exh. A to Yuzuik Aff. "All Mack Dealers and Subsidiaries" are the first words that one sees upon opening the package containing MACSPEC 2001. Id. Toledo Mack further omits that the next words one sees are on the computer screen – specifically telling the user that the system is "protected by copyright law" and "[u]nauthorized reproduction or distribution of this program, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under law." Exh. C to Yuzuik Aff. Anyone viewing these materials in sum would understand that they were proprietary to Mack and should in no case be in the hands of a competitor.

Regarding provision of the "unlock code", Toledo Mack conveniently omits that it specifically instructed PAI to hide its true identity in all communications with Mack. See PAI Mem. of Law in Opp. to Mot. for Preliminary Injunction at 7. Whether Toledo Mack provided the code directly, which would have been possible by loading it onto a computer and sending the computer to PAI, or instructed PAI on how to deceive Mack and GGS into turning over the unlock code is a pointless distinction. Finally, while it is true that Mack sent a letter to its distributors in January 2002 stating that distributors could order MACSPEC 2001 for their "customers", Toledo Mack again omits a key fact: that distributors often had customers that were

---

[1] Historically, to improve its competitive position, Mack developed a series of parts databases in the 1960's for its distributors. At first, these databases were on microfiche. Yuzuik Aff. at ¶ 4. In 1988, Mack combined its microfiche parts databases into a computerized parts database system called MACSPEC, which ran on computers using the DOS operating system. Id. at ¶¶ 3 and 5. In 1996, Mack created MACSPEC II to run on Windows 95. Id. at ¶ 5.

8

authorized Mack representatives, and who were thus authorized under the license agreement and

Mack's policy and practice to possess MACSPEC 2001. Yuzuik Aff. at ¶ 7. The specific and

obvious intent of the reference to "customers" was to those customers and not to Mack's

competitors. Id.

## III.    ARGUMENT

### A.    Standard of Review

In reviewing a motion to dismiss, this Court accepts as true all of the allegations

in the Counterclaims and any reasonable inferences which can be drawn from them, and analyzes

the allegations of the Counterclaims "in the light most favorable to the non-moving party." See

Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Mack's Counterclaims will be

dismissed *only* if this Court is certain that Mack cannot prove any set of facts that would

establish a claim for relief. See Children's Seashore House v. Waldman, 197 F.3d 654, 658 (3d

Cir. 1999). This Court is not determining whether Mack will prevail, but "only whether [it is]

entitled to offer evidence to support [its] claims." Id. (brackets in original).

### B.    Mack Has Stated a Claim for Relief Even Without the License Agreement.

Toledo Mack's entire Motion to Dismiss is premised upon the argument that,

absent a license agreement, it was free to lease MACSPEC 2001 to a Mack competitor. See TM

Mem. at 2. This argument is without merit for three reasons. First, even in the absence of a

license agreement, under the Copyright Act, Toledo Mack could not have distributed MACSPEC

2001 to PAI without Mack's permission because the owner of a copy of a computer program

cannot distribute that copy for direct or indirect commercial advantage. Toledo Mack's

distribution of MACSPEC 2001 to PAI, without Mack's permission, was therefore copyright

infringement, entitling Mack to immediate relief and impounding of any copy of MACSPEC

2001 in PAI's possession. Second, Mack distributed copies of MACSPEC 2001 under

9

circumstances in which Toledo Mack knew that it was receiving a trade secret that should not be shared with third parties, let alone Mack's competitor. Since Mack reposed confidence in Toledo Mack when it leased a copy of MACSPEC 2001, Toledo Mack was under an obligation to protect the secrecy of the system, even if there had been no license agreement. Third, Toledo Mack and PAI conspired to acquire MACSPEC 2001 by fraud, which constitutes both copyright infringement and misappropriation of trade secrets and confidential business information.

1.     **Toledo Mack Had No Right to Distribute MACSPEC 2001 to PAI.**

Mack alleges, and Toledo Mack and PAI both admit, that Toledo Mack distributed a copy of MACSPEC 2001 to PAI, Mack's competitor. Counterclaims at ¶ 50; TM Mem. at 5; PAI Cross-Claims at ¶ 9. Mack is the owner of the copyright in MACSPEC 2001, which is a computer program. Counterclaims at ¶¶14-15, 47-48. As the owner of the copyright in MACSPEC 2001, Mack has the exclusive right to control distribution of the program. 17 U.S.C. § 106(3).

The only limitation on Mack's exclusive distribution right is contained in 17 U.S.C. § 109. See 17 U.S.C. § 106 (listing the copyright owner's exclusive rights). Assuming arguendo that Toledo Mack actually owned a copy of MACSPEC 2001,[2] it had no right to distribute that copy to PAI under § 109. That section of the Copyright Act expressly provides that an owner of a copy of a computer program cannot distribute its copy to a third party for direct or indirect commercial advantage without the consent of the copyright owner. 17 U.S.C. §

---

[2] Toledo Mack did not, in fact, own a copy of MACSPEC 2001, because Mack only leases copies of MACSPEC 2001. Yuzuik Aff. at ¶ 10; see also Exh. D to Toledo Mack's Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery ("The *lease* fee is currently $275.00 (US) for each [MACSPEC 2001] system ordered" (emphasis added)). Since Toledo Mack never owned a copy of MACSPEC 2001, it had *no* right to distribute its leased copy except according to Mack's instructions. See Microsoft Corp. v. Software Wholesale Club, Inc., 129 F.Supp.2d 995, 1001-1003 (S.D. Tex. 2000) (only actual sale of a copyrighted work can extinguish copyright owner's exclusive distribution right); Microsoft Corp. v. Harmony Computers & Electronics, Inc., 846 F.Supp. 208, 212-13 (E.D.N.Y. 1994) (same).

109(b)(1)(A). Here, Toledo Mack did just that: it distributed a copy of a computer program --

MACSPEC 2001 -- to a third party -- PAI -- without the consent of the copyright owner-- Mack -

- for commercial gain. Counterclaims at ¶¶24-32, 50-51; see also Cross-Claims of PAI at ¶¶ 7-

12 (admitting that Toledo Mack distributed a copy of MACSPEC 2001 to PAI for commercial

gain).

