## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 2:02-CV-04373-RLB |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| MACK TRUCKS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOLEDO MACK SALES & SERVICE, INC., and | : | **JURY TRIAL DEMANDED** |
| | : | |
| PAI INDUSTRIES, INC. 950 Northbrook Parkway, Suwanee, GA, | : | |
| | : | |
| Defendants. | : | |

## FIRST AMENDED COUNTERCLAIMS OF DEFENDANT MACK TRUCKS, INC.

Defendant, Mack Trucks, Inc. ("Mack"), by and through its undersigned counsel, hereby submits the First Amended Counterclaims against Plaintiff Toledo Mack Sales & Service, Inc. ("Toledo Mack").

### Parties

1.      Mack is a Pennsylvania corporation with its principal place of business at 2100 Mack Boulevard, Allentown, Pennsylvania.

2.      According to its Complaint, Toledo Mack is an Ohio corporation with its principal place of business at 2124 Front Street, Toledo, Ohio.

### Jurisdiction and Venue

3.      This Court has jurisdiction over Mack's counterclaim for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over Mack's

state law counterclaims pursuant to 28 U.S.C. § 1332 by virtue of the complete diversity of the

parties and the fact that each state law counterclaim concerns an amount in controversy in excess

of $75,000.00, exclusive of interests and costs.  In the alternative, this Court has jurisdiction over

Mack's state law counterclaims pursuant to 28 U.S.C. § 1367(a) because the state law

counterclaims arise out of the same transaction and occurrence as Mack's counterclaims for

copyright infringement.

        4.      Jurisdiction over Mack's counterclaims is further supported by Rule 13(b)

of the Federal Rules of Civil Procedure, relating to permissive counterclaims.

        5.      Venue is proper in the United States District Court for the Eastern District

of Pennsylvania pursuant to 28 U.S.C. § 1391(a)(2), (b)(2), because the trade secrets,

confidential business information and copyrights which are the subject of Mack's counterclaims

are located at, and were stolen from, Mack's principal place of business in Allentown,

Pennsylvania.

### Factual Background

        6.      Mack is a leading manufacturer of truck chassis and truck parts in the

United States, including after-market truck replacement parts.

        7.      Mack sells its after-market truck parts primarily through its network of

authorized distributors, including Toledo Mack.

        8.      Mack maintains a relationship of trust and confidence with its distributors,

including Toledo Mack.  Mack and the distributor community work together to promote Mack

products and Mack regularly entrusts its distributors with confidential and proprietary materials

which the distributors know is not available to the general public.

        9.      The after-market is highly competitive and is comprised of name-brand

manufacturers, like Mack, and copy cat manufacturers of generic parts, like PAI.  The copy cat

manufacturers can often undercut the price of the name-brand manufacturers, but only if they competently gather technical information about the parts and their applications. With "perfect" information, they could successfully take market share from the name-brand manufacturers because they could efficiently determine quantity and timing of large manufacturing runs and could provide superior customer service.

10.    In order to improve its competitive position, Mack, through its contractor GGS Information Services, Inc. ("GGS"), developed a computerized parts databases for its dealers.

11.    The databases included the MACSPEC 2001 system, which is comprised of 28 CD ROM discs containing vehicle-specific parts configuration data for nearly every truck chassis manufactured by Mack since approximately 1966.  The MACSPEC 2001 system contains special software source codes to permit a user to easily search the parts database vehicle identification number ("VIN Number"), part number, partial part number, arrangement number, partial arrangement number or major unit serial number

12.    This quick-search capability gives Mack and its distributors a significant edge in selling after-market truck parts because the distributors can search quickly and accurately for the parts necessary to meet a particular customer's needs.  Without MACSPEC 2001, Mack distributors would have to engage in detailed and time consuming investigations of which part is appropriate for which truck.

13.    The compilation of the data and the software codes is and always has been kept secret precisely because it gives Mack and its distributors a significant competitive edge. Mack's  secrecy is necessary because companies like PAI could use this information to steal Mack's customers and market share without doing original market, products or design research.

Competitors could also use this information to give customers the false but comforting illusion that the competitors have the capability of legally and quickly identifying what parts go into what Mack models.

14.    Mack is the owner of the copyrights for the MACSPEC 2001 system's parts database and source code. Mack currently has an application pending to register its copyrights for the MACSPEC 2001 system with the United States Copyright Office. A copy of that application is attached hereto as Exhibit "A."

