## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:02-CV-04373-RLB |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : | |
| | : | |
| Counterclaim Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| TOLEDO MACK SALES & SERVICE, INC. | : | |
| | : | |
| Counterclaim Defendant. | : | |

### MOTION OF PLAINTIFF TOLEDO MACK
### SALES & SERVICE, INC. TO DISMISS COUNTS I, II, III, AND IV OF
### DEFENDANT MACK TRUCKS, INC.'S COUNTERCLAIMS AGAINST PLAINTIFF
### TOLEDO MACK SALES & SERVICE, INC. PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiff Toledo Mack Sales & Service, Inc. ("Toledo Mack"), by and through its

undersigned attorneys, Duane Morris LLP, hereby moves to dismiss Counts I, II, III, and VI of

the First Amended Counterclaims ("Counterclaims") of Defendant Mack Trucks, Inc. against

Toledo Mack for the reasons set forth in the accompanying Memorandum of Law in Support of

Motion to Dismiss, which is incorporated herein by reference.

WHEREFORE Plaintiff Toledo Mack requests that this Court dismiss Counts I, II, III, and VI of the Counterclaims against Toledo Mack.

Respectfully submitted,

Date: April 7, 2003

_____
Wayne A. Mack
J. Manly Parks
Keith J. Verrier

DUANE MORRIS LLP
One Liberty Place
Philadelphia, PA  19103-7396
215-979-1152/1342/1133
215-979-1020 (telefax)

Attorneys for Plaintiff
Toledo Mack Sales & Service, Inc.

PH2\724771.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TOLEDO MACK SALES         :
SERVICE, INC.,                 :
                           :
           Plaintiff,        :    Civil Action No. 2:02-CV-04373-RLB
                           :
        v.                :
                           :    JURY TRIAL DEMANDED
MACK TRUCKS, INC.,          :
                           :
           Defendant.      :

---

MACK TRUCKS, INC.,          :
                           :
           Counterclaim    :
           Plaintiff,       :
                           :
        v.                :
                           :    JURY TRIAL DEMANDED
TOLEDO MACK SALES & SERVICE,   :
INC. and                          :
                           :
           Counterclaim    :
           Defendant.     :

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF TOLEDO MACK SALES & SERVICE INC.'S MOTION TO DISMISS COUNTS I, II, III, AND IV OF DEFENDANT MACK TRUCKS, INC.'S COUNTERCLAIMS AGAINST PLAINTIFF TOLEDO MACK SALES & SERVICE, INC. PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiff Toledo Mack Sales & Service, Inc. ("Toledo Mack"), by and through its

undersigned attorneys, Duane Morris LLP, submits this Memorandum of Law in support of its

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Counts I, II, III, and VI

of Defendant Mack Trucks, Inc.'s ("Mack") First Amended Counterclaims ("Counterclaims")

fail to state a claim upon which relief can be granted.  Accordingly, Toledo Mack requests that

this Court dismiss Counts I, II, III, and VI against Toledo Mack with prejudice.

I.    **INTRODUCTION**

The pending counterclaims that Defendant Mack has brought against Plaintiff Toledo

Mack and Counterclaim Defendant PAI Industries, Inc. ("PAI") relate to Mack's assertion that

Toledo Mack has shared with PAI, and others, Mack's MACSPEC 2001 software system, Mack

microfiche and Mack price lists for Mack parts.  Although Counts I, II, III, and VI of Mack's

counterclaims against Toledo Mack should be dismissed under Federal Rule of Civil Procedure

12(b)(6) for several reasons, one of which runs through all of Mack's claims -- these claims rely

on the existence of valid licenses for the "intellectual property" in question.  However, in its

Complaint, Mack does not allege – because it can not – the existence of a license as it pertains to

Mack's microfiche or price lists.  In addition, Mack's alleged license agreement with Toledo

Mack for MACSPEC 2001 is contradicted by Mack's own Counterclaims and the documents

attached thereto.  Contrary to Mack's unsupported allegations, the License Agreement into which

the parties entered in 1996 was for a product called MACSPEC II – *not* MACSPEC 2001.  The

MACSPEC II License Agreement terminated in 2001, and is unrelated to any of Mack's

counterclaims against Toledo Mack.

Although Mack attaches the license agreement for MACSPEC II to its counterclaims, it

alleges in its papers that the license agreement pertains to MACSPEC 2001.  This Court should

reject these allegations on their face as they are belied by the very License Agreement that Mack

attaches to its counterclaims.  As Counts II and III – and to a large degree Counts I and IV – rely

upon the existence of a valid license to the MACSPEC 2001 product, and as the agreement

referenced by Mack on its face pertains to MACSPEC II – *not* MACSPEC 2001 – those counts

fail to state a claim upon which relief can be granted.  Accordingly, Mack's counterclaims

against Toledo Mack for breach of contract, misappropriation of trade secrets and confidential business information, copyright infringement, and civil conspiracy should be dismissed.

