## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES &<br>SERVICE, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:02-CV-04373-RLB |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

_____

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOLEDO MACK SALES &<br>SERVICE, INC., | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

### COUNTERCLAIM PLAINTIFF MACK TRUCKS, INC.'S
### MEMORANDUM OF LAW IN OPPOSITION TO COUNTERCLAIM
### DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS

### INTRODUCTION

Counterclaim Plaintiff Mack Trucks, Inc. ("Mack") originally brought suit on

August 22, 2002 against Toledo Mack Sales & Service, Inc. ("Toledo Mack") and PAI

Industries, Inc. ("PAI") to stop the theft of its secret MACSPEC 2001 computer parts database

system. As Mack explained in its original Counterclaims, Toledo Mack and PAI conspired to

steal the MACSPEC 2001 parts database system, which Mack only distributes to authorized

Mack distributors like Toledo Mack. Mack also moved this Court on August 22, 2002 for a

preliminary injunction and an order impounding PAI's illegally acquired copy of MACSPEC

2001. On September 17, 2002, Toledo Mack moved this Court to dismiss Mack's Counterclaims for failure to state a claim for relief. On October 8, 2002, Mack responded to that motion.

Mack has reached settlement with PAI and therefore voluntarily dismissed its claims against PAI. See Consent Order and Permanent Injunction between Mack and PAI, entered November 22, 2002; Stipulation of Dismissal with Prejudice, entered November 22, 2002. Mack has also reached settlement with Toledo Mack regarding Mack's preliminary injunction motion. Toledo Mack agreed to return all of the copies of MACSPEC 2001 and that it would not engage in any unauthorized distribution of Mack trade secrets, including Mack's parts pricing information, during the pendency of this action. Mack expressly reserved its rights to seek damages and a permanent injunction against Toledo Mack, and Toledo Mack reserved its defenses to liability and damages. See Consent Order on Mack Trucks, Inc.'s Motion for Preliminary Injunction between Mack and Toledo Mack, entered November 22, 2002.

On March 24, 2003, Mack amended its Counterclaims to add claims based upon new facts learned in discovery. In particular, Mack discovered three new instances of misappropriation of trade secrets and confidential business information and copyright infringement perpetrated by Toledo Mack, namely Toledo Mack's unauthorized and illegal distribution of: (1) MACSPEC 2001 to another Mack competitor, Northwest Truck Sales; (2) Mack's microfiche parts databases to PAI and its distributors, including Illinois Diesel Parts Center, Inc. ("Illinois Diesel"); and (3) Mack's confidential parts pricing information to PAI. Amended Counterclaims ¶¶ 35-41, 62, 65, 70. The Amended Counterclaims also further detailed Mack's relationship of trust and confidence with Toledo Mack, addressing a central point raised in Toledo Mack's original motion to dismiss. Amended Counterclaim ¶¶ 8, 51, and 53. As set forth below, the filing of the First Amended Counterclaims has rendered moot Toledo Mack's Motion to Dismiss the original Counterclaims, as well as the briefing by both sides.

-2-

Notwithstanding Mack's efforts, Toledo Mack has moved anew to dismiss. Toledo Mack's argument is that it was not bound by a license agreement with Mack for MACSPEC 2001, the microfiche databases, and the parts pricing information, and thus supposedly can dispose of Mack's trade secrets and copyrighted computer software and databases however it pleases, including selling them to Mack's competitors. This argument is without merit for two reasons: first, even without a formal license agreement, Toledo Mack's distribution of MACSPEC 2001, the microfiche databases, and the parts pricing information to Mack's competitors violated copyright and trade secret law; second, Toledo Mack *is* bound by the license agreement for MACSPEC 2001.

## STATEMENT OF FACTS

**A.    The Allegations of the Amended Counterclaims**

**1.    MACSPEC 2001**

Mack is a leading manufacturer of truck chassis and truck parts in the United States, including after-market truck replacement parts. Amended Counterclaims at ¶ 6. The highly competitive truck parts market is comprised of brand name manufacturers, such as Mack, and generic manufacturers, like PAI, which manufacture imitations of the brand name parts. Id. at ¶ 9. The generic manufacturers can undercut the price of the name brand manufacturers, but only if they competently gather technical information about parts and their applications.

To improve its competitive position, Mack developed a computerized parts database for its distributors, including a system called MACSPEC 2001, which is comprised of 28 CD ROM discs containing vehicle-specific parts configuration data for nearly every truck chassis manufactured by Mack since 1966. Id. at ¶¶ 10-11. The MACSPEC 2001 system contains special software source codes to permit a user to easily search the parts database vehicle identification number ("VIN Number"), part number, partial part number, arrangement number,

-3-

partial arrangement number or major unit serial number.  Id. at ¶¶ 11-12.  This quick-search

capability gives Mack and its distributors a significant edge in selling after-market parts because

the distributors can search quickly and accurately for the parts necessary to meet a particular

customer's needs.  Without MACSPEC 2001, Mack distributors would have to engage in

detailed and time consuming investigations of which part is appropriate for which truck.  Id. at

¶12.

### 2.    Protection of the Copyright in and Secrecy of MACSPEC 2001

Mack is the owner of the copyrights for the MACSPEC 2001 system's parts

database and source code.  Id. at ¶ 14.  The compilation of the data and the software codes is and

always has been kept secret because it gives Mack and its distributors a significant competitive

edge.  Id. at ¶ 12.  In the hands of a competitor, MACSPEC 2001 can gravely harm Mack

because it would give the competitor access to "perfect information," allowing it to successfully,

but wrongly, take market share from Mack in at least three ways.  First, companies like PAI

could use this information to avoid engaging in original market, products or design research.  Id.

at ¶ 13.  Second,  the competitor could efficiently determine quantity and timing of large

manufacturing runs.  Id.  For example, with the computerized search, the generic manufacturers

can find out that one part fits in 85 percent of the most popular current models, and accordingly

decide to manufacture it in large quantities, thus anticipating demand without doing the truck-by-

truck study that would be required without the benefit of MACSPEC 2001.  Third, MACSPEC

2001 could permit the generic manufacturers to provide equivalent or perhaps superior customer

service as compared to the brand name manufacturer.  Id.

In addition to the copyright, Mack protects the secrecy of the MACSPEC 2001

system through a series of "unlock codes."  Each unlock code is specific to each copy of the

MACSPEC 2001 system and integrates itself onto the computer hard drive on which it is first

used, such that it can never be used on any other computer. Id. at ¶ 15. As part of the procedures to protect the confidentiality of MACSPEC 2001, only two employees are authorized to distribute unlock codes, and an internal weekly report sets forth each new distribution of an unlock code. Id. at ¶ 16.

In addition to these protections, the counterclaims specifically allege that Toledo Mack, like other Mack distributors, "possesses and operates its MACSPEC 2001 system pursuant to a license agreement with Mack." Id. at ¶ 19. It is also alleged that this agreement requires that Toledo Mack treat the information in MACSPEC 2001 as "confidential and proprietary" and not permit access "to anyone other than [Mack's] authorized representatives." Id. at ¶ 20. The counterclaims similarly allege that this specific license agreement prohibits sublicensing, renting or transfer of MACSPEC 2001. Id. at ¶ 21. The license agreement that Mack specifically alleged to govern possession and operation of MACSPEC 2001 is attached to the Counterclaims.

### 3.    Conspiracy to Steal MACSPEC 2001

On July 24 and 25, 2002, Mack discovered that Toledo Mack had secretly conspired with PAI, Mack's competitor, to misappropriate MACSPEC 2001. Id. at ¶ 23. In particular, Mack's Help Desk contractor received a call from PAI's Yolanda May, who deliberately and fraudulently led the contractor to believe that she was calling on behalf of a Mack distributor or authorized subdistributor who rightfully possessed MACSPEC 2001. Id. at ¶ 25. During this call and a subsequent communication, Ms. May told the contractor that she was calling on behalf of "Nancy's Trucking," and not PAI, and otherwise tricked the contractor into sending her a replacement disc to keep PAI's fraudulently acquired MACSPEC 2001 system operating. Id. at ¶¶ 25-31. The Amended Counterclaims allege that PAI and Toledo Mack acted together to steal MACSPEC 2001 in violation of copyright law, the license agreement *and* the

-5-

confidence that Mack reposed in Toledo Mack. Id. at ¶¶ 52, 64. The causes of action pleaded

are misappropriation of trade secrets (Count 1); copyright infringement (Count 2); breach of

contract (Count 3); ; and civil conspiracy (Count 4).

### 4.    Toledo Mack's Further Thefts of Mack's Trade Secrets

In the course of discovery, Mack learned of the following additional violations of

its rights under copyright law, trade secret law, and the license agreement:

a.    Toledo Mack, without Mack's authorization or consent, distributed a copy of MACSPEC 2001 to Northwest Truck Sales of Edmonton, Alberta, Canada, which, like PAI, is a competitor of Mack. Amended Counterclaims at ¶ 36.

b.    Since at least 1998, Toledo Mack has sold portions of Mack's confidential and proprietary microfiche parts databases, consisting of detailed parts drawings and diagrams for almost every Mack truck, to PAI and its distributors, including Illinois Diesel. Id. at ¶ 37.

c.    Toledo Mack has sold confidential and proprietary Mack parts pricing information to PAI, including highly sensitive cost data. Id. at ¶¶ 39-40.

Mack has accordingly expanded its Counterclaims against Toledo Mack to recover for these

additional acts of theft. Amended Counterclaims ¶¶35-41, 62, 65, 70.

