# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TOLEDO MACK SALES & | : | |
| SERVICE, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  02-CV-4373 |
| | : | |
| v. | : | |
| | : | |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

_____

|  |  |
|---|---|
| MACK TRUCKS, INC., | : |
| | : |
| Counterclaim | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| TOLEDO MACK SALES & | : |
| SERVICE, INC., | : |
| | : |
| Counterclaim | : |
| Defendant. | : |


### MEMORANDUM

BUCKWALTER, S.J.                                                    March 29, 2005

   Presently before the Court are Defendant's Motion for Summary Judgment and

Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims.  For the reasons

stated below, Defendant's Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion

for Summary Judgment as to Defendant's Counterclaims is **DENIED**.

## I.  INTRODUCTION

Toledo Mack Sales & Service, Inc. ("Toledo Mack" or "Plaintiff/Counterclaim Defendant"), commenced this antitrust action against Mack Trucks, Inc. ("Mack Trucks," "Mack" or "Defendant/Counterclaim Plaintiff") in the Eastern District of Pennsylvania on July 1, 2002.  Toledo Mack's Complaint contained seven causes of action:  (1) agreements in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) price discrimination in violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a); (3) violation of Section 445.1574 of the Michigan Franchise Investment Law; (4) violation of the Ohio Motor Vehicle Dealer Law, OH. REV. CODE ANN. § 4517.59; (5) tortious interference with prospective business relations; (6) breach of the Distributor Agreement; and (7) breach of the implied covenant of good faith and fair dealing.

Mack Trucks filed a Counterclaim on August 22, 2002, alleging misappropriation of trade secrets and confidential business information, copyright infringement, breach of contract, and civil conspiracy.  On April 2, 2004, Mack Trucks moved for summary judgment as to Toledo Mack's seven causes of action, to which Toledo Mack responded.  Additionally, on April 2, 2004, Toledo Mack moved for summary judgment as to Mack Trucks' Counterclaims, to which Mack Trucks responded.

On March 27, 2003, based on Toledo Mack's misappropriation of trade secrets, Mack Trucks sent notice of termination of Toledo Mack's distributorship, which Toledo Mack protested.  On July 30, 2004, the Hearing Examiner upheld Toledo Mack's protest and found that Mack Trucks did not have good cause to terminate Toledo Mack's distributorship.  On August

30, 2004, the Hearing Examiner's ruling was approved by the Ohio Motor Vehicle Dealer's

Board.  On October 4, 2004, the last brief was filed.

## II.  STANDARD OF REVIEW

A motion for summary judgment will be granted where all of the evidence

demonstrates "that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A dispute about a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving

party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Since a grant of summary

judgment will deny a party its chance in court, all inferences must be drawn in the light most

favorable to the party opposing the motion.  United States v. Diebold, Inc., 369 U.S. 654, 655

(1962); Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir.

1992) (stating that in a motion for summary judgment, "where the non-moving party's evidence

contradicts the movant's, the non-movant's must be taken as true.").

Although the Supreme Court has emphasized that *Rule 56* makes absolutely no

distinction between antitrust and other cases, the Supreme Court has cautioned that "summary

procedures should be used sparingly in complex antitrust litigation where motive and intent play

leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses

thicken the plot."  Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 473 (1962).  Those three

factors are clearly present in this case.

3

## III.  MACK TRUCKS' MOTION FOR SUMMARY JUDGMENT

Defendant Mack Trucks moves for summary judgment as to all of Toledo Mack's claims, asserting that there are no disputed issues of material fact to submit to a jury.  We disagree, for the reasons provided herein.

### A.    Section 1 of the Sherman Act

Plaintiff Toledo Mack alleges that through three horizontal agreements, Defendant Mack Trucks has unreasonably restrained trade in violation of Section 1 of the Sherman Act ("Section 1").[1]  First, Toledo Mack alleges that in 1989, Mack Trucks conspired with its dealers–Toledo Mack's horizontal competitors–to restrain price competition and allocate markets by restricting sales assistance discounts to sales occurring within a dealer's local area of responsibility ("AOR").  Second, Toledo Mack alleges that Mack Trucks conspired with McClain, McNeilus, and Heil ("Body Builders"), to restrain price competition and allocate markets.  Third, Toledo Mack alleges that Mack Trucks conspired with the three Body Builders to refrain from selling to independent distributors.

As to the first agreement, Mack Trucks contends at the outset that: (1) there is no evidence of any exclusive territories, and (2) the claim is time-barred by the statute of limitations because there is no evidence of any post-1989 conspiracy.  As to the last two agreements, Mack Trucks argues that summary judgment should be granted because Toledo Mack was not injured by the asserted violations, and thus has no standing to challenge the violations.

---

1.  A conspiracy is horizontal "when a number of competitor firms agree with each other and at least one of their common suppliers or manufacturers to eliminate their price-cutting competition by cutting his access to supplies." Rossi v. Standard Roofing, Inc., 156 F.3d 452, 465 (3d Cir. 1998).

Section 1 of the Sherman Act provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States...is declared to be illegal." 15 U.S.C. § 1 (2004). Section 1 only prohibits contracts, combinations, or conspiracies that unreasonably restrain trade. Bus. Elec. Corp. v. Sharp Elec. Corp., 485 U.S. 717, 723 (1988). Some restraints of trade are *per se* unreasonable, while others require an elaborate analysis pursuant to the "rule of reason."[2]  See InterVest Inc. v. Bloomberg, L.P., 340 F.3d 144, 158 (3d Cir. 2003).

Restraints of trade are *per se* unreasonable when they are "manifestly anticompetitive" or "would always or almost always tend to restrict competition." Rossi, 156 F.3d at 461. Because of their "pernicious effect on competition and lack of redeeming virtue," these restraints are "conclusively presumed to unreasonably restrain competition" without an elaborate analysis. Id. These types of restraints are thus considered *per se* violations of Section 1.

