## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC.. | : | |
| Plaintiff, | : : | Civil Action No. 2:02-CV-04373-RLB |
| v. | : : | JURY TRIAL DEMANDED |
| MACK TRUCKS, INC. | : : | |
| Defendant. | : | |

|  |  |  |
|---|---|---|
| MACK TRUCKS, INC., | : : | |
| Counterclaim Plaintiff, | : : | |
| v. | : : | JURY TRIAL DEMANDED |
| TOLEDO MACK SALES & SERVICE, INC.. | : : | |
| Counterclaim Defendant. | : : | |

## MACK TRUCKS, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION AND PARTIAL SUMMARY JUDGMENT ON ITS COUNTERCLAIM FOR MISAPPROPRIATION OF TRADE SECRETS

## I.  INTRODUCTION

In its principal Memorandum of Law, Mack pointed out that the Ohio Court of Appeals' holding regarding Toledo Mack's misappropriation of MACSPEC 2001 to Mack's competitor PAI has two effects on this case: (1) this Court's prior Order dismissing Mack's claim for misappropriation of trade secrets should be vacated because it was based on only the collateral estoppel effect of the now reversed Order of the Ohio Motor Vehicle Dealer Board;

and (2) Mack is entitled to summary judgment in its favor on Toledo Mack's liability for misappropriation of trade secrets as to MACSPEC 2001.

As to effect (1), Toledo Mack does not dispute that the Court of Appeals' ruling strips the Board's Order of any collateral estoppel effect, which was the **only** basis for this Court's dismissal of Mack's trade secret claims in the first place.  <u>See</u> Summary Judgment Opinion at 24.  In addition, Toledo Mack makes no argument regarding the trade secrets claims as to the price lists and the microfiche; it is therefore undisputed that this Court should vacate its prior dismissal of Mack's trade secret claims as to these two items.

In its only defense, Toledo Mack argues that this Court's order pertaining to Mack's claim for misappropriation of trade secrets as to MACSPEC 2001 should not be vacated because it is barred for **other** independent reasons that in over four years of litigation Toledo Mack has never raised before, or even pleaded as an Affirmative Defense.  Now, Toledo Mack is essentially asking, even after this Court has rejected Toledo Mack's previous timely attempts to get those claims thrown out, all of us to go back to the drawing board, and now consider its untimely claim that the gist of the action and economic loss doctrines provide an alternative ground for this Court not to vacate its ruling.  Embarrassingly, Toledo Mack provides no excuse for this tardy, post-summary judgment, eve-of-trial grasp, which, as explained more fully below, should be rejected as meritless anyway.

As to effect (2), Toledo Mack still will not accept that what is good for the goose is good for the gander, and instead, now as the losing party in the Ohio proceedings, argues that summary judgment should not be granted against it.  Instead, it argues that the Ohio Court of Appeals did not find that Toledo Mack misappropriated trade secrets, but only "that MACSPEC 2001 is a trade secret and that Toledo Mack **shared it** with PAI."  Toledo Mack Memorandum at

s (emphasis added). This is absurd. The Ohio Court of Appeals clearly held, following hearing and extensive briefing by both sides, that Toledo Mack's provision of the trade secret MACSPEC 2001 to PAI constituted good cause to terminate Toledo Mack as a distributor. This holding would be nonsensical without the finding that providing the trade secret to PAI was *wrongful*, i.e., that it was an inappropriate sharing, termed misappropriation. Indeed, the Ohio Court of Appeals found that each element of a claim for misappropriation of trade secrets was met. Thus, Toledo Mack's semantic gymnastics should be cast aside, and summary judgment should now be entered in Mack's favor.

II.    **ARGUMENT**

    A.    **This Court's Prior Ruling On Mack's Trade Secret Claims As To MACSPEC 2001, The Price Lists, And The Microfiche, Should Be Vacated**

        Toledo Mack concedes – albeit by silence – that this Court's order as to the microfiche and price lists, should be vacated. It further concedes – also by silence – that the doctrine of collateral estoppel no longer bars Mack's trade secret claim as to MACSPEC 2001. Given the Court of Appeals ruling, these concessions are hardly surprising, and should put a quick end to this Court's prior order. Instead of gracefully conceding this simple point, however, Toledo Mack has the audacity to propose to this Court that it should now consider *alternative grounds* to keep its ruling in place. The Court should be reminded that Toledo Mack's summary judgment deadline was April 2, 2004.

