FILED

JUL 23  3 00 PM '90

CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
LUCAS COUNTY, OHIO

BROWNING-FERRIS INDUSTRIES    )    CASE NO.    90-2491
  OF OHIO AND MICHIGAN, INC.,    )
P.O. Box 5069    )    JUDGE J.RONALD BOWMAN
Point Place Station    )
Toledo, Ohio  43611    )
                        )
          Plaintiff,    )
                        )
   v.    )    COMPLAINT
                        )
DAVID M. YEAGER,    )
4805 Springbrook    )
Toledo, Ohio  43615,    )
                        )
         Defendant.    )

Plaintiff Browning-Ferris Industries of Ohio and Michigan, Inc. ("BFIOM"), for its Complaint against defendant David M. Yeager, by and through its undersigned counsel, avers as follows:

<u>PARTIES</u>

1.    BFIOM is an Ohio corporation, with its principal place of business located at 6233 Hagman Road, Erie, Michigan.  Since prior to 1978, BFIOM has been engaged

:, STRAUB
 S CRAMER
HERESS INC
CIATION
MS STREET
OX 1568
DHIO 43603

M0220266

in providing waste collection and disposal services in parts of Ohio and Michigan, including Lucas County, Ohio.

2.  David M. Yeager ("Yeager") is an individual residing in Lucas County, Ohio, at 4805 Springbrook, Toledo, Ohio 43615.  Yeager was from October, 1976 until November 1, 1982 Vice President and General Manager of BFIOM.

3.  This is an action for money damages and for declaratory relief under the Ohio Declaratory Judgment Act, O.R.C. §§ 2721.01 et seq; and this Court has subject matter jurisdiction over the claims asserted herein.

4.  Venue of this action is proper in the County of Lucas, State of Ohio, and the Court has personal jurisdiction over the parties.

<u>COMMON FACTS</u>

5.  Throughout the period during which Yeager was an officer of BFIOM, the mandatory policies of BFIOM prohibited its officers or employees from engaging in any act or practice of conspiracy in violation of the federal antitrust laws.  Throughout the period during which he was an officer of BFIOM, Yeager entered into various agreements with BFIOM, in which he undertook not to engage in any act or practice of conspiracy in violation of the federal anti-trust laws while in the employ of BFIOM.

2

M0220267

6.  In October of 1987, as a direct and proximate result of acts undertaken in bad faith by Yeager while he was an officer of BFIOM, BFIOM became liable to pay a fine of one million dollars ($1,000,000.00) for violation of the federal antitrust laws, as provided in the Plea Agreement entered into between BFIOM and the Government in United States v. Browning-Ferris Industries of Ohio and Michigan, Inc., Criminal No. CR87-780 (N.D. Ohio, W. Div., Potter, J.).

7.  In August of 1988, also as a direct and proximate result of acts undertaken in bad faith by Yeager while he was an officer of BFIOM, BFIOM became liable to make a payment of three hundred and fifty thousand dollars ($350,000.00) for violation of the federal antitrust laws, as provided in the Consent Judgment with the State of Ohio in State of Ohio ex rel. Celebrezze v. Browning-Ferris Industries, Inc., Civ. No. C86-7387 (N.D. Ohio, W. Div., Potter, J.).

8.  The acts of Yeager described above resulting in BFIOM's liability were in violation of the conditions of Yeager's employment with BFIOM, were in contravention of the express policies and instructions of BFIOM, were known by Yeager to be contrary to such policies and instructions and were in violation of Yeager's fiduciary duty.

3

M0220268

9.   As a result of Yeager's acts, BFIOM has incurred liability for the aforementioned fine and payment in the total amount of One Million Three Hundred and Fifty Thousand Dollars ($1,350,000.00), as well as for attorneys' fees and other costs and expenses related thereto.

10.   On June 22, 1989, Yeager filed a complaint, a copy of which is attached as Exhibit A, in the Court of Common Pleas for Lucas County, Ohio that named BFIOM as a defendant and asserted claims for malicious prosecution, abuse of process, libel and slander per se, and libel and slander per quod.  That litigation was styled Yeager v. Browning-Ferris Industries of Ohio and Michigan, Inc., et al., No. 89-2332, and was assigned to Judge J. Ronald Bowman (the "Yeager Action").

