Hoover, and Stanton to retain their immensely valuable positions in control of BFI and, at the same time, to conceal their (the Individual Defendants') participation in and/or responsibility for the price-fixing conspiracies, the willful and repeated environmental violations, and the gross mismanagement of BFI's assets and operations from ever being disclosed to the investing public generally.

94. The Proxy Materials omitted any reference to the utter failure of the Individual Defendants and/or their confederates to maintain an adequate system of internal controls necessary and sufficient to ensure that the Company's waste disposal operations were properly and prudently managed in compliance with the applicable antitrust and environmental laws and regulations.

95. The facts set forth herein, which were or should have been known (but for reckless indifference) by each of the Individual Defendants, should have been fully and accurately disclosed in the Proxy Materials issued in the name of the Company so that shareholders of the Company could make an informed judgment concerning the nominees to its Board of Directors and their suitability to election or re-election, particularly in the context of the statements made by or on behalf of them in the Company's Annual Reports which accompanied the Proxy Materials and at BFI's Annual Meetings of Shareholders. Each of such facts was material

51

41

M0218770

to plaintiffs and the other members of the Proxy Class inasmuch as such facts reflected upon the manner in which the business of the Company was being conducted and supervised by its directors, the manner in which its assets were being utilized, and whether the directors posed for election or re-election should be elected or re-elected as corporate fiduciaries.

96. Each of the Individual Defendants to this Count caused the Company to issue and disseminate, or pursuant to Section 20 of the Exchange Act were responsible for the issuance and dissemination of the Proxy Materials and/or was a nominee for election or re-election as a director of the Company. As such, each of such defendants is responsible for the violations of law alleged herein.

97. Each of the Individual Defendants knew or should have known, but for his reckless indifference, that the Proxy Materials disseminated in the name of the Company were false and misleading in the foregoing respects, in that they omitted facts bearing upon the directors' participation in, knowledge of, and/or responsibility for criminal and other wrongdoing in connection with BFI's nationwide price-fixing conspiracy and willful and repeated environmental violations, their gross mismanagement of and utter incompetence in operating and/or overseeing the waste disposal operations (including treatment and disposal of hazardous waste) of the Company, as detailed above, and their intentional and bad

52

M0218771

40

faith concealment from the investing public of BFI's true financial and operating condition and prospects, and in that the Proxy Materials were intended to and did deceive the members of the Proxy Class into voting as requested by management, thereby unlawfully manipulating the entire corporate suffrage process.

98.  The Proxy Materials further did not disclose that although BFI maintained substantial insurance coverage to protect it partially from the wrongful acts of its officers and directors, the Board refused or failed timely (or at all) to assert claims against the carriers thereof to mitigate the Company's damages and further, may have let expire certain valuabl claims possessed by the Company against its present or former officers and directors.

99.  The Proxy Materials also failed to disclose, in the context of what was disclosed about BFI nominees for election or re-election to its Board of Directors, that such individuals had directed, engaged in, or long-tolerated, inter alia, criminal and other wrongdoing by Company officials that led to the Company's payment of tens of millions of dollars of fines and penalties, and over $500 million of losses and even greater losses of future business opportunities.  In non-pejorative terms, the Individual Defendants could and should have disclosed, but did not disclose, to BFI shareholders the bare facts with respect thereto and the other facts referred to above so as to permit them to make informed decisions as to how to vote with respect to the election or re-

53

M0218772

election of directors and otherwise. Moreover, the Individual Defendants and other members of BFI's Board of Directors unlawfully extracted shareholder approval of the Raincoat Provisions, which were enacted under false pretenses at the 1987 Annual Meeting and thereafter utilized by the Individual Defendants as a shield against liability for their wilful, repeated, and continuing misconduct, gross mismanagement, waste of corporate assets and breaches of fiduciary duty owed to the Company and its shareholders.

