IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 02-4373 |
| | : | |
| v. | : | |
| | : | |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

| | |
|---|---|
| MACK TRUCKS, INC., | : |
| | : |
| Counterclaim Plaintiff, | : |
| | : |
| v. | : |
| | : |
| TOLEDO MACK SALES & SERVICE, INC., | : |
| | : |
| Counterclaim Defendant. | : |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                   August 16, 2006

Presently before the Court are Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s Motion for Reconsideration of this Court's Order of March 29, 2005 (Docket No. 74), Plaintiff/Counterclaim Defendant Toledo Mack Sales & Service, Inc.'s response thereto (Docket No. 78) and Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s Reply (Docket No. 79). For the reasons stated below, Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s Motion for Reconsideration is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**[1]

On March 29, 2005, this Court, *inter alia*, denied Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s ("Mack") request for summary judgment as to Plaintiff/Counterclaim Defendant Toledo Mack Sales & Service, Inc.'s ("Toledo") Robinson-Patman Act claim. In January 2006, the Supreme Court issued its opinion in <u>Volvo Truck North America., Inc. v. Reeder-Simco GMC, Inc.</u>, 126 S. Ct. 860 (2006), a case involving the Robinson-Patman Act. In its Motion for Reconsideration, Mack asks the Court to grant summary judgment in its favor with respect to Toledo's Robinson-Patman Act claim based on the Supreme Court's decision in <u>Reeder-Simco</u>. Further, Mack requests that the Court grant summary judgment with respect to the following: (1) Toledo's Body Builder claims under Section 1 of the Sherman Act; (2) Toledo's claim that Mack fraudulently concealed a Section 1 dealer conspiracy to allocate territories; and, (3) Toledo's claims under the Ohio Motor Vehicle Dealer Law.

**II. DISCUSSION**

In this section, the Court will briefly discuss Mack's Motion for Reconsideration and then analyze Toledo's Robinson-Patman Act claim under the summary judgment standard.

A.  <u>Motion for Reconsideration</u>

Granting a motion for reconsideration is appropriate in three situations: "(1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice." <u>New Chemic (U.S.), Inc. v. Fine Grinding Corp.</u>, 948 F. Supp. 17, 18-19 (E.D. Pa. 1996) (citations omitted).

---

1. As the parties are aware of the facts, the Court only provides a brief background. More information on this case may be found in this Court's Memorandum and Order of March 29, 2005, which is Docket No. 71.

With respect to Mack's request for reconsideration of the Court's denial of summary judgment on Toledo's Robinson-Patman Act claim, the Court finds that the Supreme Court's decision in Reeder-Simco is an intervening change in the controlling law. Reeder-Simco clarified the competitive injury element of the Robinson-Patman Act and requires this Court to reconsider and reverse its earlier decision denying summary judgment on this claim. In its Motion for Reconsideration, Mack also asks the Court to reconsider its denial of summary judgment with respect to Toledo's Body Builder claims under Section 1 of the Sherman Act, Toledo's claim that Mack fraudulently concealed a Section 1 dealer conspiracy to allocate territories, and Toledo's claims under the Ohio Motor Vehicle Dealer Law. None of the three reasons for granting a motion for reconsideration are present with respect to those claims, and therefore Mack's request for reconsideration is denied as to those claims.

### B. Summary Judgment

#### 1. Issue as to Competitive Injury

In the instant matter, Toledo avers a secondary-line violation,[2] arguing that Mack's price discrimination injured competition among Mack's customers, i.e. Toledo Mack, the Body Builders,[3] and other Mack dealers. Specifically, Toledo asserts that Mack violated the Robinson-Patman Act by selling chassis of like grade and quality to the Body Builders and other Mack distributors at preferential prices. To succeed on its Robinson-Patman claim, Toledo must establish that: (1) Mack's sales to Toledo and Mack's favored purchasers involved interstate

---

2. "Secondary-line cases . . . involve price discrimination that injures competition among the discriminating seller's customers . . . ." Reeder-Simco, 126 S.Ct. at 870.

3. The "Body Builders" are McClain, McNeilus and Heil.

commerce; (2) Mack discriminated in price between Toledo and at least one other favored purchaser; (3) the trucks Mack sold at disparate prices were of "like grade and quality"; and (4) Mack's price discrimination had a prohibited effect on competition. See Texaco, Inc. v. Hasbrouck, 496 U.S. 543, 556 (1990). Competitive injury may be established in one of two ways: (1) direct evidence of lost sales, or (2) indirect, inferential proof under the Morton Salt test. See J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 90 F.2d 1524, 1535-38 (3d Cir. 1990). This "permissible inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time." Reeder-Simco, 126 S.Ct. at 870.

