IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:02-CV-04373-RLB |
| | : | |
| v. | : | |
| | : | |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : | |
| | : | |
| Counterclaim Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOLEDO MACK SALES & SERVICE, INC. | : | |
| | : | |
| Counterclaim Defendant. | : | |

**MEMORANDUM OF LAW OF PLAINTIFF TOLEDO MACK SALES & SERVICE, INC. IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE COUNTERCLAIMS OF MACK TRUCKS, INC. <u>AND FOR OTHER POST-TRIAL RELIEF</u>**

                                                        DUANE MORRIS LLP

Date: October 26, 2006                   By:<u>/s/Wayne A. Mack</u>
                                                      Wayne A. Mack
                                                      J. Manly Parks
                                                      James H. Steigerwald
                                                      David A. Degnan
                                                      30 South 17th Street
                                                      Philadelphia, PA 19103-4196
                                                      215.979.1000

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................1

II. JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED IN TOLEDO'S FAVOR ON MACK'S COUNTERCLAIM FOR MISAPPROPRIATION OF MACSPEC 2001 BECAUSE MACK FAILED TO PRESENT ANY COMPETENT EVIDENCE OF DAMAGES .............................5

    A. The Jury's Verdict Based on Five Times Mack's Claimed Annual Development Costs Cannot Stand Because Development Costs Are Not An Appropriate Measure Of Damages Where, As Here, The Trade Secret Has Been Recovered From The Defendant And The Value Of The Trade Secret Has Not Been Compromised ................................ 8

    B. There Is No Evidence That Mack Lost Any Profits Or Suffered Any Harm As a Result of PAI Having Possessed MACSPEC 2001 For A Limited Period Of Time in 2002 Before It Was Returned To Mack .............. 12

    C. There Is No Evidence That PAI Received $11,340,000 Worth Of Benefit From Having Used MACSPEC 2001 For A Limited Period Of Time In 2002 ................................................................................................ 13

    D. The Only Evidence Of A "Reasonable Royalty" For MACSPEC 2001 Is The Fact That Mack Charged A Monthly License Fee Of $275 For MACSPEC 2001, But The Undisputed Evidence Shows That Mack In Fact Received This Amount For The MACSPEC 2001 System Provided To PAI ........................................................................................ 15

    E. The Evidence Establishes That The Development Costs For MACSPEC 2001 Were Only $50,000 ................................................................ 17

III. JUDGMENT SHOULD BE ENTERED IN FAVOR OF TOLEDO ON MACK'S CLAIM FOR MISAPPROPRIATION OF MACSPEC 2001 BECAUSE THAT COUNTERCLAIM IS BARRED BY THE GIST OF THE ACTION DOCTRINE AND THE ECONOMIC LOSS RULE ..................................20

IV. TOLEDO SHOULD BE GRANTED A NEW TRIAL ON ALL CLAIMS AND COUNTERCLAIMS BECAUSE HIGHLY PREJUDICIAL AND IRRELEVANT EVIDENCE WAS ADMITTED REGARDING PRIOR UNRELATED LITIGATION ...........................................................................................22

V. TOLEDO IS ENTITLED TO A NEW TRIAL BECAUSE JUDGMENT WAS ERRONEOUSLY ENTERED AGAINST TOLEDO AS A MATTER OF LAW ON MACK'S CLAIM FOR MISAPPROPRIATION OF MACSPEC 2001 ..............................................................................................................27

| | | |
|---|---|---|
| VI. | TOLEDO IS ENTITLED TO A NEW TRIAL BECAUSE JUDGMENT WAS ERRONEOUSLY ENTERED AGAINST TOLEDO AS A MATTER OF LAW ON ITS CLAIM UNDER SECTION 1 OF THE SHERMAN ACT | 28 |
| VII. | TOLEDO IS ENTITLED TO A NEW TRIAL BECAUSE HIGHLY PROBATIVE DIRECT EVIDENCE OF THE ILLEGAL ANTITRUST CONSPIRACY WAS IMPROPERLY EXCLUDED AT TRIAL | 30 |
| VIII. | TOLEDO IS ENTITLED TO A NEW TRIAL BECAUSE SUMMARY JUDGMENT WAS ERRONEOUSLY ENTERED AGAINST TOLEDO ON ITS CLAIM UNDER THE ROBINSON-PATMAN ACT | 32 |
| IX. | TOLEDO IS ENTITLED TO A NEW TRIAL ON ALL OF ITS CLAIMS BECAUSE COUNSEL FOR MACK ENGAGED IN PREJUDICIAL MISCONDUCT IN HER CLOSING ARGUMENT | 33 |
| X. | TOLEDO IS ENTITLED TO A NEW TRIAL ON ALL CLAIMS AND COUNTERCLAIMS BECAUSE THE COURT FAILED TO PROVIDE COUNSEL WITH THE JURY INSTRUCTIONS PRIOR TO CLOSING ARGUMENTS AS REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 51 | 35 |
| XI. | CONCLUSION | 36 |