  Toledo Mack attempts to avoid the clear language of the Copyright Act by

arguing that "a license agreement *must* be in place to restrict transfers [of a copyrighted work] by

one lawfully in possession." TM Mem. at 13 (emphasis added).  Toledo Mack's only support for

this remarkable proposition is a series of cases standing for the common sense proposition that

licensing agreements for software will be enforced by the courts.[3]  Id.  Toledo Mack ignores the

plain language of the Copyright Act which provides that the exclusive rights of the copyright

owner, including the right to control distribution, are only limited by 17 U.S.C. §§ 107-120.  17

U.S.C. § 106 ("Subject to section 107 through 120, the owner of copyright under this title has the

exclusive rights to and to authorize any of the following").  The only section which limits Mack's

exclusive distribution right is 17 U.S.C. § 109, which provides, inter alia, that the owner of a

copy of a computer program cannot dispose of that copy for direct or indirect commercial gain

without the copyright owner's consent.  17 U.S.C. § 109(b)(1)(A).  When an owner of a copy of a

computer program engages in such unauthorized distribution, it is liable for copyright

infringement.  17 U.S.C. § 109(b)(4).

  Recognizing its weak position, Toledo Mack suggests it was authorized to

redistribute the software by reaching beyond the pleadings to a lone letter that apparently made a

---

[3] Toledo Mack cites only one case, Softman Products Co., LLC v. Adobe Systems, Inc., 171 F.Supp.2d 1075 (C.D.
Cal. 2001), where there was not a license agreement in place between the parties.  The Court in Softman Products
did not, however, discuss the effect of 17 U.S.C. § 109(b), and it does not appear that the copyright owner invoked
its full statutory protections.

11

passing reference to distributors ordering MACSPEC 2001 for their "customers". TM Mem. at 5, n.2. Relying on this letter, Toledo Mack contends that "customers could order, and have been ordering MACSPEC 2001 for their own use." Id. As an initial matter, this letter cannot be considered on a motion to dismiss because it constitutes factual evidence beyond the pleadings. See Children's Seashore House, 197 F.3d at 662.

Moreover, discovery will reveal that distributors frequently had "customers" who were also authorized Mack representatives. Yuzuik Aff. at ¶ 7. In the letter, the word "customer" was used to indicate those "customers" that are also authorized Mack representatives, and nothing more. Id. It would be absurd, in fact, to construe "customers" in the context of this particular letter about MACSPEC 2001 to include "competitors," thus affecting a wholesale change in Mack policy and procedure that would provide benefits only to Mack's rivals. Id. Indeed, while sounding words that in a world devoid of context may fit together in some bizarre and hypertechnical construction, Toledo Mack offers no explanation of why Mack would suddenly permit competitors to have access to its database of parts. To be sure, and as Toledo Mack surely knew and knows, Mack never has, and never would, consent in any way to a competitor such as PAI possessing a copy of MACSPEC 2001. Yuzuik Aff. at ¶ 14; Counterclaims at ¶50. In fact, PAI admits that Toledo Mack instructed PAI to conceal from Mack the fact that PAI possesses a copy of MACSPEC 2001. PAI Mem. of Law in Opp. to Mot. for Preliminary Injunction at 7. How absurd that Toledo Mack would believe it was authorized to procure the system for PAI and at the same time instruct PAI to conceal its identity! Similarly, the first page of the User's Manual, which was the first document seen upon opening a MACSPEC 2001 package, is addressed to "All Mack Dealers and Subsidiaries," making it

12

equally absurd that either Toledo Mack or PAI could believe that PAI could rightfully possess

the system. See Exh. A to Yuzuik Aff.

Since it lacked Mack's permission to distribute MACSPEC 2001, Toledo Mack's

distribution was in violation of Mack's exclusive distribution rights as the copyright owner. See

17 U.S.C. §§ 106 and 109. Toledo Mack is therefore liable for copyright infringement. See

Educational Test Services v. Katzman, 793 F.2d 533, 538 (3d Cir. 1986) (copyright infringement

"requires plaintiff to show ownership of the copyright and copying by the defendant"); Marobie-

FL, Inc. v. Nat'l Assoc'n of Fire Equipment Distributors and Northwest Nexus, Inc., 983 F.Supp.

1167, 1172, n. 1 (N.D. Ill. 1997) ("copying" is any violation of copyright owner's exclusive

rights in copyrighted material).

     **2.**    **Toledo Mack's Violation of Mack's Confidence Constitutes
Misappropriation of Trade Secrets and Confidential Business
Information.**

As Mack explains in its Counterclaims, MACSPEC 2001 is a closely guarded

trade secret providing Mack and its authorized distributors crucial competitive advantages.

Counterclaims at ¶¶ 11-23, 37-39.[4] Toledo Mack argues, however, that "to properly allege

misappropriation of trade secrets," Mack would have to allege that Toledo Mack's procurement

of MACSPEC 2001 "'constitutes a breach of confidence reposed' in Toledo Mack by Mack,"

and that the allegations must "demonstrate at least some confidential relationship." TM Mem. at

10. Incredibly, Toledo Mack says that Mack's case fails because "Mack alleges only that there is

an express agreement between Mack and Toledo Mack." Id. at 11.

---

[4] Toledo Mack argues that MACSPEC 2001 is not secret because it is advertised on Mack's web page. TM Mem. at 12, n. 4. Toledo Mack neglects to inform the Court, however, that Mack's web page only advertises MACSPEC 2001 as being available to authorized Mack distributors and subject to a license agreement. Yuzuik Aff. at ¶ 13.

But this argument misrepresents the pleadings. Mack *has* alleged that Toledo Mack has violated a relationship of confidence independent of the license agreement. Counterclaims at ¶ 41 ("In breach of *both* that agreement *and the confidence which Mack reposed in it*, Toledo Mack distributed one of its copies of the MACSPEC 2001 system to PAI" (emphasis added)). According to Toledo Mack's own statement of the law, this is enough. See Den-Tal-Ez, 566 A.2d at 1228-29; PTI Converted Paper Products, Inc. v. Stone Container Corp., No. 94-CV-6797, 1995 WL 434577 at *1 (E.D. Pa. July 24, 1995) (supplier-distributor relationship constituted relationship of confidence under Pennsylvania trade secret law). It is well-established that a relationship of confidence does not require any formal written agreement, but rather the "question is simply whether in the circumstances [defendant] knows or should know that the information is [plaintiff's] trade secret and that its disclosure is made in confidence." Comment j to Rest. Torts § 757; see also Yuzuik Aff. at ¶ 11.