15.    In order to protect the secrecy of the MACSPEC 2001 system, Mack has developed a system of "unlock codes." A third party other than Mack (or its contractor) cannot access the MACSPEC 2001 system without an unlock code. Each "unlock code" is specific to each copy of the MACSPEC 2001 system. Moreover, each "unlock code" integrates itself onto the computer hard drive on which it is first used, such that it can never be used on any other computer.

16.    Mack has only authorized GGS, Mack's contractor which administers the MACSPEC 2001 system, to distribute unlock codes to dealers approved by Mack. As part of procedures to protect the confidentiality of MACSPEC 2001, only two employees of GGS are authorized to distribute unlock codes. Similarly, at the end of each week, GGS submits a report to Mack detailing each distribution of a new unlock code for a copy of MACSPEC 2001.

17.    Dealers are permitted to order more than one copy of MACSPEC 2001, but only for use by subdealers approved by Mack.

18.    For each new copy of the system, the dealer receives a new unlock code. Any replacement code for existing software can only be issued with Mack's explicit written approval.

-4-

## Toledo Mack's Licensing of MACSPEC 2001

19.      Toledo Mack possesses and operates its MACSPEC 2001 system pursuant to a license agreement with Mack.  A copy of the license agreement is attached hereto as Exhibit "B."

20.      Under the terms of its license agreement with Mack, Toledo Mack agreed to the following restrictions on its use of the MACSPEC 2001 system:

> You may use [MACSPEC 2001] only in connection with your parts and service business in accordance with your MACK distributor agreement.  You will treat [MACSPEC 2001] and the information in [MACSPEC 2001] as confidential and proprietary to [Mack].  You will not permit access to [MACSPEC 2001] to anyone other than your authorized employees or [Mack's] authorized representatives without first obtaining written approval from [Mack].

21.      Further, under the terms of its license agreement with Mack, Toledo Mack may not sublicense, rent, lend, lease, donate, sell, loan, pledge, encumber, transfer or distribute, even on a temporary basis, any of its copies of the MACSPEC 2001 system.

22.      Under the agreement Toledo Mack may not copy the operating software for MACSPEC 2001 except for backup purposes.

## Toledo Mack and PAI Conspire to Steal MACSPEC 2001

23.      On July 24 and 25, 2002,  Mack discovered that Toledo Mack had secretly conspired with PAI, Mack's competitor, to steal and misappropriate MACSPEC 2001.

24.      On July 24, 2002, Bill Black, a GGS employee working the MACSPEC 2001 Help Desk, received a telephone inquiry about the MACSPEC 2001 system.  Mr. Black received the telephone call in York, Pennsylvania.

25.      The woman who called Mr. Black identified herself as "Yolanda May" and she deliberately and fraudulently led Mr. Black to conclude that she was calling on behalf of

-5-

a Mack dealer or subdealer who rightfully possessed MACSPEC 2001.  Ms. "May" represented

that she was having difficulty using the Arrangement and VIN locator disc in the MACSPEC

2001 system.

26.    After further discussion, Mr. Black, who continued to be tricked into

believing Ms. May, agreed to send a replacement disc that would have no value to anyone who

did not already possess the MACKSPEC 2001 system.

27.    Ms. May asked that GGS address the package containing the replacement

disc to "Nancy's Trucking," which subsequent investigation has revealed not to be an authorized

Mack distributor.  Ms. May told Mr. Black that the said "Nancy's Trucking" had a mailing

address of 950 Northbrook Parkway, Suwanee, Georgia 30024--which subsequent investigation

has revealed to really be the address of PAI's principal place of business.  Ms. May left a return

telephone number of (770) 822-1000--which subsequent investigation has revealed to be PAI's

telephone number.

28.    The next morning, Mr. Black telephoned Ms. "May" at the number that

she had given him, in order to confirm that she had received the replacement disc and that it was

functioning properly.   During their conversation, Ms. May put Mr. Black on hold.  While on

hold, Mr. Black heard a message touting PAI and its products.

29.    Suspicious, Mr. Black visited PAI's web page and learned that PAI and

"Nancy's Trucking" had the exact same address and telephone number.

30.    Mr. Black called Ms. May back and asked for her dealer code.  Ms. May

said she did not know the dealer code, but replied that her company had received its MACSPEC

2001 CD ROM discs from Toledo Mack.

31.    Upon information and belief, Toledo Mack fraudulently and in violation of its license agreement with Mack, delivered MACSPEC 2001 to Mack's competitor PAI in exchange for illegal payments or other surreptitious business favors.