## II.    APPLICABLE LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the sufficiency of the pleadings. See Constar, Inc. v. Nat'l Dist. Ctrs, Inc., 101 F. Supp. 2d 319, 322 (E.D. Pa. 2000), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although the Court must view all factual allegations and all reasonable inferences that can be drawn therefrom in the light most favorable to the plaintiff, see Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1410 (3d Cir. 1991), cert. denied, 501 U.S. 1222 (1991) (citation omitted), the "Court need not accept 'bald assertions or legal conclusions,'" Unisource Worldwide, Inc. v. Heller, No. 99-266, 1999 U.S. Dist. LEXIS 8530, at *8 (E.D. Pa. June 9, 1999), citing Morse v. Lower Merion School Dist., 132 F.2d 902, 906 (3d Cir. 1997). Instead, "'legal conclusions, deductions or opinions couched as factual allegations are *not* given a presumption of truthfulness.'" Constar, 101 F. Supp. 2d at 319 (citation omitted) (emphasis added).

When a court considers a motion to dismiss, although it must focus on the pleadings, it may also consider documents whose contents the complaint alleges, when the parties do not question their authenticity; "legal arguments in memorandums or briefs and arguments of counsel," Pryor v. Nat'l Collegiate Athletic Assoc., 288 F.3d 548, 560 (3d Cir. 2002); "matters of public record[;] orders[;]exhibits attached to the Complaint[;]and items appearing in the record of the case," Alifano v. Merck & Co., Inc., 175 F.Supp. 2d 792, 794 (E.D. Pa. 2001), citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.2d 1380, 1384 n.2 (3d Cir. 1994). In considering these additional items, courts seek to prevent "a plaintiff with a legally deficient

- 3 -

claim [from surviving] a motion to dismiss simply by failing to attach a dispositive document on which it relied."  Id.  If the Court finds that the facts pled and the reasonable inferences, if true, would not support the relief sought, it must dismiss the claim.  See Kehr Packages, 926 F.2d at 1410 (citation omitted).

## III.  STATEMENT OF FACTS

### A.    The Execution And Termination Of A License Agreement For MACSPEC II Between Toledo Mack And Mack.

Since 1982, Toledo Mack has been an authorized distributor and dealer of Mack trucks and parts.  See generally, Defendant's First Amended Counterclaims ("Def. Am. Counterclaims") at ¶ 7.  On February 26, 1996, Toledo Mack entered into a license agreement with Mack relating to MACSPEC II ("the MACSPEC II License Agreement"), a software package for Mack parts that Mack offered only to authorized distributors to replace microfiche copies of its parts catalogues.  See Ex. "A" to Def. Am. Counterclaims (MACSPEC II License Agreement).

In late 2000, Toledo Mack began using MACKnet, Mack's extranet system available only to authorized distributors, and thereafter had no further need for MACSPEC II.  Toledo Mack subsequently contacted Mack and canceled its license for MACSPEC II in January 2001. Pursuant to the MACSPEC II License Agreement, Toledo Mack "returned the SOFTWARE, documentation and any back-up copy [of MACSPEC II software] to Mack upon expiration or termination of [the] license," see Def. Am. Counterclaims, Ex. "A" at 1, Introductory Paragraph, and Mack confirmed the cancellation of the license.[1]  Toledo Mack's cancellation and return of

---

[1]     As detailed in Toledo Mack's Memorandum of Law in Opposition to Defendant's Motion for a Preliminary Injunction, Bob Yuzuik, Mack's Manager for Publications and Product Information sent a letter to Toledo Mack, dated February 2, 2000, confirming the return

(Continued…)

the MACSPEC II system to Mack in early 2001 signaled and affected the termination of the 1996 License Agreement.  See id

**B.    Toledo Mack's Orders For MACSPEC 2001 On Behalf Of Its Customers.**

In early 2002, Toledo Mack ordered copies of MACSPEC 2001, the new software system Mack had begun offering to distributors and their customers,[2] for PAI and one other customer. Mack alleges that Toledo Mack signed a license agreement for MACSPEC 2001 and provided MACSPEC 2001 and an unlock code for that software to PAI, in contravention of that license agreement.  See Def. Answer & Counterclaims at 23 ¶ 41.

As discussed below, although there did exist a license agreement between Toledo Mack and Mack for MACSPEC II, see Def. Am. Counterclaims, Ex. "A", this agreement terminated before Toledo Mack ordered MACSPEC 2001.  Other than its misquotes from the MACSPEC II License Agreement, Mack cannot and does not identify any license agreement between Mack and Toledo Mack for MACSPEC 2001.  See id.