### 5.    Admissions of PAI and Toledo Mack

In response to Mack's Motion for Preliminary Injunction and Expedited

Discovery and Mack's discovery requests, Toledo Mack and PAI have admitted the following:

a.    Toledo Mack procured MACSPEC 2001 from Mack for the specific purpose of delivering it to PAI, Mack's competitor, and in fact did so. See Toledo Mack's Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery at 9-10.

b.    In procuring MACSPEC 2001 from Mack, Toledo Mack represented to Mack that it was merely ordering the system for a "customer" and not Mack's competitor. Id.

     c.     Toledo Mack specifically instructed PAI not to reveal its true identity to Mack with regard to MACSPEC 2001. See PAI Mem. of Law in Opp. to Mot. for Preliminary Injunction at 7.

     d.     Toledo Mack shipped a copy of MACSPEC 2001 to Northwest Truck. See Revised Responses and Objections of Toledo Mack Sales & Service, Inc. to Mack Trucks, Inc.'s First Set of Interrogatories and Requests for Production of Documents, a copy of which is attached hereto as Exhibit "1," at 3.

     e.     Toledo Mack sold Mack's microfiche databases and confidential pricing information to PAI and its distributors. See Exh. 1 at 6.

At the present, the precise time of the beginning of the conspiracy and the precise role of each conspirator, beyond the specific events described above, is unknown to Mack – and can only be determined through discovery. Given these admissions however, it is a reasonable inference that Toledo Mack has engaged in a systematic violation of Mack's confidence and trust and conspired with Mack's competitors.

### 6.    Allegations of Harm to Mack

The Amended Counterclaims allege that the thefts of MACSPEC 2001 , the microfiche databases, and the parts pricing information have caused substantial, possibly irreparable, harm to Mack's competitive position. Specifically, Mack believes that PAI used MACSPEC 2001, the microfiche databases, and the parts pricing information to give PAI crucial advantages in the marketplace and attempt to destroy Mack's after market parts business by unfairly developing generic substitutes for Mack parts, by responding to customer inquiries with the accuracy and alacrity possible only with a sophisticated database system like MACSPEC 2001 or the microfiche, and by using the parts pricing information to calibrate PAI's prices to undercut Mack distributors' costs. Amended Counterclaims at ¶¶ 32, 38, 41. It is further alleged that PAI has distributed derivative works based on MACSPEC 2001. Id. at ¶ 34.

**B.    The Fallacious Factual Allegations of the Motion to Dismiss**

    Unable to challenge the pleadings on their face, Toledo Mack instead goes beyond them, claiming that its license agreement with Mack is no longer in effect, thus giving it the right to sublease MACSPEC 2001 to whomever it pleases. See Toledo Mack Mem. of Law in Supp. of Mot. to Dismiss ("TM Mem.") at 2-3. Toledo Mack does not deny that it did have an agreement, and that its agreement says "MACSPEC", but rests its argument on the fact that its agreement says "II" instead of "2001". Id. Then, Toledo Mack puts on the pre-discovery case that it "had no further need for MACSPEC II," and therefore "canceled its license . . . in January 2001." Id. at 4-5. In support of this factual allegation, it relies on a self-serving affidavit by its principal, David Yeager, and a series of appended exhibits purporting to show MACSPEC II's return, which in its words, "signaled and affected the termination of the [MACSPEC II] License Agreement." Id. at 4-5; see Exh. A to Toledo Mack Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery. Further citing to the MACSPEC 2001 User's Guide, Toledo Mack states that it could not have provided PAI with any unlock code, as alleged in the Amended Counterclaims, because Mack's procedures require that Mack be telephoned directly to get the unlock code. Id. at 7, n. 3. Finally, Toledo Mack cites to a Mack letter that purportedly changed Mack's practice and policy to allow "customers" to order MACSPEC 2001 for their own use. Id. at 5, n. 2.

**C.    Mack's Counter Allegations of Fact**

    Toledo Mack's "Statement of Facts" is telling more for what it omits than for what it reveals. First, it omits that MACSPEC 2001 was a simple upgrade of MACSPEC II that permits the software to run on Windows 98. Affidavit of Robert Yuzuik ("Yuzuik Aff."), a copy of which is attached hereto as Exhibit "2," at ¶ 8. In all other material respects, as the MACSPEC name suggests, the software is identical. Id. No new license agreement was issued

-8-

to Toledo Mack or any other distributor for the simple reason that this was unnecessary. Id. at ¶ 10. No other distributor has ever claimed that it is no longer bound by the MACSPEC II agreement; indeed such a claim would be inconsistent with the trust and confidence that Mack reposes in its distributors. Id. Even without a license agreement, the information in MACSPEC 2001 is widely understood to be proprietary and confidential. Id. at ¶ 11.

The documents relied upon by Toledo Mack suggest that it returned its MACSPEC II disks to Mack at the end of January 2001. See Exh. B to Toledo Mack Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery. Omitted from Toledo Mack's "Statement of Facts", however, is that the return of these discs was merely in anticipation of the forthcoming upgrade, much like a lessee would turn his car into the distributor for the replacement of a recalled part to make it function better in light of new information or requirements in the market place. Minutes from a meeting of Mack distributors which took place shortly before Toledo Mack returned a set of MACSPEC II discs show that the Mack distributors were aware that MACSPEC 2001 was soon coming. Yuzuik Aff. at ¶ 9; see Exh. B to Yuzuik Aff. Failure to turn in the nearly obsolete discs would result in fines or penalties. Id. at ¶ 9. Accordingly, Mack's acknowledgment of the return of the discs was just that – and not a cancellation of Toledo Mack's license agreement. Id.[1]

Toledo Mack similarly omits the obvious from its selective citation to the MACSPEC 2001 User Guide: that the cover page was addressed to authorized Mack distributors – which PAI is not. See Exh. A to Yuzuik Aff. "All Mack Dealers and Subsidiaries" are the first words that one sees upon opening the package containing MACSPEC 2001. Id. Toledo

[1] Historically, to improve its competitive position, Mack developed a series of parts databases in the 1960's for its distributors. At first, these databases were on microfiche. Yuzuik Aff. at ¶ 4. In 1988, Mack combined its microfiche parts databases into a computerized parts database system called MACSPEC, which ran on computers using the DOS operating system. Id. at ¶¶ 3 and 5. In 1996, Mack created MACSPEC II to run on Windows 95. Id. at ¶ 3.

Mack further omits that the next words one sees are on the computer screen – specifically telling the user that the system is "protected by copyright law" and "[u]nauthorized reproduction or distribution of this program, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under law." Exh. C to Yuzuik Aff. Anyone viewing these materials would understand that they were proprietary to Mack and should in no case be in the hands of a competitor.

Regarding provision of the "unlock code," Toledo Mack conveniently omits that it specifically instructed PAI to hide its true identity in all communications with Mack. See PAI Mem. of Law in Opp. to Mot. for Preliminary Injunction at 7. Whether Toledo Mack provided the code directly, which would have been possible by loading it onto a computer and sending the computer to PAI, or instructed PAI on how to deceive Mack and GGS into turning over the unlock code, is a pointless distinction. Finally, while it is true that Mack sent a letter to its distributors in January 2002 stating that distributors could order MACSPEC 2001 for their "customers," Toledo Mack again omits a key fact: that distributors often had customers that were authorized Mack representatives, and who were thus authorized under the license agreement and Mack's policy and practice to possess MACSPEC 2001. Yuzuik Aff. at ¶ 7. The specific and obvious intent of the reference to "customers" was to those customers and not to Mack's competitors. Id.

## ARGUMENT

### Standard of Review

In reviewing a motion to dismiss, this Court accepts as true all of the allegations in the Counterclaims and any reasonable inferences which can be drawn from them, and analyzes the allegations of the Counterclaims "in the light most favorable to the non-moving party." See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Mack's Counterclaims will be

-10-

dismissed *only* if this Court is certain that Mack cannot prove any set of facts that would

establish a claim for relief. See Children's Seashore House v. Waldman, 197 F.3d 654, 658 (3d

Cir. 1999). This Court is not determining whether Mack will prevail, but "only whether [it is]

entitled to offer evidence to support [its] claims." Id. (brackets in original).

## I.    Mack Has Stated a Claim for Relief Even Without the License Agreement

Toledo Mack's entire Motion to Dismiss is premised upon the argument that,

absent a license agreement, it was free to provide MACSPEC 2001, the microfiche databases,

and the parts pricing information to any Mack competitor. See TM Mem. at 2. This argument is

without merit for three reasons. First, even in the absence of a license agreement, under the

Copyright Act, Toledo Mack was not permitted to distribute MACSPEC 2001 to PAI without

Mack's permission. Second, Toledo Mack's violation of Mack's confidence constitutes

misappropriation of trade secrets and confidential business information. Third, Toledo Mack and

PAI conspired to acquire MACSPEC 2001 by fraud, which also constitutes both copyright

infringement and misappropriation of trade secrets and confidential business information.

### A.    Toledo Mack's Distribution of MACSPEC 2001 and the Microfiche Databases to PAI and its Distributors Violates the Copyright Act.

Toledo Mack's distributions of MACSPEC 2001 and the microfiche database,

both of which it leased from Mack, but did not own (Amended Counterclaims at ¶¶37, 65),

constitute a clear violation of the Copyright Act. While a *lawful owner* of a copy of a

copyrighted work may, *sometimes*, be able to redistribute his or her own copy without the

copyright owner's consent, see generally 17 U.S.C. §109, it is well-established that a mere *lessee*

of a copyrighted work has *no* right to distribute a copy of that work without the copyright

owner's consent. See Microsoft Corp. v. Software Wholesale Club, Inc., 129 F.Supp.2d 995,

1001-1003 (S.D. Tex. 2000) (only actual sale of a copyrighted work can extinguish copyright

owner's exclusive distribution right);  Microsoft Corp. v. Harmony Computers & Electronics, Inc., 846 F.Supp. 208, 212-13 (E.D.N.Y. 1994) (same).

Toledo Mack tries to elide the clear distinction between the rights of *owners* of copies of copyrighted works and those of *lessees*, like Toledo Mack, by arguing that the issue of copyright infringement turns upon "possession." But the Copyright Act distinguishes between different kinds of "possessors." See generally 17 U.S.C. §109(a) (limitations on copyright holder's exclusive distribution right apply only in the case of an "owner" of a particular copy); see also Platt & Munk Co. v. Republic Graphics, Inc., 315 F.2d 847, 851-52 (2d Cir. 1963) (mere lawful possession does not defeat the copyright owner's exclusive distribution right);  Motorup Corp. v. Interpublic Group of Companies, Inc., No. Civ. A. 97-7468, 1998 WL 237708 at *2 (E.D. Pa. May 11, 1998) (denying motion to dismiss copyright infringement claim because holding inventory in trust does not defeat the copyright owner's exclusive distribution right).