Horizontal territorial limitations are *per se* violations of Section 1 of the Sherman Act. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 223 (1940). Horizontal territorial limitation agreements therefore must be analyzed under the *per se* standard. As a result, Plaintiff

---

2. In order to establish a violation of Section 1 under the "rule of reason," a plaintiff must prove the following: (1) defendants contracted, combined, or conspired among each other; (2) the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) the plaintiffs were injured as a proximate result of that conspiracy. Tunis Bros. Co. v. Ford Motor Co., 763 F.2d 1482 (3d Cir. 1985).

needs only prove that:  (1) defendant contracted, combined or conspired with its dealers/body

builders; and (2) the conspiracy was the proximate cause of the plaintiff's injury.[3]

         1.     <u>First Agreement</u>

       Toledo Mack first alleges that Mack Trucks conspired with its dealers to restrain

price competition and allocate markets by restricting sales assistance discounts to sales occurring

only within a dealer's AOR.  Plaintiff further contends that this conspiracy began in 1989, and

through Mack Trucks' efforts to fraudulently conceal it, has continued well over the statute of

limitations period.  In turn, Defendant Mack Truck argues that this claim is time-barred by the

statute of limitations because there is no evidence of any post-1989 conspiracy, and there is no

evidence of any exclusive AORs.

       In an antitrust case, the question of the commencement of the statute of limitations

is a question of fact to be resolved by the jury or the trier of fact.  <u>Morton's Market, Inc., v.

Gustafson's Dairy, Inc.</u>, 198 F.3d 823, 828 (11th Cir. 1999); <u>In re Beef Indust. Antitrust Litig.</u>,

600 F.2d 1148, 1169-70 (5th Cir. 1979).  Where the plaintiff's evidence suggests the defendant

committed overt acts in furtherance of a conspiracy during the statutory period, summary

judgment on statute of limitations grounds is inappropriate.  <u>Pennsylvania Dental Assoc. v. Med.

Serv. Assoc.</u>, 484 U.S. 851 (1987) ("there is evidence of overt acts in furtherance of the

conspiracy occurring within the limitations period...therefore, even if the four-year statute of

limitations [is] applicable...the claim [is] not time-barred.").

---

3.  Because *per se* analysis applies, prongs two and three of the rule of reason test are conclusively presumed
satisfied, and do not need to be addressed.  <u>Rossi</u>, 156 F.3d at 464-65.

In this case, Toledo Mack's evidence suggests that the defendant committed overt acts in furtherance of the price fixing and market allocation conspiracy during the statutory period. For instance, Plaintiff evidences that Mack Trucks delayed sales assistance discounts so Toledo Mack would lose sales; refused to ship parts to customers outside of Toledo Mack's AOR; imposed arbitrary restrictions on Toledo Mack's ability to compete with other Mack dealers outside Toledo Mack's local AOR; failed to grant Toledo Mack the discounts available to other competing dealers; and terminated Toledo Mack's franchise. Therefore, genuine material issues of fact exist as to whether the price fixing and market allocation conspiracy between Defendant and its dealers is a continuing conspiracy.

Fraudulent concealment of a conspiracy also tolls the statute of limitations in an antitrust case. To establish fraudulent concealment and toll the statute of limitations, three elements must be present: (1) defendant must wrongfully conceal its actions; (2) the plaintiff must fail to discover the operative facts or the basis of its cause of action within the statute of limitations period; and (3) plaintiff must exercise due diligence until discovery of the facts. Tetratec Corp. v. E.I. Dupont de Nemours & Co., 1991 U.S. Dist. LEXIS 2589, *14-19 (E.D. Pa. 1991). A self-concealing conspiracy may satisfy the wrongful concealment element of the fraudulent concealment doctrine. Bethlehem Steel Corp. v. Fischbach and Moore, Inc., 641 F. Supp. 271, 275 (E.D. Pa. 1986).

Here, Toledo Mack has raised genuine issues of fact as to fraudulent concealment. Although Defendant argues there is no evidence of fraudulent concealment, the evidence adduced by Plaintiff describes affirmative acts allegedly performed by Mack Trucks to conceal the conspiracy. Toledo Mack alleges that prior to this litigation, because it did not have access to

7

Mack Trucks' internal records, it had no way of knowing that Toledo Mack consistently received lower sales assistance discounts than other competing dealers. Additionally, Toledo Mack notes that when it inquired about the sales assistance discount issue, it was advised that it was being treated equally with other dealers. Accordingly, genuine material issues of fact exists as to whether the statute of limitations was tolled by Mack Trucks' fraudulent concealment of the conspiracy.

Upon a complete review of the evidence, the Court determines that the record is replete with genuine issues of material facts as to whether Toledo Mack's claim against the price fixing and market allocation conspiracy between Mack Trucks and its dealers is barred by the statute of limitations. Accordingly, summary judgment is not appropriate.

Defendant Mack Truck further contends there is no evidence of an agreement to geographically divide territories or allocate customers. Defendant claims that Toledo Mack's evidence is insufficient to show concerted action between Defendant and its dealers or the identity of Defendant's co-conspirators.

The existence of an agreement is "the very essence of a *section 1* claim." Alvord-Polk, Inc. v. Schumacher & Co., 37 F. 3d 996, 999 (3d Cir. 1994). A plaintiff may rely on direct or circumstantial evidence to show that genuine issues of fact exist as to concerted action in responding to a motion for summary judgment. Rossi v. Standard Roofing, Inc., 156 F.3d 452, 465 (3d Cir. 1998). Where a plaintiff solely relies on circumstantial evidence, inference from that evidence must "exclude the possibility that the alleged conspirators acted independently." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986)(citing Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 764 (1984)). In other words, there must be some

evidence which would support a finding of concerted behavior. Big Apple BMW, 974 F.2d at 1365.

However, when a plaintiff offers direct evidence of concerted action, the analyses set forth in Matsushita and Monsanto do not apply. Alvord-Polk, Inc. v. Schumacher & Co., 37 F. 3d 996, 1001 (3d Cir. 1994). In Big Apple BMW, the Third Circuit held that if an "opponent has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent." Big Apple BMW, 974 F.2d at 1363.

Because Toledo Mack has presented direct and circumstantial evidence from which a rational jury or trier of fact may infer that Mack Trucks advanced pretextual reasons for its policies, and might in turn infer that Mack Trucks acted in concert with its dealers to fix prices and allocate markets in violation of Section 1 of the Sherman Act, the Court finds that summary judgment as to this claim is also inappropriate.