        By way of background, Toledo Mack has filed the following briefs challenging Mack's trade secrets claim as to MACSPEC 2001, none of which raised a defense based on gist of the action or economic loss: Memorandum of Law in Opposition to Mack's Motion for Preliminary Injunction; Memoranda of Law in Support of Toledo Mack's Motions to Dismiss both Mack's original and First Amended Counterclaims; and Memorandum and Reply

Memorandum in Support of Toledo Mack's Motion for Summary Judgment as to Mack's Counterclaims. Its newest argument should now thus be stricken as untimely and a waste of resources of this Court and the parties.

To boot, Toledo Mack's tardy argument is not even colorable. Toledo Mack argues that Mack's claims for misappropriation of trade secrets as to MACSPEC 2001 fail regardless of the collateral estoppel effect of the Ohio opinion based on the gist of the action and economic loss doctrines. See Toledo Mack Memorandum at 8-13. This is because, according to Toledo Mack, its only obligation not to disclose MACSPEC 2001 arose from its license agreement, thus rendering this properly only an action for breach of contract. Id.

This argument flatly contradicts Toledo Mack's position that there is and was *no* license agreement to govern MACSPEC 2001. Id. at 9 ("Toledo Mack does not agree" that a license agreement exists); see also Summary Judgment Opinion at 27 (noting that "Toledo Mack contends that the license agreement applies only to MACSPEC II, and not to MACSPEC 2001"). Put differently, Toledo Mack now argues that the trade secrets claim is barred by a contract that it believes never existed. This is improper. See D'Angelo Bros., Inc. v. Long, No. 05-CV-0800, 2005 WL 1309037 at *4 (M.D. Pa. June 1, 2005) (declining to apply gist of the action doctrine to claim for misappropriation of trade secrets because "if Defendant himself contends that there is no contract, it is difficult for us to conceive why we should find that one exists in a hypothetical sense"); Gemini Bakery Equipment v. Baktek, No. 3204, 2005 WL 957635 at *3 (Pa. Com. Pl. April 11, 2005) (declining to dismiss claim for misappropriation of trade secrets based on gist of the action because "it is not clear whether defendants admit to or deny the existence of an agreement between themselves and plaintiff"); Comsup Commodities, Inc. v. Osram Sylvania, Inc., No. 01438, 2003 WL 22977519 at *1 (Pa. Comm. Pl. Dec. 3, 2003) (declining to dismiss

tort claims under gist of the action doctrine because "defendants apparently deny the existence of the contract").

Toledo Mack's argument fails for additional reasons. "The gist of the action doctrine requires tort claims that ultimately arise out of a defendant's failure to adhere to the terms of his contract with plaintiff to be dismissed, thereby preventing a plaintiff from disguising what is fundamentally a contract claim as a tort claim in order to qualify for punitive damages." Koresko v. Bleiweis, Civ. A. No. 04-769, 2004 U.S. Dist. LEXIS 26062 at *6 (E.D. Pa. Dec. 30, 2004). In determining whether a tort claim is barred by the gist of the action, "the essential question is whether the defendant's conduct violates some additional duty that is distinct from the obligations the defendant accepted by entering into the contract." Id. at *8. Similarly, the economic loss doctrine prohibits "'plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001) (citation omitted).

Here, Mack's trade secret claim is based on duties beyond those set forth in the license agreement for MACSPEC 2001. As Mack alleged in its First Amended Counterclaims:

> 51.    Mack provided MACSPEC 2001 . . . under circumstances in which Mack had a relationship of trust and confidence with Toledo Mack. Mack regularly shares secret and confidential information with the members of its distributor community because Mack sells many of its products, including after market replacement parts, through its distributor network. Mack distributors understand that Mack will share non-public information with them to help the entire Mack community, including both Mack and its distributors, compete, and that they are to maintain the secrecy of that information.
>
> 52.    In breach of **both** that agreement **and the confidence which Mack reposed in it**, Toledo Mack distributed one of its copies of the MACSPEC 2001 system to PAI . . . .

> 55.    . . . Toledo Mack's distribution of MACSPEC 2001 to PAI
> **in violation of Mack's confidence and** its license agreement
> constituted a misappropriation of Mack's trade secrets . . .

(Exh. A.[1]

That the contractual duties were independent of the tort based duty is highlighted in the Court of Appeals decision. On p. 13, the Court explained that "the MACSPEC 2001 System was the subject of efforts that were reasonable under the circumstances to maintain its secrecy," and then proceeds to summarize those efforts, including the opening screen of the system and the unlock codes. On page 14, the Court further explained that the license agreement was also breached, and that "Toledo Mack failed to present any contrary evidence."