11.   On September 25, 1989, BFIOM filed a counterclaim in the Yeager Action that asserted the claims for indemnification alleged in Counts 1 and 2 herein. Thereafter, BFIOM filed its Answer in the Yeager Action denying Yeager's claims and asserting defenses.

12.   On May 17, 1990, Yeager moved to amend his complaint in the Yeager Action and tendered for filing an amended complaint, which is attached as Exhibit B, that sought to add a fifth count alleging violations of the Valentine Act, Ohio's antitrust law, O.R.C. §§ 1331.01 et seq., and attempting to allege violations of the federal

4

M0220269

"RICO" law, 18 U.S.C. §§ 1961 et seq.  BFIOM denies the claims asserted in Yeager's proposed amended complaint and has defenses to his claims.

13.  On June 1, 1990, Yeager voluntarily dismissed his claims without prejudice, and Judge Bowman, over BFIOM's objections, entered an Order dismissing BFIOM's counterclaims without prejudice with the right to refile within one year; a copy of the Order is attached as Exhibit C.

14.  Judge Bowman also ordered that all discovery taken in the Yeager Action be used in any new case filed by any party, that such discovery not be repeated or duplicated in any new case filed by any party, and that any new case involving the claims in the Yeager Action be assigned to him.

15.  In July of 1990, Yeager, through his legal counsel, demanded payment for his claims; BFIOM denies Yeager's claims and has defenses to them.  An actual controversy exists between BFIOM and Yeager regarding the claims referred to in paragraphs 10, 11, and 12 hereof.

### COUNT ONE

(Common Law Indemnification
for Criminal Liability)

16.  BFIOM incorporates paragraphs 1 through 15 of this Complaint as if fully rewritten herein.

5

M0220270

17.  Yeager is required to indemnify BFIOM as a result of the loss and injury caused by his actions, in bad faith and in breach of his fiduciary duty to BFIOM, resulting in BFIOM's liability for the one million dollar ($1,000,000.00) fine and related expenses, costs and attorneys' fees.

## COUNT TWO

### (Common Law Indemnification for Civil Liability)

18.  BFIOM incorporates paragraphs 1 through 17 of this Complaint as if fully rewritten herein.

19.  Yeager is required to indemnify BFIOM as a result of the loss and injury caused by his actions, in bad faith and in breach of his fiduciary duty to BFIOM, resulting in BFIOM's liability for the payment of three hundred and fifty thousand dollars ($350,000.00) to the State of Ohio and related expenses, costs and attorneys' fees.

## COUNT THREE

### (Declaratory Judgment on Yeager's Claims of Malicious Prosecution)

20.  BFIOM incorporates Paragraphs 1 through 19 of this Counterclaim as if fully rewritten herein.

6

M0220271

21. Insofar as Yeager's claims asserted in the Yeager Action include a claim for malicious prosecution, BFIOM hereby seeks a declaratory judgment that it is not liable to Yeager for malicious prosecution as alleged therein.

### COUNT FOUR

#### (Declaratory Judgment on Yeager's Claims of Abuse of Process)

22. BFIOM incorporates Paragraphs 1 through 21 of this Complaint as if fully rewritten herein.

23. Insofar as Yeager's claims in the Yeager Action include a claim for abuse of process, BFIOM hereby seeks a declaratory judgment that it is not liable to Yeager for abuse of process as alleged therein.

### COUNT FIVE

#### (Declaratory Judgment on Yeager's Claims of Libel and Slander Per Se)

24. BFIOM incorporates Paragraphs 1 through 23 of this Complaint as if fully rewritten herein.

25. Insofar as Yeager's claims in the Yeager Action include a claim for libel and slander per se, BFIOM hereby seeks a declaratory judgment that it is not liable to Yeager for libel and slander per se as alleged therein.

M0220272

## COUNT SIX

### (Declaratory Judgment on Yeager's Claims of Libel and Slander Per Quod)

26. BFIOM incorporates Paragraphs 1 through 25 of this Complaint as if fully rewritten herein.

27. Insofar as Yeager's claims in the Yeager Action include a claim for libel and slander per quod, BFIOM hereby seeks a declaratory judgment that it is not liable to Yeager for libel and slander per quod as alleged therein.