100. As a result of the foregoing violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated by the SEC thereunder, the corporate suffrage rights of plaintiff and every other member of the Proxy Class were violated in connection with the Annual Meetings from at least 1988 and thereafter and, as a result thereof, management's nominees were elected or re-elected as BFI directors at the Annual Meeting from 1988 onward. Thus, having been elected or re-elected, they have continued their criminal and other wrongdoing and gross mismanagement of the Company, causing further damage to plaintiff, the Company, and all of BFI's shareholders as alleged herein.

101. Had BFI's directors and senior officers disclosed the necessary and/or important facts alleged above in the Proxy Materials, the Company's shareholders would not have given their proxies to vote to elect or re-elect the directors, could have

54

M0218773

sought to enjoin the election or re-election of directors, or could have voted against the interest of management and the Board of Directors, and the suffrage process would not have been violated.

102. As a result of the foregoing, the Individual Defendants in issuing, causing to be issued and/or acquiescing in the issuance of the foregoing false and misleading Proxy Materials, while they were members of the Board and/or officers of BFI, have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated by the SEC thereunder.

103. The Individual Defendants, or one or more of them, failed to take action to redress the violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, which because such violations remain uncorrected, are engaged in a continuing conspiracy to frustrate BFI shareholders' suffrage rights.

104. By reason of the foregoing, plaintiff and all other members of the Proxy Class have been damaged by the election and re-election of the Individual Defendants.

105. Plaintiff and the other members of the Proxy Class have been irreparably harmed.

55

M0218774

37

## COUNT II

### BREACH OF FIDUCIARY DUTIES

106. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if set forth fully herein.

107. Plaintiff Yeager brings this Count derivatively in the right of and for the benefit of BFI pursuant to Rule 23.1 of the Federal Rules of Civil Procedure to redress injuries suffered and to be suffered by BFI as a direct result of the wilful, repeated, and continuing criminal and other misconduct, breaches of fiduciary duty and candor, gross mismanagement, abuse of control, fraud and deceit, negligent misrepresentation, as well as the aiding and abetting thereof, by the Individual Defendants and their subordinates. BFI is named as a nominal defendant in this action solely in a derivative capacity, and this Count is brought on its behalf.

108. Plaintiff Yeager will adequately and fairly represent the interests of BFI and its shareholders in enforcing and prosecuting their rights.

109. As senior officers and directors of BFI, the Individual Defendants owed to the Company the highest duty of loyalty and honesty in conducting BFI's affairs in a lawful and prudent manner. Here, however, the Individual Defendants,

56

M0218775

individually and in concert, engaged in and/or condoned the wilful, repeated, and continuing criminal and other misconduct, gross mismanagement, and waste of corporate assets, all in breach and/or reckless disregard of their fiduciary duties of loyalty, care, and candor which they owed to the Company and its shareholders in connection with the corporate suffrage process and otherwise.

110. Said defendants conspired to abuse and did abuse the control reposed in them by virtue of their positions as directors and/or senior officers of BFI.

111. Said defendants have caused BFI to waste its valuable assets and otherwise unnecessarily expend its corporate funds, as a result of which the Company has been substantially damaged. Because said defendants caused BFI to be operated for their personal benefit (and thereby to subject the Company to massive losses flowing from their criminal and other misconduct, gross mismanagement, and waste of corporate assets and to foster a corporate culture where wrongdoing was conceived, engineered, directed, and enforced by BFI's highest officers), BFI has been damaged and continues to be damaged, particularly as a result of the series of cover-ups carried out on behalf of the Individual Defendants and their confederates and the expenditure of tens of millions of dollars in fines and penalties and the loss of over $500 million of Company earnings arising from the Individual Defendants' gross mismanagement and their responsibility for an even greater loss of corporate opportunities.

M0218776

112. Said defendants may have caused statutes of limitations to lapse with respect to valuable claims in favor of BFI arising out of the illegal conduct described above in order to avoid personal responsibility for their own roles in the conduct described above and/or failed to cause claims to be made with the Company's insurance carriers so as to maximize the amount of coverage for the Individual Defendants' wrongdoing.