As described by Mack, much of the briefing on the original motion for summary judgment concerned:

> whether actionable price discrimination must be measured by comparing prices offered to dealers for a sale of the same model truck to the same customer at the same time – Mack's transaction-specific view of competition – or whether actionable price discrimination can be measured by examining prices offered to different dealers within the same geographic area, even if on different transactions – Toledo Mack's geographic-based view of competition.

(Mack's Br. 1-2.) In its Memorandum of March 30, 2005, the Court adopted Toledo's argument, (Docket No. 71 at 11-19,) but Reeder-Simco has forced this Court to revisit its decision. The parties agree that competitive injury is the central issue in deciding Mack's Motion. In this round of briefing, Toledo offers no direct evidence of lost sales.[4] Toledo contends that, even after Reeder-Simco, it can still prove competitive injury inferentially. (Toledo's Br. 7.)

---

4. In its brief, Toledo argues that it did directly compete with other Mack dealers and the Boby Builders. (Toledo's Br. 17-22.) The Court notes that Toledo failed to offer any evidence of a head-to-head bidding situation in which Mack failed to match a discount.

### 2. *Reeder-Simco's* Applicability

The Supreme Court categorized Reeder's evidence into three groups:

> (1) comparisons of concessions Reeder received for four successful bids against *non-Volvo* dealers, with larger concessions other successful Volvo dealers received for *different sales* on which Reeder did not bid (purchase-to-purchase comparisons); (2) comparisons of concessions offered to Reeder in connection with several unsuccessful bids against *non-Volvo* dealers, with greater concessions accorded other Volvo dealers who competed successfully for *different sales* on which Reeder did not bid (offer-to-purchase comparisons); and (3) evidence of two occasions on which Reeder bid against another Volvo dealer (head-to-head comparisons).

Reeder-Simco, 126 S.Ct. at 870-71 (emphasis in original). The Supreme Court found that Reeder's evidence "fell short" because these comparisons did not involve instances in which Reeder competed with the "beneficiaries of the alleged discrimination *for the same customer*." Id. at 871 (emphasis in original). Continuing on its point, the Supreme Court noted that Reeder did not "even attempt to show that the compared dealers were consistently favored vis-a-vis Reeder" and commented that "[t]he compared incidents were tied to no systematic study and were separated in time by as many as seven months." Id.

The Supreme Court then moved into a discussion of the geographic-based approach to proving competitive injury in competitive bidding cases, writing that while Reeder may have competed with other Volvo dealers for the chance to bid on sales in a broad geographic area, "at that initial stage, . . . competition is not affected by differential pricing; a dealer in the competitive bidding process . . . approaches Volvo for a price concession only after it has been selected" to submit a bid by a retail customer. Id. The Supreme Court specifically noted that the relevant market in a competitive bidding situation is not that broad geographic area, but instead

5

"the relevant market becomes limited to the needs and demands of a particular end user, with only a handful of dealers competing for the ultimate sale." Id. at 871-72 (quoting the dissent in Reeder-Simco GMC v. Volvo Truck North American, Inc., 374 F.3d 701, 719 (8th Cir. 2006)). Therefore, according to the Supreme Court, the fact that Volvo dealers may have competed for sales in the same geographic area did not mean that they competed for the same "custom-tailored sales." Id. at 872. Because the "purchase-to-purchase and offer-to-purchase comparisons fail[ed] to show that Volvo sold at a lower price to Reeder's 'competitors,' the Supreme Court found that the comparisons did not support an inference of competitive injury. Id. An inference of competitive injury arises only from a "'proof of a substantial price discrimination between *competing purchasers* over time.'" Id. (quoting Fall City Indus., 460 U.S. 428, 435 (1983) (emphasis by Reeder-Simco Court)).

### 3. Toledo's Evidence

In this case, Toledo relies on the reports of its expert, Mr. William E. Harris, to show competitive injury. Mr. Harris authored four expert reports. In these reports, Mr. Harris employed a geographic-based approach and measured the average discounts offered by Mack to Toledo and other buyers of Mack chassis, regardless of whether the discounts involved head-to-head competition for the same sales. In Mr. Harris's deposition, he described the purpose of his analysis as follows:

> [T]he purpose of my analysis was to calculate the weighted average discounts granted by Mack Truck and to compare those weighted average discounts to the weighted average discounts granted to other Mack distributors and certain Mack customers and within Mack distributors that would also include the Mack national accounts, direct sales and leasing.

(Mack's Br. Ex. 6 at 32-33.) With respect to Mr. Harris's methodology, he described it as follows: "The way you would calculate a weighted average is to take the sum of all the occurrences where there is an approved granted discount in this particular matter and divide that by the sum of all the quantities of those particular records – that are reflected in those particular records." Id. at 70. Based on these calculations, Mr. Harris concluded that Toledo received a weighted average discount percentage that was less favorable than that received by Mack's distributors and customers. Id. at 33-34. Mr. Harris did not identify any head-to-head competition between Toledo and another buyer of Mack chassis to sell to the same customer on the same transaction, id. at 144, and Mr. Harris could not determine if there was discrimination involving Toledo on a transaction-by-transaction basis. Id. at 154.