I.  **INTRODUCTION**

At the close of the evidence in this case, Toledo Mack Sales & Service, Inc. ("Toledo") moved for the entry of judgment as a matter of law on the counterclaims advanced by Mack Trucks, Inc. ("Mack"). Toledo asserted, among other things, that Mack failed to present any competent evidence of damages on its counterclaims. The Court first expressed its doubts about the speculative nature of Mack's claimed damages in a side-bar conference with counsel during trial on September 29, 2006, but explained that it would wait to hear from Mack's expert on damages.[1] But then Mack failed to call any such expert witness to support its purported damage claims. After Toledo moved for judgment as a matter of law, the Court indicated that it would reserve judgment on the motion and hear argument at a later time. ( N.T. 10/04/06 at 69)

On October 11, 2006, the jury returned a $11,356,500 verdict against Toledo and in favor of Mack for misappropriation of trade secrets. At the same time, the jury found against Toledo and in favor of Mack on Toledo's claim against Mack under the Ohio Motor Vehicle Dealer Law and on Toledo's claim for tortious interference with prospective contractual relations.[2] While Toledo seeks post-trial relief on its affirmative claims, the primary focus of this Memorandum is Toledo's entitlement to post-trial relief on Mack's counterclaims.

The jury's verdict of $11,356,500 on Mack's counterclaims against Toledo is a gross miscarriage of justice. The amount of the verdict has no relationship to any actual evidence of

---

[1]  The Court's statements regarding this issue were not reflected in the record and appear as "inaudible" at pages 90-91 of the notes of testimony of September 29, 2006.

[2]  Earlier the Court had, during the trial, entered judgment against Toledo and in favor of Mack on Toledo's claims against Mack under Section 1 of the Sherman Act. Before the commencement of the trial, the Court had granted Mack's Motion for Summary Judgment and had dismissed Toledo's Robinson-Patman Act claim. Toledo now also seeks post-trial relief on those claims, as explained below.

damages on a claim of misappropriation of trade secrets. One basis for measuring such damages is the harm suffered by the plaintiff, but Mack did not prove that it lost any sales, or suffered any other loss, as a result of the claimed misappropriation here. In fact, at trial Mack did not even *attempt* to prove that it suffered any losses as a result of the alleged misappropriation of its trade secrets.

An alternative measure of damages for misappropriation of trade secrets is the benefit to the wrongdoer. The $11,340,000 awarded by the jury on Mack's claim for misappropriation of MACSPEC 2001 works out to be exactly five times the $2,268,000 cost Mack claims to have incurred annually during the period 1994 through 2002 in connection with the development of all of the various forms of its parts database, including paper parts books, microfiche, and various generations of MACSPEC systems, including but not limited to MACSPEC 2001. (See Exhibit P-1096). Because its was clearly based on *a multiple of the annual costs Mack claimed to have incurred* in connection with the development of various versions of a parts information database at per year, the jury's verdict bears no possible relationship to the *benefit gained by PAI Industries, Inc.* ("PAI"), the party to whom Toledo provided MACSPEC 2001, from having access to a copy of MACSPEC 2001 for a period of less than a year during 2002.

The evidence was that PAI used MACSPEC 2001 for a limited number of months during 2002 to update its parts catalogs and to assist in responding to certain customer inquiries. Any benefit PAI may have realized from such limited use of MACSPEC 2001 simply cannot support the jury's award of over $11.3 million. Indeed, the jury's award of over $11.3 million is more than five times the $2.284 million that PAI made earned during the entire year of 2002! (See Exhibit D-1317)

2

Significantly, Mack never introduced any evidence of what it would have cost PAI to update its catalogs or respond to customer inquiries *without MACSPEC 2001*. There was no evidence of the hours saved by PAI's employees by using the database as opposed to performing such tasks manually, let alone any evidence that the cost savings to PAI were the staggering amount of $11,356,000 – a figure which works out to well over a half a million employee hours at $20 per hour!