While unnecessary as a matter of pleading, the allegations of the counterclaims further describe circumstances demonstrating that Toledo Mack either knew or should have known that MACSPEC 2001 is a Mack trade secret that is only shared in confidence. First, Mack has protected each copy of MACSPEC 2001 with a unique unlock code which integrates itself onto the user's hard drive, such that each copy of MACSPEC 2001 can only be used on that one computer by a user who knows the unlock code. Counterclaims at ¶ 16. Second, Toledo Mack admits that every other computerized parts database system that it has received from Mack was confidential and proprietary. See Toledo Mack's Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery at 3-6. Third, even if the MACSPEC II license agreement does not apply to MACSPEC 2001 -- which it does -- the prohibitions on third party access contained in that agreement put Toledo Mack on notice that MACSPEC 2001, which is

14

only an upgraded version of MACSPEC II, is a trade secret. Counterclaims at ¶¶ 21-22. Fourth,

the MACSPEC 2001 User's Guide is specifically addressed to Mack distributors and no one else.

Yuzuik Aff. at ¶ 7. Fifth, Mack has a long-established relationship of trust and confidence with

the members of its distributor community. Id. at ¶ 11.

### 3.    Toledo Mack and PAI Acquired MACSPEC 2001 by Fraud.

There are at least two identifiable acts of fraud that have put MACPEC 2001 into

the hands of PAI. First, Toledo Mack procured the system from Mack with the specific purpose

of delivering it to Mack's competitor. At the same time, Toledo Mack represented that it was

ordering the system for a "customer." See Toledo Mack Mem. of Law in Opp. to Mots. for

Preliminary Injunction and Expedited Discovery at 9-10. Toledo Mack's self-serving

interpretation of the word "customer" in this context rings of the adulterous husband telling his

wife that he shall dine with a "friend." Stunningly, the alleged purchase order attached to Toledo

Mack's Memorandum of Law in Opposition Mack's Motions for Preliminary Injunction and

Expedited Discovery refers to "PAI", while *the version sent to sent to Mack does not*. See Exh.

E to Toledo Mack Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited

Discovery; Yuzuik Aff. at ¶ 12. This suggests that Toledo Mack felt "safe" in using "PAI" on its

own version of the purchase order, but recognized some need to omit "PAI" from the version it

sent to Mack.

Second, PAI admits that, at Toledo Mack's instruction, it lied to Mack about its

true identity. See PAI Mem. of Law in Opp. to Mot. for Preliminary Injunction at 7. PAI

therefore identified itself as "Nancy's Trucking" in its communications with Mack.

Counterclaims at ¶¶ 24-31, 69-71; see also PAI Answer at ¶ 28. The reason for such deception

is clear: Mack never has consented, and never would consent, to the distribution of MACSPEC

2001 to a competitor and both Toledo Mack and PAI knew Mack's position and that consent

15

would not be forthcoming, hence their tactic to lie to Mack about PAI's true identity.  Yuzuik Aff. at ¶ 14.

There is no question that these specific acts of fraud constitute both misappropriation of trade secrets and confidential business information and copyright infringement.  See College Watercolor Group, Inc. v. Newbauer, 360 A.2d 200, 205 (Pa. 1976) (obtaining trade secrets through fraudulent misrepresentation constitutes misappropriation); Den-Tal-Ez, Inc. v. Siemens Capital Corp., 566 A.2d 1214, 1231 (Pa. Super. 1989) (obtaining confidential business information through fraudulent misrepresentation constitutes misappropriation); cf. Microsoft Corp. v. Grey Computer, 910 F.Supp. 1077, 1084 (D. Md. 1995) ("By the clear terms of [17 U.S.C.] § 106, Microsoft, as the owner of the copyrighted works, has the exclusive right to limit the distribution chain of its products").

**C.    The License Agreement Applies to MACSPEC 2001.**

Toledo Mack claims to no longer be bound to its license agreement because that agreement refers expressly to "MACSPEC II," and not to "MACSPEC 2001."  TM Mem. at 9. But the counterclaims specifically plead that this license agreement applies to MACSPEC 2001. Counterclaims at ¶ 20.  In fact, the allegation is so strongly pleaded that Toledo Mack complains it was a "misrepresentation" to insert the words "MACSPEC 2001" in brackets in the place of the word "software."  TM Response at 6.  But this is exactly Mack's point.  MACSPEC 2001 is the software governed by the license.

The reason that the license governs MACSPEC 2001 is that it is the same software, except the 2001 version operates on Windows 98, whereas MACSPEC II could only operate on Windows 95 or earlier versions of Windows.  Yuzuik Aff. at ¶¶ 8 and 10.  Even the name is the same, except one says "II" and one says "2001" to reflect the update.  In fact, at the

16

time that Toledo Mack ordered its copies of MACSPEC 2001, Mack did not enter into new license agreements for MACSPEC 2001 with *any* existing MACSPEC II licensees because the systems are "virtually identical." Id. at ¶ 10. To the contrary, it was Mack's practice to execute new and identical license agreements for MACSPEC 2001 only with distributors who were not already licensees of MACSPEC II. Id. Given the context of the entire transaction -- the fact that MACSPEC 2001 is simply MACSPEC II running on a different operating system -- it is clear that the license agreement applies to MACSPEC 2001. See O'Neill v. Keegan, 103 A.2d 909, 911 (Pa. 1954) (contract language "must be taken not only in the context of all the language in the document but it must be considered as well in the whole history of the transaction"); Eighth North-Val, Inc. v. Parkinson, 773 A.2d 1248, 1255 (Pa. Super. Ct. 2001) ("the disputed language must be taken not only in the context of all the language in the document but it must be considered as well against the background of the whole history of the transaction").

　　　　Mack's practice of not requiring a new license agreement was consistent with the understanding of the parties, who knew that MACSPEC 2001 contained confidential information that should not be given to competitors. Yuzuik Aff. at ¶ 11. Mack's practice was also consistent with the well-established principle that copyright protection remains in place as a computer program evolves. See Montgomery v. Noga, 168 F.3d 1282, 1292 (11th Cir. 1999) (copyright owner can sue for infringement of copyright in earlier version of software where defendant stole derivative software); see also United States v. Washington Mint, LLC, 115 F.Supp.2d 1089, 1099 (D. Minn. 2000) ("courts . . . uniformly appear to agree that copying a derivative work may give rise to liability based upon copyright ownership in the original work from which it is derived").