### MACK Continues to Suffer Irreparable Harm as a Result of PAI's Theft

32.    The theft of the MACSPEC 2001 system causes Mack irreparable harm each and every day which its competitor PAI can use Mack's carefully guarded trade secrets to undercut Mack's products and services in the marketplace. Upon information and belief, PAI is now using Mack's own database and software--developed at considerable expense by Mack--to give it a crucial advantage in the marketplace and to destroy Mack's after market parts business by unfairly developing generic substitutes for Mack parts, and to respond to customer inquiries with accuracy and alacrity possible only with a sophisticated database system like MACSPEC 2001.

33.    Upon information and belief, PAI continues to distribute, copy and prepare derivative works based on MACSPEC 2001, in violation of Mack's exclusive rights as a copyright holder.

34.    Upon information and belief, PAI and Toledo Mack continue to conspire to steal Mack's trade secrets, confidential business information and intellectual property, causing irreparable harm as PAI reaps illicitly the rewards of Mack's investments in producing superior products and service.

### Further Revelations During Discovery of Toledo Mack's Sale of Mack's Trade Secrets and Confidential Information

35.    On August 22, 2002, Mack filed its original Counterclaims and Motion for Preliminary Injunction to stop PAI's exploitation of the theft of MACSPEC 2001. During the

course of discovery, Mack learned of further thefts of Mack's trade secrets and confidential

business information by Toledo Mack.

36.    Mack learned that Toledo Mack distributed a copy of MACSPEC 2001

not only to PAI, but also to Northwest Truck Sales of Edmonton, Canada ("Northwest Truck").

Northwest Truck, which is not an authorized Mack distributor or subdealer, sells after market

truck replacement parts for Mack vehicles in competition with Mack and its authorized

distributors.

37.    Mack further learned that at least since 1998 Toledo Mack has sold

portions of Mack's confidential and proprietary microfiche parts database that Toledo Mack

leased from Mack, consisting of detailed parts drawings and diagrams for almost every Mack

truck, to PAI or its distributors, including Illinois Diesel Parts Center, Inc., a PAI distributorship

managed by Toledo Mack's former Parts Manager, Paul Palmer.

38.    Upon information and belief, PAI has used, with the full knowledge,

foreseeability and complicity of Toledo Mack, the microfiche databases to unfairly compete with

Mack for truck replacement parts.

39.    Mack has also discovered that Toledo Mack has sold to PAI Mack's

confidential and secret parts price lists, including costs to authorized Mack distributors,

subdealers, and service dealers.

40.    The costs of Mack's after market replacement parts to its distributors,

subdealers, and service dealers are not publicly available or published.  These costs are kept

confidential so that Mack's competitors, like PAI, will not know the costs of parts and thereby

unfairly compete with Mack.

41.    Upon information and belief, PAI has used, with the full knowledge, foreseeability and complicity of Toledo Mack, the price lists to undermine Mack's market position by calibrating prices on each PAI product to undercut Mack's distributors' costs for competing products.  PAI has been able to adjust its prices to changes in Mack's distributor's costs and parts prices before they are generally known in the market, resulting in lost sales and customers to Mack.

### Count I (Misappropriation of Trade Secrets and Confidential Business Information) (As Against Toledo Mack and PAI)

42.    Mack incorporates Paragraphs 1 through 41 of its Counterclaims as if fully set forth herein.

43.    Mack expended considerable expense and labor in developing the MACSPEC 2001 system, which consists of an intricate and sophisticated compilation of information about truck parts and computer software to search and use that compilation.

44.    Mack similarly expended considerable expense and labor in developing the microfiche databases, the earlier version of the MACSPEC 2001 system's database, and its confidential price lists.

45.    The information on the MACSPEC 2001 system, including particularly Mack's non-public compilation and organization of truck parts information, is confidential and proprietary to Mack.  The information contained on the MACSPEC 2001 system is not disseminated to the general public.  Mack goes to significant lengths to maintain the secrecy of the information contained in the MACSPEC 2001, including, without limitation, binding licensees to strict confidentiality agreements and restricting access to copies of MACSPEC 2001 through the distribution of individual copy-specific unlock codes.

46.    Mack similarly protected the secrecy and confidentiality of the microfiche databases and price lists by limiting dissemination of them to authorized Mack distributors.

47.    The information contained on the MACSPEC 2001 system provides Mack with a competitive advantage in the marketplace since it permits Mack's dealers to determine what parts are needed to service particular trucks quickly and efficiently, resulting in higher parts sales for Mack. Mack's competitors lack the advantages of the comprehensive and easily searchable MACSPEC 2001 parts database. With this information, PAI can make major manufacturing and marketing decisions, and provide artificial "Mack-quality" service to its customers.