**C.    Mack's Misquoting From The MACSPEC II Agreement**

Throughout its Counterclaims, Mack repeatedly misrepresents the already terminated MACSPEC II License Agreement.  See, e.g., Def. Am. Counterclaims at ¶¶ 19-23.  While Mack

---

(Continued…)

of the discs and the cancellation of Toledo Mack's license for MACSPEC II.  A copy of this letter and of Toledo Mack's Inventory of Discs Returned to Mack, dated January 26, 2001, are attached as Exhibits C and D, respectively, to Plaintiff's Memorandum in Support of its Motion in Opposition to Mack's Motion for Preliminary Injunction ("Plaintiff's Mem.").

[2]    According to Bob Yuzuik's letter to Parts Managers, dated January 29, 2002, effective January 1, 2002, dealers' customers could order, and have been ordering MACSPEC 2001 for their own use.  See Exhibit D to Plaintiff's Mem.

claims that "Toledo Mack possesses and operates its MACSPEC 2001 system pursuant to a license agreement with Mack," it attaches the MACSPEC II License Agreement.  See id. at ¶ 19; Ex. "A."

Mack asserts that the MACSPEC II License Agreement attached to its Counterclaims explicitly identified MACSPEC 2001 as "confidential" and explicitly precluded Toledo Mack from providing MACSPEC 2001 to any other parties.  See Def. Am. Counterclaims at ¶¶ 19-21. Mack supports that position by brazenly misquoting from Section 3.1 of the 1996 License Agreement and replacing the defined term "SOFTWARE" in Section 3.1 with the bracketed words "MACSPEC 2001."  Compare Def. Am. Counterclaims, Ex. "A" at 1-2, § 3.1 (1996 License Agreement for MACSPEC II) with Def. Am. Counterclaims at ¶¶ 19-21.

Contrary to Mack's misquoting of the MACSPEC II License Agreement, Section 3.1 actually reads as follows:

> You may use the SOFTWARE only in connection with your parts and service business in accordance with your MACK distributor agreement.  You will treat the SOFTWARE and the information contained in the SOFTWARE as confidential and proprietary to MACK.  You will not permit access to the SOFTWARE to anyone other than your authorized employees or MACK's authorized representatives without first obtaining written approval from MACK.

See Def. Am. Counterclaims, Ex. "A" at 1-2, § 3.1.  As noted above, the term "SOFTWARE" is specifically and exclusively defined as "[t]he MACSPEC II parts information system, consisting of both the operating software and the parts database on CD-ROM."  Id. at 1, Introductory Paragraph.

A simple reading of the MACSPEC II License Agreement establishes that Section 3.1 of that agreement, on which Mack relies to assert each of its counterclaims, does not relate to MACSPEC 2001 or to any of Mack's counterclaims.  Moreover, Mack offers no explanation

- 6 -

whatsoever for misquoting Section 3.1 of the MACSPEC II License Agreement and suggesting

that the term "SOFTWARE" was defined in that agreement to mean MACSPEC 2001.  See Def.

Am. Counterclaims at ¶ 20.

       **D.**    **Toledo Mack Did Not And Could Not Provide PAI With The "Unlock Code" For MACSPEC 2001.**

Mack asserts that Toledo Mack provided PAI with "the necessary unlock code" to access

MACSPEC 2001.  See Def. Am. Counterclaims at ¶ 52.  This assertion, however, is inconsistent

and irreconcilable with how Mack itself represents its design of the "unlock" feature of

MACSPEC 2001.

According to Mack's description of the "unlock" feature,

> [a] third party other than Mack (or its contractor) cannot access the
> MACSPEC 2001 system without an unlock code.  Each "unlock
> code" is specific to each copy of the MACSPEC 2001 system.
> Moreover, each 'unlock code' integrates itself onto the computer
> hard drive on which it is first used, such that it can never be used
> on any other computer.

Def. Am. Counterclaims at ¶ 15.  Mack or GSS, Mack's contractor, can only distribute an unlock

code during the first use of MACSPEC 2001 on the computer on which it first installed.  See id.

at ¶ 16.[3]  Mack makes conflicting factual assertions in its counterclaims.  Although Mack clearly

states that only *GSS or Mack* can supply unlock codes to the user of the computer on which

MACSPEC 2001 is to be installed, Mack alleges that *Toledo Mack* provided the unlock codes to

---

[3]      It is significant to note that Mack's own "MACSPEC 2001 User's Guide," which
describes the unlocking procedure in depth, reveals that a user can obtain the unlock code
for its copy of MACSPEC 2001 *only* after the user begins to download MACSPEC 2001
software onto its own computer and then telephones Mack to obtain the necessary
"unlock code" directly from Mack or its contractor.  See Exhibit G to Plaintiff's Mem. at
20.