Toledo Mack also attempts to avoid the clear language of the Copyright Act by arguing that "a license agreement *must* be in place to restrict transfers [of a copyrighted work] by one lawfully in *possession*." TM Mem. at 14 (emphasis added). Toledo Mack's only support for this remarkable proposition is a series of cases standing for the common sense proposition that licensing agreements for software will be enforced by the courts.[2] Id. Toledo Mack ignores the plain language of the Copyright Act which provides that the exclusive rights of the copyright owner, including the right to control distribution, are only limited by 17 U.S.C. §§ 107-120. 17 U.S.C. § 106 ("Subject to section 107 through 120, the owner of copyright under this title has the exclusive rights to and to authorize any of the following"). There is nothing in 17 U.S.C. §§107

---

[2] Toledo Mack cites only one case, Softman Products Co., LLC v. Adobe Systems, Inc., 171 F.Supp.2d 1075 (C.D. Cal. 2001), where there was not a license agreement in place between the parties. The Court in Softman Products did not, however, discuss the effect of 17 U.S.C. § 109(b), and it does not appear that the copyright owner invoked its full statutory protections.

120 requiring that Mack enter into license agreements to protect its copyrights. According to Toledo Mack's theory, it would be legal for the typist of Stephen King's latest manuscript to sell pirated copies in the absence of a valid copyright license agreement with the typist.

Recognizing its weak position, Toledo Mack suggests it was authorized to redistribute its leased copies of MACSPEC 2001 by reaching beyond the pleadings to a lone letter that apparently made a passing reference to distributors ordering MACSPEC 2001 for their "customers". TM Mem. at 5, n.2. Relying on this letter, Toledo Mack contends that "customers could order, and have been ordering MACSPEC 2001 for their own use." Id. As an initial matter, this letter cannot be considered on a motion to dismiss because it constitutes factual evidence beyond the pleadings. See Children's Seashore House, 197 F.3d at 662.

Moreover, discovery will reveal that distributors frequently had "customers" who were also authorized Mack representatives. Yuzuik Aff. at ¶ 7. In the letter, the word "customer" was used to indicate those "customers" that are also authorized Mack representatives, and nothing more. Id. It would be absurd, in fact, to construe "customers" in the context of this particular letter about MACSPEC 2001 to include "competitors," thus affecting a wholesale change in Mack policy and procedure that would provide benefits only to Mack's rivals. Id. Indeed, while sounding words that in a world devoid of context may fit together in some bizarre and hypertechnical construction, Toledo Mack offers no explanation of why Mack would suddenly permit competitors to have access to its database of parts. To be sure, and as Toledo Mack surely knew and knows, Mack never has, and never would, consent in any way to a competitor such as PAI possessing a copy of MACSPEC 2001. Yuzuik Aff. at ¶ 14; Counterclaims at ¶50. In fact, PAI admits that Toledo Mack instructed PAI to conceal from Mack the fact that PAI possesses a copy of MACSPEC 2001. PAI Mem. of Law in Opp. to Mot. for Preliminary Injunction at 7. How absurd that Toledo Mack would believe it was authorized

-13-

to procure the system for PAI and at the same time instruct PAI to conceal its identity!

Similarly, the first page of the User's Manual, which was the first document seen upon opening a

MACSPEC 2001 package, is addressed to "All Mack Dealers and Subsidiaries," making it

equally absurd that either Toledo Mack or PAI could believe that PAI could rightfully possess

the system. See Exh. A to Yuzuik Aff. Furthermore, Toledo Mack nowhere even attempts to

argue that it was similarly authorized to distribute the microfiche databases.

Since it lacked Mack's permission to distribute MACSPEC 2001 and the

microfiche databases, Toledo Mack's distributions were in violation of Mack's exclusive

distribution rights as the copyright owner and accordingly constitute actionable copyright

infringement. See 17 U.S.C. §§ 106 and 109; Educational Test Services v. Katzman, 793 F.2d

533, 538 (3d Cir. 1986) (copyright infringement "requires plaintiff to show ownership of the

copyright and copying by the defendant"); Marobie-FL, Inc. v. Nat'l Assoc'n of Fire Equipment

Distributors and Northwest Nexus, Inc., 983 F.Supp. 1167, 1172, n. 1 (N.D. Ill. 1997)

("copying" is any violation of copyright owner's exclusive rights in copyrighted material).

Finally, even assuming arguendo that Toledo Mack actually owned a copy of

MACSPEC 2001 – which it did not -- it had no right to distribute that copy to PAI or Northwest

Truck under 17 U.S.C. § 109. That section of the Copyright Act expressly provides that an

owner of a copy of a computer program, like MACSPEC 2001, cannot distribute its copy to a

third party for direct or indirect commercial advantage without the consent of the copyright

owner. 17 U.S.C. § 109(b)(1)(A). Here, Toledo Mack did just that: it distributed a copy of a

computer program -- MACSPEC 2001 -- to third parties – PAI and Northwest Truck -- without

the consent of the copyright owner-- Mack -- for commercial gain. Amended Counterclaims at

¶¶23-31, 60-64; see also Cross-Claims of PAI at ¶¶ 7-12 (admitting that Toledo Mack distributed

a copy of MACSPEC 2001 to PAI for commercial gain).

-14-

**B.    Toledo Mack's Violation of Mack's Confidence Constitutes Misappropriation of Trade Secrets and Confidential Business Information.**

As Mack explains in its Amended Counterclaims, MACSPEC 2001, the microfiche databases, and the parts pricing information are closely guarded trade secrets providing Mack and its authorized distributors crucial competitive advantages. Amended Counterclaims at ¶¶ 10-22, 37-58.[3]  Toledo Mack argues, however, that, in the absence of a license agreement for any of these materials, it is not possible to state a claim for misappropriation of trade secrets and confidential business information because Mack has supposedly failed to plead adequately the existence of a relationship of trust and confidence between Mack and Toledo Mack. TM Mem. at 10-11.

This argument is disingenuous. Toledo Mack moved to dismiss the original Counterclaims on the ground that Mack supposedly failed to plead the existence of a relationship of confidence. See Memorandum of Law in Supp. of Toledo Mack's Motion to Dismiss Original Counterclaims at 10-11. While Mack had explicitly pleaded the existence of a relationship of confidence (Counterclaims at ¶ 41 ("In breach of *both* that agreement *and the confidence which Mack reposed in it*, Toledo Mack distributed one of its copies of the MACSPEC 2001 system to PAI") (emphasis added)), the Amended Counterclaims added Paragraphs 8, 51, and 53 to clarify this pointing response to Toledo Mack's motion. Those paragraphs state, inter alia:

> In addition to the explicit words of the Distributor Agreement, Mack maintains a relationship of trust and confidence with its distributors, including Toledo Mack. Mack and the distributor community work together to promote Mack products and Mack regularly entrusts its distributors with confidential and proprietary materials which the distributors know is not available to the general public.

---

[3] Toledo Mack argues that MACSPEC 2001 is not secret because it is advertised on Mack's web page. TM Mem. at 14, n. 4. Toledo Mack neglects to inform the Court, however, that Mack's web page only advertises MACSPEC 2001 as being available to authorized Mack distributors and subject to a license agreement. Yuzuik Aff. at ¶ 13.

Despite Mack having pleaded precisely as per Toledo Mack's suggestion, Toledo Mack now argues that Mack has failed to plead the existence of a relationship of confidence because the Amended Counterclaims contain only "bald assertions." TM Mem. at 10.

Toledo Mack makes two arguments, both without merit. First, Toledo Mack states that its "role as a Mack distributor is insufficient to support a claim that the parties have a 'confidential relationship.'" TM Mem. at 11. However, a supplier-distributor relationship *is* a relationship of confidence sufficient to create trade secretion protection. See PTI Converted Paper Products, Inc. v. Stone Container Corp., No. 94-CV-6797, 1995 WL 434577 at *1 (E.D. Pa. July 24, 1995) (denying motion to dismiss trade secrets claim because supplier-distributor relationship constituted relationship of confidence); see also Abernathy-Thomas Engineering Co. v. Pall Corp., 103 F.Supp.2d 582, 601-604 (E.D.N.Y. 2000) (denying defendant's motion for summary judgment on trade secrets claim because, inter alia, supplier-distributor relationship constituted relationship of confidence).[4]

Second, Toledo Mack now argues that Mack has failed to plead that "it *notified* or otherwise *stated* to Toledo Mack" that MACSPEC 2001, the microfiche databases, and the parts pricing information are trade secrets and thus Mack did not provide these materials to Toledo Mack as part of a relationship of confidence. TM Mem. at 12 (emphasis in original). This argument, however, flies in the face of the legal standard which Toledo Mack itself quotes: "[T]he question is whether the recipient of the information knew or should have known that the

---

[4] None of the cases cited by Toledo Mack for the argument that Mack lacks a relationship of confidence with its distributors addressed a claim for misappropriation of trade secrets. See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 336 (4th Cir. 1998) (breach of contract, negligence, unjust enrichment, and breach of fiduciary duty action); Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1166-67 (11th Cir. 1997) (fraud action); O'Neal v. Burger Chef Systems, Inc., 860 F.2d 1341, 1342 (6th Cir. 1988) ("wrongful non-disclosure" action); Valley Forge Convention & Visitors Bureau v. Visitor's Services, Inc., 28 F.Supp.2d 947, 949 (E.D. Pa. 1998) (breach of contract, unjust enrichment, and intentional and negligent interference with prospective contractual relations action).

disclosure was made in confidence." Id., quoting Smith v. Snap-On Tools Corp., 833 F.2d 578, 580 (5th Cir. 1988). The law does not require Mack to make an express declaration of the confidential and secret nature of these materials every time that it turns them over to a distributor. See Smith v. Snap-On Tools Corp., 833 F.2d 578, 580 (5th Cir. 1988) ("No particular form of notice is necessary"); Comment j to Rest. Torts § 757; see also Den-Tal-Ez v. Siemens Capital Corp., 566 A.2d 1214, 1224-1229 (Pa. Super. Ct. 1989); Yuzuik Aff. at ¶ 11.