2.    Second and Third Agreements

Toledo Mack also alleges that through two other horizontal agreements, Mack Trucks has unreasonably restrained trade in violation of Section 1 of the Sherman Act. Toledo Mack contends that Mack Trucks conspired with McClain, McNeilus, and Heil, the largest Body Builders, to restrain price competition and allocate markets. Toledo Mack specifically argues that Mack Trucks had an agreement with the Body Builders that: (1) the Body Builders will not sell to third-party distributors, or to established Mack customers; and (2) the Body Builders will

receive preferential discounted pricing on Mack Trucks, and Mack will not provide similar preferential discounted pricing to Toledo Mack and other Mack dealers.

Mack Trucks argues summary judgment should be granted because Toledo Mack was not injured by the agreements with the Body Builders, and thus has no standing to assert Section 1 violations. Specifically, Mack Trucks alleges that the agreements with the Body Builders "would decrease competition for Mack dealers...and Toledo Mack would face less competition." Mack Trucks relies on <u>Matsushita</u> and <u>ARCO</u> to support its premise that "an antitrust plaintiff, like Toledo Mack here, does not have standing to sue when it stands to gain from the alleged agreements to restrain trade." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 582-83 (1986); <u>Atlantic Richfield Co. ("ARCO") v. USA Petroleum Co.</u>, 495 U.S. 328, 336-37 (1990).

In turn, Toledo Mack argues that the agreements amounted to price fixing which was detrimental to Toledo Mack in its attempts to compete with the Body Builders. <u>See</u> Email from J. Favia to C. Bond 4/23/03, Ex. 145. Toledo Mack then presents excerpts of Dr. Gollop's Report, Toledo Mack's expert, that suggest Toledo Mack was injured by the agreements. <u>See</u> Gollop Report at Section 4.3.1., Section 4.3.2., Ex. 14. Plaintiff further posits and evidences that the cases cited by Defendant, <u>Matsushita</u> and <u>ARCO</u>, are distinguishable from the case at hand because Toledo Mack "does not stand to gain one iota from the conspiracy between Mack Trucks and the Body Builders." <u>Pace Elec. Inc., v. Canon Computer Sys., Inc.</u>, 213 F.3d 118, 124 (3d Cir. 2000).

In <u>Angelico v. Lehigh Valley Hosp., Inc.</u>, 184 F.3d 268, 274 (3d Cir. 1999), the Third Circuit held that to secure standing in an antitrust case, Plaintiff must establish:

10

(1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

After applying the <u>Angelico</u> analysis to this case, the Court finds that Toledo Mack has standing to challenge the agreements between Mack Trucks and the Body Builders. First, Toledo Mack has adduced evidence indicating that the agreements between Mack Trucks and the Body Builders were intended to and have caused harm to Toledo Mack because it received less favorable pricing which affected its ability to compete with Body Builders for sales to non-established Mack customers. Second, there is evidence in the record that suggests that Toledo Mack's injury–lost sales to existing and potential customers–is the direct result of horizontal agreements to allocate markets and fix prices, precisely the type of injury the antitrust laws are intended to redress.

Lastly, the record offers evidence that leads the Court to conclude that Toledo Mack has satisfied the third, fourth, and fifth factors of the <u>Angelico</u> standing analysis. The Court finds that summary judgment is denied as to this claim.

## B.    Robinson-Patman Act

Toledo Mack avers a secondary line violation, claiming Mack Trucks' price discrimination injured competition among Mack Trucks' customers, i.e. Toledo Mack, the Body Builders, and other Mack dealers. Specifically, Toledo Mack argues that Mack Trucks violated

the Robinson-Patman Act ("RPA") because it sold chassis of like grade and quality to the Body

Builders and other Mack distributors at preferential prices.

        To prove its claim, Toledo Mack must allege and show that:  (1) Mack Trucks'

sales to Toledo Mack and Mack Trucks' Favored Purchasers involved interstate commerce; (2)

Mack Trucks discriminated in price between Toledo Mack and at least one other favored

purchaser; (3) the trucks Mack sold at disparate prices were of "like grade and quality"; and (4)

Mack Trucks' price discrimination had a prohibited effect on competition.  See Texaco Inc. v.

Hasbrouck, 496 U.S. 542, 556 (1990); Bacon v. Texaco, Inc., 503 F.2d 946, 948 (5th Cir. 1974).

In addition, because the Robinson-Patman Act prohibits price discrimination "between different

purchasers," 15 U.S.C. § 13(a), Toledo Mack has to show there were actual sales at two different

prices to two different Mack customers, i.e. a sale to itself and a sale to another Mack favored

purchaser.  Crossroads Cogeneration Corp. v. Orange & Rockland Utils., 159 F.3d 129, 142 (3d

Cir. 1998) ("[m]erely offering lower prices to a customer does not state a price discrimination

claim."); Shaw's Inc. v. Wilson-Jones Co., 105 F.2d 331, 333 (3d Cir. 1939).  Accordingly,

Toledo Mack must show it is a "purchaser," within the meaning of the RPA.

        Mack Trucks contends that summary judgment should be granted as to this claim

because Toledo Mack cannot meet any of the RPA's four requirements.  Mack Trucks avers that:

(1) there is no evidence of actual competition between Toledo Mack and Mack Trucks' favored

purchasers; (2) there is no evidence that the trucks Mack sells are of "like grade and quality;" (3)

there is no evidence of actual injury in the form of lost sales to Body Builders; and (4) Toledo

Mack cannot meet the "two completed sales" requirement because it is not a "purchaser."

1.    <u>Actual Competition</u>

The RPA requires that at least one of the alleged discriminatory sales occur "in commerce," or cross a state boundary.  <u>See Gulf Oil Corp. v. Copp Paving Co.</u>, 419 U.S. 186, 200, 42 L. Ed. 2d 378, 95 S. Ct. 392 (1974).  Furthermore, to establish a violation of the Act in a secondary line case, a plaintiff must prove that it engaged in actual competition with the favored purchasers at the time of the discriminatory sales.  <u>Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.</u>, 63 F.3d 1267, 1272 (3d Cir. 1995).  "The standard for showing actual competition is where, as of the time the price differential was imposed, the favored and disfavored purchasers competed at the same functional level, i.e. all wholesalers or all retailers, and within the same geographic market."  <u>Best Brands Beverage, Inc. v. Falstaff Brewing Corp.</u>, 842 F.2d 578, 585 (2d Cir. 1987).