As is clear from Mack's pleadings, its claim is based on a breach of a confidential relationship beyond the license agreement. Moreover, as explained below at 9-10, Toledo Mack acquired MACSPEC 2001 through fraud. The obligation under trade secret law not to breach confidences or to acquire trade secrets through fraud is separate from a duty simply to perform under a contract. See Koresko, 2004 U.S. Dist. LEXIS 26062 at *8 (duties under trade secret law do not derive from contract terms). Thus, the gist of the action "lies in tort rather than contract law." Id. (holding that misappropriation of trade secrets claim not barred by gist of the action doctrine even though parties executed confidentiality contract).

Toledo Mack's only argument to the contrary is that Mack "here contends that the licensing agreement directly prohibited the very same conduct that underlies [Mack's] misappropriation of trade secrets claim" as to MACSPEC 2001. See Toledo Mack Memorandum at 11. In other words, according to Toledo Mack, because the disclosure of

---

[1] Notably, Toledo Mack only cites to Mack's original, and not the Amended, Counterclaims in its Memorandum, thereby presenting an inaccurate statement of Mack's current allegations. See Ex. 4 to Toledo Mack Mememorandum.

MACSPEC 2001 constitutes a breach of the license agreement, there cannot be a tort claim for trade secret theft at all, i.e., the very existence of the license agreement somehow forecloses any possible tort claim.

The Pennsylvania Superior Court rejected this exact argument in Den-Tal-Ez, Inc. v. Siemens Capital Corp., 566 A.2d 1214 (Pa. Super. 1989). There, as here, defendant argued that the existence of a confidentiality agreement barred any tort action for trade secret theft. See Den-Tal-Ez, 566 A.2d at 1224. The Court found this argument to be meritless, noting that numerous Pennsylvania trade secrets cases have proceeded despite the existence of such contracts: "There is no suggestion in Air Products, or in any other Pennsylvania case, that the existence of a confidentiality agreement precludes a common law trade secrets action." Id. This is because the scope of protection afforded by the laws of trade secrets and contracts is different:

> Certain information protected by agreement may be protected *only* by agreement, as it is considered by a business to be confidential, while not necessarily qualifying as "trade secrets;" conversely, a confidentiality agreement may provide the only evidence of a "confidential relationship" under a common law "trade secrets" analysis. If the two actions are not permitted to be brought simultaneously, where the underlying facts support both causes of action, the possibility exists that a full recovery, for all "secret" information unfairly and misleadingly appropriated, will be denied.

Id. (citation omitted; emphasis in original); see also Koresko, 2004 U.S. Dist. LEXIS 26062 at *8 (trade secrets claim not barred by existence of confidentiality agreement); cf. Ecolaire, Inc. v. Crissman, 542 F.Supp. 196, 207 (E.D. Pa. 1982) (defendant former employee liable for both breach of confidentiality agreement and misappropriation of trade secrets).

The only case cited by Toledo Mack where a court barred a misappropriation of trade secrets claim based on the gist of the action is Bohler-Uddeholm, supra. The Court's holding, however, was based on an express admission in the plaintiff's brief that there was no

basis other than a license agreement for the asserted duty of confidentiality as to certain, but not all, alleged trade secrets. See Bohler-Uddeholm, 247 F.3d at 106.

By contrast, in this case, Mack has asserted a confidential relationship based on not only the license agreement, but also the parties' overall relationship and course of dealing. See First Am. Counterclaims, ¶¶ 50-52, 55. Moreover, Toledo Mack breached an independent tort duty not to procure trade secrets through fraud. Infra at 9-10. Accordingly, Mack's claim for misappropriation of trade secrets as to MACSPEC 2001 is not barred by the gist of the action doctrine. See Koresko, 2004 U.S. Dist. LEXIS 26062 at *10, n. 2 (distinguishing Bohler-Uddeholm because claims asserted were based on tort duties of confidentiality and honesty, in addition to confidentiality agreement).[2]

**B.     The Ohio Court of Appeals' Opinion Entitles Mack To Summary Judgment As To Liability For The Misappropriation Of MACSPEC 2001**

  **1. The Ohio Court of Appeals Found That Each Element Was Met**

Toledo Mack does not dispute that the Court of Appeals' opinion is entitled to collateral estoppel effect in this case. Rather, Toledo Mack contends that Mack is not entitled to summary judgment because the Court of Appeals allegedly did not find that Mack proved each element of a liability case for misappropriation of trade secrets. Toledo Mack is wrong.