## COUNT SEVEN

### (Declaratory Judgment on Yeager's Claims of Valentine Act and/or RICO Violations)

28. BFIOM incorporates Paragraphs 1 through 27 of this Complaint as if fully rewritten herein.

29. Insofar as Yeager's claims asserted in the Amended Complaint tendered in the Yeager action include a claim based on alleged violations by BFIOM of the Valentine Act and/or the federal "RICO" law, BFIOM hereby seeks a declaratory judgment that it is not liable to Yeager for any violation of Valentine Act and/or the federal "RICO" law as alleged therein.

WHEREFORE, BFIOM prays for:

A. Judgment in its favor on the claims asserted in Counts 1 and 2 in the amount of One Million Three Hundred and Fifty Thousand Dollars ($1,350,000.00),

M0220273

plus the amount of related expenses, costs and attorneys' fees;

        B.   Declaratory judgment on the claims asserted in Counts 3 through 7 in the manner requested therein;

        C.   Punitive damages in an amount to be determined; and

        D.   Such other and further relief as the Court deems proper and just.

John F. McClatchey
Timothy A. Ita
Kent K. B. Hanson
THOMPSON, HINE AND FLORY
1100 National City Bank Bldg.
Cleveland, Ohio  44114
(216) 566-5500

Cary R. Cooper
COOPER, STRAUB, WALINSKI &
  CRAMER
900 Adams Street
P.O. Box 1568
Toledo, Ohio  43603
(419) 241-1200

Attorneys for Plaintiff
  Browning-Ferris
  Industries of Ohio and
  Michigan, Inc.

July 25, 1990.

9

M0220274

EXHIBIT A

M0220275

FILED
LUCAS COUNTY

Jun 22  2 33 PM '89

CLERK OF COURTS

IN THE COURT OF COMMON PLEAS OF LUCAS COUNTY, OHIO

David M. Yeager                     ) Case Number 89-2332
4805 Springbrook                    )           ASSIGN TO JUDGE BOWMAN
Toledo, Ohio  43615,                ) Judge
                                    )
        Plaintiff,                  ) COMPLAINT WITH JURY DEMAND
                                    ) ENDORSED HEREON
vs.                                 )
                                    ) MARTIN J. HOLMES & ASSOCIATES
Browning-Ferris Industries          ) By:  Martin J. Holmes  0021002
  of Ohio and Michigan, Inc.,       )      800 First Federal Plaza
6233 Hagman Road                    )      Toledo, Ohio  43624
Erie, Michigan  48133,              )      Telephone: (419) 241-8197
                                    ) Attorney for Plaintiff.
and                                 )
                                    )
Browning-Ferris Industries, Inc.    )
757 N. Eldridge-Box 3151            )
Houston, Texas  77253,              )
                                    )
        Defendants.                 )
                                    )
                                    )
                                    )
                                    )
                                    )
                                    )                    M0220276

Now comes Plaintiff, by and through his Attorney, and for his

Complaint against Defendants, herein alleges and avers the following:

    1.  Defendant, Browning-Ferris Industries of Ohio and Michigan,

Inc., (hereinafter referred to as "BFI of Toledo"), is an Ohio Corporation

transacting business in Lucas County, Ohio.  BFI of Toledo is a wholly

owned subsidiary of Defendant, Browning-Ferris Industries, Inc., and is

under the direct control and direction of Browning-Ferris Industries, Inc., and as such, all acts of BFI of Toledo constitute acts of Browning-Ferris Industries, Inc. BFI of Toledo provides waste collection and disposal services for commercial, industrial, institutional, municipal, governmental and residential customers.

2.   Defendant, Browning-Ferris Industries, Inc., (hereinafter referred to as "BFI") is a corporation organized under the laws of the State of Delaware and maintains its principal place of business in Houston, Texas. BFI, through its wholly owned subsidiary, BFI of Toledo, provides waste collection and disposal services for commercial, industrial, institutional, municipal, governmental, and residential customers in Lucas County, Ohio. Any further references made to BFI of Toledo also incorporate Defendant, BFI, based upon the relationship between BFI of Toledo and BFI, as owner and wholly owned subsidiary.