113. In addition, the Individual Defendants, as members of BFI's Board of Directors, have breached their legal and fiduciary duties to carry out their responsibilities with prudence, candor, due diligence and primary loyalty to BFI and its shareholders, and to fulfill their duty of candor in connection with BFI's proxy statements and otherwise, pursuant to which they were, _inter alia_, elected and re-elected as directors of BFI. These defendants have failed to fulfill properly their legal obligations to supervise the business of the Company, which is especially egregious given that they are ultimately responsible for the conduct of its affairs. These defendants either engaged in, condoned, or knew of the illegal acts at issue, and have failed to put in place adequate internal controls and means of supervision to prevent the wrongful conduct referred to herein, particularly after the wrongdoing described herein came to their attention. Thereafter, they have conspired to conceal and cover-up their wrongdoing and avoid accountability therefor and have sought to protect themselves and their subordinates rather than place first and foremost their duty of loyalty to BFI and its shareholders.

M0218777

114. Each of the Individual Defendants was an officer and/or director of BFI at the time the illegal conduct referred to herein took place, was covered-up, or both, and is liable as a direct participant in, or as an aider and abettor of, the wrongs complained of herein and/or the cover-up of these wrongs, including, if applicable, permitting statutes of limitation to expire without obtaining written agreements tolling the running thereof and/or failing to maximize BFI's opportunities to recover its damages from insurance carriers and otherwise by timely making or notifying such carriers of the potential claims by the Company and/or its shareholders. These defendants, because of their positions of control and authority as executive or operating officers and/or directors of the Company, were able to and did, directly or indirectly, control the conduct of its business.

115. The Individual Defendants participated in the wrongdoing complained of herein in order to prolong the illusion of the Company's ongoing growth and profitability and its success as a market leader in the waste disposal services industry, to inflate the market prices of the Company's securities, and to conceal the adverse facts concerning BFI's illegal conduct, lack of adequate internal controls, management and future prospects so that they could (i) protect and perpetuate their directorial and/or executive positions and the substantial compensation, perquisites, benefits, and prestige they obtained thereby; (ii) inflate the price of the Company's common stock in order to enhance the value

59

M0218778

33

of their common stock holdings and options; and (iii) conceal and cover-up their own prior misconduct and mismanagement of BFI and avoid being held responsible therefor, either civilly and/or in connection with the corporate suffrage process.

116. Each of the Individual Defendants, by reason of his stock ownership, management positions, consulting positions, and/or membership on the Board of Directors and its committees during the time said positions at BFI were held, was a controlling person of the Company and had the power and influence, and exercised the same collectively and individually, to cause the illegal acts alleged herein, the cover-up of such illegal acts, or both. Alternatively, these defendants failed to fulfill their duties as officers and directors of BFI and wasted its corporate assets.

117. In addition to the foregoing, as set forth above, certain of the Individual Defendants have availed themselves of material inside information not disclosed to the investing public. In connection therewith, they have sold large quantities of their holdings of BFI common stock and have realized excessive prices therefor, all of which has unjustly enriched them.

M0218779

32

118. BFI and its shareholders have been injured by reason of defendants' breach and/or reckless disregard of their fiduciary duties to the Company.  Plaintiff Yeager, as a present shareholder and representative of BFI and its shareholders seeks damages and other relief for the Company.

119. By virtue of the foregoing, the Individual Defendants violated the franchise of BFI shareholders, including plaintiff and other BFI shareholders.

120. The actions set forth above constituted a breach of the Individual Defendants' fiduciary duties to plaintiff and other shareholders of BFI and to BFI itself.

## DERIVATIVE ALLEGATIONS

121. On September 18, 1990, plaintiff Yeager, through her attorneys, made a written demand upon the Board to take immediate legal action against those BFI employees, officers, and/or directors who are responsible for the massive damages caused to the Company arising out of long-standing misconduct, mismanagement, and breaches of fiduciary duty, including violations of the federal antitrust laws which have resulted in record fines, penalties, and damage awards against the Company, all of which has caused millions of dollars of lost business opportunities for BFI.  See Exhibit C attached hereto.