### 4. Application of *Reeder-Simco*

The similarities between Reeder-Simco and the instant case are numerous. Most importantly, both cases apply the Robinson-Patman Act; both cases involve allegations of secondary-line injury; and, both cases concern competitive bidding. As described above, Toledo relies on the reports of Mr. Harris to show competitive injury. Mr. Harris's reports consist of purchase-to-purchase comparisons and offer-to-purchase comparisons, utilizing a geographic-based approach, with the relevant market being the United States. When Mr. Harris conducted his analysis, he failed to measure whether Mack equalized Toledo in head-to-head bidding situations as required by Reeder-Simco.[5] Because of this failure, the Court believes that Toledo's

---

5. Mack's expert, Dr. Roy Epstein, did analyze pricing in head-to-head competition. Dr. Esptein found that "the incidence of relevant differential quotes to Toledo Mack is negligible." (Mack's Br. Ex 10.) Of note, Dr. Epstein found two instances in which Toledo did not receive as much sales assistance as another dealer but also discovered that in three instances of head-to-head competition, Toledo received better pricing than the dealers it was competing against. Id.

7

studies do not focus on the proper market and thus do not properly analyze competition. Although the Supreme Court appeared to leave the door open to Toledo's geographic-based approach in its comments that Reeder failed to show compared dealers were "consistently favored" and offer a "systematic study," Reeder-Simco, 126 S.Ct. at 871, the Court believes that the Supreme Court closed the door on Toledo's approach in its discussion of the unique nature of the competitive bidding process. Id. at 871-72.

Instead of analyzing geographic-based competition in the United States as Mr. Harris did, Toledo should have focused on head-to-head competitive bidding. After Reeder-Simco, the Court believes that competitive discrimination cannot be inferred based on Mr. Harris's analysis because Toledo, the favored dealers and Body Builders are not "competitors" at the geographic level analyzed by Mr. Harris. Competition in a competitive bidding case must be analyzed at the head-to-head, transactional level.

Similar to Reeder in Reeder-Simco, Toledo's purchase-to-purchase and offer-to-purchase comparisons fail to show that Mack sold at a lower price to Toledo's competitors. Therefore, Toledo cannot establish an inference of competitive injury, and the Court must grant summary judgment in favor of Mack with respect to Toledo's Robinson-Patman Act claim.[6]

**III. CONCLUSION**

For the foregoing reasons, Mack's Motion for Reconsideration is granted in part and denied in part. An appropriate order follows.

---

6. The Court will not discuss Mack's arguments regarding market power because it finds that Toledo's Robinson-Patman claims fails with respect to competitive injury.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 02-4373 |
| | : | |
| v. | : | |
| | : | |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

| | |
|---|---|
| MACK TRUCKS, INC., | : |
| | : |
| Counterclaim Plaintiff, | : |
| | : |
| v. | : |
| | : |
| TOLEDO MACK SALES & SERVICE, INC., | : |
| | : |
| Counterclaim Defendant. | : |

## ORDER

AND NOW, this 16th day of August, 2006, upon consideration of Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s Motion for Reconsideration of this Court's Order of March 29, 2005 (Docket No. 74), Plaintiff/Counterclaim Defendant Toledo Mack Sales & Service, Inc.'s response thereto (Docket No. 78) and Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s Reply (Docket No. 79), it is hereby **ORDERED** that Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s Motion for Reconsideration is **GRANTED IN PART** and **DENIED IN PART**.

Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s request for reconsideration of the Court's earlier denial of summary judgment on Plaintiff/Counterclaim Defendant Toledo Mack Sales & Service, Inc.'s Robinson-Patman claim is **GRANTED**.  Further, Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s request for summary judgment on Plaintiff/Counterclaim Defendant Toledo Mack Sales & Service, Inc.'s Robinson-Patman claim is **GRANTED**.

With respect to Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s request for reconsideration of the Court's earlier denial of summary judgment with respect to Plaintiff/Counterclaim Defendant Toledo Mack Sales & Service, Inc.'s Body Builder claims under Section 1 of the Sherman Act, claim that Mack fraudulently concealed a Section 1 dealer conspiracy to allocate territories, and claims under the Ohio Motor Vehicle Dealer Law, Defendant/Counterclaim Plaintiff Mack Trucks, Inc.'s Motion is **DENIED**.

BY THE COURT:


 *s/ Ronald L. Buckwalter, S. J.*
 RONALD L. BUCKWALTER, S.J.