At trial, Mack argued only that it was entitled to recover damages from Toledo based on the costs Mack incurred to develop its parts database in all of its various forms, including paper parts books, microfiche, and various generations of MACSPEC systems. However, as a matter of law, *Mack's* development costs would only be a proper measure of damages if the evidence also demonstrated that PAI was attempting to develop the trade secret on its own and by the claimed misappropriation was able to avoid incurring those development costs. But here, Mack offered no evidence that PAI was independently attempting to develop such trade secrets and was able to avoid incurring development costs by obtaining MACSPEC 2001. In point of fact, Mack's own witnesses testified it would have been *impossible* for PAI to have developed anything like MACSPEC 2001. As such, the development costs incurred by Mack in connection with MACSPEC 2001 (or, more broadly, in connection with the its parts database in all of its various forms) are not an appropriate measure of damages here as a matter of law.

Under the law of this Circuit as set forth in International Industries, Inc. v. Warren Petroleum Corp., 248 F.2d 696 (3d Cir. 1957), the appropriate measure of damages in a trade secret case is the benefit to a defendant measured by the "standard of comparison method." That method compares the cost the defendant incurred by means of the use of the trade secret to the cost the defendant would have incurred to accomplish "the same result" had the defendant not

3

appropriated the trade secret. Here, the "result" accomplished by PAI by use of MACSPEC 2001 was not development of that database or one like it, but rather was the updating of catalogs and answering customer phone calls. Consequently, the proper measure of damages under the standard of comparison method would be the costs PAI may have saved by doing those things using MACSPEC 2001, as compared to without it. Yet, there was absolutely no evidence that shows the jury's damages award of over $11.3 million had any rational relationship to such a comparison. In fact, Mack never offered any evidence of, or even made any attempt to quantify, any such savings to PAI.

Moreover, the evidence was that Mack paid only $50,000 – not over $11 million – for the development of MACSPEC 2001. MACSPEC 2001 was developed from a prior generation of MACSPEC known as MACSPEC II.[3] Because it only cost Mack $50,000 in development costs to accomplish that task, the award in favor of Mack should be amended to $50,000 if this Court were to determine that the costs incurred by Mack to develop MACSPEC 2001 was a proper measure of damages here, which it is not.

Toledo is also entitled to the entry of judgment as a matter of law in its favor on Mack's misappropriation claim under both the gist of the action doctrine and the economic loss rule. Mack's counterclaim was, at its heart, an action sounding in contract, not in tort. The gist of the action doctrine and the economic loss rule prohibit Mack from converting its counterclaim into a tort claim by repackaging it as "misappropriation of trade secrets."

---

[3]  The undisputed evidence further shows that PAI possessed MACSPEC II. Mack witnesses acknowledged that they had no evidence and did not contend that PAI obtained its copy of MACSPEC II from Toledo. (N.T. 10/4/06 at 76).

4

Alternately, a new trial should be ordered on Mack's counterclaims because irrelevant and highly prejudicial evidence regarding unrelated prior litigation involving Toledo's owners, Dave and Sally Yeager, was admitted.[4]

Finally, this Court should grant Toledo a new trial on its claims against Mack. Toledo presented ample evidence of a continuing conspiracy sufficient to go to the jury on its claim under section 1 of the Sherman Act, and other relevant evidence of that illegal conspiracy to restrain trade was improperly ruled to be inadmissible. Moreover, Toledo also presented sufficient evidence of competitive injury to go to the jury on its claim under the Robinson-Patman Act. And Toledo is also entitled to a new trial on its claims under the Ohio Motor Vehicle Dealer law and for tortious interference with prospective contractual relations (1) because counsel for Mack engaged in highly prejudicial misconduct in her closing argument that improperly influenced the jury against Toledo on those claims, and (2) because counsel for Toledo was prejudiced by being denied access to the jury charge prior to closing arguments, as mandated by Fed. R. Civ. P. 51.

## II. JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED IN TOLEDO'S FAVOR ON MACK'S COUNTERCLAIM FOR MISAPPROPRIATION OF MACSPEC 2001 BECAUSE MACK FAILED TO PRESENT ANY COMPETENT EVIDENCE OF DAMAGES

Toledo is entitled to judgment as a matter of law in its favor on Mack's claim for misappropriation of MACSPEC 2001 because Mack presented no evidence of damages, much less evidence supporting the jury's outrageous award of over $11.3 million on this claim.[5]

---

[4]   For this same reason, this Court should also grant Toledo a new trial on its claims against Mack under the Ohio Motor Vehicle Dealer law and for tortious interference is prospective contractual relations.

[5]   Judgment as a matter of law may be granted where there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of the party that won the verdict.
(Continued...)