17

Mack's argument that it somehow canceled its license in February 2001 is without merit. TM Mem. at 4, 9. First, the February 2001 letter on which Toledo Mack relies is outside of the pleadings, and thus cannot be considered in deciding a motion to dismiss. See Children's Seashore House, 197 F.3d at 662. Second, the February 2001 letter, as it states, merely canceled a MACSPEC II "system," indicating that Toledo Mack owed no more license fees for that particular returned copy of MACSPEC II. See Exh. C to Toledo Mack's Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery ("This letter is to confirm the cancellation and return of your MACSPEC II *system*" (emphasis added)); Yuzuik Aff. at ¶ 9. The letter did not purport to cancel Toledo Mack's license agreement, and it did not even mention the license agreement. Yuzuik Aff. at ¶ 9. In fact, Toledo Mack only returned its copy of MACSPEC II as part of the upgrade to MACSPEC 2001, in which distributors returned their MACSPEC II systems. Id. In November 2000 – shortly before Toledo Mack returned its copy of MACSPEC II -- Mack informed the National Distributor Parts Advisory Council, which is comprised of representatives from Mack's distributor community, that it was planning to issue an upgraded version of MACSPEC II in January 2001. Yuzuik Aff. at at ¶ 9; see Exh. C to Yuzuik Aff. While the actual launch of MACSPEC 2001 was delayed until summer, Toledo Mack was aware of the coming upgrade when it returned its system and accordingly expected that upgrade would take place soon after the return of its MACSPEC II discs.

**D.    Mack Has Stated a Claim for Civil Conspiracy.**

Toledo Mack argues that Mack has not stated a claim for civil conspiracy because Mack has failed to allege claims for copyright infringement and misappropriation of trade secrets and thus Toledo Mack and PAI did not conspire for an unlawful purpose. TM Mem. at 15-16. As explained above, however, Mack has stated meritorious claims for copyright infringement

18

and misappropriation of trade secrets. Toledo Mack therefore has no valid argument that Mack's claim for civil conspiracy should be dismissed. See <u>Neyer, Tiseo & Hindo, Ltd. v. Russell</u>, No. Civ. 92-2983, 1993 WL 53579 at *6 (E.D. Pa. Mar. 3, 1993) (denying motion to dismiss civil conspiracy claim where claim was stated for underlying wrong).

**E.    PAI's Motion to Dismiss Count V of the Counterclaims Is Without Merit.**

PAI argues that Mack has failed to state a claim for fraudulent and intentional misrepresentation because the counterclaims against PAI allege only one act of fraud that constitutes after-the-fact "concealment." That, it claims without citation, is not actionable as a separate tort. PAI Mem. at 3. Moreover, says PAI, there are no damages associated with the alleged "concealment." <u>Id.</u>

Curiously, PAI admits the underlying conduct of tricking Mack into believing that it was "Nancy's Trucking," and not Mack's competitor. PAI Answer at ¶ 28; PAI Mem. of Law in Opp. to Mot. for Preliminary Injunction at 7. How PAI chooses to categorize this fraud as one of "concealment" is unexplained in its short brief. As a result of this fraudulent representation, Mack sent PAI a replacement disc that allowed PAI to keep MACSPEC 2001 running. Counterclaims at ¶¶ 69-73. Each time that PAI boots up MACSPEC 2001, it is using and benefiting from its underlying trickery occasioned upon Mack, the result of which is that PAI now has a complete, functioning copy of MACSPEC 2001. <u>Id.</u>

While this is enough, it is likely that discovery will reveal additional specific acts of fraud by PAI. In particular, Toledo Mack represented to Mack that it was ordering MACSPEC 2001 for a "customer" when it was really for PAI, a competitor. See Toledo Mack Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery at 9-10. It is a reasonable inference that Toledo Mack had already procured from PAI by that time a firm

19

commitment to pay for the software, and thus engaged in either written or oral communications to do so. Whether and to what extent PAI was party to Toledo Mack's fraud at that early time, at the time that Toledo Mack instructed PAI to falsely represent itself, or at any other time since acquiring the software early 2002 will be a matter borne out though the formal exchange of factual information by the parties.

IV.    **CONCLUSION**

For the reasons stated above, Counterclaim Defendants Toledo Mack and PAI's Motions to Dismiss should be denied.

Respectfully submitted,

Jon A. Baughman (14043)
Jeremy Heep (75607)
Barak A. Bassman (85626)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799
215.981.4000

Attorneys for Defendant Mack Trucks, Inc.
Dated:  October 8, 2002

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:02-CV-04373-RLB |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOLEDO MACK SALES & SERVICE, INC., and | : | JURY TRIAL DEMANDED |
| | : | |
| PAI INDUSTRIES, INC., 950 Northbrook Parkway, Suwanee, GA, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF ROBERT YUZUIK

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : |
| | ss. |
| COUNTY OF LEHIGH | : |

I, Robert Yuzuik, being over 18 years of age, being of sound mind and capable of making this affidavit, and being personally acquainted with the facts described herein, which are true and correct to the best of my knowledge and belief, state the following:

1.     I have been employed by Mack Trucks, Inc. ("Mack") since 1971. My current title is Manager of Publications, with responsibility for supervising the publication and distribution Mack's electronic, paper and microfiche parts publications.

2.     As part of my job responsibilities I supervised the development and launch of MACSPEC II in 1996, an electronic parts database system consisting of a comprehensive database of the parts contained in almost every Mack truck manufactured since 1966 and a software program to search the database. MACSPEC II was designed to run on computers using the Windows 95 operating system or earlier versions of Windows.

3.     MACSPEC II was based on MACSPEC, a DOS-based computer system consisting of a comprehensive electronic parts database, software to search that database, and hardware to run the system. MACSPEC was developed in 1988. By 1996, MACSPEC, as a DOS-based system, had become outdated.

4.     MACSPEC and MACSPEC II represented a significant advance in service technology in the truck parts industry. From the late 1960's until 2001, Mack maintained two separate parts database in microfiche form, the Vehicle Record Index database and the MACK RO Cards database. These databases consisted of thousands of individual fiche. To search the thousands of fiche in the two databases was highly time consuming and at times inaccurate, since the databases' user could easily overlook relevant details in such an unwieldy collections. The microfiche databases were as difficult to search, in some ways, as thousands of paper catalogs. Stacked side by side, all the fiche in the microfiche databases would have extended between 60-100 feet in length. Each page was marked with a copyright notice and Mack only distributed copies to authorized Mack representatives which provided a valid dealer identification.