48.    The information contained in the microfiche similarly provides Mack with a competitive advantage in the marketplace since it permitted Mack's dealers to determine what parts are needed to service particular trucks, resulting in higher parts sales for Mack. Mack's competitors lack this advantage.

49.    The information contained in the price lists similarly provides Mack with a competitive edge, because only Mack and its authorized distributors know the cost structure underlying Mack distributors' parts pricing.

50.    Mack only authorized Toledo Mack to receive a copy of MACSPEC 2001 and an unlock code on the express agreement that Toledo Mack was to maintain the secrecy and confidentiality of the MACSPEC 2001 system. Toledo Mack promised not to permit any person employed by a third party to have access to MACSPEC 2001.

51.    Mack provided MACSPEC 2001, the microfiche databases, and the price lists under circumstances in which Mack had a relationship of trust and confidence with Toledo Mack. Mack regularly shares secret and confidential information with the members of its

-10-

distributor community because Mack sells many of its products, including after market replacement parts, through its distributor network. Mack distributors understand that Mack will share non-public information with them to help the entire Mack community, including both Mack and its distributors, compete, and that they are to maintain the secrecy of that information.

52.     In breach of both that agreement and the confidence which Mack reposed in it, Toledo Mack distributed one of its copies of the MACSPEC 2001 system to PAI and provided PAI with the necessary unlock code to access the system.

53.     In further breach of the confidence which Mack reposed in it, Toledo Mack provided the price lists and portions of the microfiche databases to PAI.

54.     PAI further perpetrated its theft by fraudulently representing itself to Mack as an authorized dealer named "Nancy's Trucking" so that it could trick Mack and its contractor into providing technical assistance to continue operating the stolen discs.

55.     PAI's improper acquisition of MACSPEC 2001 and Toledo Mack's distribution of MACSPEC 2001 to PAI in violation of Mack's confidence and its license agreement constituted a misappropriation of Mack's trade secrets and confidential business information.

56.     PAI and Toledo Mack's actions were malicious, willful and outrageous.

57.     Upon information and belief, Toledo Mack and PAI are continuing to conspire to use MACSPEC 2001 and other Mack confidential business information and trade secrets to develop parts products which will undercut Mack's own products and is using MACSPEC 2001 to deliver the same rapid response to customer service inquiries as an authorized Mack dealer using MACSPEC 2001.

58.     Upon information and belief, Toledo Mack's misappropriation of Mack's microfiche, price lists and other trade secrets and confidential business information have undermined Mack's parts business.

### Count II (Copyright Infringement)
### (As Against Toledo Mack and PAI)

59.     Mack incorporates Paragraphs 1 through 58 of its Counterclaims as if fully set forth herein.

60.     MACSPEC 2001 is a computer program consisting of original source code and a compilation of pre-existing information about individual truck parts in an original manner.

61.     Mack is the owner of the copyright on the MACSPEC 2001 system's parts database and source code.

62.     Mack is also the owner of the copyright on the microfiche databases, which consist of an earlier version of the parts database contained in MACSPEC 2001.

63.     Mack has filed an application to register its copyrights on the MACSPEC 2001 system's parts database and source code with the United States Copyright Office.

64.     Upon information and belief, without authorization from Mack, Toledo Mack distributed the copyrighted MACSPEC 2001 system to PAI for its own direct or indirect commercial advantage.

65.     Upon information and belief, without authorization from Mack, Toledo Mack also distributed its leased copyrighted microfiche parts database system to PAI for its own direct or indirect commercial advantage.

66.     Upon information and belief, PAI induced Toledo Mack to distribute the MACSPEC 2001 system to it by offering consideration to Toledo Mack.

67.     PAI also fraudulently induced Mack to send it part of the MACSPEC 2001 system by falsely claiming to be an authorized dealer, by providing the false name of "Nancy's Trucking," and by providing a false mailing address--all of which acts were designed to trick Mack into believing that PAI was an authorized licensee of Mack's copyrights in the MACSPEC 2001 system.

68.     Upon information and belief, PAI continues to distribute, copy and prepare derivative works based on MACSPEC 2001. Moreover, every time that PAI accesses its illicitly acquired copy of MACSPEC 2001, PAI infringes on Mack's copyrights.

69.     These acts have all infringed on Mack's exclusive rights as the owner of the copyrights on the MACSPEC 2001 system's parts database and source code.

70.     These acts have also infringed on Mack's exclusive rights as the owner of the copyrights on the microfiche parts database.