PAI.  See Def. Am. Counterclaims at ¶ 52.  Under Mack's own description, however, Toledo

Mack could not have provided the code to PAI.

## IV.    ARGUMENT

In its Counterclaims against Toledo Mack, Mack fails to state a claim upon which relief

can be granted for each of the counts against Toledo Mack for breach of contract,

misappropriation of trade secrets and confidential business information, copyright infringement,

and civil conspiracy.

### A.    Mack Fails To State A Claim Upon Which Relief Can Be Granted Against Toledo Mack In Count III (Breach Of Contract).

Under Pennsylvania law, to establish a claim for breach of contract, the claimant must

show "the existence of a contract to which the plaintiff and defendant(s) were parties, the

essential terms of that contract, a breach of the duty imposed by the contract and injury or

damages resulting from the alleged breach."  Carnegie Hill Fin. Inc. v. Krieger, No. 99-CV-

2592, 1999 U.S. Dist. LEXIS 13683, at *6 (Sept. 9, 1999 E.D. Pa.).

In its counterclaim for breach of contract, Mack asserts that "Mack and Toledo Mack

entered into a licensing agreement whereby Toledo Mack would receive a copy of the

MACSPEC 2001 system and an unlock code in exchange for the payment of fees and an

agreement to restrict access by third parties to the MACSPEC 2001 system and to maintain the

confidentiality of the MACSPEC 2001 system."  Def. Am. Counterclaims at ¶ 72.  Mack further

asserts that, in the license agreement for MACSPEC 2001, Toledo Mack "promised that it would

not distribute MACSPEC 2001 to third parties or permit any person . . . to access MACSPEC

2001 without Mack's prior written consent."  Id. at ¶ 73.  The crux of Mack's breach of contract

claim is Mack's assertion that Toledo Mack distributed MACSPEC 2001 and its unlock code to

PAI employees, without Mack's prior written consent, *"in further breach of this agreement."*  Id.

at ¶ 74-75 (referencing "the license agreement"). The *only* license agreement Mack references in all of its Counterclaims is the MACSPEC II License Agreement. See generally, Def. Am. Counterclaims at ¶ 19. MACSPEC II, however, is irrelevant to Toledo Mack's handling of MACSPEC 2001 – a separate product.

Mack's claim must fail because Mack simply does not establish the existence of a license agreement for MACSPEC 2001. As the text of the agreement itself made explicit, the MACSPEC II License Agreement only related to MACSPEC II. For instance, the MACSPEC II License Agreement was entitled

LICENSE AGREEMENT AND LIMITED WARRANTY

MACSPEC II

See Def. Am. Counterclaims, Ex. "A" at 1. The stated effect of that Agreement was that, "The MACSPEC II parts information system, consisting of both the operating software and the parts database on CD-ROM ('SOFTWARE') is licensed to you [i.e., Toledo Mack]." Id. There is no provision or language whatsoever in the MACSPEC II License Agreement indicating that the terms of that license would be extended to any software programs other than MACSPEC II or to any new software programs which Mack might develop in the future. See id. Mack cannot assert that the terms of the MACSPEC II License Agreement, which specifically apply only to MACSPEC II, impose any contractual duties upon Toledo Mack with regard to MACSPEC 2001.

In fact, the very license agreement on which Mack relies so heavily in its Counterclaims was terminated as of February 2, 2001 when Mack itself confirmed cancellation of the license for MACSPEC II. Mack does not allege that Toledo Mack ever violated the confidentiality of the MACSPEC II License Agreement with regard to the MACSPEC II software.

**B.    Mack Fails To State A Claim Upon Which Relief Can Be Granted Against Toledo Mack On Count I (Misappropriation Of Trade Secrets And Confidential Business Information).**

With regard to a claim for misappropriation of trade secrets, Pennsylvania follows the standard set forth in Restatement of Torts § 757.  See William M. Hendrickson, Inc. v. Nat'l R.R. Passenger Corp., No. 00-3711, 2002 U.S. Dist. LEXIS 4097, at *47 (E.D. Pa. Mar. 13, 2002), citing R.W. Sims v. Mack Truck Corp., 488 F. Supp. 592, 597 (E.D. Pa. 1980); Den-Tal-Ez, Inc. v. Siemens Capital Corp., 566 A.2d 1214, 1228-29 (Pa. Super. 1989).  Under Pennsylvania law, to establish a claim for misappropriation of trade secrets, the claimant must prove four elements: "(1) plaintiff owns a trade secret (2) which was communicated to the defendant (3) within a confidential relationship, and (4) was used by the plaintiff to defendant's detriment." Hendrickson, 2002 U.S. Dist. LEXIS 4097, at *45.  Section 757 further provides: "One who discloses or uses another's trade secret, without privilege to do so, is liable to the other if: (a) he discovered the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him."  Den-Tal-Ez, Inc., 566 A.2d at  1228-29, quoting Restatement of Torts § 757.