While unnecessary as a matter of pleading, the allegations of the Amended Counterclaims further describe circumstances demonstrating that Toledo Mack either knew or should have known that MACSPEC 2001, the microfiche databases, and the parts pricing information are Mack trade secrets that are only shared in confidence. First, Mack limits distribution of MACSPEC 2001, the microfiche database, and the parts pricing information to authorized Mack distributors and subdealers only and these materials are not available to members of the general public. Amended Counterclaims at ¶¶ 10, 17-18, 40, 45-46, 49. Second, Mack has protected each copy of MACSPEC 2001 with a unique unlock code which integrates itself onto the user's hard drive, such that each copy of MACSPEC 2001 can only be used on that one computer by a user who knows the unlock code. Amended Counterclaims at ¶ 15. Third, Toledo Mack admits that every other parts database that it has received from Mack, aside from MACSPEC 2001 and the microfiche databases, was confidential and proprietary. See Toledo Mack's Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery at 3-6. Fourth, even if the MACSPEC II license agreement does not apply to MACSPEC 2001 -- which it does -- the prohibitions on third party access contained in that agreement put Toledo Mack on notice that MACSPEC 2001, which is only an upgraded version of MACSPEC II, is a trade secret. Amended Counterclaims at ¶¶ 20-22. Fifth, the MACSPEC 2001 User's Guide is specifically addressed to Mack distributors and no one else. Yuzuik Aff. at

-17-

¶ 7. Sixth, Mack has a long-established relationship of trust and confidence with the members of its distributor community. Amended Counterclaims ¶ 51. Mack regularly shares competitively sensitive information with its distributors, so that Mack and its distributor community can work together to promote the sale of Mack's products and defeat the efforts of competitor like PAI. Id.

This Court's recent opinion in Camelot Technology, Inc. v. Radioshack Corp., No. Civ. A. 01-CV-4719, 2003 WL 403125 (E.D. Pa. Feb. 13, 2003) (Buckwalter, J.), is on point. There, Plaintiff sued Defendant for misappropriation of trade secrets. See id. at *3. Defendant moved for summary judgment on the ground that there was no relationship of confidence between the parties, which were two separate businesses. See id. at *6-7. This Court noted that there was no written confidentiality agreement between the parties. See id. at *7.

Defendant argued, just like Toledo Mack here, that Plaintiff had never formally declared, in writing or in otherwise, that the product at issue was a trade secret. See id. This Court rejected Defendant's argument and denied summary judgment. See id. This Court reasoned that the facts (1) that the product at issue was packaged in a way to make it difficult to see all of its components and (2) that there was some evidence in the record that Defendant understood the product to be a trade secret, created a triable issue of fact as to the existence of a relationship of confidence. See id. Here, as in Camelot Technology, there are sufficient facts showing that, under the circumstances, the MACSPEC 2001 system, the microfiche databases, and the parts pricing information were distributed to Toledo Mack in a relationship of confidence.

C.    **Toledo Mack Acquired MACSPEC 2001 by Fraud.**

There are at least two identifiable acts of fraud that have put MACSPEC 2001 into the hands of PAI. First, Toledo Mack procured the system from Mack with the specific

-18-

purpose of delivering it to Mack's competitor. At the same time, Toledo Mack represented that it was ordering the system for a "customer." See Toledo Mack Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery at 9-10. Toledo Mack's self-serving interpretation of the word "customer" in this context rings of the adulterous husband telling his wife that he shall dine with a "friend." Toledo Mack's attached a purchase order for MACSPEC 2001 that refers to "PAI" to its Memorandum of Law in Opposition Mack's Motions for Preliminary Injunction and Expedited Discovery. Stunningly, *the version of the same purchase order actually sent to sent to Mack does not contain the reference to PAI.* See Exh. E to Toledo Mack Mem. of Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery; Yuzuik Aff. at ¶ 12. This suggests that Toledo Mack felt "safe" in using "PAI" on its own version of the purchase order, but recognized a need to omit "PAI" from the version it sent to Mack, presumably because Toledo Mack recognized that PAI was by no means a legitimate "customer."

Second, PAI admits that, at Toledo Mack's instruction, it lied to Mack about its true identity. See PAI Mem. of Law in Opp. to Mot. for Preliminary Injunction at 7. PAI therefore identified itself as "Nancy's Trucking" in its communications with Mack. Amended Counterclaims at ¶¶ 23-31; see also PAI Answer at ¶ 28. The reason for such deception is clear: Mack never has consented, and never would consent, to the distribution of MACSPEC 2001 to a competitor and both Toledo Mack and PAI knew Mack's position and that consent would not be forthcoming, hence their tactic to lie to Mack about PAI's true identity. Yuzuik Aff. at ¶ 14.

There is no question that these specific acts of fraud constitute both misappropriation of trade secrets and confidential business information and copyright infringement. See College Watercolor Group, Inc. v. Newbauer, 360 A.2d 200, 205 (Pa. 1976) (obtaining trade secrets through fraudulent misrepresentation constitutes misappropriation); Den-

-19-

Tal-Ez, 566 A.2d at 1231 (obtaining confidential business information through fraudulent misrepresentation constitutes misappropriation);  cf. Microsoft Corp. v. Grey Computer, 910 F.Supp. 1077, 1084 (D. Md. 1995) ("By the clear terms of [17 U.S.C.] § 106, Microsoft, as the owner of the copyrighted works, has the exclusive right to limit the distribution chain of its products").

## II.    THE LICENSE AGREEMENT APPLIES TO MACSPEC 2001

Toledo Mack claims to no longer be bound to its license agreement for MACSPEC 2001 because that agreement refers expressly to "MACSPEC II," and not to "MACSPEC 2001." TM Mem. at 9. But the Amended Counterclaims specifically plead that this license agreement applies to MACSPEC 2001. Amended Counterclaims at ¶¶ 19-20. In fact, the allegation is so strongly pleaded that Toledo Mack complains it was a "misrepresentation" to insert the words "MACSPEC 2001" in brackets in the place of the word "software." TM Mem. at 5-6. But this is exactly Mack's point. MACSPEC 2001 is the software governed by the license.

The reason that the license governs MACSPEC 2001 is that it is the same software, except the 2001 version operates on Windows 98, whereas MACSPEC II could only operate on Windows 95 or earlier versions of Windows. Yuzuik Aff. at ¶¶ 8 and 10. Even the name is the same, except one says "II" and one says "2001" to reflect the update. In fact, at the time that Toledo Mack ordered its copies of MACSPEC 2001, Mack did not enter into new license agreements for MACSPEC 2001 with any existing MACSPEC II licensees because the systems are "virtually identical." Id. at ¶ 10. To the contrary, it was Mack's practice to execute new and identical license agreements for MACSPEC 2001 only with distributors who were not already licensees of MACSPEC II. Id. Given the context of the entire transaction -- the fact that MACSPEC 2001 is simply MACSPEC II running on a different operating system -- it is clear

that the license agreement applies to MACSPEC 2001.  See O'Neill v. Keegan, 103 A.2d 909,

911 (Pa. 1954) (contract language "must be taken not only in the context of all the language in

the document but it must be considered as well in the whole history of the transaction"); Eighth

North-Val, Inc. v. Parkinson, 773 A.2d 1248, 1255 (Pa. Super. Ct. 2001) ("the disputed language

must be taken not only in the context of all the language in the document but it must be

considered as well against the background of the whole history of the transaction").

Mack's practice of not requiring a new license agreement was consistent with the

understanding of the parties, who knew that MACSPEC 2001 contained confidential information

that should not be given to competitors.  Yuzuik Aff. at ¶ 11.  Mack's practice was also

consistent with the well-established principle that copyright protection remains in place as a

computer program evolves.  See Montgomery v. Noga, 168 F.3d 1282, 1292 (11th Cir. 1999)

(copyright owner can sue for infringement of copyright in earlier version of software where

defendant stole derivative software);  see also United States v. Washington Mint, LLC, 115

F.Supp.2d 1089, 1099 (D. Minn. 2000) ("courts . . . uniformly appear to agree that copying a

derivative work may give rise to liability based upon copyright ownership in the original work

from which it is derived").

Toledo Mack's argument that it somehow canceled its license in February 2001 is

without merit.  TM Mem. at 4, 9.  First, the February 2001 letter on which Toledo Mack relies is

outside of the pleadings, and thus cannot be considered in deciding a motion to dismiss.  See

Children's Seashore House, 197 F.3d at 662.  Second, the February 2001 letter, as it states,

merely canceled a MACSPEC II "system," indicating that Toledo Mack owed no more license

fees for that particular returned copy of MACSPEC II.  See Exh. C to Toledo Mack's Mem. of

Law in Opp. to Mots. for Preliminary Injunction and Expedited Discovery ("This letter is to

confirm the cancellation and return of your MACSPEC II *system*" (emphasis added));  Yuzuik

-21-

Aff. at ¶ 9. The letter did not purport to cancel Toledo Mack's license agreement, and it did not even mention the license agreement. Yuzuik Aff. at ¶ 9. In fact, Toledo Mack only returned its copy of MACSPEC II as part of the upgrade to MACSPEC 2001, in which distributors returned their MACSPEC II systems. Id. In November 2000 – shortly before Toledo Mack returned its copy of MACSPEC II -- Mack informed the National Distributor Parts Advisory Council, which is comprised of representatives from Mack's distributor community, that it was planning to issue an upgraded version of MACSPEC II in January 2001. Yuzuik Aff. at ¶ 9; see Exh. C to Yuzuik Aff. While the actual launch of MACSPEC 2001 was delayed until summer, Toledo Mack was aware of the coming upgrade when it returned its system and accordingly expected that upgrade would take place soon after the return of its MACSPEC II discs.