Mack Trucks contends Toledo Mack has no evidence of actual competition between Toledo Mack and Mack Trucks' favored purchasers.  Toledo Mack has presented evidence indicating that it competed against Mack Trucks' favored purchasers and Body Builders during the entire time Mack Trucks allegedly charged its discriminatory prices.  Toledo Mack further posits that it competed nationwide to sell Mack Trucks to its end-users, and it actually made truck sales throughout the United States.

The question of the existence of competition between two purchasers is a question of fact to be resolved by the jury or the trier of fact.  After a careful and complete review of the evidence, the Court determines that the record contains genuine issues of material fact as to the existence of competition between Toledo Mack and Mack Trucks' favored purchasers.  As such, the Court will allow a jury to determine the issue.

2.    Two Purchase Requirement

"The Robinson-Patman Act applies where a seller discriminates in its pricing to two different purchasers."  15 U.S.C. § 13(a) (2004).  Mack Trucks contends competitive bidding situations do not implicate the RPA because an unsuccessful bidder is not a purchaser.  Mack Trucks emphasizes that some of Toledo Mack's proof involves situations where Toledo Mack did not purchase trucks from Mack.  Toledo Mack did not purchase trucks from Mack in the head-to-head competition with another dealer for the Florida Rock contract, for instance, because the other dealer got the contract.  Similarly, Toledo Mack did not actually purchase trucks from Mack in situations where Toledo Mack compared its unsuccessful bid to other dealers' successful sales based on sales assistance concessions.

An unsuccessful bidder is not a purchaser within the meaning of the RPA.  See Shaw's Inc. v. Wilson-Jones Co., 105 F.2d 331, 333 (3d Cir. 1939); Crossroads Cogeneration, 159 F.3d at 142 ("[m]erely offering lower prices to a customers does not state a price discrimination claim.").  When Toledo Mack unsuccessfully bid on contracts because Mack Trucks' price concessions were not favorable enough to obtain the contracts, Toledo Mack did not actually purchase trucks from Mack.  Mack Trucks may have offered to sell trucks to Toledo Mack at a higher price than it offered to other dealers, but mere offers to sell do not violate the RPA.

This conclusion is consistent with the decision of some courts that hold that price discrimination in the competitive bidding process does not violate the RPA because only one of the two competitors actually made a purchase.  See, e.g., Crossroads Cogeneration, 159 F.3d at 142 ("at least two other circuits [the Fourth and Eighth] have required dismissal when two sales

14

are not alleged."); Shaw's Inc., 105 F.2d at 333 ("[The RPA] does not compel a seller of commodities to offer them to all persons who may wish to bid upon a contract to resell them to a third party."); Vanco Indus. v. Specialty Plastic Prods., Inc., 1989 U.S. Dist. LEXIS 4450, *5 (E.D. Pa. 1989) ("price quotations or offers to sell are not sufficient to show price discrimination under the [RPA], the seller must have actually sold its products."); Reeder-Simco GMC v. Volvo GM Heavy Truck, No. 02-2462, 2004 U.S. App. LEXIS 14231 (8th Cir. 2004) ("price discrimination in the competitive bidding process does not violate the RPA because only one of the two competitors...makes a purchase."). But see American Can Co. v. Bruce's Juices, Inc., 187 F.2d 919, 924 (5th Cir. 1951) (proposing an exception to the "two purchase requirement" when the plaintiff's failure to purchase is due to defendant's discriminatory pricing practices).

In this case, however, there is evidence that indicates Toledo Mack was more than an unsuccessful bidder. Toledo Mack supplemented its expert report and compared those successful sales to actual sales made by other dealers during the same time period. Toledo Mack alleges that its supplemental analysis once more reveals a pattern of price discrimination against Toledo Mack with respect to "actual sales." Although Mack Truck challenges the sufficiency of the actual purchase-to-purchase comparison on the ground that the report shows no discrimination, the Court finds that the successful bids noted in Toledo Mack's supplemental expert report gives Toledo Mack "purchaser" status. Thus, Toledo Mack is entitled to pursue a claim for price discrimination under the RPA. See DeLong Equip. Co. v. Washington Mills Electro Minerals Corp., 990 F.2d 1186, 1202 (11th Cir. 1993) (holding that even "minimal sales" made by an otherwise unsuccessful bidder are enough for bidder to state an RPA claim).

15

3.    <u>Like Grade and Quality</u>

To establish an RPA violation, Toledo Mack must show the comparative sales involve trucks of like grade and quality.  15 U.S.C. § 13(a).  Items are not of like grade and quality "if there are substantial physical differences in products affecting consumer use, preference or marketability."  <u>FTC v. Borden Co.</u>, 383 U.S. 367 (1966); <u>Checker Motors Corp. v. Chrysler Corp.</u>, 283 F. Supp. 876, 889 (S.D.N.Y. 1968), <u>aff'd</u>,  405 F.2d 319 (2d Cir. 1969).  Mack Trucks argues the sales-to-sales comparisons made by Toledo Mack involve trucks with different major components that affect consumer preference and marketability.  In support of its contention, Mack Trucks points to declarations which aver that differences in truck components–particularly engine types and number of axles–affect pricing and sales assistance concessions, and therefore, influence a consumer's decision to purchase.  Toledo Mack, however, offers declaration testimonies, showing that any differences in truck components are inconsequential since the trucks sold to Toledo Mack and Mack's favored purchasers were of "like grade and quality."

Upon review of the record, and as demonstrated above, this Court finds that the question of whether the trucks sold to Toledo Mack and Mack's favored purchasers were of "like grade and quality" presents a genuine issue of fact disputed by the parties and should be reserved for the jury to decide.  Thus, this issue cannot properly be resolved upon summary judgment.