The elements of a claim for misappropriation of trade secrets under Pennsylvania law are (1) the existence of a trade secret; (2) that Toledo Mack used and/or disclosed the trade secret; (3) that Toledo Mack discovered the trade secrets by improper means or that the disclosure or use of such trade secrets was in breach of a confidence. See Den-Tal-Ez,, 566 A.2d at 1228-29, 1231. Moreover, the fact that the Court of Appeals applied Ohio law instead of

---

[2] As Mack's losses flow from Toledo Mack's breaches of tort duties, the economic loss doctrine is likewise inapplicable. See Bohler-Uddeholm, 247 F.3d at 107 (trade secrets claims based on duty of confidentiality beyond just contract terms not barred by the doctrine of economic loss).

Pennsylvania law is irrelevant, because Toledo Mack conceded that there is no substantive difference between the two. See Post Hearing Brief of Toledo Mack in Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc., Case No. 03-06-MVDB-281-LL (Ohio Motor Vehicle Dealers Board) (Ex. B) at  14 ("Ohio trade secrets law is substantially in accord with Pennsylvania trade secrets law").

Toledo Mack concedes that the Court of Appeals found that Mack proved the first element, i.e., that MACSPEC 2001 is a trade secret. See Toledo Mack Memorandum at 4 (conceding that "The Ohio Court of Appeals determined that MACSPEC 2001 was a trade secret"). Thus, there is no dispute that Mack is entitled to summary judgment in its favor as to the first element. The second element – disclosure of the trade secret by Toledo Mack – has never been in dispute. Toledo Mack has always admitted that it provided MACSPEC 2001 to PAI and PAI dealer Northwest Truck Sales, and the Court of Appeals so found. See Court of Appeals Opinion at 19 (Toledo Mack gave "the MACSPEC 2001 system to PAI").

Finally, following trial and extensive briefing by both parties, the Court of Appeals found in Mack's favor as to the third element, holding that "the MACSPEC 2001 was a trade secret *that was subject to confidentiality by Toledo Mack.*" See Court of Appeals Opinion at 19 (emphasis added).[3] While the discussion should stop there, Mack does not need to show a breach of confidence if Toledo Mack acquired the trade secret, MACSPEC 2001, by improper means. See Den-Tal-Ez, 566 A.2d at 1228-29 (one may be liable for misappropriation of trade secrets if either the trade secrets were acquired by "improper means" *or* were disclosed in breach

---

[3] In fact, Toledo Mack's discussion of the issue of breach of confidence is nothing but a regurgitation of its prior summary judgment arguments.  For a full discussion of the relevant facts and law in this regard, Mack respectfully refers the Court to pages 41-44 of its Memorandum in Opposition to Toledo Mack's original Motion for Summary Judgment.

of a confidential relationship).  Improper means includes the use of fraud.  See College

Watercolor Group, Inc. v. Newbauer, 360 A.2d 200, 205 (Pa. 1976) (obtaining trade secrets

through fraud constitutes misappropriation).  Here, the Court of Appeals found that Toledo Mack

procured MACSPEC 2001 through fraudulent representations to Mack:

> Toledo Mack's argument that [Mack employee Robert] Yuzuik
> gave explicit permission to [Toledo Mack Parts Manager] Toth
> during a phone call that MACSPEC 2001 could be sold to
> "customers" is unpersuasive at best, as Yuzuik's authorization was
> meaningless *given Toledo Mack's intentionally deceptive
> omission of the fact that the customer it had in mind was PAI.*
> Toth candidly admitted at the hearing that he would not have been
> comfortable telling Yuzuik that the customer in mind was PAI
> because PAI is a competitor.  *The deliberate omission of PAI's
> identity by Toth is deafeningly telling.*  Thus, we concur with the
> trial court's comment in the present case that Toledo Mack's claim
> that it believed "customer" included one of Mack's largest
> competitors "rings hollow," and we find Toledo Mack's assertion
> wholly unconvincing.

Court of Appeals Opinion at 17 (emphasis added).

### 2.    The Ohio Court of Appeals Found That Toledo Mack's Misappropriation of MACSPEC 2001 Harmed Mack

Toledo Mack further contends that Mack is not entitled to summary judgment as

to liability for misappropriating MACSPEC 2001, because supposedly the Ohio Court of

Appeals did not find that Toledo Mack's funneling of MACSPEC 2001 to PAI injured Mack.