3.   The acts and transactions alleged herein were performed in whole or in part by Defendants in Lucas County, Ohio. Further, Lucas County, Ohio is the County in which part of the claims for relief arose, therefore venue is established pursuant to Rule 3 of the Ohio Rules of Civil Procedure.

## FIRST CLAIM FOR RELIEF

4.   Plaintiff, David M. Yeager, says that on or about May 22, 1986, that the State of Ohio, through its Attorney General, Anthony J. Celebreeze, Jr. filed a civil action against Browning-Ferris Industries, Inc., (BFI), Browning-Ferris Industries of Ohio and Michigan, Inc., (BFI of Toledo) Bruce E. Ranck, John R. Taddonio, Waste Management of North

-2-

M0220277



America, Inc., Ohio Waste Systems, Inc., dba Waste Management of Toledo, Richard G. Everhouse, and Greg A. Asciutto, wherein the State of Ohio charged said Defendants with market collusion resulting in customer allocation and price fixing in northwestern Ohio. Said civil action was commenced in the United States District Court for the Northern District of Ohio Western Division.

5.  Plaintiff, David M. Yeager, says that Defendant, BFI of Toledo, joined Plaintiff as a Third-Party Defendant in the above-mentioned case by filing a Third-Party Complaint on April 25, 1988. Therein, Defendant, BFI of Toledo, claims that Plaintiff should be held liable for reimbursement to BFI of Toledo for any damages which BFI of Toledo may be held liable for or be required to pay to the State of Ohio for violations or alleged violations of Section 1331.01 et seq of the Ohio Revised Code during the period October 1, 1976 to November 1, 1982. Further, BFI of Toledo claims that Plaintiff should be held liable and required to pay to BFI of Toledo the sum of One Million Dollars ($1,000,000.00) to indemnify and hold BFI of Toledo harmless from fines incurred by BFI of Toledo as a result of their guilty plea in United States District Court, for these unauthorized acts committed by or at the discretion of Plaintiff in breach of his duties to BFI of Toledo. Defendant, BFI of Toledo, further requested that Plaintiff be held liable for additional sums for expenses, damages, and attorney fees, as well as other relief to which they alleged in the Third-Party Complaint.

6.  Plaintiff, David M. Yeager, says that BFI of Toledo commenced the Third-Party Complaint against Plaintiff at a time when BFI of Toledo

-3-

M0220278



knew beyond a doubt that the Third-Party Complaint was entirely absent of probable cause, baseless, wholly false, was with entirely self serving interests, was an attempt to cover up for upper management's involvement in the alleged violations, was calculated to localize and therefore mitigate their potential liability and was brought with malicious and wanton disregard for the truth and Plaintiff, David M. Yeager's rights. BFI of Toledo's knowledge of the overwhelming and compelling evidence to the contrary included the following prior to the time of commencement of the Third-Party Complaint against Plaintiff:

(a)  Knowledge that Bruce E. Ranck, Regional Vice-President of BFI and President of BFI of Toledo, had arranged for and directed Plaintiff, David M. Yeager, his subordinate,  to meet with Ranck's co-conspirator and long time associate, Richard Evenhouse, Regional Vice President for Waste Management of North America, in order to fix prices and allocate customers in the greater Toledo Lucas County area.  Defendants had this knowledge beyond a reasonable doubt when on October 21, 1987, BFI of Toledo's attorney, Allen C. Whitten and other attorneys for BFI of Toledo were permitted to review certain evidence delivered by Plaintiff to a Federal Grand Jury, which evidence included a taped conversation between Plaintiff and Richard Evenhouse, Regional Vice-President for Waste Management of North America.  This taped phone call took place within twenty-four (24) hours after Plaintiff was notified by his superior, Bruce Ranck, that everything had been worked out with Waste Management and to expect a phone call from Richard Evehouse to arrange a time and place to get together to carry out the agreement previously made between BFI and Waste Management.