61

M0218780

122. By letter dated September 28, 1990, BFI acknowledged receipt of the demand letter and advised plaintiff that the issues addressed therein would be discussed before a full meeting of the Board of Directors. At a special meeting held on October 8, 1990, the Board created a "Special Committee" of certain outside directors purportedly to consider the issues raised in the demand letter. Hand-picked legal counsel also was retained by the committee, ostensibly to assist in investigating the matters addressed in the demand letter and in providing recommendations to the Board regarding what actions should be taken, if any, in response to the demand letter. See Exhibit D attached hereto.

123. By letter dated November 13, 1990, plaintiff's counsel informed counsel to the Special Committee that BFI had been named as a defendant in a number of Class Actions brought by BFI shareholders arising out of BFI's dissemination of false and misleading information to the investing public. Plaintiff's counsel then made an additional demand of the BFI Board (which he requested counsel to forward to the Board) to commence legal proceedings against each of the BFI officers and directors who were responsible for the acts complained of in the shareholder Class Actions. See Exhibit E attached hereto. The BFI Board acknowledged receipt of the additional demand by letter dated December 5, 1990, and advised plaintiff's counsel that the concerns addressed in the additional demand would be forwarded for investigation to the previously created Special Committee. See Exhibit F attached hereto.

M0218781

124. By the November 13, 1990 letter, plaintiff's counsel also requested information regarding what timetable the committee had established to investigate the matters addressed in the demand letters. Given the substantial record developed in the numerous legal and investigatory proceedings which detailed willful and repeated criminal and civil wrongdoing committed by BFI officials and their subordinates, any such investigation could (and should) have reasonably proceeded on an expedited basis.

125. The Special Committee responded in letter dated December 3, 1990, that it was unable at that time to provide any estimate regarding when its investigation would be completed, but would provide that estimate once the Board "had a better grasp of the scope of the issues to be investigated...." However, no estimate was provided by the Committee until March 18, 1991 -- six months after plaintiff's initial demand was made. Moreover, therein, the Committee advised plaintiff that the Committee would not complete its investigation and report its conclusion and recommendations to the BFI Board until mid-to-late summer, 1991.

126. After the passage of over one-year from the date of plaintiff's initial demand, BFI's acting general counsel notified plaintiff's counsel that BFI's Board of Directors rejected the demands as purportedly "premature" or "not in the best interest of the Company and its shareholders." See Exhibit G attached hereto. For the reasons stated herein, such rejection is unjustified and

63

M0218782

without cause, and the Committee's purported investigation amounts to no less than a **"whitewash"** of the defendants' wrongdoing. In fact, defendants Meyers, Phillips, Sr., and Ranck tacitly confessed to their participation in the criminal misconduct, mismanagement, and waste of corporate assets complained of herein, when, after the report of the Special Committee containing the Committee's "findings" and recommendations was delivered to the members of the Board of Directors, the three defendants purportedly excused themselves from the meeting, and the Board agreed to vote on the matter in their purported absence. Notwithstanding the Committee's "findings" or the Board's vote, the making of a demand upon BFI's Board of Directors was and remains a futile gesture, and neither the Board nor any "Special Committee" could be expected to act promptly or favorably upon any demands made by BFI's shareholders.

127. The failure of BFI's Board of Directors to take the demanded legal action has been based not on an exercise of sound business judgment for the benefit of the Company, but rather on considerations of self-interest and irreconcilable conflicts of interest and because of the pendency of the various investigations and grand juries referred to above. Specifically, the Board has failed to bring the demanded suit because the Board is composed of most of the Director Defendants, who: wish to protect their prominent positions; do not wish to be sued; and, even more significantly, do not want to subject themselves or their confederates to potential criminal and civil charges as a result

64

28

M0218783

of their participation in the violations of federal and state antitrust and other illicit activities referred to herein, which activities would come to light if litigation were commenced. The Board lacks any reasonable basis for either the delay or its failure to bring the demanded legal action, particularly since BFI has apparently acknowledged the mismanagement and wrongdoing alleged herein, having paid throughout the years tens of millions of dollars in fines, penalties, or settlements (including its agreement last year to pay $30.5 million dollars to settle its liability in the antitrust litigation, <u>Cumberland Farms, Inc. v. Browning-Ferris Industries, Inc., et al.</u>, Master File No. 87-3717 (E.D. Pa. 1991) -- one of the largest antitrust class action settlements in the history of the United States), and given BFI's decision to discontinue its grossly mismanaged hazardous waste operations which resulted in a 1990 pre-tax charge of over $452 million.