5

DM1\700514.1

After the start of trial, the Court entered judgment on liability in favor of Mack and against Toledo on Mack's counterclaim for misappropriation of MACSPEC 2001. Based on the evidence presented at trial, it was undisputed (i) that PAI had access to MACSPEC 2001 for less than one year, (N.T. 9/29/06 at 46; N.T. 10/4/06 at 67), (ii) that PAI returned it to Mack, (Yavari Deposition dated 10/17/03 at 115:19-116:21; N.T. 9/28/06 at 176), and (iii) that PAI possessed a copy of a predecessor version of MACSPEC, as well as several sets of Mack microfiche, that PAI did *not* obtain from Toledo, (N.T. 10/04/06 at 76) (Yavari Deposition dated 10/17/03 at 191:23-192:10; N.T. 9/28/06 at 176).[6] Moreover, there was no evidence that PAI's use of MACSPEC 2001 caused Mack to lose a single sale or in any way diminished the value of MACSPEC 2001.[7] Nevertheless, in total disregard of the undisputed evidence, the jury returned a award for Mack of the astounding sum of $11,340,000 on this claim.

Proof of damages is a necessary element of a claim for misappropriation of trade secrets. See Moore v. Kulicke & Soffa Indus., 318 F.3d 561, 566 (3d Cir. 2003) (noting that harm to plaintiff is element of a claim for misappropriation of trade secrets under Pennsylvania law);

---

(Continued...)

    See Foster v. Nat'l Fuel Gas Co., 316 F.3d 424, 428 (3d Cir. 2003). Judgment as a matter of law is therefore appropriate where the record is "critically deficient of that quantum of evidence from which a jury could have rationally reached its verdict." Feldman v. Phila. Hous. Auth., 43 F.3d 823, 829 (3d Cir. 1994) (quoting Swineford v. Snyder County, 15 F.3d 1258, 1265 (3d Cir.1994)).

[6]   Mack also presented evidence that a company called Northwest Truck had access to a copy of MACSPEC 2001 for a several month period during 2002 prior to Toledo reacquiring that copy and returning it to Mack. Mack presented absolutely no evidence of any use of the database by Northwest, nor did Mack present any evidence of any damages caused by Northwest Truck having had access to MACSPEC 2001 during that limited period of time.

[7]   It was also undisputed that Toledo earned only a few hundred dollars from the sale of MACSPEC 2001 to PAI. (See Exhibits P-225 and D-326)

6

<u>Frank W. Winne & Son, Inc. v. Palmer</u>, No. 91-2239, 1991 U.S. Dist. LEXIS 11183, at *4 (E.D. Pa. 1991) ("To make out a cause of action for misappropriation of a trade secret, plaintiff must show . . . injury to the plaintiff resulting from the defendant's use of the trade secret.").

Damages for claims of misappropriation of trade secrets are generally measured in one of three ways: (1) the plaintiff's actual losses, such as lost profits; (2) the benefit received by a defendant from its use of the plaintiff's trade secret; or (3) the "reasonable royalty" that the defendant would have hypothetically paid to the plaintiff for the use of the trade secret. See e.g. 12 Pa. C.S. § 5304 (Pennsylvania's version of the Uniform Trade Secret Act).[8] Mack offered no evidence at trial to support the jury's verdict for the misappropriation of trade secrets under *any* recognized theory of damages.

Because Mack failed to produce evidence of damages to support its claim that Toledo misappropriated MACSPEC 2001, judgment as a matter of law should be entered in Toledo's favor on this claim. Should the Court determine that development costs are an appropriate measure of damages for this claim, the jury's damages award must be reduced to $50,000, which

---

[8] Pennsylvania has enacted the Uniform Trade Secrets Act. See 12 Pa. C.S. §§ 5301-5308. While the act is not applicable to misappropriation occurring prior to April 19, 2004, which is the effective date of the act, Act 2004-14, § 4, the act merely codifies the various preexisting common law approaches to measuring damages recoverable on a claim for the misappropriation of trade secrets. See <u>Pioneer Hi-Bred Int'l v. Holden Found. Seeds</u>, 35 F.3d 1226, 1243 (8th Cir. 1994) ("Courts have used a wide variety of methods to measure damages in trade secret cases, including lost profits, unjust enrichment and reasonable royalty."). See also <u>Rohm and Haas Co. v. Adco Chemical Co.</u>, 689 F.2d 424, 433 (3d Cir. 1982) (stating that Pennsylvania common law permits the recovery of defendant's profits or plaintiff's damages resulting from defendant's misappropriation of plaintiff's trade secrets); <u>Greenberg v. Croydon Plastics Co.</u>, 378 F. Supp. 806, 816-17 (E.D. Pa. 1975) (noting that the basic methods for assessing damages for misappropriation of trade secrets are: (1) the damages sustained by the victim, and (2) the profits earned by the wrongdoer by the use of the misappropriated material).

is the amount of money incurred by Mack for development costs specifically related to MACSPEC 2001. In the alternative, because the jury's verdict is against the weight of the evidence and has no support in the record, Toledo is entitled to a new trial.