2

5.      Unlike the visually perceptible media (paper and fiche), MACSPEC and MACSPEC II permit a user to execute rapid and accurate electronic searches of Mack's comprehensive electronic parts database, which combines the databases which were previously distributed in microfiche form. Mack took steps to prevent MACSPEC and MACSPEC II from falling into the hands of its competitors, including requiring licensees to agree not to permit any third party to access the system or receive a copy of it. And, only an authorized Mack distributor could sign a license agreement for a complete system.

6.      One of the licensees of MACSPEC II was Toledo Mack Sales & Service, Inc. ("Toledo Mack"), an authorized Mack distributor. A true and correct copy of the license agreement between Mack and Toledo Mack is attached as Exhibit A to Mack's Answer and Counterclaims in the above-captioned action.

7.      The license agreements between Mack and its distributors provide that "authorized Mack representatives" may access MACSPEC II. "Authorized Mack representatives" comprise subdealers and service dealers that are specifically authorized by Mack to sell and service Mack products. These "authorized representatives" are often customers of distributors. Accordingly, Mack's letter to distributors, dated January 29, 2002 and attached as Toledo Mack's Exh. D to its Memorandum of Law in Opposition to Mack's Motions for Preliminary Injunction and Expedited Discovery, stating that MACSPEC 2001 was available to "customers," referred only to customers who were authorized representatives. MACSPEC II and MACSPEC 2001 were never intended to be available to anyone else, and especially not to Mack's competitors. Mack distributors know this. By way of example, the first page of the User's Manual for MACSPEC 2001 is addressed to "All Mack Dealers and Subsidiaries." A true and correct copy of the first page of the User's Manual is attached hereto as Exhibit A.

3

8.    In 2001, Mack upgraded MACSPEC II to operate on versions of the

Windows operating system issued after Windows 95.  The upgraded system, which is called

MACSPEC 2001, is the same system as MACSPEC II except it is compatible with later versions

of Windows.

9.    As part of the upgrade process, Mack asked its licensees of MACSPEC II

to return their copies of that system. Mack informed the National Parts Distributor Advisory

Council, which is comprised of representatives of the Mack distributor community, in November

2000 that it was upgrading MACSPEC II.  A true and correct copy of the agenda and meeting

minutes of the November 14-15, 2000 meeting of the National Parts Distributor Advisory

Council is attached hereto as Exhibit B.  Mack explained to its distributors that they would need

to return their copies of MACSPEC II to receive MACSPEC 2001 and avoid further licensing

fees.  Mack's letter to Toledo Mack dated February 2, 2001 merely acknowledges Toledo Mack's

compliance with the system upgrade and did not cancel Toledo Mack's license agreement.  The

February 2, 2001 letter acknowledged that Toledo Mack had returned a MACSPEC II system,

that is, a complete set of discs comprising one copy of MACSPEC II, and that Toledo Mack

would not be charged for that copy in the future.

10.    Until Summer 2002, Mack's practice was not to enter into new license

agreements with MACSPEC II licensees during the upgrade, because MACSPEC II and

MACSPEC 2001 are virtually identical.  During this time, Mack  executed new and identical

license agreements for MACSPEC 2001 only with distributors who were not already licensees of

MACSPEC II.  No distributor, until this litigation, has ever claimed that it was not bound by the

MACSPEC II license agreement when it used MACSPEC 2001.  Mack never sold a copy of

MACSPEC 2001, because it is Mack's policy only to lease MACSPEC 2001.  Mack is the only

4

owner of copies of MACSPEC 2001. In fact, the first screen a user sees when installing MACSPEC 2001 states that the program is protected by copyright law and warns that unauthorized distribution or copying of the program is illegal. A true and correct copy of page 9 of the MACSPEC 2001 User's Manual, showing the relevant screen, is attached hereto as Exhibit C.

11.    Mack was also confident that its distributors would not share MACSPEC 2001 with competitors because Mack has a long-standing relationship of trust and confidence with its distributor community. Mack has shared confidential information with its distributors for decades, and it has always understood that distributors, who work closely with Mack to sell and market Mack products, would not violate that trust and confidence. It is well-known in the Mack distributor community that MACSPEC 2001 is a Mack trade secret.

12.    I have reviewed the alleged purchase order attached as Exhibit E to Toledo Mack's Memorandum of Law in Opposition to Mack's Motions for Preliminary Injunction and Expedited Discovery. I never received this purchase order. True and correct copies of the two actual Toledo Mack purchase orders for MACSPEC 2001 are attached hereto as Exhibit D. The purchase orders which Toledo Mack sent, unlike the alleged purchase order attached to its court papers, make no reference whatsoever to PAI Industries, Inc. I never have, and never would, approve a lease of a copy of MACSPEC 2001 for PAI.

13.    Mack has a special section of its web site for explaining to authorized distributors how to order its parts publications, including MACSPEC 2001. A true and correct copy of that part of the Mack web site, www.macktrucks.com/partserv/Parts/partfrm.htm, is attached hereto as Exhibit E. Mack has rebuffed all efforts of members of the general who have attempted to order MACSPEC 2001.

5

14.    Mack has never consented -- and never would consent -- in any way to the distribution of MACSPEC, MACSPEC II or MACSPEC 2001 or any other confidential and proprietary parts database to any competitor of Mack, including PAI Industries, Inc.

I certify that the foregoing statements by me are true and correct to the best of my knowledge, information and belief. I understand that if any of the foregoing statements made by me are willfully false, I am subject to the penalties provided for under 18 Pa.C.S. § 4904 relating to unsworn falsifications to authorities.

Robert Yuzuik
2100 Mack Boulevard
Allentown, PA 18103

Dated:  October 8, 2002

6

RECYCLED

**Exhibit A**



# ATTENTION: PARTS MANAGER

## January 2002

TO ALL MACK DEALERS AND SUBSIDIARIES:

Welcome to the updated edition of the MACSPEC® 2001 User's Guide. MACSPEC® 2001 is a Microsoft® Windows 32-bit application that replaced your MACSPEC® II system. Like MACSPEC® II, this system can only be loaded on one PC and networking will not work on this system. We have created this system for you in an effort to stay on the leading edge of technology. Our thanks go out to all the Mack Dealers that have provided us with their feedback and suggestions on this system. Many Dealers stated the most powerful tool available for aiding them in servicing their customers at the counter is the Wildcard Search (see page 96). They felt it allows them to find approximately 32% more chassis information than they could previously find and this feature was an excellent enhancement in assisting them to service their customers. We have included and updated many more examples in this User's Guide based upon your input to help you get the most out of this system. If you find any missing chassis or corrections to any arrangement or assembly, please fill out the MACSPEC® 2001 CD Correction Sheet and send it in. Your input is important to us. For new users, it is important that you read the installation instructions carefully and follow the steps listed.