### Count III (Breach of Contract)
### (As Against Toledo Mack)

71.     Mack incorporates Paragraphs 1 through 70 of its Counterclaims as if fully set forth herein.

72.     Mack and Toledo Mack entered into a licensing agreement whereby Toledo Mack would receive a copy of the MACSPEC 2001 system and an unlock code in exchange for the payment of fees and an agreement to restrict access by third parties to the MACSPEC 2001 system and to maintain the confidentiality of the MACSPEC 2001 system.

73.     In the license agreement, Toledo Mack promised that it would not distribute MACSPEC 2001 to third parties or permit any person other than a Toledo Mack or Mack authorized employee to access MACSPEC 2001 without Mack's prior written consent.

-13-

74.     In breach of this agreement Toledo Mack distributed MACSPEC 2001 to PAI without Mack's prior written consent.

75.     In further breach of this agreement Toledo Mack permitted PAI employees to access the MACSPEC 2001 by providing the relevant unlock code to PAI.  Toledo Mack never received prior written consent from Mack for  distribution of the unlock code.

76.     As a direct and proximate result of Toledo Mack's breach of contract Mack continues to lose the competitive advantages it derived from its investment in the development of the MACSPEC 2001 system as PAI exploits its trade secrets further each day, resulting in a loss of value in its trade secrets, intellectual property, goodwill and competitive position.

### Count IV (Civil Conspiracy)
### (As Against Toledo Mack and PAI)

77.     Mack incorporates Paragraphs 1 through 76 of its Counterclaims as if fully set forth herein.

78.     Toledo Mack and PAI agreed to work together to misappropriate Mack's trade secrets and confidential business information and to infringe its copyrights.

79.     Toledo Mack and PAI entered into this agreement with the intent of injuring Mack.

80.     Toledo Mack and PAI engaged in overt acts in furtherance of their conspiracy, including, without limitation, Toledo Mack's sending of a copy of the MACSPEC 2001 system and relevant unlock code to PAI.

81.     The fruits of the conspiracy have so far included, at a minimum, the theft of the MACSPEC 2001 system.  Upon information and belief, Toledo Mack and PAI continue to act in furtherance of their conspiracy against Mack.

82.    As a result of this conspiracy, Mack continues to lose the competitive advantages it derived from its investment in the development of the MACSPEC 2001 as PAI exploits its trade secrets further each day, resulting in a loss of value in its trade secrets, intellectual property, goodwill and competitive position.

## PRAYER FOR RELIEF

WHEREFORE, Mack requests the following relief on all claims and counterclaims in this action:

1.    That the claims of the Complaint be dismissed with prejudice;

2.    That the Court award Mack relief on all of its counterclaims.

3.    That the Court preliminarily and permanently enjoin Toledo Mack and PAI from their unlawful conduct, including, without limitation, their misappropriation of Mack's trade secrets and confidential business information and their infringement of Mack's copyrights;

4.    That the Court order the impounding and destruction of all goods infringing Mack's copyrights pursuant to 17 U.S.C. § 503;

5.    That the Court order that Toledo Mack specifically perform its licensing agreement for the MACSPEC 2001 system;

6.    That the Court award Mack compensatory damages as a result of Toledo Mack and PAI's unlawful conduct;

7.    That the Court further award Mack punitive damages to punish Toledo Mack and PAI's willful, malicious and outrageous conduct and to deter others from engaging in such conduct in the future;

8.    That the Court award Mack costs and attorney's fees pursuant to 17 U.S.C. § 505;

9.    For any such other or further relief which the Court deems just and proper.

-15-

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), demand is hereby made for trial by jury on all issues so triable.

Respectfully submitted,

Jon A. Baughman (14043)
Jeremy Heep (75607)
Barak A. Bassman (85626)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799
215.981.4000

Attorneys for Defendant Mack Trucks, Inc.

Dated:  March 24, 2003

## CERTIFICATE OF SERVICE

I, Jeremy Heep, hereby certify that on March 24, 2003 a true and correct copy of

the foregoing First Amended Counterclaims of Defendant Mack Trucks, Inc. was served via

hand delivery upon the following:

>       Wayne A. Mack, Esq.
>       Mark B. Schoeller, Esq.
>       J. Manly Parks, Esq.
>       Duane Morris LLP
>       One Liberty Place
>       Philadelphia, PA 19103-7396


>       Jeremy Heep
>       PEPPER HAMILTON LLP
>       3000 Two Logan Square
>       Eighteenth & Arch Streets
>       Philadelphia, PA  19103-2799
>       (215) 981-4000