**1.    Mack's Bald Assertions that it had a "Confidential Relationship" with Toledo Mack are Insufficient to Survive a Motion to Dismiss.**

Realizing the failings of its misappropriation of trade secrets claim as originally stated, Mack attempts to salvage this claim by alleging in its amended claim what it sees as the magic language, that it maintains a "relationship of trust and confidence" with its distributors.  Def. Am. Counterclaim at ¶ 8.  However, Mack must do more than put forth bald assertions, the allegations of the Counterclaims must demonstrate at least some confidential relationship.  The purported "confidential relationship" on which Mack relies to support its claim for misappropriation of trade secrets is based upon Toledo Mack's role as a Mack distributor and

- 10 -

Mack's decision to "entrust[] its distributors with confidential and proprietary materials." Id. These two allegations are insufficient to create a "confidential relationship" for the purposes of establishing a claim for misappropriation of trade secrets.

In general, parties to an arms length business transaction are not found to have "confidential" relationships. See Williams v. Dresser Industries, Inc., 120 F.3d 1163, 1168 (11th Cir. 1997)("Generally, business relationships are not confidential relationships."); see also Valley Forge Conv. & Visitors Bureau v. Visitor's Services, Inc., 28 F. Supp. 2d 947, 952-53 (E.D.Pa. 1998) (discussing "special" relationships in the context of contractual relations). The refusal to recognize any heightened relationship has been the rule in cases involving the relationship between franchisees and franchisors – a situation analogous to the distributor/manufacturer relationship before the Court. See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 348 (4th Cir. 1998)(taking comfort from "the refusal of courts in many other jurisdictions to superimpose fiduciary duties on a franchisor-franchisee relationship"); see also O'Neal v. Burger Chef Sys., Inc., 860 F.2d 1341, 1349 (6th Cir. 1988)("in general, franchise agreements do not give rise to fiduciary or confidential relationships between the parties"); Williams, 120 F.3d at 1168 ("our research does not reveal any" cases finding a confidential relationship between a franchisor and franchisee). Toledo Mack's role as a Mack distributor is insufficient to support a claim that the parties have a "confidential relationship."

Furthermore, Mack cannot unilaterally turn its relationship with Toledo Mack into a "confidential relationship" by disclosing confidential and proprietary materials. The comment to the Restatement of Torts § 757 states that "the proprietor of a trade secret may not unilaterally create a confidential relationship without the knowledge or consent of the party to whom he

- 11 -

discloses the secret." <u>Smith v. Snap-On Tools Corp.</u>, 833 F.2d 578, 579 (5th Cir. 1987)(citing Restatement of Torts § 757, comment). "[T]he question is whether the recipient of the information knew or should have known that the disclosure was made in confidence." <u>Id.</u>; <u>see also William M. Hendrickson, Inc.</u>, 2002 U.S. Dist. LEXIS 4097, at *52 (stating no confidential relationship when circumstances do not indicate to an employee that such a confidential relationship exists under his contract). Noticeably absent from Mack's Counterclaim is any allegation that they *notified* or otherwise *stated* to Toledo Mack that the information they now assert is a "trade secret" was confidential or proprietary or intended to be held out as such.

The only other allegation for establishing a confidential relationship between the parties is Mack's incorrect assertion that there was a license for MACSPEC 2001. In this regard Mack alleges only that there is an express agreement between Mack and Toledo Mack that requires Toledo Mack to maintain the confidentiality and secrecy of MACSPEC 2001 and to prevent third-party access. <u>See</u> Def. Am. Counterclaims at ¶ 50. The problem with Mack's allegations is the simple and indisputable fact that the contract identified by Mack as the basis of the alleged confidentiality obligation does not pertain to MACSPEC 2001, but rather to MACSPEC II.

Rather than directly address the lack of a license agreement between Toledo Mack and Mack for MACSPEC 2001, Mack actually goes so far as to represent in its counterclaims that the MACSPEC II License Agreement is actually a current license agreement for MACSPEC 2001. <u>See</u> Def. Am. Counterclaims at ¶ 20. As demonstrated above, however, the MACSPEC II License Agreement on its face related only to MACSPEC II, <u>see</u> <u>id.</u>, Ex. "A", and was terminated by February 2, 2001 when Toledo Mack returned MACSPEC II to Mack and Mack canceled Toledo Mack's license for MACSPEC II. The misleading allegation that the MACSPEC II License Agreement was a license agreement for MACSPEC 2001 and the actual

misquoting of the MACSPEC II License Agreement are illustrative of the weakness of Mack's claims. In addition, the Counterclaims contain no allegations that there are contractual provision establishing a "confidential relationship" as it pertains to the Mack microfiche and price lists.