## III.    MACK HAS STATED A CLAIM FOR CIVIL CONSPIRACY

Toledo Mack argues that Mack has not stated a claim for civil conspiracy because Mack has failed to allege claims for copyright infringement and misappropriation of trade secrets and thus Toledo Mack and PAI did not conspire for an unlawful purpose. TM Mem. at 16-18. As explained above, however, Mack has stated meritorious claims for copyright infringement and misappropriation of trade secrets and confidential business information. Toledo Mack therefore has no valid argument that Mack's claim for civil conspiracy should be dismissed. See Neyer, Tiseo & Hindo, Ltd. v. Russell, No. Civ. 92-2983, 1993 WL 53579 at *6 (E.D. Pa. Mar. 3, 1993) (denying motion to dismiss civil conspiracy claim where claim was stated for underlying wrong).

## CONCLUSION

For the reasons stated above, Counterclaim Defendant Toledo Mack's Motion to Dismiss should be denied.

Respectfully submitted,

Jon A. Baughman (14043)
Jeremy Heep (75607)
Barak A. Bassman (85626)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799
215.981.4000

Attorneys for Defendant/Counterclaim Plaintiff
Mack Trucks, Inc.

Dated:  April 22, 2003

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOLEDO MACK SALES & SERVICE, INC. , | : |
| Plaintiff, | : Civil Action No. 2.02-CV-04373-RLB |
| v. | : |
| MACK TRUCKS, INC., | : JURY TRIAL DEMANDED |
| Defendant. | : |
| MACK TRUCKS, INC. , | : |
| Counterclaim Plaintiff, | : |
| v. | : |
| TOLEDO MACK SALES & SERVICE, INC., | : JURY TRIAL DEMANDED |
| and | : |
| PAI INDUSTRIES, INC. | : |
| Counterclaim Defendants. | : |

**REVISED RESPONSES AND OBJECTIONS OF
TOLEDO MACK SALES & SERVICE, INC.
TO MACK TRUCKS, INC.'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff Toledo Mack Sales & Service, Inc. ("Toledo Mack"), by and through its

attorneys Duane Morris LLP, hereby responds to defendant Mack Trucks, Inc.'s ("Mack")

Interrogatories and Requests for Production of Documents as follows:

## GENERAL OBJECTIONS

1.    Toledo Mack objects to all requests to the extent they would impose upon Toledo Mack an unreasonable burden or would otherwise create burden, hardship or oppression beyond that authorized under the Federal Rules of Civil Procedure or seek discovery beyond that authorized under the Federal Rules of Civil Procedure.

2.    Toledo Mack objects to the definitions and instructions to the extent that they enlarge the obligations of Toledo Mack beyond those required under the Federal Rules of Civil Procedure and Local Rules of Court.

3.    Toledo Mack objects to the definitions to the extent that they differ from the normal, customary, and commonly understood meanings of the defined terms.

4.    Toledo Mack objects to the requests to the extent that they seek production of confidential and/or proprietary business information and/or trade secrets.

5.    Toledo Mack objects to the requests to the extent that they seek the production of information protected by the attorney-client privilege or information constituting non-discoverable work product.

6.    Responses to the following requests are made to the best of Toledo Mack's present knowledge, and are based on information currently known to Toledo Mack and are given without prejudice to Toledo Mack's right to change, supplement, and/or clarify its responses, if necessary.

7.    Toledo Mack's responses to each request are made subject to, and without in any way waiving or intending to waive, any objection as to competency, relevancy, materiality, privilege, or admissibility as evidence for any purpose, or any of the documents and things described herein.

2

8.     Toledo Mack will produce documents as they are kept in the usual course of business and in accordance with the applicable Rules of Civil Procedure.

9.     Unless otherwise indicated, Toledo Mack will not provide any documents or things encompassed by the foregoing objections.  A statement by Toledo Mack that it will produce documents in response to a request does not constitute a representation that any such documents exist or are in the possession, custody, or control of Toledo Mack.

10.    Toledo Mack incorporates each of the foregoing objections into each and every specific response below.

Subject to and without waiving their general objections, Toledo Mack responds as follows:

## I.     RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1

State the name of every person whom Toledo Mack has permitted to have access to any of its copies of MACSPEC 2001, including any person affiliated with PAI, including any PAI distributor.

### RESPONSE

Toledo Mack objects to this interrogatory on the grounds that it is vague and ambiguous.  Without waving its general and specific objections, Toledo Mack responds as follows:

GGS and/or Mack control distribution of "unlock codes" for MACSPEC 2001, so GGS and/or Mack, and not Toledo Mack, control access to MACSPEC 2001.  By way of further response, Toledo Mack obtained two copies of MACSPEC 2001 from Mack.  Toledo Mack shipped one of those copies to PAI in Sewanee, Georgia, and the other copy to Northwest Truck Sales in Edmonton, Alberta, Canada.

3

**INTERROGATORY NO. 2**

State the name of every person affiliated with PAI, including any PAI distributor, with whom Toledo Mack has communicated.

**RESPONSE**

Toledo Mack objects to this interrogatory on the grounds that it is overbroad, vague and ambiguous.  Without waving its general and specific objections, Toledo Mack responds as follows:

> Paul Palmer
> John
> Illinois Diesel
> Des Plains, Illinois
>
> Bob Green
> Chris
> Illinois Diesel
> Loves Park, Illinois
>
> Tommy
> Dean
> Willie
> Diesel Parts Center
> Charlotte, North Carolina
>
> Mark
> Diesel Parts Center
> Garner, North Carolina
>
> Diesel Parts Center
> Raleigh, North Carolina
>
> Diesel Parts Center
> Kernersville, North Carolina
>
> Prentice Atkins
> Tony
> Tri-County Auto & Truck Parts
> Pikeville, Kentucky

4

Dean Keene
Tri-County Auto & Truck Parts
Kemper, Kentucky

Tri-County Auto & Truck Parts
Mouthcard, Kentucky

Bill Atterson
Winrock Truck Parts & Equipment
Oliver Springs, Tennessee

## INTERROGATORY NO. 3

State the amount of payments from, or the nature and amount of services provided by, PAI or any PAI distributor to Toledo Mack during the relevant time period and the reasons for such payments or provision of services.

### RESPONSE

Toledo Mack objects to this interrogatory on the grounds that it is overbroad, vague and ambiguous. Without waving its general and specific objections, Toledo Mack responds as follows:

| | |
|---|---|
| Payments from PAI in 2001: | $261,050.55 |
| Payments from PAI in 2002 (through the end of September): | $275,058.13 |
| Payments from Illinois Diesel, Des Plains, in 2001: | $137,821.83 |
| Payments from Illinois Diesel, Des Plains, in 2002 (through Sept.) | $ 98,951.47 |
| Payments from Illinois Diesel, Loves Park, in 2001: | $105,273.08 |
| Payments from Illinois Diesel, Loves Park, in 2002 (through Sept.) | $ 54,460.47 |
| Payments from Tri-County Auto and Truck Parts in 2001: | $  9,558.37 |
| Payments from Tri-County in 2002 (through Sept.): | $ 16,275.34 |
| Payments from Diesel Parts Center in 2001: | $ 23,304.02 |
| Payments from Diesel Parts Center in 2002 (through Sept.): | $ 20,446.74 |

5

Payments from Winrock Truck Parts in 2002 (through Sept.):      $   5,581.87

All payments were for truck parts, with the exception of a payment by PAI in the amount of $3,527.50 which was for MACSPEC 2001, a payment by PAI in the amount of $3,472.50 which was for 2001 Mack micro fische, and a payment by PAI in the amount of $245.00 which was for a Mack service dealer price book.  Toledo Mack further states that it has not received any services from PAI.

### INTERROGATORY NO. 4

Describe any business relationship between any officer or director of Toledo Mack, on the one hand, and PAI or any PAI distributor or any officer or director of PAI or any PAI distributor, on the other hand.

### RESPONSE

Toledo Mack objects to this interrogatory on the grounds that it is overbroad, vague and ambiguous.  Without waving its general and specific objections, Toledo Mack responds as follows:

PAI is a customer of Toledo Mack and purchases truck parts from Toledo Mack.

### INTERROGATORY NO. 5

Have you ever distributed a copy of MACSPEC 2001 to any person affiliated with PAI, including any PAI distributor?  If so, identify the persons to whom you have distributed such copies.

### RESPONSE

Toledo Mack objects to this interrogatory on the grounds that it is vague and ambiguous.  Without waving its general and specific objections, Toledo Mack responds as follows:

6

Toledo Mack shipped one copy of MACSPEC 2001 to Nancy Bryant at PAI, which copy Toledo Mack obtained from Mack.

### INTERROGATORY NO. 6

Have you ever distributed a copy of MACSPEC 2001 to any person not affiliated with Toledo Mack at the time such copy was distributed to that person?  If so, identify the persons to who you have distributed such copies.

### RESPONSE

Toledo Mack objects to this interrogatory on the grounds that it is vague and ambiguous.  Without waiving the foregoing objection, Toledo Mack responds as follows:

Toledo Mack shipped one copy of MACSPEC 2001 to Nancy Bryant of PAI. Toledo Mack shipped one copy of MACSPEC 2001 to Harold Schmidt of Northwest Truck Sales.


## II.    RESPONSES TO DOCUMENT REQUESTS

### REQUEST NO. 1

All documents reflecting any communications between Toledo Mack and PAI or any distributor during the relevant time period.

### RESPONSE

Toledo Mack objects to this request on the grounds that it is overly broad and ambiguous. Toledo Mack further objects to this request to the extent it seeks documents covered by the attorney-client privilege and/or the work product doctrine.  Subject to its general and specific objections, Toledo Mack has produced non-privileged documents.

7

**REQUEST NO. 2**

¨ All documents relating to MACSPEC 2001.