4.    <u>Injury/Damages</u>

a.    Competitive Injury

The RPA prohibits price discrimination "where the effect of such discrimination may be substantially to lessen competition...or to injure, destroy, or prevent competition."  15

U.S.C. § 13(a) (2004).  However, the RPA does not "require that the discrimination must in fact have harmed competition, but only that there is a reasonable possibility that they 'may' have such an effect."  Corn Prods. Ref. Co. v. Fed. Trade Comm'n, 324 U.S. 726, 742 (1945).

In J.F. Feeser, Inc. v. Serv-A-Portion Inc., 909 F.2d 1524, 1535 (3d Cir. 1990), the Third Circuit held that injury to competition can be shown in two ways.  "First, plaintiff may introduce direct evidence that disfavored competitors lost sales or profits as a result of the discrimination."  Falls City Indus. v. Vanco Beverage, 460 U.S. 428, 437-38 (1983).  In other words, one way to demonstrate that a discriminatory practice likely injured competition is by proving injury to individual competitors.  "Second, [a plaintiff] can show that the favored competitor received a substantial price reduction over a substantial period of time, which gives rise to a permissible inference of competitive injury."  Fed. Trade Comm'n v. Morton Salt Co., 334 U.S. 37, 50-51 (1948).  Mack Trucks argues Toledo Mack failed to demonstrate a reasonable possibility of competitive injury because Toledo Mack has no evidence of losing sales to a specific customer due to price discrimination.

Toledo Mack presents evidence that shows Mack Trucks' price discrimination practices date back to 1989, when Mack Trucks instituted pricing policies to suppress Toledo Mack's sales to customers outside of its AOR.  Toledo Mack, in its expert report, further found it consistently received less favorable pricing than Mack Trucks' favored purchasers.  See Harris Rep., 1/19/04, at 10-16, Ex. 123.  In addition, Mack's policy was effective in restricting Toledo Mack's ability to compete.  In 1998, before Mack Trucks implemented its discriminatory pricing policy, Toledo Mack sold 166 Mack Trucks.  In 1990, within the first full year of Mack's discriminatory policy, Toledo Mack's sales were reduced to 86.  Accordingly, Toledo Mack

claims its sales subsequently declined every year between 1990 and 1998. <u>See</u> Nichols Report at 4, Ex. 211.

Because Toledo Mack has presented evidence from which a reasonable jury or trier of fact may infer that Mack Trucks' discriminatory concessions resulted in lost profits and sales to Toledo Mack and other dealers, and that favored competitors received substantial price reductions, the Court determines that summary judgment as to this claim is not appropriate.

b.    Actual Injury

Section 4 of the Clayton Act, 15 U.S.C. § 15 (2004), provides that "any person...injured in his business...by reasons of anything forbidden in the antitrust laws may sue...in [a] district court...and shall recover threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fees." Once the plaintiff meets its burden of proving damages, "some uncertainty with respect to the amount of damage will not preclude recovery." <u>J.F. Feeser Inc.</u>, 909 F.2d at 1539.

Mack Trucks argues Toledo Mack has no evidence of actual injury. However, Toledo Mack has presented substantial evidence to prove competitive and actual injury. Toledo Mack's expert report concluded that Mack Trucks' price discrimination caused Toledo Mack damages of $18.7 million. Furthermore, unlike the plaintiffs in <u>Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.</u>, 63 F.3d 1267, 1276 (3d Cir. 1995), Toledo Mack has offered documentary evidence as to the effect of the price discrimination on sales, and it has identified lost sales as a result of Mack Trucks' discriminatory conduct.

As such, the Court finds that there is sufficient evidence in the record to support an inference of causation. Accordingly, the ultimate conclusion as to what that evidence proves

18

is reserved for the jury or trier of fact, therefore summary judgment as to this claim is denied.

### C.    Ohio Motor Vehicle Dealer Law

The Ohio Motor Vehicle Dealer Law ("Ohio Act") provides that no franchisor shall "sell, lease, or rent goods or motor vehicles, or render any service normally performed and required of franchisees under the franchise agreement with the franchisor, in unfair competition with the franchise...." OHIO REV. CODE ANN. § 4517.59(E) (2004). Toledo Mack alleges Mack Trucks has violated section 4517.59(E) by "selling directly to National Accounts and offering preferential pricing and other terms to certain customers and favored dealers in unfair competition with Toledo Mack."

Upon careful and complete review of the evidence presented by both parties, the Court finds that this claim cannot be properly disposed of in a motion for summary judgment since the questions of whether Mack Trucks' conduct is unfair, or whether Mack Trucks competed with Toledo Mack, are inherently factual issues.

### D.    Michigan Franchise Investment Law

The Michigan Franchise Investment Law ("Michigan Law") prohibits a manufacturer from "sell[-ing] any new motor vehicle directly to a retail customer other than through its franchised dealers, unless the retail customer is a nonprofit organization or a federal, state, or local government or agency." MICH. COMP. LAWS § 445.1574(I). Defendant Mack Trucks contends that Toledo Mack's claim cannot survive because the statute does not apply to distributors located outside of Michigan, and Toledo Mack is located in Ohio. Moreover, even if Toledo Mack were "located" in Michigan, Toledo Mack has no evidence of sales lost to "retail customers" to which Mack Truck sells directly.

19

Toledo Mack, however, argues that the Michigan Law applies in this case because Toledo Mack's assigned AOR includes Lenawee County, Michigan.  <u>See</u> Distributor Agreement at Supplement, Ex. 222.  While Toledo Mack does not have a building in the state of Michigan, its assigned market area includes Lenawee County, and it does business in Michigan.  Furthermore, Toledo Mack presents additional evidence which indicates Toledo Mack tried to sell to retail customers in Michigan.

As such, the Court will allow a jury to determine whether Mack Trucks violated the Michigan Franchise Investment Law by trying to sell trucks to retail customers in Michigan.