See Toledo Mack Memorandum at 7-8.  Toledo Mack is wrong.  The Court of Appeals found

that PAI's ability to use MACSPEC 2001 would undoubtedly harm Mack:

> The MACSPEC 2001 system contains specifications of nearly
> every Mack vehicle.  Every Mack vehicle is custom produced to
> the individual customer's specifications; thus, without knowing
> which parts are used and how the parts fit together in any particular
> custom vehicle, PAI would be unable to determine which parts are
> necessary to repair a Mack owner's vehicle.  The economic value
> of the MACSPEC 2001 system is patently derived from a
> competitor's difficulty in servicing a customer's Mack vehicle
> without the system, while a Mack dealer with the MACSPEC 2001

> would be able to determine the necessary parts and how they fit
> together instantly via access to the assembly record for the
> customer's particular vehicle. . . . The MACSPEC 2001 also
> permits the user to identify which parts on the vehicles are the
> most popular parts, allowing a competitor to determine which
> imitation parts would be most profitable to reverse engineer.

Court of Appeals Opinion at 12.[4]

The Court of Appeals then cited further undisputed evidence of harm in support

of its conclusion as follows:

> Yuzuick said the system cost $34 million to develop and would be
> **extremely valuable to a competitor**. Glenn Murphy, an operations
> manager at Nex-Tran Truck Center, which is an authorized Mack
> dealer, agreed that dissemination of the MACSPEC 2001 program
> to non-authorized service dealers **would be harmful to Mack and
> its dealers.** Kevin Flaherty, Mack's senior vicepresident of sales,
> testified that divulging the MACSPEC system to a competitor
> **would cause significant and possibly irreparable economic harm
> to Mack.** Toledo Mack's parts manager, Jim Toth, also admitted
> that having access to the information contained in the MACSPEC
> 2001 system **would help PAI compete with Mack**.

Id. at 12-13 (emphasis added).

Moreover, as Toledo Mack correctly notes, the measure of damages in a claim for

misappropriation of trade secrets is the benefit to the defendant from the theft. See Toledo Mack

Memorandum at 7-8. Toledo Mack is jointly and severally liable with PAI and Northwest Truck

for the misappropriation of MACSPEC 2001. See Tan-Line Studios, Inc. v. Bradley, Civ. A. No.

84-5925, 1986 WL 3764 at *11-12 (E.D. Pa. Mar. 25, 1986) (imposing joint and several liability

in misappropriation of trade secrets case on both defendant who illegally disclosed and

defendants who illegally received and used stolen information), aff'd 808 F.2d 1517 (3d Cir.

1986); see also SAP America, Inc. v. Zoldan, No. Civ. A. 99-3923, 1999 WL 907569 at *5 (E.D.

---

[4] For a full discussion of PAI's use of MACSPEC 2001 and Mack's damages theories, Mack respectfully
refers the Court to pages 12-13 and 54-59 of Mack's Memorandum in opposition to Toledo Mack's original Motion
for Summary Judgment as to Mack's Counterclaims.

Pa. Oct. 18, 1999) (noting that co-defendants in misappropriation of trade secrets action may be held jointly and severally liable). Accordingly, Mack may recover from Toledo Mack the benefits that accrued to each joint tortfeasor. <u>Randall v. Fenton Storage Co.</u>, 182 A. 767, 768 (Pa.Super. Ct. 1936).

It is well-established that damages for misappropriation of trade secrets, <u>i.e.</u>, the illicitly gained benefit, may be measured based on the amount of money that the theft saved the infringing party in development costs. <u>Computer Print Systems, Inc. v. Lewis</u>, 422 A.2d 148, 157 (Pa. Super. Ct. 1980) (damages for conversion of trade secret computer program was the cost to competitor of developing the program itself); <u>Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc.</u>, Civ. No. 90-7952, 1994 WL 116121 at *10 (E.D. Pa. Mar. 21, 1994) (proper measure of damages in misappropriation of trade secrets case was "cost of compiling the information on the [misappropriated] computer [database] program"); <u>see also</u> <u>Telex Corp. v. Int'l Business Machines Corp.</u>, 510 F.2d 894, 929-33 (10th Cir. 1975) (awarding competitor's saved research and development costs as damages in action for misappropriation of trade secrets).

Here, the Court of Appeals found that "Mack spent $34 million developing the [MACSPEC 2001] system." <u>See</u> Court of Appeals Opinion at 19. Thus, the Court of Appeals has already adjudicated the amount of benefit received by the joint tortfeasors to be $34 million, and that is the proper amount of damages. On this basis alone, it would be entirely appropriate for the Court to enter an award of damages of $34 million, and allow Mack to proceed to trial with regard to its other trade secret claims. Alternatively and at a minimum, this Court should hold as a matter of summary judgment that liability has been established and allow Mack to proceed to trial on damages.