M0220279



Eight (8) days later, BFI of Toledo entered into a plea agreement with the United States of America, wherein, BFI of Toledo pleaded guilty to a one-count indictment charging a violation of Section 1 of the Sherman Act in connection with a conspiracy to allocate customers and to fix prices of trash hauling services in Lucas County, Ohio and its contiguous Counties in Ohio and Michigan. By pleading guilty, BFI of Toledo, pursuant to the plea agreement, was able to prevent further criminal charges from being brought by the United States against Browning Ferris Industries, Inc., BFI of Toledo, Bruce Ranck, John Taddonio, and other current or former employees of BFI and BFI of Toledo.

(b) Knowledge by BFI of Toledo that there existed numerous affidavits and written statements from employees, former employees and customers of BFI of Toledo indicating that a price fixing agreement and customer allocation program was in full force and effect at least two (2) years after Plaintiff left the employ of BFI of Toledo.

(c) Knowledge by BFI of Toledo that there appeared numerous notes in Bruce Ranck's appointment books linking him to his co-conspirator, Richard Evenhouse, the former Regional Vice-President for Waste Management of North America.

(d) Knowledge that BFI of Toledo had in existence a written policy concerning a Non Compete Agreement between BFI and Waste Management in which they agreed to allocate customers and refrain from soliciting or competing for the business of each other's established customers on the basis of price, which included a reciprocal price fixing policy, joint price increases, and submission of non-competitive quotes and bids to each

M0220280



others' commercial, industrial, institutional, governmental, and municipal customers, with said written policy in the form of an "80-20 plan". This Non-Compete Agreement put in writing and given to BFI of Toledo sales force commenced after Plaintiff, David M. Yeager, left his employ at BFI of Toledo.

(e)  Knowledge by BFI of Toledo that there existed falsified expense reports of the Vice-President of BFI of Toledo, John Taddonio, allegedly to cover up meetings with Greg Ascuitto, Local Manager for Waste Management, pertaining to BFI of Toledo's 80/20 plan, including the allocation of customers and price fixing that existed in Toledo between BFI and Waste Management after Plaintiff's termination.

(f)  Knowledge by BFI of Toledo that there existed telephone records of Bruce Ranck verifying Plaintiff's account of Ranck's role as Chief Architect in the allegations brought by the State of Ohio, Attorney General and the U.S. Department of Justice.

(g)  Knowledge by BFI of Toledo that Bruce Ranck and the Vice-President of BFI of Toledo, John Taddonio, were named Defendants by the State of Ohio, Attorney General's office in their suit against BFI and Waste Management after conducting a two (2) year investigation.

(h)  Knowledge by BFI of Toledo that there existed a close, cooperative, helpful, and mutually beneficial relationship between John R. Taddonio, General Manager for BFI of Toledo and Greg A. Ascuitto, General Manager for Waste Management of Toledo, wherein they freely shared their parts inventories to strengthen and reinforce their comittment to each other to maintain a shared monopoly in the Toledo area.

M0220281

(i)  Knowledge by BFI of Toledo that Waste Management granted BFI of Toledo exclusively, special favors and discounts at Waste Management's Landfill in Toledo, not available to other competitors, even though other competitors were dumping much large volumes of waste than BFI of Toledo.

7.  Plaintiff says that BFI of Toledo commenced the action by way of a Third-Party Complaint against Plaintiff in an attempt to perpetuate a cover-up of upper management involvement in the per se violations of anti-trust regulations and to localize and therefore mitigate their potential and far reaching liability as a result thereof.

8.  Plaintiff says that the Third-Party Complaint of BFI of Toledo against Plaintiff was dismissed without prejudice on June 22, 1988.

9.  Plaintiff says that the malicious prosecution by Defendant, BFI of Toledo, was a carefully calculated self-serving attempt to conceal the truth, cover up for corporate and regional officers' involvement in the price fixing and customer allocation scheme, and an attempt to mitigate their potential liability.  This insidious act was motivated by malice, hostility and ill will and solely intended to harass and intimidate Plaintiff, David M. Yeager,  in order to keep him from testifying freely in The State of Ohio Ex rel. Celebreeze v. BFI, Inc., et al., and pending National class action suit, as Plaintiff had freely testified before the Federal Grand Jury, investigating the customer allocation and price fixing activities of Defendant, BFI of Toledo.