128. BFI, its officers, directors, and/or subordinates have been named as targets and/or defendants in numerous grand jury investigations and suits across the United States, charging them with wilful and repeated violations of federal and state antitrust laws and other illegal activities. These investigations and/or actions have concerned allegations that BFI, with others, engaged in contracts, combinations and conspiracies to raise, fix, and maintain prices for containerized solid waste removal and disposal services in the United States. These proceedings demonstrated that

M0218784

BFI entered into agreements with co-conspirators to allocate customers among themselves, had refrained from soliciting or competing for the business of co-conspirators' established customers, had provided intentionally high price quotations to discourage customers from switching from one company to the other, and had refrained from submitting competitive bids to its co-conspirators' customers. These investigations and actions revealed that BFI's Board committed waste, gross mismanagement, and serious breaches of their fiduciary duty and duty of candor, and other egregious violations of their obligations to the Company and its shareholders. In the almost ten years since many of these actions have commenced, the members of the Board -- including Individual Defendants named herein -- despite personal knowledge of these wrongdoings (and their participation therein), have done nothing on behalf of BFI to recover the Company's claimed damages or to eradicate the rampant illegality that continues to pervade BFI.

129. In fact, in many situations the Individual Defendants have not only refused to take disciplinary action against the BFI employees (including many of the Individual Defendants named herein) responsible for the misconduct, waste, and mismanagement complained of herein, but have actually promoted these employees to higher positions within BFI (including election to the Board of Directors), or have paid hundreds of thousands of dollars in "hush" money to former BFI officials under the guise of

66

M0218785

"consultant fees," all in apparent appreciation of their efforts to not cooperate with the investigating authorities nor implicate their BFI superiors (who again include many of the Individual Defendants named herein).

130. Indeed, the Individual Defendants have orchestrated defenses to the various actions which, <u>inter</u> <u>alia</u>, aided and abetted their original wrongdoing and caused millions of dollars of Company funds to be wasted to protect the Individual Defendants therein from liability and to conceal their wrongdoing and the extent thereof from BFI's shareholders and the investing public. Included among such defensive maneuvers was and is t'e **"whitewash"** committee empaneled by BFI's Board to subvert plaintiff's demands and the corporate governance process generally.

131. In connection therewith, the Individual Defendants have engaged in a massive cover-up of their involvement in the federal and state antitrust actions and have even demanded that various pleadings filed subsequent to the initial complaints be filed under seal and out of public view. Further, to conceal their wrongdoing from BFI's own shareholders, the defendants have not disclosed the extent of, the charges contained in, or (in non-pejorative terms) the facts underlying the federal and state antitrust actions in the Company's Proxy Statements.

M0218786

132. The Board participated in and/or condoned at least some of the wrongful acts at issue, and such acts are the direct and proximate result of the reckless or grossly negligent failure of the members of the Board to inform themselves adequately as to the Company's affairs and institute adequate systems of internal controls and supervision to properly address and eradicate BFI's rampant wrongdoing.

133. The directors of BFI could not be relied upon to reach a truly independent and objective decision as to whether to commence and prosecute this action against themselves for the illegal acts at issue, because that would require them to sue themselves and their fellow current and former directors and allies in the top ranks of the Company. Many of the directors have long-developed personal, social and business ties with other directors, including service upon the boards of directors of other companies and have recommended one another for such lucrative and prestigious positions. Many of the other companies which the members of the BFI Board serve as directors have business relationships with BFI. If the directors of the Company were to cause it to assert these claims against their brethren, such an action would prejudice and harm those relationships and, as a consequence, the directors have an inherent bias against bringing or vigorously prosecuting the claims set forth herein.