### A. The Jury's Verdict Based on Five Times Mack's Claimed Annual Development Costs Cannot Stand Because Development Costs Are Not An Appropriate Measure Of Damages Where, As Here, The Trade Secret Has Been Recovered From The Defendant And The Value Of The Trade Secret Has Not Been Compromised

Mack has previously argued that it is entitled to recover all of its collective "development costs" for and all prior versions of the parts database that comprises MACSPEC 2001 simply because PAI had access to MACSPEC 2001 for a few months. Mack's contention is clearly wrong as a matter of law. The jury's verdict on Mack's claim for misappropriation of MACSPEC 2001 was clearly a simply five-times multiple of Mack's claimed annual development costs. But because Mack's development costs are not a proper measure of damages on that claim, the jury award is improper as a matter of law.

As noted above and explained in more detail below, damages on a misappropriation of trade secrets claim can be based on the harm to the plaintiff, or on the benefit to the wrongdoer, or on a "reasonable royalty" theory. However, the costs Mack claims it incurred to develop its paper parts books, microfiche, MACSPEC, MACSPEC II, and MACSPEC 2001, which was clearly the basis of the jury's verdict here, bear no relation to any harm suffered by Mack or any benefit received by PAI as a result of PAI having had temporary access to MACSPEC 2001 for a few months, nor do they represent a "reasonable royalty" for the limited period of time PAI possessed that system.

As a matter of law, compensatory damages are to put a plaintiff in the position it would have occupied had there been no misappropriation. They are not intended to provide a plaintiff with a windfall. Calhoun v. Yamaha Motor Corp., U.S.A., 216 F.3d 338, 347 (3d Cir. 2000)

("The purpose of compensatory damages is 'to make the plaintiff whole.'" (quoting Feingold v. SEPTA, 512 Pa. 567, 517 A.2d 1270, 1276 (Pa. 1986)); Duquesne Light Co. v. Woodland Hills Sch. Dist., 700 A.2d 1038, 1053 (Pa. Commw. Ct. 1997) (noting that under Pennsylvania law the purpose of compensatory damages is to make the plaintiff whole, "not to award a windfall").[9] Accordingly, there is no rational basis on which the jury could award Mack its development costs for the use of MACSPEC 2001 by PAI or Northwest.

In Diesel v. Caputo, 366 A.2d 1259 (Pa. Super. Ct. 1976), the Court examined a compensatory damages award based on a theory of unjust enrichment. The plaintiff argued that a jury's verdict of $55,000 was supported by evidence that the plaintiff had invested $55,000 for improvements to a supper club. The court squarely rejected this argument and held that a new trial was appropriate. In doing so, the court explained that there was no showing that the value received by the defendants was equal to the amount of the plaintiff's investment. Similarly, in this case, there can be no credible argument that the value received by PAI or Northwest for the use of MACSPEC 2001 for a few months even compares to Mack's investment in MACSPEC 2001, and all of its prior versions.

---

[9] For example, a plaintiff cannot recover both a damages award for future lost profits resulting from the misappropriation of a trade secret while at the same time obtaining an injunction prohibiting future use of the trade secret. See e.g. Next level Communications v. DSC Communications Corp., 107 F.3d 322, 328 (5th Cir. 1997) (holding that a plaintiff who premised its damages claim on the development of a competing system by the defendant could not then also obtain injunctive relief); Whiteside Biomechanics, Inc. v. Sofamor Danek Group, 88 F. Supp. 2d 1009 (E.D. Mo. 2000) (holding that a plaintiff could not obtain both future lost profits and an injunction). Any result to the contrary would amount to a double recovery. Similarly, in this case, because PAI returned MACSPEC 2001 and only temporarily had access to it, there is no basis for awarding damages based on a permanent retention of the trade secret. This would effectively allow Mack to prohibit the future use of its trade secret by PAI while recovering its development costs as if PAI still was in possession of MACSPEC 2001.

9

Here, permitting a damages award based on Mack's development costs for earlier generations of its parts database would plainly be a windfall for Mack. The evidence was that PAI returned MACSPEC 2001 after having had access to it for less than one year. (N.T. 9/29/06 at 46; N.T. 10/4/06 at 67) Thus, this is not a case where the evidence supports a finding that the defendant has retained, continued to use, or continued to benefit from an alleged trade secret. The evidence at trial was also undisputed that Mack continues to use MACSPEC 2001 and continues to lease it to all distributors, and at the very same rates it charged prior to PAI gaining access to MACSPEC 2001. Therefore, this is not a case where the value of Mack's trade secret has been permanently destroyed, or even slightly impaired.