We look forward to continuing to improve this product for you to help you better service your customers and have added information on the new FREED*M model. May you have a great and prosperous year!

Sincerely,

*Bob Yuzuik*

Bob Yuzuik, Manager
Publications and Product Information

cc:  Distributor Principal

RECYCLED

Exhibit B

# ALLENTOWN MACK
## SALES & SERVICE, INC.

1407 Bulldog Drive
Allentown, PA 18104

January 3, 2001

Phone (610) 395-6801
(800) 882-9640
Fax (610) 398-3982

**TO:   ALL DISTRIBUTOR PARTS MANAGERS**

On November 14 & 15, 2000, the National Distributor Parts Advisory Council conducted a meeting in Allentown, PA.  Attached please review the minutes of the meeting and the issues and topics that were discussed.

I am pleased to report that many new programs are being implemented, and future programs are in progress to make the Mack Trucks Parts Operation one of the best in our industry.

Your Distributor representatives on the Parts Council are as follows:

**Doug Hunter** - Wise Mack, Inc., Omaha, Nebraska
**Ken Ables** - Cleveland Mack Sales, Inc., Cleveland, Texas
**Earl Triplett** - Tri-State Mack, Inc., Memphis, Tennessee
**Frank Kemski** - 401 Mack Ltd., Windsor, Ontario, Canada
**Ray Page** - Central Indiana Mack Sales & Service, Inc., Indianapolis, Indiana
**Guy Remenap** - Arizona Truck Center, Inc., Phoenix, Arizona
**Bob Nuss** - Mack Trucks of Rochester, Inc., Rochester, Minnesota
**Bob Dwyer** - Allentown Mack Sales and Service, Inc., Allentown, Pennsylvania

Please feel free to contact any of these representatives to discuss any issues or concerns you may have.

Sincerely,

ALLENTOWN MACK SALES & SVC., INC.

Robert J. Dwyer
Distributor Council Rep.

RJD/pr

cc:    B. Gibbon
       T. Ethier
       S. Torrence



Authorized Mack Distributor

Mack Trucks, Inc.
Parts Sub-Committee Meeting
November 14-15, 2000

**Notes**
Mack Trucks, Inc. and Distributor Parts Sub-Committee Meeting
November 14th and 15th, 2000
Allentown, PA

**Item # 1 & 10**
    **Cores and Credits (using MackNet Parts)**
    Mack and their supplier Neovation demonstrated the new cores and credit
    program. The Beta testing will be at 5 dealers in December. Mack will release this
    update in January 2001.
- Distributor Questions
a) Will this new program interface to the dealers in house management system
    such as ADP, Karmak, DSI?
    *At this point in time it will not.*
b) Will it interface with REMACK?
    *The first release will not, however, with the core system
    enhancements currently under development the link may be there
    when we release the new core bank program.*
c) Warranty cores are misleading to the dealers, it gives a false core unit on the
    bank report. When can this be fixed?
    *We will investigate this issue and respond back to you when and how a
    fix can be made if possible.*
d) Who will conduct the training for this new feature?
    *The Mack Institute, DPSM will be trained too*
e) Vendor core returns will they interface?
    *Not at present however the infrastructure is being built into the system
    to add vendor cores sometime in the future*

**Item # 2**
**Parts Locator system**
    Mack presented an outline to the program. It was agreed to rename the program
    Mack PartsLink. The name has been submitted for approval and registration by
    Mack Trucks legal department. The group at the meeting agreed upon the
    following points:
a) Multi Service Corporation the supplier and Mack PartsLink require a dealer
    application and credit approval to be established.
b) Distributor credit limit set at $10,000.
c) The recommendation is that distributors load inventory onto the program
    using the formula "parts with no sales in a month".
d) The distributor to distributor transfer price was agreed to be set at distributor
    net + 10 %
e) Dealer reimbursement will be the same as MackCharge today - weekly.

Page 1

Mack Trucks, Inc.
Parts Sub-Committee Meeting
November 14-15, 2000

    f) ADP and Karmak testing is completed. Karmak's instruction booklet was given to Group. DSI and other dealer management systems are not developed as of yet.

    g) Some minor warranty reimbursement issues were unresolved. We will review with the warranty department.

    h) A full announcement letter is being prepared. Launch is in the 1st quarter of 2001.

    i) This enhancement is part of our no charge add on feature to the dealer MackNet (direct connect) product offering.

**Item # 2 (b)**
**Mack Truck Parts Clearing House:**
The distributors requested an update on the Mack personnel contact list.
*Mack will prepare a who to contact list by department.*

**Item # 2 (d)**
**Fleet Parts Sales**
This issue is being discussed at the NDAC level.

**Item # 2 (e)**
**Generic Parts Strategy**
Mack presented the name and logo for the generic parts program. There was discussion on how to successfully sell and market this product. The launch is delayed, as more discussions are needed in the New Year about the product line.

**Item # 2 (f)**
**Parts Delivery Problems**
Distributor complaints received regarding stock shipments from the PDC taking up to 4-5 days. Order splitting by Atlanta PDC, PRS delays and rejections taking up to 90 days to receive full credit.
*Mack believes that all areas noted above is now corrected All or most of the problem was inbound freight and backlog. Mack advised the council of further improvements in the fill rate. They presented charts show steady improvement and in fact they have reached a 97.3% network fill rate. This fill rate of 97.3% is a market leading level when bench marked against our competitors in a recent study. Please see the dealer parts survey letter for further details and remedies to these issues.*

**Item # 3**
**MackCharge download**
Dealers asked if they can automate the MackCharge program by allowing an electronic download of the dealers management system generated invoice directly to Multi Service Corporation.
*Mack is in the process of developing an automatic download interface with ADP and Karmak and Mack IS department. Dealers will download to Mack*

Mack Trucks, Inc.
Parts Sub-Committee Meeting
November 14-15, 2000

*and Mack will forward to Multi Service Corporation. We expect the
completion of this project by 1st quarter 2001.*

## Item # 4
### Mack Direct – Order Entry

Mack advised the distributors that the PDC order entry desk would be
discontinued January 1, 2001. Dealers must submit the orders electronically.
*An explanatory letter is being sent out to the dealers detailing the issues
and remedies.*

## Item # 5
### Partners for Growth

Both parties agreed that the incentive program requires improving.
*Mack will respond to this issue as soon as possible.*

## Item # 6
### Centralized Core Return Center

The dealers made Mack aware business would increase due to the ease of doing
business, purchasing and returning cores.
*Mack is investigating this item in 2001.*

## Item # 7
### Ad Planner

Mack presented a sample of the dealer advertising planner book. We thanked
those dealers who contributed to the publication. The planner is being printed
and the CD-ROM is being prepared. We anticipate distributing the planner
before the year-end. The portion that is finalized is USA English version, Canada
English and French. The planner includes both parts and service advertisements.
We anticipate completing the Spanish version in early 2001.