As the foregoing makes clear, Mack can not rely on Toledo Mack's status as a distributor to establish a "confidential relationship" nor can it create such a relationship by unilaterally disclosing confidential or proprietary information. In addition, there are no valid contractual provisions which create such a relationship. As a result, Mack is unable to adequately plead the third element of a misappropriation of trade secrets claim and Count I of the Counterclaims should be dismissed.

> **2.    Mack Does Not Assert That Toledo Mack Acquired MACSPEC 2001 Through Improper Means.**

As a fall-back position, Mack also asserts that MACSPEC 2001, Mack microfiche and price lists constitute "confidential business information." See Def. Am. Counterclaims at ¶¶ 57-58. Pennsylvania follows the Restatement of Torts § 759 for claims of misappropriation of confidential business information. See Den-Tal-Ez, Inc., 566 A.2d at 1231. Under section 759, only a party who "procures by improper means" another's confidential business information is liable for its subsequent use or disclosure of such information. Restatement of Torts § 759.

Mack has made no argument that Toledo Mack "procured" MACSPEC 2001, Mack microfiche or price lists "by improper means." See generally Def. Am. Counterclaims at ¶ 51. Mack argues that *PAI* acquired MACSPEC 2001, Mack microfiche and price lists by improper means. See id. at ¶¶ 52-53. Against *Toledo Mack*, Mack alleges only that, once Toledo Mack ordered and obtained MACSPEC 2001 through Mack's proper procedures, Toledo Mack then sent MACSPEC 2001 to PAI in alleged "violation of Mack's confidence and its license agreement." Id. Here again, Mack's claim turns on the existence of a license agreement for

- 13 -

MACSPEC 2001.[4]  As noted above, no such agreement exists.  Therefore, there can be no breach

of any license agreement or confidentiality relating to MACSPEC 2001, and Mack's claim for

misappropriation of confidential business information must be dismissed.

      **C.**    **Mack Fails To State A Claim Upon Which Relief Can Be Granted Against Toledo Mack In Count II (Copyright Infringement).**

To establish a claim of copyright infringement, the claimant "must establish: (1) that it

owns a valid copyright; and (2) that the defendant copied the copyrighted material."  Stenograph,

LLC v. Sims, No. 99-5354, 2000 U.S. Dist. 9619, at *7 (E.D. Pa. July 12, 2000).

Mack does allege that it is the "owner of the copyright on the MACSPEC 2001," "a

computer program consisting of original source code and a compilation of pre-existing

information about individual truck parts in an original manner."  Def. Am. Counterclaims ¶¶ 60-

61.  In addition, Mack claims that it "is also the owner of the copyright on the microfiche

databases."  Id. at ¶ 62.  Mack bases its counterclaim for copyright infringement against Toledo

Mack on the allegations that, "without authorization from Mack, Toledo Mack distributed the

copyrighted MACSPEC 2001 system [and Mack's leased copyrighted microfiche parts database

system] to PAI for its own direct or indirect commercial advantage."  Def. Am. Counterclaims at

¶¶ 64-65.

Under the copyright laws, although a copyright owner can restrict further transfers of a

copyrighted item under its exclusive right to public distribution, a licensing agreement must be in

place to restrict transfers by a person lawfully in possession.  See generally Stenograph, LLC v.

Sims, No. 99-5354, 2000 U.S. Dist. 9619, at *9 (E.D. Pa. July 12, 2000) (holding that

---

[4]      Mack's own website advertises that the MACSPEC 2001 is available to customers through authorized Mack dealers, including Toledo Mack.  See Exhibit F to Plaintiff's Mem. (Excerpts from Mack's Guide to Ordering Parts Publications on www.mack.com).

copyrighted software cannot be transferred when the license agreement expressly prohibits transfer), citing Adobe Sys. v. One Stop Micro, Inc., 84 F. Supp.2d 1086, 1090-91 (N.D. Cal. 2000) (copyright holder's right to distribute copyrighted material provided in 17 U.S.C. § 106(3) precludes defendant who lawfully purchased a copy of material from holder from providing that copy to third party if license agreement between copyright holder and defendant restricted such a transfer); Adobe Sys., Inc. v. Stargate Software Inc., No. C 99-20284 JW, 2002 U.S. Dist. LEXIS 15622, at *9 (N.D. Cal. Aug. 16, 2002) (noting that the establishment of a license would give Adobe a claim for copyright infringement); Softman Prod. Co, LLC v. Adobe Sys. Inc., 171 F. Supp. 2d 1075, 1088 (C.D. Cal. 2001) (finding that, where Adobe sold its software to a distributor without a license agreement between Adobe and the distributor, Adobe's end user license agreement did not bind the distributor who never loaded the software and never assented to its terms of use). As demonstrated above, Mack does not even allege a licensing agreement governed Toledo Mack's use of the Mack microfiche and can only establish the existence of a prior and terminated license agreement for MACSPEC II – not MACSPEC 2001. See Def. Am. Counterclaims, Ex. "A." Absent a signed license agreement for MACSPEC 2001 and/or the Mack microfiche between Mack and Toledo Mack limiting Toledo Mack's ability to give the products to another party, there is no basis for a copyright infringement claim against Toledo Mack.