**RESPONSE**

Toledo Mack objects to this request on the grounds that it is overly broad and ambiguous. Toledo Mack further objects to this request to the extent it seeks documents covered by the attorney-client privilege and/or the work product doctrine. Subject to its general and specific objections, Toledo Mack has produced non-privileged documents.

**REQUEST NO. 3**

All documents reflecting any communications between Toledo Mack and Mack or GGS concerning MACSPEC 2001 during the relevant time period.

**RESPONSE**

Toledo Mack objects to this request on the grounds that it is overly broad and ambiguous. Toledo Mack further objects to this request to the extent it seeks documents covered by the attorney-client privilege and/or the work product doctrine. Subject to its general and specific objections, Toledo Mack has produced non-privileged documents.

**REQUEST NO. 4**

All documents relating to PAI or any PAI distributor.

**RESPONSE**

Toledo Mack objects to this request on the grounds that it is overly broad and ambiguous. Toledo Mack further objects to this request to the extent it seeks documents covered by the attorney-client privilege and/or the work product doctrine. Subject to its general and specific objections, Toledo Mack has produced non-privileged documents.

8

**REQUEST NO. 5**

All documents responsive to any of Mack's First Set of Interrogatories directed to Toledo Mack.

**RESPONSE**

Toledo Mack objects to this request on the grounds set forth in its responses to Mack's First Set of Interrogatories. Toledo Mack further objects to this request to the extent it seeks documents covered by the attorney-client privilege and/or the work product doctrine. Subject to its general and specific objections, Toledo Mack has produced non-privileged documents.

DUANE MORRIS LLP

Wayne A. Mack
Mark B. Schoeller
J. Manly Parks
James H. Steigerwald

One Liberty Place
Philadelphia, PA 19103-7396
215.979.1000

Attorneys for Toledo Mack Sales & Service, Inc.

Dated: October 17, 2002

9

## CERTIFICATE OF SERVICE

I, J. Manly Parks, certify that on this 17th day of October, 2002, I caused a true and

correct copy of the foregoing Revised Responses and Objections of Toledo Mack Sales &

Service, Inc. to Mack Trucks, Inc.'s First Set of Interrogatories and Requests for Production of

Documents to be served upon the following counsel of record:

### Via Hand Delivery

Jeremy Heep
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103-2799

### Via UPS

Stephen M. Dorvee
Ashley M. Steiner
Scott E. Taylor
Arnall Golden Gregory LLP
2800 One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3450

### Via First Class Mail

Joseph Schumacher, Esquire
Wiggin & Dana LLP
1001 Hector Street
Conshohocken, PA 19428

J. Manly Parks, Esq

10

PH2\681198.1

EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:02-CV-04373-RLB |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

---

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOLEDO MACK SALES & SERVICE, INC., and | : | JURY TRIAL DEMANDED |
| | : | |
| PAI INDUSTRIES, INC., 950 Northbrook Parkway, Suwanee, GA, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF ROBERT YUZUIK

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | | ss. |
| COUNTY OF LEHIGH | : | |

I, Robert Yuzuik, being over 18 years of age, being of sound mind and capable of making this affidavit, and being personally acquainted with the facts described herein, which are true and correct to the best of my knowledge and belief, state the following:

1.      I have been employed by Mack Trucks, Inc. ("Mack") since 1971. My current title is Manager of Publications, with responsibility for supervising the publication and distribution Mack's electronic, paper and microfiche parts publications.

2.      As part of my job responsibilities I supervised the development and launch of MACSPEC II in 1996, an electronic parts database system consisting of a comprehensive database of the parts contained in almost every Mack truck manufactured since 1966 and a software program to search the database. MACSPEC II was designed to run on computers using the Windows 95 operating system or earlier versions of Windows.

3.      MACSPEC II was based on MACSPEC, a DOS-based computer system consisting of a comprehensive electronic parts database, software to search that database, and hardware to run the system. MACSPEC was developed in 1988. By 1996, MACSPEC, as a DOS-based system, had become outdated.

4.      MACSPEC and MACSPEC II represented a significant advance in service technology in the truck parts industry. From the late 1960's until 2001, Mack maintained two separate parts database in microfiche form, the Vehicle Record Index database and the MACK RO Cards database. These databases consisted of thousands of individual fiche. To search the thousands of fiche in the two databases was highly time consuming and at times inaccurate, since the databases' user could easily overlook relevant details in such an unwieldy collections. The microfiche databases were as difficult to search, in some ways, as thousands of paper catalogs. Stacked side by side, all the fiche in the microfiche databases would have extended between 60-100 feet in length. Each page was marked with a copyright notice and Mack only distributed copies to authorized Mack representatives which provided a valid dealer identification.

2

5.    Unlike the visually perceptible media (paper and fiche), MACSPEC and MACSPEC II permit a user to execute rapid and accurate electronic searches of Mack's comprehensive electronic parts database, which combines the databases which were previously distributed in microfiche form. Mack took steps to prevent MACSPEC and MACSPEC II from falling into the hands of its competitors, including requiring licensees to agree not to permit any third party to access the system or receive a copy of it. And, only an authorized Mack distributor could sign a license agreement for a complete system.

6.    One of the licensees of MACSPEC II was Toledo Mack Sales & Service, Inc. ("Toledo Mack"), an authorized Mack distributor. A true and correct copy of the license agreement between Mack and Toledo Mack is attached as Exhibit A to Mack's Answer and Counterclaims in the above-captioned action.

7.    The license agreements between Mack and its distributors provide that "authorized Mack representatives" may access MACSPEC II. "Authorized Mack representatives" comprise subdealers and service dealers that are specifically authorized by Mack to sell and service Mack products. These "authorized representatives" are often customers of distributors. Accordingly, Mack's letter to distributors, dated January 29, 2002 and attached as Toledo Mack's Exh. D to its Memorandum of Law in Opposition to Mack's Motions for Preliminary Injunction and Expedited Discovery, stating that MACSPEC 2001 was available to "customers," referred only to customers who were authorized representatives. MACSPEC II and MACSPEC 2001were never intended to be available to anyone else, and especially not to Mack's competitors. Mack distributors know this. By way of example, the first page of the User's Manual for MACSPEC 2001 is addressed to "All Mack Dealers and Subsidiaries." A true and correct copy of the first page of the User's Manual is attached hereto as Exhibit A.

3

8.    In 2001, Mack upgraded MACSPEC II to operate on versions of the Windows operating system issued after Windows 95. The upgraded system, which is called MACSPEC 2001, is the same system as MACSPEC II except it is compatible with later versions of Windows.

9.    As part of the upgrade process, Mack asked its licensees of MACSPEC II to return their copies of that system. Mack informed the National Parts Distributor Advisory Council, which is comprised of representatives of the Mack distributor community, in November 2000 that it was upgrading MACSPEC II. A true and correct copy of the agenda and meeting minutes of the November 14-15, 2000 meeting of the National Parts Distributor Advisory Council is attached hereto as Exhibit B. Mack explained to its distributors that they would need to return their copies of MACSPEC II to receive MACSPEC 2001 and avoid further licensing fees. Mack's letter to Toledo Mack dated February 2, 2001 merely acknowledges Toledo Mack's compliance with the system upgrade and did not cancel Toledo Mack's license agreement. The February 2, 2001 letter acknowledged that Toledo Mack had returned a MACSPEC II system, that is, a complete set of discs comprising one copy of MACSPEC II, and that Toledo Mack would not be charged for that copy in the future.

10.    Until Summer 2002, Mack's practice was not to enter into new license agreements with MACSPEC II licensees during the upgrade, because MACSPEC II and MACSPEC 2001 are virtually identical. During this time, Mack executed new and identical license agreements for MACSPEC 2001 only with distributors who were not already licensees of MACSPEC II. No distributor, until this litigation, has ever claimed that it was not bound by the MACSPEC II license agreement when it used MACSPEC 2001. Mack never sold a copy of MACSPEC 2001, because it is Mack's policy only to lease MACSPEC 2001. Mack is the only

4

owner of copies of MACSPEC 2001. In fact, the first screen a user sees when installing MACSPEC 2001 states that the program is protected by copyright law and warns that unauthorized distribution or copying of the program is illegal. A true and correct copy of page 9 of the MACSPEC 2001 User's Manual, showing the relevant screen, is attached hereto as Exhibit C.

11.    Mack was also confident that its distributors would not share MACSPEC 2001 with competitors because Mack has a long-standing relationship of trust and confidence with its distributor community. Mack has shared confidential information with its distributors for decades, and it has always understood that distributors, who work closely with Mack to sell and market Mack products, would not violate that trust and confidence. It is well-known in the Mack distributor community that MACSPEC 2001 is a Mack trade secret.

12.    I have reviewed the alleged purchase order attached as Exhibit E to Toledo Mack's Memorandum of Law in Opposition to Mack's Motions for Preliminary Injunction and Expedited Discovery. I never received this purchase order. True and correct copies of the two actual Toledo Mack purchase orders for MACSPEC 2001 are attached hereto as Exhibit D. The purchase orders which Toledo Mack sent, unlike the alleged purchase order attached to its court papers, make no reference whatsoever to PAI Industries, Inc. I never have, and never would, approve a lease of a copy of MACSPEC 2001 for PAI.

13.    Mack has a special section of its web site for explaining to authorized distributors how to order its parts publications, including MACSPEC 2001. A true and correct copy of that part of the Mack web site, www.macktrucks.com/partserv/Parts/partfrm.htm, is attached hereto as Exhibit E. Mack has rebuffed all efforts of members of the general who have attempted to order MACSPEC 2001.

5

14.     Mack has never consented -- and never would consent -- in any way to the distribution of MACSPEC, MACSPEC II or MACSPEC 2001 or any other confidential and proprietary parts database to any competitor of Mack, including PAI Industries, Inc.

I certify that the foregoing statements by me are true and correct to the best of my knowledge, information and belief. I understand that if any of the foregoing statements made by me are willfully false, I am subject to the penalties provided for under 18 Pa.C.S. § 4904 relating to unsworn falsifications to authorities.