### E.    Common Law Claims

1.    <u>Tortious Interference with Prospective Business Relations</u>

A federal court sitting in diversity must apply the conflict of law rules of the forum state.  <u>Klaxon v. Stentor Electric Manufacturing Co., Inc.</u>, 313 U.S. 487 (1941).  As such, the Court must apply Pennsylvania's choice of law rules to determine which substantive law governs Toledo Mack's tortious interference claim.  A proper conflict of laws analysis suggests Ohio "has the greater interest in the application of its law."  Thus, Ohio's law should be applied because Ohio has more substantial contacts to Toledo Mack's claims.  <u>Data Based Systems Int'l Inc. v. Hewlett-Packard Co,</u>, No. 00-CV-4425, 2001 U.S. Dist. LEXIS 17402 at *12 (E.D. Pa. Sept. 26, 2001); <u>CAT Internet Serv., Inc. v. Magazines.com Inc.</u>, No. 00-2135, 2001 U.S. Dist. LEXIS 8, *6 (E.D. Pa. Jan. 4, 2001).  Ohio Law recognizes claims for tortious interference with prospective economic relations where the defendant's conduct is directed towards the plaintiff or a third party.  <u>See Lucas v. Monroe Co.</u>, 203 F.3d 964, 979 (6th Cir. 2000); Restatement (Second) of Torts § 766B(b).

Mack Trucks argues Toledo Mack has no evidence to support its claim "because [Toledo Mack] has no evidence of any interference with a customer with whom it had a reasonable probability of doing business." Toledo Mack, nonetheless, has produced substantial evidence of Mack Trucks' interference with Toledo Mack's prospective contractual relations in the manner in which Mack Trucks handled requests for sales assistance, including: (1) delays in responding to assistance requests; (2) instances in which Mack Trucks notified competing dealers of Toledo Mack's attempts to make a sale through the cross-check procedure; and (3) efforts to prohibit Toledo Mack from soliciting business outside of its AOR.

Furthermore, Toledo Mack has introduced evidence that demonstrates Mack Trucks tortiously interfered with Toledo Mack's customer relationships by inducing specific customers not to buy from Toledo Mack. Mack Trucks allegedly interfered with Toledo Mack's attempts to sell to certain large end-users, and Mack Trucks ultimately usurped all sales to these National Accounts. Additionally, Mack Trucks offered its National Account leasing companies special pricing that was unavailable to dealers. See Flaherty Dep. 11/8/03 at 246-47, Ex. 13; Flaherty Dep. 1/8/04 at 21, Ex. 10. Toledo Mack also specifically identified a myriad of potential customers with whom it had "a reasonable likelihood or a probability" of prospective business relationships. See Suppl. Interrogatory Responses at No. 10., Ex. 215. M. Yeager Dep. at 89-90. Toledo Mack was allegedly engaged in negotiations with the identified prospective customers, but they were unwilling to pay Toledo Mack the higher prices it was forced to charge as a result of Mack Trucks' discriminatory pricing concessions. Toledo Mack, in support of its contentions, kept notes of comments from customers who bought trucks at lower prices from

other dealers.  See D. Yeager Aff. at ¶12, Ex. 83; See Transcript of Telephone Conversation

between D. Yeager and R. Loumis at 3-5, Ex. 227.

Toledo Mack has presented evidence that Mack Trucks offered special deals and

low prices to National Accounts–and these special deals and prices were not readily available to

the dealers.  Toledo Mack contends that Mack Trucks' special deals and low prices induced the

National Accounts to buy directly from Mack Trucks instead of Mack dealers.  Accordingly, the

question of whether these customers would have bought from Toledo Mack without Mack

Trucks' interference is a question of fact to be resolved by the jury or trier of fact.  Thus, the

Court cannot dispose of this claim in a motion for summary judgment.

2.    Breach of Contract

In order to succeed on its claim of breach of contract, Toledo Mack must

establish: (1) the existence of a contract, including its essential terms; (2) a breach of duty

imposed by the contract; and (3) resultant damages.  Gorski v. Smith, 812 A.2d 683, 692 (Pa.

Super. 2002).  Toledo Mack claims Mack Trucks breached the Distributor Agreement by failing

to pay a commission for 316 trucks allegedly sold into its AOR by Mack's National Accounts

Department.  Mack Trucks argues that, according to the Distributor Agreement, Toledo Mack is

only entitled to a commission on a National Account sale in its AOR if Toledo Mack either

"perform[ed] the usual functions of conditioning and delivery" or "engaged in activities which

contributed to the sale."  See Distributor Agreement at ¶ 7, Ex.222.  Mack Trucks contends

Toledo Mack has not produced evidence it performed either function.

Toledo Mack, however, has produced service records, including customer repair

orders, dating from 1995 to the present which reflect service done by Toledo Mack on trucks

belonging to National Account customers in Toledo Mack's AOR that bought directly from Mack Trucks. See D. Yeager Aff. at ¶¶ 16-22. Based on Toledo Mack's records, approximately 316 trucks were sold by Mack Trucks and placed into service within Toledo Mack's AOR, but Mack Trucks never paid or credited Toledo Mack for its service. See D. Yeager Aff., Ex. 83.

As such, the Court will allow a jury to determine whether Mack Trucks breached the Distributor Agreement. Therefore, Mack Trucks' Motion for Summary Judgment relating to Toledo Mack's breach of contract claim is denied.

3.    Breach of the Duty of Good Faith and Fair Dealing

"Every contract in Pennsylvania imposes a duty of good faith and fair dealing in its performance and enforcement." Donahue v. Fed. Express Corp., 753 A.2d 238, 242 (Pa. Super. 2000). The Pennsylvania Supreme Court has also ruled that the duty of good faith and fair dealing applies to franchise contracts. Witmer v. Exxon Corp., 495 Pa. 540, 434 A.2d 122 (1981); See Atlantic Richfield Co. v. Razumic, 480 Pa. 366, 390 A.2d 736 (1978).

Mack Trucks contends Toledo Mack's breach of the duty of good faith and fair dealing claim fails because it is duplicative. Toledo Mack, however, argues that no other claim asserted by Toledo Mack focuses on Mack Trucks' deceptive conduct designed to drive Toledo Mack out of business. The Court finds Toledo Mack's cause of action for breach of the implied covenant of good faith and fair dealing is not duplicative.

Accordingly, summary judgment is inappropriate. Consequently, a jury or trier of fact shall decide whether Mack Trucks breached its implied duty of good faith and fair dealing with Toledo Mack.