**3.**    **There Is No Requirement Of "Use" Of MACSPEC 2001**

Toledo Mack further argues that Pennsylvania law requires that Mack prove that Toledo Mack "used" MACSPEC 2001 to be liable for misappropriation of trade secrets, which, it says, the Court of Appeals did not find.  See Toledo Mack Memorandum at 7.  According to Toledo Mack, merely improperly disclosing MACSPEC 2001 to competitors is insufficient to show misappropriation.  Id.  Again, Toledo Mack is wrong.

As noted by the cases Toledo Mack cites, Pennsylvania has adopted Restatement Torts § 757 as the standard for misappropriation of trade secrets.  See Frank W. Winne and Son, Inc. v. Palmer, Civ. A. No. 91-2239, 1991 U.S. Dist. LEXIS 11183 at *4 (E.D. Pa. Aug. 7, 1991) ("Pennsylvania, as most other jurisdictions, has adopted Restatement of Tort § 757").  The Restatement of Torts provides that "[o]ne who *discloses or uses* another's trade secret, without a privilege to do so, is liable to the other if" the disclosure or use was in breach of confidence or through improper means.  Rest. Torts § 757 (emphasis added).  If this language were not clear enough, Comment c expressly states that improper disclosure, by itself, amounts to misappropriation:

> c. Disclosure or use.  One who has a trade secret may be harmed merely by the disclosure of his secret to others as well as by the use of his secret in competition with him.  A mere disclosure enhances the possibilities of adverse use. . . . *The rule stated in this Section protects the interest in a trade secret against both disclosure and adverse use.*

Comment c to Rest. Torts § 757 (emphasis added).  Unsurprisingly, courts have found that improper disclosure can constitute misappropriation.  See, e.g., Air Products and Chemicals, Inc. v. Johnson, 442 A.2d 1114 (Pa. Super. Ct. 1982) (former employee enjoined from disclosing trade secrets to new employer).

The two cases cited by Toledo Mack are not to the contrary.  Nowhere in <u>Palmer</u>, <u>supra</u>, did the court hold that improper disclosure was insufficient; instead, the court quoted and applied the Restatement standard.  <u>See Palmer</u>, 1991 U.S. Dist. LEXIS 11183 at *4.  <u>Flynn v. Health Advocate, Inc.</u>, No. Civ. A. 03-3764, 2004 WL 51929 (E.D. Pa. Jan. 13, 2004), is likewise inapposite.  There, the court granted two defendants' Motions to Dismiss for failure to state a claim for misappropriation of trade secrets because "the only allegation in the Complaint regarding [them] is that [they] passed the information to Peppelman, as [they were] ***supposed*** to do pursuant to the oral non-disclosure agreement."  <u>Id.</u> at *3 (emphasis added).  In other words, the Complaint, while alleging disclosure, failed to allege ***improper*** disclosure.  <u>Flynn</u> did not hold that there is no trade secret liability for disclosure, only that such disclosure must be improper.

In contrast, the Ohio Court of Appeals held that Toledo Mack ***did*** improperly disclose MACSPEC 2001 to PAI.  That holding is entitled to collateral estoppel effect, and summary judgment should accordingly be entered in Mack's favor.

## III.    **CONCLUSION**

For the reasons set forth herein and in its principal Memorandum, Mack respectfully requests that this Court (1) vacate its earlier dismissal of Mack's Counterclaims for misappropriation of trade secrets and (2) enter summary judgment in Mack's favor as to liability

on its Counterclaim for misappropriation of trade secrets as it relates to MACSPEC 2001.

Respectfully submitted,

Barbara Mather
Jeremy Heep
Barak A. Bassman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Attorneys for Defendant/Counterclaim Plaintiff
Mack Trucks, Inc.

Dated:  July 17, 2006

## CERTIFICATE OF SERVICE

I, Jeremy Heep, hereby certify that on July 17, 2006 a true and correct copy of the foregoing Reply Memorandum of Law in Support of its Motion for Reconsideration and Partial Summary Judgment on its Counterclaim for Misappropriation of Trade Secrets was served via hand delivery upon the following:

J. Manly Parks
Duane Morris LLP
30 South 17th Street
Philadelphia, PA  19103

Jeremy Heep