10. Plaintiff says that as a direct and proximate result of this outrageous and malicious prosecution commenced by Defendant BFI of Toledo that David M. Yeager suffered damages and without limiting the generality

-7-

M0220282

of the foregoing, the following special damages:

(a)  Damage to his business, professional and personal integrity, reputation and standing in the community;

(b)  Legal expenses to defend the Third-party Complaint;

(c)  Loss of income because of the concentration and time spent by the Plaintiff in preparation for defending the Third-Party Complaint filed by BFI of Toledo;

(d)  Loss of profits due to the effect that the Third-Party Complaint had on Plaintiff's integrity and business reputation;

(e)  Severe emotional distress, mental anguish, anxiety, and well-being;

(f)  Depression, loss of sleep, stress, humiliation and embaressment;

(g)  Aggravation of a preexisting chronic ulcer condition resulting in mental and physical pain and suffering;

(h)  Loss of future employment opportunity within the Waste System's Industry.

11.  Plaintiff, David M. Yeager, says that the acts of the Defendant were intentional, a wanton disregard for Plaintiff's rights, malicious, and made after a sufficient period of time had lapsed for which Defendant knew beyond a doubt that the lawsuit was baseless and totally without probable cause, by reason of which Plaintiff is entitled to punitive damages.

<u>SECOND CLAIM FOR RELIEF</u>:

12.  Plaintiff, David M. Yeager, incorporates by reference all of

-8-

M0220283



the allegations set forth in paragraph 1 through 11, as if fully rewritten herein.

13.   Plaintiff says that Defendant, BFI of Toledo, abused the legal process against Plaintiff primarily to accomplish a purpose for which it is not designed, namely, to cover up for upper management involvement in per se violations of anti-trust regulations and calculated to threaten and intimidate a key witness in the State Anti-Trust Action and the National Class Action Suit in order to mitigate Defendant's potential liability to the State of Ohio and the horrendous potential liability in the pending National Class Action Civil Suit, should upper management be found accountable.

14.   These acts of abuse of process made by Defendant, BFI of Toledo,  were made with malice, were entirely self-serving and a wanton disregard for the truth and Plaintiff's rights.

15.   The acts of Defendant, BFI of Toledo, were punitive, intended to harass and injure, as well as inflict potentially disastrous economic harm upon Plaintiff and serve as an example to others who might be required to testify.

16.   As a direct and proximate result of the abuse of process committed by Defendant, BFI of Toledo, Plaintiff incurred damages, including his inability to sleep or effectively concentrate on his work and was extremely distraught, suffered fear, anxiety, mental and emotional distress, bouts of depression, harm to Plaintiff's business, professional and personal integrity, reputation and standing in the community, legal expenses to defend the abuse of process, and loss of income due to the

M0220284

time that Plaintiff incurred in defending the Third-Party Complaint filed by Defendant, BFI of Toledo.

17. As a direct and proximate result of the intentional, willful, and malicious abuse by process of Defendant, BFI of Toledo, Plaintiff is entitled to recover compensatory and punitive damages.

### THIRD CLAIM FOR RELIEF

18. Plaintiff, David M. Yeager, incorporates herein all of the allegations contained in paragraphs 1 through 17, as if fully rewritten herein.

19. Plaintiff, David M. Yeager, says that Defendant, BFI, and Defendant BFI of Toledo, did authorize a certain corporate spokesmen for BFI to communicate to the Wall Street Journal, the Toledo Blade, the Lorrain Journal, various trade publications and other publications and to members of the general public; to intentionally and maliciously make false, defamatory and misleading statements with the full and premeditated attempt to brand Plaintiff, David M. Yeager, as a criminal in order to displace suspicion and cover up for upper management involvement and to localize and therefore mitigate their liability by indicating that Plaintiff, David M. Yeager, acted out of the scope of his authority and was solely responsible for the criminal act that Defendant BFI of Toledo was convicted of, when in fact BFI and BFI of Toledo, had knowledge of overwhelming and compelling evidence which clearly and unequivically indicated that Plaintiff was directed to perform these acts while an employee of BFI of Toledo, with the clear knowledge, encouragement, and directive of his superior, Bruce Ranck, in furtherance of a plan or scheme

-10-

M0220285

by Ranck and his co-conspirator, Rich Evenhouse to fix prices, allocate customers, and restrain trade in areas throughout their regions where their markets overlapped, in order to eliminate the potential for multiple ongoing price wars.