68

24                M0218787

134. To the extent that BFI now maintains or has maintained directors' and officers' liability insurance coverage, such insurance would be the primary or principal source of any monetary recovery against the Individual Defendants and would be rendered useless therefor if the Company commenced proceedings against such defendants, as these policies of insurance uniformly contain provisions which eliminate coverage for such wrongdoing if the Company brings suit directly in its own name (i.e., the "insured vs. insured" exclusion). By comparison, such insurance is specifically intended to provide coverage for wrongdoing and claims asserted by BFI's shareholders suing derivatively or otherwise. Therefore, the Company is contractually disabled from commencing an action against its directors or senior officers and any demand that the Company do so would necessarily be futile.

135. BFI's Board of Directors has previously recommended approval (and unlawfully extracted shareholder approval) of provisions strictly limiting their potential liability to the Company, thereby evidencing the directors' intent and desire to avoid liability for breaches of fiduciary duties, like those complained of herein.

136. Many of BFI's directors also serve as directors of other companies. As a consequence, they receive substantial financial benefits and prestige which would be seriously jeopardized if they caused the Company to commence this action against themselves.

69                    23                    M0218788

137. BFI's Board has previously refused to act with respect to shareholder demands and claims made on the same or other subjects based upon breaches of fiduciary duty and waste of BFI's corporate assets and, in virtually every instance, has sought to eliminate them.

138. To the extent that BFI's directors have been improperly or unlawfully elected to office by means of false, deceptive, or inadequate proxy materials as alleged below, the Board is legally disabled from carrying out intra-corporate activities and, inter alia, cannot lawfully consider, act upon, reject, or otherwise oppose the commencement and/or prosecution of the derivative claims asserted herein.

139. With respect to the claims asserted herein, the acts of the Individual Defendants complained of herein constitute self-dealing, relate to the duty of candor imposed upon members of the Board, and amount to unlawful activities; as such, they are not subject to any claimed exercise of the so-called "business judgment rule." Further, as a result of the Individual Defendants' breaches of their duty of candor, which runs to BFI and its shareholders, no "after-the-fact" claim of "business judgment" can correct the Individual Defendants' unlawful manipulations of the corporate suffrage process.

70

22    M0218789

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against the defendants, jointly, severally, and/or individually, as follows:

(a) certifying this action as a Class Action on behalf of the Class defined herein with plaintiff as the Class Representative;

(b) declaring BFI's Proxy Materials for the years 1987, 1988, 1989, 1990, and 1991 to be false and misleading in violation of the applicable federal securities laws;

(c) as a matter of law and/or equity, declaring the results of the election or re-election of sitting directors at the 1987, 1988, 1989 1990, and 1991 Annual Meetings, and the enactment of the "Raincoat Provisions" at the 1987 Annual Meeting, to be null and void, and requiring the Company to hold a new election with respect to directors, after full and fair disclosure of all material facts in Proxy Materials prepared in accordance with the federal securities laws and all other applicable laws under the supervision of the Court;

(d) declaring all intra-corporate actions as described herein as ultra vires and illegal since the Board was not validly holding office since at least 1987;

71

M0218790

21

(e)   declaring that the Individual Defendants have breached their fiduciary duties as alleged herein;

(f)   issuing a mandatory injunction requiring the Company to develop and implement practices and procedures, under the supervision of the Court, to terminate and prevent the re-occurrence of the wrongdoing alleged herein and to take prompt action to recover from those of its officers, employees, and others who have caused it damages, to recover such damages;

(g)   requiring the Individual Defendants to pay to BFI the amounts by which the Company has been damaged by reason of the conduct complained of herein and/or to the extent they have been unjustly enriched by both the wrongdoing complained of herein and pursuant to the Company's various benefit plans;

(h)   awarding plaintiff her attorneys' fees, accountants' and experts' fees, and reasonable costs and expenses; and

(i)   granting such other and further relief as is proper.

72

20

M0218791