Moreover, this is not a case where PAI was attempting to independently develop a database like MACSPEC 2001 and avoided paying developmental costs by acquiring MACSPEC 2001. In fact, Mack witnesses made clear that PAI simply could not have independently developed the database. (N.T., 9/29/06 at 37-38).

Comment f to Section 45 of the Restatement (Third) of Unfair Competition addresses exactly this factual scenario. Comment f of the Restatement states that development costs are *not* a proper measure of damages for misappropriation of a trade secret where a defendant would not have been able to develop the trade secret on its own. According to the Restatement, where it is possible for the defendant to independently acquire or develop the trade secret by proper means, the cost of development may be relevant to the question of damages because it can reflect the value of the benefit received by the defendant. However, "*when acquisition of the trade secret by proper means is unlikely, the appropriate comparison may be between the cost of using the trade secret and the costs of alternative methods available to the defendant to achieve the same result.*" Id. (Emphasis added).

10

Mack's evidence of its own developmental costs bears no relationship to any cost savings achieved by PAI as a result of having used MACSPEC 2001 to update its parts catalogs on a few occasions and to answer customer inquiries. The "result" PAI was attempting to achieve by using the database was to sell products, not to develop its own database of Mack parts. Because Mack's own witness conceded that PAI could not have independently developed MACSPEC 2001, and because there is no evidence in the record as to what it would have cost PAI to independently develop MACSPEC 2001, Mack's development costs cannot provide, as a matter of law, a basis for the jury's verdict.[10]

Mack has previously argued that Computer Print Systems Inc. v. Lewis, 281 Pa. Super. 240, 422 A.2d 148 (1980), and Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc., No. 90-7952, 1994 WL 116121 (E.D. Pa. Mar. 21, 1994), stand for the proposition that a plaintiff may recover its costs of developing a trade secret that has been misappropriated. However, neither of those cases involved a trade secret that could not have been developed by the defendant. Accordingly, the costs of development did offer some reasonable indication of the benefit conferred upon the plaintiff because they indicated the development costs the defendant was able to avoid by not having to develop the trade secret on its own. Moreover, in both of those cases, the defendant retained possession of the alleged trade secret.

This permanent deprivation of a plaintiff's trade secret presents a fundamentally different and distinguishable set of facts that those here, where PAI only had access to MACSPEC 2001 for a limited period of time before it was recovered by Mack. Further, in contrast to the instant

---

[10] Because he testified that PAI and Northwest could not develop MACSPEC 2001 independently, he refused to estimate how much it would cost for them to develop such a program. (N.T. 9/29/06 at 38). He could only speculate that it would cost more than it cost Mack ($34 million).

case, the use by the defendants of the trade secrets at issue in <u>Computer Print Systems</u> and <u>Advanced Power Systems</u> substantially diminished the value of the trade secrets. As explained above, here PAI's limited use of MACSPEC 2001 did not diminish the value of MACSPEC 2001 to Mack in the least.

    **B.**    **There Is No Evidence That Mack Lost Any Profits Or Suffered Any Harm As a Result of PAI Having Possessed MACSPEC 2001 For A Limited Period Of Time in 2002 Before It Was Returned To Mack**

Mack presented absolutely no evidence that it suffered any lost profits or any other actual harm as a result of PAI's possession of MACSPEC 2001 for a few months during 2002. At trial, Mack could not identify a single lost sale caused by PAI's possession of MACSPEC 2001. David Covey, Mack's Chief Information Officer and Mack's primary damages witness, testified as follows:

> Q: Okay. Now, you're not aware of any particular sales that Mack Trucks lost as a result of PAI or Northwest Truck having had access to MACSPEC 2001 for a few months, isn't that right?
>
> A: That's correct.

(N.T. 9/29/06 at 48). Likewise, Mack Senior Vice President of Sales Kevin Flaherty was unable to identify any sales lost by Mack as a result of PAI having had temporary access to MACSPEC 2001. (N.T. 9/20/06 at 80-81).

The evidence also established unequivocally that the value of MACSPEC 2001 to Mack was not at all diminished by PAI having had access to it for a limited period of time in 2002. Today all of Mack's worldwide distributors continue to lease MACSPEC 2001 from Mack and the system continues to support the sale of Mack parts throughout the world. (N.T. 9/29/06 at 6-7). Further, Mack continues to charge the exact same price for the lease of MACSPEC 2001 that it charged prior to PAI having gained access to it in 2002. (N.T. 9/29/06 at 73-74). Because PAI

returned its copy of MACSPEC 2001 to Mack in 2002, PAI does not continue to possess MACSPEC 2001 or use it in competition with Mack.