## Item # 8
### Service Dealer Override

The council requested that Mack update them on the current program. The dealers
need to be refreshed on the existing program. What % rebate does which vendors
provide?
The council suggested that Mack investigate changing the current program to a
flat rate rebate system.
*Mack will review and respond by the end of the first quarter 2001.*
The pricing issue to large fleet accounts like Waste Management is still an
unresolved item.
*The service dealer pricing issue is to be removed from the agenda for
future meetings.*
Mack believes the service dealer needs product and promotional information to be
sent to them on a regular basis. We suggested that the marketing material Mack
sends to distributors today should be sent to service dealers as well.

Mack Trucks, Inc.
Parts Sub-Committee Meeting
November 14-15, 2000

*Mack will commence sending parts marketing material to the service dealers in early 2001, since the council believed this would be beneficial to both parties.*

## Item # 11, 12 & 2c
### Pricing Issue 500 Part Numbers

The management at Mack trucks apologized for dealerships having to keypunch part numbers and not having a tape to load. We are investigating with the dealer DMS companies ways in which to automate the updating of prices.
The dealer council understood the reasons for Mack's decision to reverse the pricing on these numbers.
Dealer's suggested more investment in advertising this type of program would have improved the potential for a higher success rate.
Mack presented the dealer survey results on the 500 part number pricing.

## Item # 13
### V.O.R. (Truck Down)

A presentation of the new V.O.R. Truck Down process was made to the dealer council. A letter announcing the new process and explaining the procedures for both the dealer and Mack is to be released by the end of November.

## Item # 14
### Distributor – New item

Distributors believe Mack and the dealer would benefit by producing a comprehensive product line catalogue — similar to the old Mack Fax or All-Makes book. It was suggested that Mack produce a catalog reference book. It should be similar to some of our competition but add all the product lines we offer. The council believed that it would install confidence at the counter level, improve relationship and trust with customers and increase overall sales potential. The dealers also suggested that they may be willing to pay on a per issue basis as it would be a very useful sales tool.
*There is a large amount of funding needed for this type of project. The time element is 9 to 12 months from start to finish. We will investigate the cost, resources required and the timeline to produce such a catalog.*

Page 4

## AGENDA ITEMS NDAC PARTS SUB- COMMITTEE
### November 14, 15, 2000

1. CORES AND CREDITS (USING MACK NET)    MACK
    1A. MACK SPEC 2000    ( NEOVATIONS )

2. PARTS PROBLEMS
    2A. PARTS LOCATOR    MACK ( TEAM )
    2B. MACK PARTS HELP CLEARING HOUSE    DEALERS
    2C. VENDOR PARTS PRICING    DEALERS
    2D. FLEET PARTS SALES    DEALERS
    2E. GENERIC PARTS    DEALERS
    2F. PARTS DELIVERY PROBLEMS    DEALERS

3. MACK CHARGE    MACK

4. MACK DIRECT PROBLEMS    DEALERS

5. PARTNERS FOR GROWTH    MACK

6. CENTRALIZED CORE RETURN    DEALERS

7. AD PLANNER ( SALES TOOL )    MACK

8. SERVICE DEALER ISSUES    MACK

10. MACK BILLING AND CREDITS    MACK

11. DEALER PARTS SURVEY    MACK

12. PRICE CHANGES    MACK

13. VOR ( TRUCK DOWN )    MACK

RECYCLED

Exhibit C

MACSPEC® 2001 User's Guide  January 2002

# Instructions for Installing MACSPEC® 2001

1. Start Windows and make sure that you close all open applications.

2. Insert the Arrangement and VIN Locator CD in your CD drive.

3. In Windows 95/98/2000/ME/NT, select Run after selecting Start button.

4. In the Command Line box, type the letter of the drive that contains the CD-ROM followed by a colon and \ms2k-setup. (EXAMPLE:  d:\ms2k-setup)



Figure 1.1

5. At the first dialog box, click on the **Next** button to start the installation or the **Cancel** button to quit.

Page 9

Exhibit D

** TOTAL PAGE.0. **

☑001



# MACSPEC® 2001 Order Form

*Please fill out this form and return it to:*

Mack Trucks, Inc.
ATTN: Bob Yuzuik
2100 Mack Boulevard, 3W3
Allentown, PA 18103
FAX (610) 709-2770 - PHONE (610) 709-3626

*CRAIG*
*NEW ORDER*

*NEED SHIP TO COX*

*08*
*2/12*

☒ Yes, I would like to lease __1__ MACSPEC® 2001 Systems at an additional charge
of $275.00 (US) per month for each system.

BILL TO CODE: *D-567·1*        SHIP TO CODE: *D567·*

Requisition *PR 01603*
Number _____        Quantity __1__        Date _____

BILL TO CODE: _____        SHIP TO CODE: _____

Requisition
Number _____        Quantity _____        Date _____

Authorized By *Jim Fate*
Title *Parts*

*CRAIG*
*STATUS ? B.G 3/15*

Sincerely,

*Bob Yuzuik*

Bob Yuzuik
Manager, Publication and
Production Information

cc:  R.Armstrong, R.Bartalucci, D.Castro, D.Covey, R.Davis, D.Dickens, Distributor Principles, DPM, S.Erney,
T.Euler, P.Fonseca, B.Gibbon, E.Godin, A.Hartung, M.Kabana, R.Kint, K.Kubishefski, J.Laskowski, J.Lutz, C.Plessl,
R.Pugh, P.Stanton, D.Sholl, D.Silvert, E.Turner, M.Welch, R.Wiley, D.Wurzelbacher

01/29/2002



# MACSPEC® 2001 Order Form

*Please fill out this form and return it to:*

**Mack Trucks, Inc.**
**ATTN: Bob Yuzuik**
**2100 Mack Boulevard, 3WS**
**Allentown, PA 18103**
**FAX (610) 709-2770 – PHONE (610) 709-3626**

☒ Yes, I would like to lease __1__ MACSPEC® 2001 Systems at an additional charge of $275.00 (US) per month for each system.