Furthermore, Mack does not and cannot allege that Toledo Mack unlawfully obtained the MACSPEC 2001 and/or the Mack microfiche or unlawfully made copies of them and distributed any of those copies to PAI.[5] Instead, Mack alleges only that Toledo Mack improperly distributed

---

[5] As stated above, Mack has repeatedly demonstrated its consent to dealers ordering MACSPEC 2001 for their customers. PAI is a customer of Toledo Mack.

its copy of MACSPEC 2001 and the Mack microfiche to PAI once Toledo Mack was in lawful

possession of that software.  <u>See</u> <u>generally</u>, Def. Am. Counterclaims at ¶¶ 64-65.  With no

allegation of unlawful procurement, and no proper allegations of a valid license agreement to

support any agreement to restrict distribution of the lawfully-obtained products, Mack does not

and cannot state a claim for copyright infringement against Toledo Mack.

**D.    Mack Fails To State A Claim Upon Which Relief Can Be Granted Against Toledo Mack In Count IV (Civil Conspiracy).**

Under Pennsylvania law, to establish a claim for civil conspiracy, a plaintiff must plead

the following elements with particularity:

a.    two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means, <u>Fresh Made, Inc. v. Lifeway Foods, Inc.</u>, No. 01-4254, 2002 U.S. Dist. LEXIS 15098, at *36 (E.D. Pa. Aug. 9, 2002), <u>citing</u> <u>Skipworth v. Lead Indus. Ass'n</u>, 547 Pa. 224, 235, 690 A.2d 169, 174 (1997); <u>GMH Assocs., Inc. v. Prudential Realty Group</u>, 752 A.2d 889, 905 (Pa. Super. 2000), <u>appeal denied</u>, 795 A.2d 976 (Pa. 2000);

b.    an underlying actionable wrong, <u>Fresh Made</u>, 2002 U.S. Dist. LEXIS 15098, at * 38, <u>citing</u> <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 395, 405 (3d Cir. 2000);

c.    some overt act is done in pursuance of the common purpose or design, <u>GMH</u>, 752 A.2d at 905;

d.    actual legal damage results, <u>Id.</u>; [and]

e.    [p]roof of malice, i.e., an intent to injure, <u>Skipworth v. Lead Industries Ass'n, Inc.</u>, 690 A.2d 169, 174 (Pa. 1997).

**1.    There Remains No Underlying Actionable Wrong To Support A Claim of Civil Conspiracy.**

As demonstrated above, Mack does not and cannot state claims upon which relief can be

granted for breach of contract, misappropriation of trade secrets and confidential business

information, or copyright infringement.  Accordingly, there remains no underlying actionable

wrong upon which Mack can rest its civil conspiracy counterclaim.  Under Pennsylvania law,

- 16 -

"[w]hen a court dismisses the causes of action which underlie a civil conspiracy claim, the civil conspiracy claim must also be dismissed." <u>Fresh Made</u>, 2002 U.S. Dist. LEXIS 15098, at * 38 (dismissing conspiracy claim where the court dismissed the underlying antitrust, unfair competition, and restraint of trade claims) (citations omitted). In Pennsylvania, "'when a party fails to allege in [other] counts any unlawful act or unlawful means,' the conspiracy count must also fail when it is based on these claims." <u>GMH</u>, 752 A.2d at 905, <u>citing</u> <u>Raneri v. DePolo</u>, 441 A.2d 1373, 1376 (Pa. Commw. 1982). Since Mack fails to state a counterclaim against Toledo Mack on the underlying claims of breach of contract, misappropriation of trade secrets and confidential business information, and copyright infringement, Mack's counterclaim against Toledo Mack for civil conspiracy must also be dismissed.

> **2.      There Was No License Agreement For MACSPEC 2001 That Toledo Mack Could Conspire With PAI To Violate.**

Mack's entire theory that Toledo Mack did something unlawful or otherwise lawful by unlawful means, rests on the premise that Toledo Mack improperly gave PAI MACSPEC 2001 and the necessary unlock code in violation of some license agreement. <u>See</u> Def. Am. Counterclaims at ¶ 80. As demonstrated above, however, no license agreement exists for MACSPEC 2001. As such, Mack fails to state a claim for civil conspiracy.