Robert Yuzuik
2100 Mack Boulevard
Allentown, PA 18103

Dated: October 8, 2002

6

** TOTAL PAGE.02 **

ExHiBiT A



# ATTENTION: PARTS MANAGER

## January 2002

TO ALL MACK DEALERS AND SUBSIDIARIES:

Welcome to the updated edition of the MACSPEC® 2001 User's Guide. MACSPEC® 2001 is a Microsoft® Windows 32-bit application that replaced your MACSPEC® II system. Like MACSPEC® II, this system can only be loaded on one PC and networking will not work on this system. We have created this system for you in an effort to stay on the leading edge of technology. Our thanks go out to all the Mack Dealers that have provided us with their feedback and suggestions on this system. Many Dealers stated the most powerful tool available for aiding them in servicing their customers at the counter is the Wildcard Search (see page 96). They felt it allows them to find approximately 32% more chassis information than they could previously find and this feature was an excellent enhancement in assisting them to service their customers. We have included and updated many more examples in this User's Guide based upon your input to help you get the most out of this system. If you find any missing chassis or corrections to any arrangement or assembly, please fill out the MACSPEC® 2001 CD Correction Sheet and send it in. Your input is important to us. For new users, it is important that you read the installation instructions carefully and follow the steps listed.

We look forward to continuing to improve this product for you to help you better service your customers and have added information on the new FREED*M model. May you have a great and prosperous year!

Sincerely,

*Bob Yuzuik*

Bob Yuzuik, Manager
Publications and Product Information

cc: Distributor Principal

EXHIBIT B

# ALLENTOWN MACK
## SALES & SERVICE, INC.

1407 Bulldog Drive
Allentown, PA 18104

January 3, 2001

Phone (610) 395-6801
(800) 982-9640
Fax (610) 398-3982

TO:   ALL DISTRIBUTOR PARTS MANAGERS

On November 14 & 15, 2000, the National Distributor Parts Advisory Council conducted a meeting in Allentown, PA. Attached please review the minutes of the meeting and the issues and topics that were discussed.

I am pleased to report that many new programs are being implemented, and future programs are in progress to make the Mack Trucks Parts Operation one of the best in our industry.

Your Distributor representatives on the Parts Council are as follows:

      **Doug Hunter** - Wise Mack, Inc., Omaha, Nebraska
      **Ken Ables** - Cleveland Mack Sales, Inc., Cleveland, Texas
      **Earl Triplett** - Tri-State Mack, Inc., Memphis, Tennessee
      **Frank Kemski** - 401 Mack Ltd., Windsor, Ontario, Canada
      **Ray Page** - Central Indiana Mack Sales & Service, Inc., Indianapolis, Indiana
      **Guy Remenap** - Arizona Truck Center, Inc., Phoenix, Arizona
      **Bob Nuss** - Mack Trucks of Rochester, Inc., Rochester, Minnesota
      **Bob Dwyer** - Allentown Mack Sales and Service, Inc., Allentown, Pennsylvania

Please feel free to contact any of these representatives to discuss any issues or concerns you may have.

      Sincerely,

      ALLENTOWN MACK SALES & SVC., INC.

      Robert J. Dwyer
      Distributor Council Rep.

RJD/pr

cc:    B. Gibbon
       T. Ethier
       S. Torrence



Authorized Mack Distributor

Mack Trucks, Inc.
Parts Sub-Committee Meeting
November 14-15, 2000

**Notes**
Mack Trucks, Inc. and Distributor Parts Sub-Committee Meeting
November 14th and 15th, 2000
Allentown, PA

**Item # 1 & 10**
**Cores and Credits (using MackNet Parts)**
Mack and their supplier Neovation demonstrated the new cores and credit
program. The Beta testing will be at 5 dealers in December. Mack will release this
update in January 2001.

- Distributor Questions
a) Will this new program interface to the dealers in house management system
   such as ADP, Karmak, DSI?
   *At this point in time it will not.*
b) Will it interface with REMACK?
   *The first release will not, however, with the core system
   enhancements currently under development the link may be there
   when we release the new core bank program.*
c) Warranty cores are misleading to the dealers, it gives a false core unit on the
   bank report. When can this be fixed?
   *We will investigate this issue and respond back to you when and how a
   fix can be made if possible.*
d) Who will conduct the training for this new feature?
   *The Mack Institute, DPSM will be trained too*
e) Vendor core returns will they interface?
   *Not at present however the infrastructure is being built into the system
   to add vendor cores sometime in the future*

**Item # 2**
**Parts Locator system**
Mack presented an outline to the program. It was agreed to rename the program
Mack PartsLink. The name has been submitted for approval and registration by
Mack Trucks legal department. The group at the meeting agreed upon the
following points:
a) Multi Service Corporation the supplier and Mack PartsLink require a dealer
   application and credit approval to be established.
b) Distributor credit limit set at $10,000.
c) The recommendation is that distributors load inventory onto the program
   using the formula "parts with no sales in a month".
d) The distributor to distributor transfer price was agreed to be set at distributor
   net + 10 %
e) Dealer reimbursement will be the same as MackCharge today - weekly.

Mack Trucks, Inc.
Parts Sub-Committee Meeting
November 14-15, 2000

    f)   ADP and Karmak testing is completed. Karmak's instruction booklet was given to Group. DSI and other dealer management systems are not developed as of yet.

    g)   Some minor warranty reimbursement issues were unresolved. We will review with the warranty department.

    h)   A full announcement letter is being prepared. Launch is in the 1st quarter of 2001.

    i)   This enhancement is part of our no charge add on feature to the dealer MackNet (direct connect) product offering.

**Item # 2 (b)**
**Mack Truck Parts Clearing House:**
The distributors requested an update on the Mack personnel contact list.
*Mack will prepare a who to contact list by department.*

**Item # 2 (d)**
**Fleet Parts Sales**
This issue is being discussed at the NDAC level.

**Item # 2 (e)**
**Generic Parts Strategy**
Mack presented the name and logo for the generic parts program. There was discussion on how to successfully sell and market this product. The launch is delayed, as more discussions are needed in the New Year about the product line.

**Item # 2 (f)**
**Parts Delivery Problems**
Distributor complaints received regarding stock shipments from the PDC taking up to 4-5 days. Order splitting by Atlanta PDC, PRS delays and rejections taking up to 90 days to receive full credit.
*Mack believes that all areas noted above is now corrected All or most of the problem was inbound freight and backlog. Mack advised the council of further improvements in the fill rate. They presented charts show steady improvement and in fact they have reached a 97.3% network fill rate. This fill rate of 97.3% is a market leading level when bench marked against our competitors in a recent study. Please see the dealer parts survey letter for further details and remedies to these issues.*

**Item # 3**
**MackCharge download**
Dealers asked if they can automate the MackCharge program by allowing an electronic download of the dealers management system generated invoice directly to Multi Service Corporation.
*Mack is in the process of developing an automatic download interface with ADP and Karmak and Mack IS department.  Dealers will download to Mack*

Mack Trucks, Inc.
Parts Sub-Committee Meeting
November 14-15, 2000

*and Mack will forward to Multi Service Corporation. We expect the completion of this project by 1ˢᵗ quarter 2001.*

## Item # 4
### Mack Direct – Order Entry
Mack advised the distributors that the PDC order entry desk would be discontinued January 1, 2001. Dealers must submit the orders electronically. *An explanatory letter is being sent out to the dealers detailing the issues and remedies.*

## Item # 5
### Partners for Growth
Both parties agreed that the incentive program requires improving. *Mack will respond to this issue as soon as possible.*

## Item # 6
### Centralized Core Return Center
The dealers made Mack aware business would increase due to the ease of doing business, purchasing and returning cores. *Mack is investigating this item in 2001.*

## Item # 7
### Ad Planner
Mack presented a sample of the dealer advertising planner book. We thanked those dealers who contributed to the publication. The planner is being printed and the CD-ROM is being prepared. We anticipate distributing the planner before the year-end. The portion that is finalized is USA English version, Canada English and French. The planner includes both parts and service advertisements. We anticipate completing the Spanish version in early 2001.

## Item # 8
### Service Dealer Override
The council requested that Mack update them on the current program. The dealers need to be refreshed on the existing program. What % rebate does which vendors provide?
The council suggested that Mack investigate changing the current program to a flat rate rebate system.
*Mack will review and respond by the end of the first quarter 2001.*
The pricing issue to large fleet accounts like Waste Management is still an unresolved item.
*The service dealer pricing issue is to be removed from the agenda for future meetings.*
Mack believes the service dealer needs product and promotional information to be sent to them on a regular basis. We suggested that the marketing material Mack sends to distributors today should be sent to service dealers as well.

Mack Trucks, Inc.
Parts Sub-Committee Meeting
November 14-15, 2000

*Mack will commence sending parts marketing material to the service
dealers in early 2001, since the council believed this would be beneficial to
both parties.*

## Item # 11, 12 & 2c
### Pricing Issue 500 Part Numbers

The management at Mack trucks apologized for dealerships having to keypunch
part numbers and not having a tape to load. We are investigating with the dealer
DMS companies ways in which to automate the updating of prices.

The dealer council understood the reasons for Mack's decision to reverse the
pricing on these numbers.

Dealer's suggested more investment in advertising this type of program would
have improved the potential for a higher success rate.

Mack presented the dealer survey results on the 500 part number pricing.

## Item # 13
### V.O.R. (Truck Down)

A presentation of the new V.O.R. Truck Down process was made to the dealer
council. A letter announcing the new process and explaining the procedures for
both the dealer and Mack is to be released by the end of November.

## Item # 14
### Distributor – New item

Distributors believe Mack and the dealer would benefit by producing a
comprehensive product line catalogue — similar to the old Mack Fax or All-
Makes book. It was suggested that Mack produce a catalog reference book. It
should be similar to some of our competition but add all the product lines we
offer. The council believed that it would install confidence at the counter level,
improve relationship and trust with customers and increase overall sales potential.
The dealers also suggested that they may be willing to pay on a per issue basis as
it would be a very useful sales tool.