IV.   **TOLEDO MACK'S MOTION FOR SUMMARY JUDGMENT AS TO**
      **MACK TRUCKS' COUNTERCLAIMS**

Plaintiff/Counterclaim Defendant Toledo Mack moves for summary judgment

relating to Defendant/Counterclaim Plaintiff Mack Trucks' Counterclaims for misappropriation

of trade secrets and confidential business information, copyright infringement, breach of contract,

and civil conspiracy.

In light of the Ohio Motor Vehicle Dealer's Board Order ("Board"), the Court will

not address the misappropriation of trade secrets claim as Mack Trucks concedes the Board's

Order has preclusive effect as to this claim.  The Court, however, finds that the Board's Order

did not have any preclusive effect as to the misappropriation of confidential business

information, copyright infringement, breach of contract, and civil conspiracy claims.

A.     **Misappropriation of Confidential Business Information**

The elements of the misappropriation of confidential business information claim

are as follows:

> One who, for purposes of advancing a rival business interest,
> procures by improper means information about another's
> business is liable to the other for the harm caused by his
> possession, disclosure or use of the information.

Den-Tal-Ez, 556 A.2d at 1231, citing Rest. Torts § 759.  Confidential business information

merely consists of non-public information about a business.  Comment b to Rest. Torts § 759.

Mack Trucks has adduced evidence suggesting that MACSPEC 2001, the

microfiche, and the price lists to PAI, Northwest Truck, and Illinois Diesel are each confidential

business information because none are publicly available.  Mack Trucks further contends Toledo

24

Mack procured this information through fraudulent and improper means to advance the business interests of Mack's rivals:  PAI, Northwest Truck, and Illinois Diesel.

After a careful and complete review of the evidence presented by both parties, the Court finds that there are genuine issues of material fact relating to the elements of Mack Trucks' misappropriation of confidential business information claim.  Accordingly, the Court will allow a jury to determine whether Toledo Mack misappropriated confidential business information from Mack Trucks.

### B.    Copyright Infringement Claim

To establish a *prima facie* case of copyright infringement, plaintiff must prove the following: (1) ownership of a valid copyright; and (2) violation of one of the copyright owner's exclusive rights of ownership.  See Educ. Test Serv. v. Katzman, 793 F.2d 533, 538 (3d Cir. 1986).  The parties do not dispute that Mack Trucks owns a valid copyright in the software and database contained in MACSPEC 2001 and the database contained in the microfiche.  The parties dispute, however, whether a violation of one of the copyright owner's exclusive rights of ownership occurred.

Specifically, Toledo Mack argues that Mack Trucks cannot show Toledo Mack violated Mack's exclusive right to distribute its copyrighted works.  Mack Trucks also argues its actions were protected pursuant to the first sale doctrine because the doctrine permits the owner of a copy of work to redistribute that particular copy.  17 U.S.C. § 109 (2004) (indicating that a lawful owner of a copy of a copyrighted work may, sometimes, be able to redistribute his own copy without the copyright owner's consent).

The record suggests, however, that Toledo Mack violated Mack Trucks' exclusive distribution right. For example, Mack Trucks argues that Toledo Mack is jointly and severally liable for PAI's violations of Mack's exclusive right of reproduction, as PAI repeatedly printed pages from MACSPEC 2001 and the microfiche. Yavari Dep. Tr. at 106.10-106.13; Ruble Dep. Tr. at 88.9-88.14. PAI printed pages from the microfiche at least two or three times each week for at least five years. Ruble Dep. Tr. at 89.12-90.8. Mack Trucks further avers Toledo Mack is liable for this copying because it knowingly materially contributed to PAI's infringing acts, as Toledo Mack provided PAI with the copyrighted materials that PAI illegally reproduced. See Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971) ("one who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing activity of another, may be held liable as a 'contributory' infringer."); Trial Tr. at 905.10-911.9 (2/5/04, Testimony of J. Toth); Yavari Dep. Tr. at 176.5-177.5; May Dep. Tr. at 95.9-96.12.; Toth Dep. Tr. at 143.22-144.3, 252.24-253.4.

The record also suggests that Toledo Mack cannot successfully claim that its actions were protected by the first sale doctrine since courts have held that "entering a license agreement is not a 'sale' for purposes of the first sale doctrine." Microsoft Corp. v. Harmony Computers & Elec., Inc., 846 F. Supp. 208, 212-13 (E.D.N.Y. 1994) (suggesting that a mere licensee of copyrighted work has no right to distribute copies without the copyright owner's consent).

Because Counterclaim Plaintiff/Defendant Mack Trucks has presented evidence from which a reasonable jury could determine the following: (1) Toledo Mack–with knowledge–materially contributed to PAI's copyright infringement activity, in violation of Mack

Trucks' exclusive right to distribute its copyrighted works pursuant to 17 U.S.C. § 106(3); and

(2) Toledo Mack is a mere licensee, not an owner of the copyrighted works, the Court finds there

is a genuine issue of material fact as to Toledo Mack's copyright infringement liability.

Summary judgment is thus inappropriate.

### C.    Breach of Contract

Mack Trucks' claim for breach of contract arises from Toledo Mack's breach of

its license agreement for MACSPEC 2001 by illegally providing the system to PAI and

Northwest Truck.  First Amended Counterclaims ¶¶ 71-76.  Under Pennsylvania law, the

elements of a claim for breach of contract are: (1) the existence of a contract including its

essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages.  Ware

Communications, Inc. v. Rodale Press, Inc., 332 F.3d 218, 225-26 (3d Cir. 2003) (quoting

CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Toledo Mack makes three contentions in support of its summary judgment motion

on this count.  First, Toledo Mack contends that the license agreement applies only to

MACSPEC II, and not to MACSPEC 2001.  Second, Toledo Mack avers that it allegedly

canceled the agreement.  Finally, Counterclaim Defendant Toledo Mack argues that Mr.

Yuzuik's January 29, 2002 letter waived the license agreement's restriction on third party

distribution.