20.  Plaintiff says that the statements concerning Plaintiff were wholly false, defamatory, self-serving, and were spoken or printed with malice, and wanton disregard for the truth and Plaintiff, David M. Yeager's rights.

21.  Plaintiff says that the communication of such allegation by Defendant BFI and Defendant BFI of Toledo constitutes slander per se and libel per se for which Defendants are liable to Plaintiff for compensatory and punitive damages.

22.  Plaintiff further says that as a direct and proximate result of the slander per se and libel per se committed by Defendants, BFI and BFI of Toledo, that Plaintiff has suffered bouts of depression, stress, harm to his business, professional and personal integrity, reputation and standing in the community, among his family, friends, shareholders, and associates; severe emotional distress and well being; humiliation and embaressment; and, physical and mental pain and suffering as a result of a pre-existing chronic ulcer condition aggravated by the slander per se and libel per se committed by the above named Defendants in carrying out their self-serving and malicious acts.

### FOURTH CLAIM FOR RELIEF

23.  Plaintiff incorporates herein all of the allegations contained in paragraphs 1 through 22, as if fully rewritten herein.

M0220286

24.   Plaintiff says that Defendant, BFI, and Defendant, BFI of Toledo, did authorize a certain corporate spokesman for BFI and BFI of Toledo to communicate to the Wall Street Journal, the Toledo Blade, the Lorrain Journal, various trade publications and other publications and to members of the general public, to intentionally and maliciously make false, defamatory and misleading statements indicating that Plaintiff, David M. Yeager, acted out of the scope of his authority and was solely responsible for the criminal act that Defendant BFI of Toledo was convicted of, when in fact BFI and BFI of Toledo had knowledge of overwhelming and compelling evidence which clearly and unequivicably indicated that Plaintiff was directed to perform said acts by his superior, Bruce Ranck, President of BFI of Toledo and Regional Vice-President of BFI.  Plaintiff was directed to perform these acts while an employee of BFI of Toledo, with the clear knowledge, encouragement, and directive of his superior, Bruce Ranck, to fix prices, allocate customers, and restrain trade.

25.   Plaintiff says that the statements concerning Plaintiff were wholly false, defamatory, self-serving, and were spoken or printed with malice, and wanton disregard for the truth and Plaintiff, David M. Yeager's rights.

26.   Plaintiff says that the publications of these allegations by Defendant BFI and Defendant BFI of Toledo constitute slander and libel for which Defendants are liable to Plaintiff for compensatory and punitive damages.

27.   Plaintiff further says that as a direct and proximate result of

-12-

M0220287

the slander and libel committed by Defendants, BFI and BFI of Toledo, that Plaintiff has suffered bouts of depression, stress, harm to his business, professional and personal integrity, reputation, and standing in the community, among his family, friends, shareholders, and associates; severe emotional distress and well being; humiliation and embarassment; and, physical and mental pain and suffering as a result of a pre-existing chronic ulcer condition aggravated by the slander and libel committed by the above named Defendants in carrying out their self-serving and malicious acts.

WHEREFORE, Plaintiff, David M. Yeager, prays for judgment, against BFI of Toledo on the First and Second Claims for Relief in the amount of Two Million One Hundred Seventy-five Thousand Dollars ($2,175,000.00) as and for compensatory damages and Six Million Five Hundred Twenty-five Thousand Dollars ($6,525,000.00) as and for punitive damages; and Plaintiff, David M. Yeager, prays for judgment against BFI and BFI of Toledo, jointly and severally on the Third and Fourth Claims for Relief in the amount of Three Million Four Hundred Thirty-five Thousand Dollars ($3,435,000.00) as and for compensatory damages and Ten Million Three Hundred Five Thousand Dollars ($10,305,000.00) as and for punitive damages.

Respectfully submitted,

Martin J. Holmes
Attorney for Plaintiff

-13-

M0220288

## DEMAND FOR JURY

Plaintiffs hereby demand a trial by jury on all issues so triable herein.



Martin A. Holmes

YeagerDisk:Complaint

M0220289