Simply put, Mack lost no sales and MACSPEC 2001 lost no value by virtue of its temporary use by PAI. On the contrary, MACSPEC 2001 continues to meet the daily needs of Mack's distributor system. Mack continues to benefit from the system by receiving in excess of $825,000 per year in lease payments from its distributors and by making between $400 and $500 million in parts sales. (N.T. 9/29/06 at 29, 74). In light of this undisputed evidence, there can be no credible argument that the jury's damages award relates in any way to harm suffered by Mack because PAI had access to MACSPEC 2001 for a limited period of time in 2002.

### C. There Is No Evidence That PAI Received $11,340,000 Worth Of Benefit From Having Used MACSPEC 2001 For A Limited Period Of Time In 2002

As an alternative to damages based on the harm suffered by the plaintiff, some courts have measured the damages for a claim of misappropriation of trade secrets by the *benefit* received by the party using or disclosing the trade secret. In International Industries Inc. v. Warren Petroleum Corp., 248 F.2d 696 (3d Cir. 1957), the Third Circuit held that "the appropriate measure of damages [for a claim of misappropriation of trade secrets], by analogy to patent infringement, is not what plaintiff lost, but rather the benefits, profits, or advantage gained by defendant in the use of the trade secret." International Industries, 248 F.2d at 699. Similarly, in SI Handling Sys., Inc. v. Heisley, 658 F. Supp. 362 (E.D. Pa. 1986), the court explained:

> It is, of course, plaintiff's burden to establish its damages. The proper measure thereof in an action for misappropriation of trade secrets is "the benefits, profits or advantage gained by Defendant in the use of the trade secret." Reinforced Molding Corp. v. General Electric Co., 592 F. Supp. 1083, 1088 (W.D. Pa. 1984). Thus, *plaintiff is required to prove that defendants used its trade secrets and obtained a quantifiable advantage thereby during the period in question. Should plaintiff fail to do so for the time in question, or for any other period of time, then, of course, it cannot recover damages for that span.*

13

Heisley, 658 F. Supp. at 371 (emphasis added).

The Third Circuit has ruled that the benefit to the defendant from the use of a trade secret "is to be measured by the standard of comparison method." International Industries, 248 F.2d at 699. In International Industries, the defendant misappropriated plans to transport liquid gas by water transportation, rather than railroad transportation. The defendant used this information develop a vehicle to use to transport liquid gas by marine transportation. The court held that the plaintiff was entitled to recover the cost savings the defendant obtained measured by the difference in the cost of transportation between shipping via water and rail. Id. The court stated that under the standard of comparison method, damages are awarded based on "a comparison between the cost of transportation by means of the use of the trade secret with a method of accomplishing the same result which would have been open to defendant had he not appropriated the trade secret." Id.

Here, the evidence showed that the "result" PAI achieved from using MACSPEC 2001 was to update its parts catalogs a few times, (May Dep. at 77-78; N.T. 10/03/06 at 142:15-142:16), and sometimes to answer questions from customers or determine which parts to order for them, (Yavari Dep. at 87; N.T. 9/28/06 at 176:18-176:19), all for a period of less than a year in 2002. To establish damages under the standard of comparison method, Mack would have needed to introduce evidence of what it would have cost PAI to update its catalogs and answer customer questions without MACSPEC 2001.[11] Mack did not present any such evidence.

---

[11] It was undisputed that PAI was able to accomplish those tasks even without access to MACSPEC 2001. (Yavari Dep. at 194; N.T. 9/28/06 at 176:18-176:19) Thus, the only benefit PAI might conceivably have enjoyed from using MACSPEC 2001 to assist with these tasks was one of time savings by PAI employees in connection with those tasks.

14

The evidence that *was* presented demonstrates beyond any question that the size of the jury's award here bears no possible relationship to the any benefit PAI could possibly have gained by using MACSPEC 2001 for a limited period of time in 2002. To put the award in perspective, PAI earned $2.284 million on all of the sales that it made during 2002. (See Exhibit D-1317) While the record reflects that PAI used the database sporadically to answer customer questions and update its catalogs, even assuming for the sake of argument that PAI used the database in connection with every part sale that it made during all of 2002, and further assuming that none of those sales would have been made without the database (a proposition for which there is absolutely no support in the record – in fact, the evidence shows precisely the contrary), the jury's award of $11.3 million is more than five times what PAI earned on those sales!