BILL TO CODE: **D-567**
Toledo MACK Sales & Service Inc.
2124 Front Street
Toledo, OH 43605

SHIP TO CODE: **D-567**
Toledo MACK Sales & Service Inc.
2124 Front Street
Toledo, OH 43605

Requisition Number **DIR305023**    Quantity **1**    Date **2/7/02**

BILL TO CODE:_____    SHIP TO CODE:_____

Requisition Number_____    Quantity_____    Date_____

Authorized By *Jim Bott*
Title *Parts*

Sincerely,

*Bob Yuzuik*

**Bob Yuzuik**
**Manager, Publication and**
**Production Information**

cc: B.Armstrong, R.Bartolucci, D.Castro, D.Cavey, R.Davis, D.Dickson, Distributor Principles, DPM, E.Erney, T.Ethier, P.Feaman, B.Gibbon, E.Godin, A.Hartzog, M.Kahane, R.Kint, K.Kubovchsiki, J.Laskowski, J.Lutz, C.Plassl, R.Pugh, P.Stanton, D.Sholl, D.Sivart, S.Turner, M.Walsh, R.Wiley, D.Worstibacher

01/29/2002

RECYCLED

Exhibit E



# Guide to Ordering Parts Publications

### AUTHORIZED MACK DEALERS GUIDE
### TO ORDERING PARTS PUBLICATIONS

### ORDERING INSTRUCTIONS AND FORM NUMBER

*NOTE:* When requisition form BR313 is noted below as the required order form for a Parts Publication or Specifications product, please mail or fax your request to the corresponding address or fax number as indicated on the required product.

DO NOT SEND REQUESTS FOR THESE PRODUCTS TO PACESETTER.

### Parts Publications Products

### MACSPEC® 2001 SYSTEMS (SOFTWARE ONLY)



The MACSPEC 2001 system is an electronic service parts catalog system on CD-ROM discs. This is a complete system that contains chassis records, service parts lists, parts suspension and major unit serial number data. The system provides for a multitude of methods and means to search for service parts information in a fast and efficient manner.

Contact the Parts Publications Department for a copy of the order form and license agreement.
**Send to:** MACK TRUCKS, INC., PARTS PUBLICATIONS DEPARTMENT (3W3), BOX M, ALLENTOWN, PA 18105-5000
**Fax to:** 1 - 800 - 945-0737 or 1 - 610 - 709-3088

### CUSTOMIZED PARTS BOOKS (PAPER) (CLASS 8)



(Available For Units Built from 1976 to Present)
Customized Parts Books (paper) are produced upon request and provide service parts information for a single vehicle or multiple vehicles built under a single General Sales Order. The Book is comprised of a chassis record and illustrated service parts lists that reflect the parts used to build that vehicle. The book is hard covered, chicago screw bound and contains index tabs.
**Form No.** ST25 Revised (2/95)
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL ROAD, YORK, PA 17402-9602

### ELECTRONIC PARTS BOOKS SYSTEMS CD-R

(CLASS 8 VEHICLES) (Available For Units Build From 1985 to Present)
Electronic Parts Book Systems provide a user with customized parts book data on more efficient CD-ROM discs.
**Form No.** ST25E 9/96
**Send To:** GGS INFORMATION SERVICES, ATTENTION: MACK

PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602



### MACK ENGINE PARTS BOOKLETS (PAPER)
(For Mack manufactured engines only - must order by "11GB" part
number)
Mack Engine paper Parts Books provide the user with engine service
parts data and service kits for a specific Mack "11GB" Engine Assembly.
**Form No.** Use BR313 or ST25
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602

### ENGINE PARTS BOOK SYSTEMS (CD-R)
(For Mack manufactured engines only - must order by "11GB" part
number)
Mack Engine Parts Books on a CD-R provide the user with same service
parts and service kits data for a specific Mack "11GB" Engine Assembly
as the paper engine book, except on a more efficient CD-R that loads into
your P.C. hard drive.
**Form No.** Use BR313 or ST25E
**Send to**: GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602



### COLLISION BOOKS (CH600, CL, CV500, CX, DM, LE600, MC/MR, MH, R600, RB600, RD600, RL/RS, RW and U600)
Collision books are soft covered and spiral bound and provide the user
with the necessary part numbers to price estimate the cost to repair
vehicles that have sustained damage.

These books also include quick reference and optional parts information
for that model vehicle.
**Form No.** BR313 Revised (3/99)
Send to: GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602

### CUSTOMIZED PARTS BOOK BLUE COVERS (CLASS 8)
Parts book covers are available in blue vinyl only. Specify width of spine
required, 2-1/2" or 3" or 4", when ordering.

**Form No.** BR313 Revised (3/99)
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602



### PARTS BOOKS YELLOW INDEX TABS (CLASS 8)
**Form No.** BR313 Revised (3/99)
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602

---

### SLEEPER BOX BOOKLETS (ABLE BODY, MILLENNIUM and VISION)
**Form No.** BR313 Revised (3/99)
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602



Back

*Copyright © 1996 - 2002 Mack Trucks, Inc. All rights reserved.*

## CERTIFICATE OF SERVICE

I, Jeremy Heep, hereby certify that I have served a copy of Counterclaim Plaintiff

Mack Trucks, Inc.'s Memorandum of Law in Opposition to Counterclaim Defendants' Motions

to Dismiss, proposed Order, and accompanying Affidavit upon the following counsel by hand

delivery:

Wayne A. Mack, Esq.
Mark B. Schoeller, Esq.
J. Manly Parks, Esq.
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396

And upon the following party by Federal Express:

Stephen M. Dorvee, Esq.
Scott E. Taylor, Esq.
Ashley M. Steiner, Esq.
Arnall Golden Gregory LLP
2800 One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309

Joseph Schumacher, Esq.
Kimberly S. Toomey, Esq.
Wiggin & Dana LLP
Quaker Park
1001 Hector Street
Conshohocken, PA 19428

Dated:  October 8, 2002

Jeremy Heep