> **3.      Without A License Agreement For MACSPEC 2001 and/or the Mack microfiche, Mack Does Not Establish That Toledo Mack Acted With Malice.**

Finally, Mack fails to plead facts sufficient to support its allegation that Toledo Mack acted with "malice." Under Pennsylvania law, "[m]erely describing something as malicious is not sufficient to give the proper inference of malice . . . [M]alice requires an allegation that the *sole* purpose of the conspiracy was to injure the Plaintiff." <u>Simon v. UnumProvident Corp.</u>, No. 99-6638, 2002 U.S. Dist. LEXIS 9331, at *28-29 (E.D. Pa. May 29, 2002) (emphasis added).

Mack makes the bold assertion that "PAI and Toledo Mack's actions were malicious, willful and outrageous," Def. Am. Counterclaims ¶ 56, and that "Toledo Mack and PAI entered into this agreement with the intent of injuring Mack," Id. at ¶ 79.  Mack never asserts that the *sole* purpose of the arrangement between Toledo Mack and PAI was to injure Mack or that Toledo Mack lied about or concealed for whom it ordered its copies of MACSPEC 2001.  See Simon, 2002 U.S. Dist. LEXIS 9331, at *28-29.

Instead, Mack simply asserts that "Toledo Mack had secretly conspired with PAI, Mack's competitor, to steal and misappropriate MACSPEC 2001" and that "Toledo Mack fraudulently and in violation of its license agreement with Mack, delivered MACSPEC 2001 to Mack's competitor PAI in exchange for illegal payments or other surreptitious business favors."  Def. Am. Counterclaims at ¶¶ 23, 31.  Mack has now extended these allegations to include Toledo Mack's complicity in PAI's use of Mack's microfiche databases and price lists.  Id. at ¶¶ 38, 41.  As demonstrated above, there exists no license agreement between Mack and Toledo Mack for MACSPEC 2001, Mack's microfiche and/or Mack's price lists.  Moreover, the above discussion makes clear that there is no "confidential relationship" on which Mack can base its claims of confidentiality.  Without a license agreement or other confidentiality agreement that Toledo Mack and PAI could conspire to violate, Mack cannot demonstrate that Toledo Mack acted with the requisite malice to breach any purported confidence of Mack or to injure Mack in any way and Mack's claim for civil conspiracy must fail.

PH2\724771.1

V.    __CONCLUSION__

For all of the foregoing reasons, Counts I, II, III, and IV of Mack's First Amended

Counterclaims against Toledo Mack should be dismissed with prejudice.

Respectfully submitted,


Date: April 7, 2003                                  _____

Wayne A. Mack
J. Manly Parks
Keith J. Verrier

DUANE MORRIS LLP
One Liberty Place
Philadelphia, PA  19103
215-979-1152/1342/1133
215-979-1020 (telefax)


Attorneys for Plaintiff
Toledo Mack Sales & Service, Inc.

- 19 -

## CERTIFICATE OF SERVICE

I, Keith J. Verrier, Esquire, hereby certify that on this 7th day of April, 2003, a true and correct copy of the foregoing document was served on the following counsel of record by first class mail, postage prepaid:

Jon A. Baughman
Jeremy Heep
Barak A. Bassman
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799


_____
Keith J. Verrier

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TOLEDO MACK SALES &            :
SERVICE, INC.,                 :
                               :
              Plaintiff,       :    Civil Action No. 2:02-CV-04373-RLB
                               :
         v.                    :
                               :    JURY TRIAL DEMANDED
MACK TRUCKS, INC.,             :
                               :
              Defendant.       :

---

MACK TRUCKS, INC.,             :
                               :
              Counterclaim     :
              Plaintiff,       :
                               :
         v.                    :
                               :    JURY TRIAL DEMANDED
TOLEDO MACK SALES & SERVICE,   :
INC.                           :
                               :
              Counterclaim     :
              Defendant.       :

## **ORDER**

AND NOW, this _____ day of _____, 2003, upon consideration of the Motion of Plaintiff Toledo Mack Sales & Service Inc. to Dismiss Counts I, II, III, and IV of Defendant Mack Truck, Inc.'s Counterclaims Against Plaintiff Toledo Mack Sales & Service, Inc. Pursuant to Fed. R. Civ. P. 12(b)(6) and any Response thereto, IT IS HEREBY ORDERED that the Motion is GRANTED and Counts I, II, III, and VI of the Defendant Mack Truck, Inc.'s Counterclaims are DISMISSED WITH PREJUDICE.

_____
Ronald L. Buckwalter, J.