*There is a large amount of funding needed for this type of project. The
time element is 9 to 12 months from start to finish. We will investigate the
cost, resources required and the timeline to produce such a catalog.*

## _AGENDA ITEMS NDAC PARTS SUB- COMMITTEE_
### _November 14, 15, 2000_

| | |
|---|---|
| 1. CORES AND CREDITS (USING MACK NET) | MACK |
| 1A. MACK SPEC 2000 | ( NEOVATIONS ) |
| | |
| 2. PARTS PROBLEMS | |
| 2A. PARTS LOCATOR | MACK ( TEAM ) |
| 2B. MACK PARTS HELP CLEARING HOUSE | DEALERS |
| 2C. VENDOR PARTS PRICING | DEALERS |
| 2D. FLEET PARTS SALES | DEALERS |
| 2E. GENERIC PARTS | DEALERS |
| 2F. PARTS DELIVERY PROBLEMS | DEALERS |
| | |
| 3. MACK CHARGE | MACK |
| | |
| 4. MACK DIRECT PROBLEMS | DEALERS |
| | |
| 5. PARTNERS FOR GROWTH | MACK |
| | |
| 6. CENTRALIZED CORE RETURN | DEALERS |
| | |
| 7. AD PLANNER ( SALES TOOL ) | MACK |
| | |
| 8. SERVICE DEALER ISSUES | MACK |
| | |
| 10. MACK BILLING AND CREDITS | MACK |
| | |
| 11. DEALER PARTS SURVEY | MACK |
| | |
| 12. PRICE CHANGES | MACK |
| | |
| 13. VOR ( TRUCK DOWN ) | MACK |

EXHiBiT C

MACSPEC® 2001 User's Guide   January 2002

# Instructions for Installing MACSPEC® 2001

1. Start Windows and make sure that you close all open applications.

2. Insert the Arrangement and VIN Locator CD in your CD drive.

3. In Windows 95/98/2000/ME/NT, select Run after selecting Start button.

4. In the Command Line box, type the letter of the drive that contains the CD-ROM followed by a colon and \ms2k-setup. (EXAMPLE:  d:\ms2k-setup)



Figure 1.1

5. At the first dialog box, click on the **Next** button to start the installation or the **Cancel** button to quit.

EXHIBIT D



# MACSPEC® 2001 Order Form

*Please fill out this form and return it to:*

Mack Trucks, Inc.
ATTN: Bob Yuzuik
2100 Mack Boulevard, 3W3
Allentown, PA 18103
FAX (610) 709-2770 - PHONE (610) 709-3626

*[handwritten: NEED Ship To Cox]*

*[handwritten: CRAIG NEW ORDER]*

*[handwritten: CR 2/12]*

☒ Yes, I would like to lease __/__ MACSPEC® 2001 Systems at an additional charge of $275.00 (US) per month for each system.

BILL TO CODE: *D 567 · /*          SHIP TO CODE: *D 567 ·*

Requisition *[handwritten: PIR 21802]*
Number          Quantity __/__          Date _____

BILL TO CODE: _____          SHIP TO CODE: _____

Requisition
Number _____          Quantity _____          Date _____

Authorized By *[signature]*
Title *Parts*

*[handwritten: CRAIG STATUS ? B.G. 3/15]*

Sincerely,

*[signature: Bob Yuzuik]*

Bob Yuzuik
Manager, Publication and
Production Information

cc:   B.Armstrong, R.Bartolucci, D.Castro, D.Covey, R.Davis, D.Diekant, Distributor Principles, DPM, S.Erney,
T.Ethler, F.Fonsecs, E.Gibbon, E.Godin, A.Hartwig, M.Kahane, R.Kint, K.Kubrusheffski, J.Laskowski, J.Lutz, C.Plessl,
R.Pugh, P.Stanton, D.Shell, D.Silvert, S.Turner, M.Welsh, R.Wiley, D.Wurzibacher

01/29/2002



# MACSPEC® 2001 Order Form

*Please fill out this form and return it to:*

Mack Trucks, Inc.
ATTN: Bob Yuzuik
2100 Mack Boulevard, 3W3
Allentown, PA 18103
FAX (610) 709-2770 – PHONE (610) 709-3626

☒   Yes, I would like to lease ___1___ MACSPEC® 2001 Systems at an additional charge of $275.00 (US) per month for each system.

BILL TO CODE: **D-567**

SHIP TO CODE: **D567**

Toledo Mack Sales & Service Inc.

Toledo Mack Sales & Service Inc.

2124 Front Street

2124 Front Street

Toledo, OH · 43605

Toledo, OH 43605

Requisition Number **DIR 205023**    Quantity **1**    Date **2/7/02**

BILL TO CODE: _____

SHIP TO CODE: _____

Requisition Number _____    Quantity _____    Date _____

Authorized By _Jim Fett_

Title _Parts_

Sincerely,

_Bob Yuzuik_

Bob Yuzuik
Manager, Publication and
Production Information

cc:   R.Armstrong, R.Bartolucci, D.Castro, D.Cavey, R.Davis, D.Dickens, Distributor Principles, DPM, E.Ersoy, T.Ethier, P.Fenanza, B.Gibbon, E.Godin, A.Hertzog, M.Kehase, R.Kint, K.Kubeshefski, J.Laskowski, J.Lutz, C.Piazzi, R.Pugh, P.Stanton, D.Sholl, D.Sivart, S.Turner, M.Walsh, R.Wiley, D.Wurstlbacher

01/29/2002

EXHIBIT E

## Guide to Ordering Parts Publications

### AUTHORIZED MACK DEALERS GUIDE
### TO ORDERING PARTS PUBLICATIONS

### ORDERING INSTRUCTIONS AND FORM NUMBER

*NOTE:* When requisition form BR313 is noted below as the required order form for a Parts Publication or Specifications product, please mail or fax your request to the corresponding address or fax number as indicated on the required product.

DO NOT SEND REQUESTS FOR THESE PRODUCTS TO PACESETTER.

**Parts Publications Products**

### MACSPEC® 2001 SYSTEMS (SOFTWARE ONLY)



The MACSPEC 2001 system is an electronic service parts catalog system on CD-ROM discs. This is a complete system that contains chassis records, service parts lists, parts suspension and major unit serial number data. The system provides for a multitude of methods and means to search for service parts information in a fast and efficient manner.

Contact the Parts Publications Department for a copy of the order form and license agreement.
**Send to:** MACK TRUCKS, INC., PARTS PUBLICATIONS DEPARTMENT (3W3), BOX M, ALLENTOWN, PA 18105-5000
**Fax to:** 1 - 800 - 945-0737 or 1 - 610 - 709-3088

### CUSTOMIZED PARTS BOOKS (PAPER) (CLASS 8)



(Available For Units Built from 1976 to Present)
Customized Parts Books (paper) are produced upon request and provide service parts information for a single vehicle or multiple vehicles built under a single General Sales Order. The Book is comprised of a chassis record and illustrated service parts lists that reflect the parts used to build that vehicle. The book is hard covered, chicago screw bound and contains index tabs.
**Form No.** ST25 Revised (2/95)
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL ROAD, YORK, PA 17402-9602

### ELECTRONIC PARTS BOOKS SYSTEMS CD-R

(CLASS 8 VEHICLES) (Available For Units Build From 1985 to Present)
Electronic Parts Book Systems provide a user with customized parts book data on more efficient CD-ROM discs.
**Form No.** ST25E 9/96
**Send To:** GGS INFORMATION SERVICES, ATTENTION: MACK

PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602



## MACK ENGINE PARTS BOOKLETS (PAPER)
(For Mack manufactured engines only - must order by "11GB" part
number)
Mack Engine paper Parts Books provide the user with engine service
parts data and service kits for a specific Mack "11GB" Engine Assembly.
**Form No.** Use BR313 or ST25
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602

## ENGINE PARTS BOOK SYSTEMS (CD-R)
(For Mack manufactured engines only - must order by "11GB" part
number)
Mack Engine Parts Books on a CD-R provide the user with same service
parts and service kits data for a specific Mack "11GB" Engine Assembly
as the paper engine book, except on a more efficient CD-R that loads into
your P.C. hard drive.
**Form No.** Use BR313 or ST25E
**Send to**: GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602



## COLLISION BOOKS (CH600, CL, CV500, CX, DM, LE600, MC/MR, MH, R600, RB600, RD600, RL/RS, RW and U600)
Collision books are soft covered and spiral bound and provide the user
with the necessary part numbers to price estimate the cost to repair
vehicles that have sustained damage.

These books also include quick reference and optional parts information
for that model vehicle.
**Form No.** BR313 Revised (3/99)
Send to: GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602

## CUSTOMIZED PARTS BOOK BLUE COVERS (CLASS 8)
Parts book covers are available in blue vinyl only. Specify width of spine
required, 2-1/2" or 3" or 4", when ordering.

**Form No.** BR313 Revised (3/99)
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602



**PARTS BOOKS YELLOW INDEX TABS (CLASS 8)**
**Form No.** BR313 Revised (3/99)
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602

---

**SLEEPER BOX BOOKLETS (ABLE BODY, MILLENNIUM and
VISION)**
**Form No.** BR313 Revised (3/99)
**Send to:** GGS INFORMATION SERVICES, ATTENTION: MACK
PARTS DATA DISTRIBUTION DIVISION, 3265 FARMTRAIL
ROAD, YORK, PA 17402-9602



Back

*Copyright © 1996 - 2002 Mack Trucks, Inc. All rights reserved.*

## CERTIFICATE OF SERVICE

I, Barak Bassman, hereby certify that on April 22, 2003, a true and correct copy

of the foregoing Counterclaim Plaintiff Mack Trucks, Inc.'s Memorandum of Law in Opposition

to Counterclaim Defendant's Motion to Dismiss was served via hand delivery upon the

following:

Wayne A. Mack, Esq.
J. Manly Parks
Keith Verrier
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396

_____
Barak A. Bassman