Mack Trucks, however, introduces evidence in the record that indicates:  (1)

Toledo Mack signed a license agreement for MACSPEC II, the predecessor system to

MACSPEC 2001; (2) MACSPEC 2001 is the same software as MACSPEC II, except the 2001

version operates on Windows 98, whereas MACSPEC II could only operate on earlier versions

27

of Windows.  (Trial Tr. At 95.16-96.2, 104.14-105.6 (2/2/04, Testimony of R. Yuzuik)); (3)

when Toledo Mack ordered its copies of MACSPEC 2001, Mack Trucks did not enter into new

license agreements or training for MACSPEC 2001 with any existing MACSPEC II licensees

because the systems are virtually identical.  (Trial Tr. at 95.13-96.24, 98.19-99.9 (2/2/04,

Testimony of R. Yuzuik)); (Trial Tr. at 1161.7-1161.17 (2/5/04, Testimony of D. Covey)); and

(4) Toledo Mack admits that MACSPEC 2001 and MACSPEC II are allegedly the same.  (Trial

Tr. at 860.9-860.14 (2/5/04, Testimony of J. Toth)).

        Furthermore, Mack Trucks introduces evidence that Toledo Mack did not cancel

the licensing agreement in a February 2001 letter because the letter merely cancelled a

MACSPEC II "system," and indicated that Toledo Mack owed no more license fees for that

particular returned copy of MACSPEC II.  See Letter dated February 2, 2001 from R. Yuzuik to

Toledo Mack ("This letter is to confirm the cancellation and return of your MACSPEC II *system*"

(emphasis added)) (Exh. 28).  Even Toledo Mack's Parts Manager, who returned the MACSPEC

II copy, testified that he did not believe that the February 2001 letter cancelled the license

agreement, but rather stopped further billing on the returned copy.  Toth Dep. Tr. at 203.8-

103.18.

        Additionally, evidence in the record indicates that Mr. Yuzuik's letter did not

waive Toledo Mack's license agreement restriction on third party distribution because the letter

itself was directed to "Parts Managers" of authorized Mack dealers and states that the only

"customers" authorized to order MACSPEC 2001 were entities which were authorized to receive

the microfiche databases. Exh. 29.  Trial Tr. at 118.23-119.17 (2/2/04) (emphasis added); Trial

Tr. at 891.13-902.20 (2/5/04, Testimony of J. Toth).  Furthermore, Toledo Mack testified that it

28

deliberately did not inform Yuzuik that it was ordering MACSPEC 2001 for PAI because he believed that Mack Trucks would object.  Toth Dep. Tr. At 180.7-181.2.

   The questions of whether:  (1) Toledo Mack's license agreement applies only to MACSPEC II, and not to MACSPEC 2001; (2) Toledo Mack cancelled the licensing agreement; and (3) Yuzuik's letter waived the license agreement's restriction on third party distribution, are questions of fact to be resolved by the jury or the trier of fact.

   After complete review of the evidence, the Court determines that the record is replete with genuine issues of material facts as to whether Toledo Mack breached its license agreement for MACSPEC 2001 by illegally providing the system to PAI and Northwest Truck. Accordingly, Toledo Mack's Motion for Summary Judgment in relation to Mack Trucks' breach of contract claim is denied.

### D. Civil Conspiracy

   To successfully establish a claim for civil conspiracy, Mack Trucks must show that "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means."  Neyer, Tiseo & Hindo Ltd. v. Russell, No. Civ. 92-2983, 1993 WL 53579 at *5 (E.D. Pa. Mar. 3, 1993).  Toledo Mack avers that Mack Trucks can neither show an underlying unlawful act nor the requisite intent.

   In light of the Court's finding that genuine issues of material fact exist regarding Mack Trucks' misappropriation of confidential business information and copyright infringement, and there is circumstantial evidence the in record which suggests Toledo Mack conspired to with

PAI to injure Mack Trucks,[4] the Court shall deny Counterclaim Defendant's Motion for Summary Judgment relating to Mack Trucks' civil conspiracy claim.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied and Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims is denied.

---

4.  Intent to injure in a civil conspiracy claim may be establish through circumstantial evidence.  Reading Radio, Inc. v. Fink, 833 A.2d 199, 212 (Pa. Super. Ct. 2003); Patient Transfer Sys., Inc. v. Patient Handling Sys., Inc., No. Civ. A. 97-CV-1568, 1999 WL 54568 at *11 (E.D. Pa. Jan 29, 1999).  Here, evidence of a conspiracy to misappropriate intellectual property for Mack's competitor provides sufficient circumstantial evidence of intent to defeat summary judgment.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

TOLEDO MACK SALES &
SERVICE, INC.,

               Plaintiff,

          v.

MACK TRUCKS, INC.,

               Defendant.

:         CIVIL ACTION
:
:         NO.  02-CV-4373
:
:
:
:
:
:

_____

MACK TRUCKS, INC.,

               Counterclaim
               Plaintiff,

          v.

TOLEDO MACK SALES &
SERVICE, INC.,

               Counterclaim
               Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

## <u>ORDER</u>

_____AND NOW, this 29th day of March, 2005, upon consideration of Defendant Mack

Trucks' Motion for Summary Judgment (Docket No. 54), Plaintiff Toledo Mack's Response

thereto (Docket No. 58), Defendant's Reply (Docket No. 59), Plaintiff's Sur-Reply (Docket No.

62), Defendant's Supplemental Reply (Docket No. 63), Plaintiff's Reply in Response to the

Supplemental Reply (Docket No. 64), and Plaintiff's Motion for Leave to Supplement its

Summary Judgment Briefs (Docket No. 65); Plaintiff Toledo Mack's Motion for Summary

Judgment of Mack Trucks' Counterclaims (Docket. No. 55), Defendant's Response thereto (Docket No. 57), Plaintiff's Reply (Docket No. 60), Defendant's Sur-Reply (Docket No. 61), Plaintiff's Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims (Docket No. 66), and Defendant's Reply in Further Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 68), it is **ORDERED** that Defendant's Motion for Summary Judgment is **DENIED,** and Plaintiff's Motion for Summary Judgment of Defendant's Counterclaims in **DENIED**.

Counsel for the parties are directed to schedule a status conference with the court to discuss the setting of a trial date, the filing of pretrial memorandums, etc.

BY THE COURT:

_____

 RONALD L. BUCKWALTER, S.J.