Because there is no evidence of harm to Mack or benefit to the alleged misappropriators, judgment as a matter of law should be entered against Mack on its claim for misappropriation of MACSPEC 2001. See Sowell v. Butcher & Singer, Inc., 926 F.2d 289 (3d Cir. 1991) (affirming grant of directed verdict against plaintiff's claims for fraud, securities fraud, and violations of RICO where plaintiff failed to show with any reasonable certainty the purchase price of the stock at issue or the "true value" of the stock); Windt v. Shepard's/McGraw-Hill Inc., No. 96-1527, 1997 U.S. Dist. LEXIS 17501 (E.D. Pa. Nov. 7, 1997) (directing verdict against contract and fraud claims where the plaintiff failed to produce sufficient evidence of damages).

### D. The Only Evidence Of A "Reasonable Royalty" For MACSPEC 2001 Is The Fact That Mack Charged A Monthly License Fee Of $275 For MACSPEC 2001, But The Undisputed Evidence Shows That Mack In Fact Received This Amount For The MACSPEC 2001 System Provided To PAI

Where, as here, there is no evidence that a plaintiff lost any sales and no evidence of the value of benefit the defendant received as a result of a misappropriation of trade secrets, some

courts have based a damages award on a theoretical "reasonable royalty" for the license of the trade secret. See e.g. 12 Pa. C.S.A. § 5304 (following approach of the Uniform Trade Secrets Act and providing: "In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret."); Walker Mfg. v. Hoffmann, Inc., 261 F. Supp. 2d 1054, 1088 (N.D. Iowa 2003) ("[A] 'reasonable royalty' is an appropriate measure of damages where the defendant has made no profit and the plaintiff can show no loss . . . ."); Jet Spray Cooler, Inc. v. Crampton, 385 N.E.2d 1349, 1357 (Mass. 1979) ("[T]he 'reasonable royalty' measure of damages is only appropriate where the defendant has made no actual profits and the plaintiff is unable to prove a specific loss.").

However, there was simply no evidence presented at trial in this case that could possibly support an award of $11,340,000 as a "reasonable royalty" for the brief period that PAI had access to MACSPEC 2001. Certainly, that amount, which is more than five times the net profits earned by PAI on all its sales during the entire year of 2002, bears no relationship to any "reasonable royalty" that anyone in the position of PAI would have ever considered paying for access to the information in that database.

The only evidence regarding the fair market rate, or "reasonable royalty," for a license to use MACSPEC 2001 is the fact that Mack actually did license the system to users for $275 per month. (N.T. 9/29/06 at 73-74). But Mack received payment from Toledo in this amount for the copy of MACSPEC 2001 that Toledo provided to PAI for the entire period of time PAI had the database. As such, the evidence was that Mack was not harmed according to a reasonable royalty theory of damages because it, in fact, received payment at the only "reasonable royalty" rate supported by the evidence.

DM1\700514.1

In <u>Trio Process Corp. v. L. Goldstein's Sons, Inc.</u>, 612 F.2d 1353 (3d Cir. 1980), the Third Circuit examined a district court's calculation of damages using the reasonable royalty method. In <u>Trio</u>, just as is the case here with MACSPEC 2001, there was evidence of the license fee or existing royalty charged by the plaintiff for use by others. <u>Trio</u>, 612 F.2d at 1360. However, in calculating the plaintiff's damages, the district court held that a reasonable royalty would be three times the plaintiff's established license fee. The Third Circuit held that the district court erred by deviating from the plaintiff's license fee as there was no evidence in the record indicating that the plaintiff's standard rate was not reasonable. <u>Id.</u> at 1364. After noting that "the actual license rate is an important factor in the determination of a reasonable royalty," <u>id.</u> at 1358, the Third Circuit reversed the district court's damages award and held that the plaintiff's ordinary license fee was a "reasonable royalty" for the use of the plaintiff's patented process.

Considering that the only evidence of a reasonable royalty indicates that Mack itself valued a license to use the MACSPEC 2001 system at $275 per month, that Mack in fact did receive payment at this level for the copy of MACSPEC 2001 provided to PAI, and that PAI had the system for less than one year, the "reasonable royalty" theory certainly fails to provide any legal support for the jury's award of over $11.3 million.

E.   **The Evidence Establishes That The Development Costs For MACSPEC 2001 Were Only $50,000**

Even assuming *arguendo* that the Court were to determine that the development costs incurred by Mack in connection with MACSPEC 2001 are an appropriate measure of damages on Mack's claim for misappropriation of MACSPEC 2001, then the jury's award must as a

17