IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEDO MACK SALES & SERVICE, INC., | : : : | |
| Plaintiff, | : : | Civil Action No. 2:02-CV-04373-RLB |
| v. | : : | |
| MACK TRUCKS, INC., | : : | |
| Defendant. | : | |

| | | |
|---|---|---|
| MACK TRUCKS, INC., | : : | |
| Counterclaim Plaintiff, | : : : | |
| v. | : : | |
| TOLEDO MACK SALES & SERVICE, INC. | : : : | |
| Counterclaim Defendant. | : : | |

**REPLY BRIEF OF PLAINTIFF TOLEDO MACK SALES & SERVICE, INC. IN FURTHER SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE COUNTERCLAIMS OF MACK TRUCKS, INC. AND FOR OTHER POST-TRIAL RELIEF**

**I.   INTRODUCTION**

As Toledo Mack Sales & Service, Inc. ("Toledo") showed in its opening Brief, the actual evidence of record in this case cannot remotely support the verdict of over $11.3 million returned by the jury in favor of Mack Trucks, Inc. ("Mack") on Mack's counterclaim regarding MACSPEC 2001. For that reason, judgment must now be entered as a matter of law on that claim in favor of Toledo and against Mack.

Mack concedes that the jury in this case awarded it five years of developmental costs for microfiche, MACSPEC, MACSPEC II and MACSPEC 2001 based on the appropriation only of MACSPEC 2001 for a period of 10 months. Significantly, Mack does not argue that the misappropriation caused it any *actual* loss, and Mack amazingly argues that any discussion of its *actual* losses (or lack thereof) is "irrelevant." (See Mack's Brief at 17). Instead, Mack relies exclusively on an argument that the jury's award of over $11.3 million can stand because it represents the "unlawful gain" received by PAI Industries, Inc. ("PAI").

The standard of proof for damages in a trade secret case is no different from any other case. An award of damages cannot be speculative, but must represent a reasonable estimate of the losses incurred by the plaintiff or the gain actually received by the defendant. Thus, the fundamental issue is whether $11.3 million – more than *five times* PAI's annual earnings – is a reasonable estimate of the benefit, if any, that PAI received from using MACSPEC 2001 for only 10 months.

This award cannot stand because $11.3 million grossly exceeds any reasonable estimate of PAI's gain for at least three reasons:

First, the award of developmental costs bears no connection to any benefit PAI received from its actual use of the database. PAI did not use MACSPEC 2001 to develop its own version of the database. Indeed, Mack's own witnesses testified it was impossible for PAI to do so. Instead, PAI used the database only to answer questions from customers and to prepare catalogs to sell its products. Thus, any "gain" to PAI was not the savings of costs to develop a database, but only those savings, if any, achieved by way of using MACSPEC 2001 instead of using MACSPEC II to prepare catalogs and answer customer inquiries.

Second, unlike the cases Mack cites, PAI returned the database to Mack after only 10 months and there was no continuing benefit to PAI. Had PAI incurred the costs to develop MACSPEC 2001 or a comparable database (were this somehow possible), then PAI would have the benefit of such a system. PAI received no such benefit and Toledo cannot be forced to pay for it.

Third, the $11.3 million award was for a claim involving the misappropriation solely of MACSPEC 2001, but the award encompasses developmental costs for microfiche, MACSPEC and MACSPEC II, which PAI already had. Mack's costs to update and convert MACSPEC II to MACSPEC 2001 amounted to only approximately $50,000.

## II.   ARGUMENT

### A.   Mack's Development Costs For MACSPEC 2001 And Its Predecessors Are Not An Appropriate Measure Of Damages In This Case As A Matter Of Law

The jury's verdict is akin to awarding Microsoft all of its development costs for the creation of every version of Microsoft Word simply because it was used by two companies for one year without Microsoft's approval. There is no legal support for such an award.

Mack acknowledges that Section 45 of the Restatement (Third) of Competition is authoritative regarding the appropriate measure of damages in a trade secret case. Comment f of the Restatement provides that "if the benefit derived by the defendant consists primarily of cost savings, such as when the trade secret is a more efficient method of production, the *'standard of comparison'* measure that determines relief based on the savings achieved through the use of the trade secret may be the *most appropriate measure of relief*." Restatement (Third) of Unfair Competition, § 45, cmt. f (emphases added). As the Restatement explains, "the standard of comparison measure determines the defendant's gain by comparing the defendant's actual costs with the costs that the defendant would have incurred to achieve the same result without the use

3

of the appropriated trade secret." Id.  In other words, to measure the defendant's gain from the use of a trade secret, the standard of comparison approach compares the difference between the defendant's costs while using the trade secret with the costs the defendant *would have incurred* to achieve a similar result another way.

Where, unlike here, it is possible for a defendant to independently develop a trade secret, the defendant's cost of development may be an appropriate measure for the misappropriation of the trade secret.  However, as the Restatement makes clear, "*when acquisition of the trade secret by proper means is unlikely, the appropriate comparison may be between the cost of using the trade secret and the costs of alternative methods available to the defendant to achieve the same result*." Id. (Emphasis added).  This portion of the Restatement, which Mack completely ignores, is directly on point here, because there was never any evidence offered by Mack that PAI would have independently developed its own version of MACSPEC 2001.

The Restatement's discussion of the standard of comparison method follows and cites the approach applied by the Third Circuit in International Industries Inc. v. Warren Petroleum Corp., 248 F.2d 696 (3d Cir. 1957).  In that case, just as in this case, the plaintiff sought recovery of damages based on the defendant's "gain," and not the plaintiff's actual loss.  More specifically, there the plaintiff sought damages based on the benefit received by the defendant from its appropriation of the plaintiff's plans for an alternate means of transporting liquid petroleum gas.  The court held that the appropriate method to measure the defendant's gain was to compare the defendant's "cost of transportation by means of use of the trade secret with a method of accomplishing the same result *which would have been open to defendant* had he not appropriated the trade secret." Id. at 699 (emphasis added).  Consistent with the Restatement, the court in International Industries measured the defendant's cost savings benefit by comparing the

4

defendant's costs with the use of the trade secret, on the one hand, with the costs the defendant would have incurred to achieve its objective had it not used the trade secret, on the other hand.

The standard of comparison method properly focuses on the result that was achieved through the use of the trade secret, not some hypothetical use that could have been made of the trade secret, in measuring the defendant's gain. The critical questions are (i) what, if any, result did PAI achieve by using MACSPEC 2001, and (ii) what were PAI's cost savings, if any, using MACSPEC 2001 to obtain that result.

The record is clear that PAI used the trade secret to prepare catalogs and answer customer questions, not to develop its own database. Indeed, it was impossible for PAI to develop such a database.[1] Accordingly, it is impossible, and would constitute legal error, to measure PAI's "gain" by saved development costs because PAI would not have incurred such costs had there been no appropriation of the trade secret.[2]

---

[1] Mack cannot dispute that PAI could not have independently developed MACSPEC 2001. Mr. Covey, Mack's own primary witness on its counterclaims, even admitted that PAI could not have developed MACSPEC 2001. (N.T. 9/29/06 at 37-38). Instead of identifying any evidence that PAI could have developed MACSPEC 2001, Mack argues that the point is moot because Toledo's counsel argued PAI could develop MACSPEC 2001 on its own. (Mack's Brief at 19). First, Mack misconstrues the remarks of Toledo's counsel. Toledo's counsel did not argue that PAI could have developed MACSPEC 2001 as Mack suggests. Instead, Toledo's counsel explained that, if development costs were to be considered as Mack requested, they should be limited to the costs to update MACSPEC II for MACSPEC 2001 since PAI already had MACSPEC II. (See N.T. 10/10/06 at 64). Second, counsel's comment is not evidence and therefore cannot support Mack's award. Third, Mack has not argued, or even attempted to demonstrate, that counsel's remarks suffice to establish the demanding requirements of judicial estoppel.

[2] This would not leave the plaintiff without a remedy. As explained in Toledo's opening brief, a plaintiff could compare the defendant's use of the trade secret with the defendant's alternate methods to achieve the same result. Here, Mack could have compared PAI's use of MACSPEC 2001 with PAI's use of MACSPEC II. Alternatively, a plaintiff could argue that the defendant should pay it a 'reasonable royalty' amounting to a license fee for the defendant's use of the trade secret.

B.  **Mack's Developmental Costs For MACSPEC 2001 And Its Predecessors Are Not An Appropriate Measure Of Damages Because PAI Did Not Retain MACSPEC 2001**

A verdict based on Mack's costs to develop MACSPEC 2001 is also legal error because PAI returned MACSPEC 2001 after less than one year of use.  PAI did not receive any permanent benefit from MACSPEC 2001 and did not retain the ability to use it.

According to Mack, it makes no difference whether PAI had the database for a day, ten months or for many years.  Instead, Mack simply argues that once PAI acquired possession, Toledo became liable for *all* the developmental costs Mack incurred *regardless of how long PAI had that database*.  That makes no economic or legal sense and, not surprisingly, Mack is unable to point to a single case where developmental costs were awarded even though the defendant did not retain the trade secret.  Put another way, had PAI incurred the costs to develop MACSPEC 2001 or a comparable system (were this somehow possible), then PAI would have the benefit of such a system.  Here, PAI has received no such benefit and Toledo should not be forced to pay for it.  Any holding to the contrary would result in an unjustified windfall to Mack based on no corresponding benefit to PAI, which is exactly what the jury's $11.3 million verdict represents.

In each of the cases Mack cites, the trade secret at issue could have been independently developed and the result achieved by the defendant was the development of the trade secret.  In *those* cases, development costs could be awarded because, unlike here, without the defendant's misappropriation, the defendant would have incurred significant costs to independently develop the trade secret.  Moreover, in the cases cited by Mack, the defendant retained the use of the trade secret at issue or the defendant's appropriation of the trade secret was more permanent in nature.

For example, Mack relies on a non-precedential Sixth Circuit decision, Avery Dennison Corp. v. Four Pillars Enter. Co., 45 Fed. Appx. 479, 483-87 (6th Cir. 2002).  In that case, the

6

defendant used the plaintiff's trade secrets to "create a panoply of new products" and to "streamline their manufacturing processes."  The district court denied the plaintiff's request for injunctive relief.  In contrast to PAI's use of MACSPEC 2001, the defendant in Avery Dennison clearly continued to use and benefit from the plaintiff's trade secret.

The same is true of Salsbury Labs, Inc. v. Merieux Labs, Inc., 908 F.2d 706, 708 (11th Cir. 1990), where the district court did not enjoin the defendant from continuing to produce and sell a competing vaccine that included the trade secret.  Further, as with Mack's other cases, the goal of the defendant in Salsbury was the development of the trade secret.  Similarly, in Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., Civ. A. No. 90-7952, 1994 WL 116121 (E.D. Pa. Mar. 21, 1994), in which the Court denied a summary judgment motion and did not review a damages award, the defendant maintained the alleged trade secret and there was no indication that the defendant could not have independently developed the trade secret.

The trade secret at issue in Patio Enclosures, Inc. v. Four Seasons Mktg. Corp., No. 22458, 2005-Ohio-4933, 2005 WL 2291916 (Ohio Ct. App. Sep. 21, 2005), was the plaintiff's business model.  More specifically, the plaintiff alleged that a former employee used his knowledge of the plaintiff's business system, including direct sales, central management services for franchises, and fees to set up the defendant's business.  While the former employee was enjoined from continuing to work for the defendant in violation of a non-compete, the defendant could not return or disgorge, and was not ordered to return or disgorge, its use of the plaintiff's business model, which had become a part of the defendant's operations.  Again, in that case, the defendant's appropriation represented a permanent taking or use of the plaintiff's trade secret, which is not the case here.

In <u>Computer Print Sys., Inc. v. Lewis</u>, 422 A.2d 148, 157 (Pa. Super. Ct. 1980), the defendant misappropriated a computer program for use with a specific client. In that case, the court noted that the benefit of the computer program to the plaintiff rested on the plaintiff's *exclusive* use of the program. Because the defendant had the program and obtained the business from the client for which the program was designed, the defendant's appropriation of the trade secret was a total and permanent taking of the trade secret. Further, the result sought by the use of the trade secret was the development of the trade secret. These facts in no way resemble PAI's temporary, short-term use of MACSPEC 2001, which resulted in no actual loss to Mack.

Mack's reliance of <u>Telex Corp. v. Int'l Bus. Mach. Corp.</u>, 510 F.2d 894, 932 (10th Cir. 1975) also misses the mark. In <u>Telex</u>, the court affirmed an award based on the development costs avoided by the defendant because of its use of the plaintiff's trade secret. Once again, in that case the defendant could not have completed the project without incurring significant development costs. Indeed, the award was premised on the fact that the defendant could have, and would have, incurred substantial development costs had it not used the trade secrets. <u>Id</u>. at 911 n.10. Moreover, the defendant sold the project at issue, which incorporated the plaintiff's trade secret. Again, this permanent use of the trade secret distinguishes <u>Telex</u> from this case.

    **C.**     **Mack's Damages For The Misappropriation Of MACSPEC 2001 Cannot Include The Development Costs For Microfiche, MACSPEC, And MACSPEC II, Which PAI Already Had In Its Possession**

Mack repeatedly refers to the value of "databases," including Mack's microfiche and prior versions of MACSPEC 2001 such as MACSPEC II. However, the undisputed evidence at trial established that PAI had possession of MACSPEC II and Mack's microfiche long before it received MACSPEC 2001. (N.T., 10/4/06 at 76; N.T. 9/28/06 at 176; Yavari Dep. dated

10/17/03 at 191:23-192:10).[3]  Because PAI already had this information, it could not possibly have "gained" it from the misappropriation of MACSPEC 2001.  The only "gain" PAI arguably received as a result of the misappropriation was the value of the upgrade from MACSPEC II, which PAI already had, to MACSPEC 2001.  The development costs associated with that upgrade were only $50,000, not over $11.3 million, as the jury awarded.  (See Exhibit D-1235 at 29).[4]

### D. Mack's Attempt To Describe The Value Received By PAI From MACSPEC 2001 Misstates The Record Evidence

In an attempt to justify the jury's award, Mack makes a number of misleading and incorrect references to the record.  For example, Mack stretches the truth by arguing that "Yolanda May, who handled customer inquiries for PAI, testified that she would not have been able to do her job at all without the stolen databases."  (Mack's Br. at 11).  However, it is clear that Ms. May could, and did, perform her duties long before PAI received MACSPEC 2001.  (May Dep. 11/03/03 at 53-55; 71-73).  Ms. May's testimony referred not only to MACSPEC 2001, but also to microfiche and earlier versions of MACSPEC, which do not relate to Mack's claim for the misappropriation of MACSPEC 2001.  (May Dep. 1/03/03 at 49-51; 132-33).  It is simply unsupportable for Mack to claim that Ms. May or anyone else at PAI could not do their jobs without MACSPEC 2001 and that this supported the jury's $11.3 million verdict.

---

[3]  The deposition testimony of Ms. May and Mr. Yavari was played for the jury at trial.

[4]  Further, Mack concedes that any damages award against Toledo must be reduced by the $50,000 payment Mack received from PAI.  (Mack's Brief at 20 n.10).  Thus, even were the Court to find that Mack were entitled to the development costs to upgrade MACSPEC II to MACSPEC 2001, Mack still would not be entitled to any damages because it has already received payment for these damages from PAI.

DM1\716547.1

Mack's argument that "it was . . . reasonable for the jury to conclude that PAI was using the stolen database to figure out which parts to knock off" (Mack's Br. at 11) is also wrong. Mack cites to Mr. Yavari's testimony to support this assertion. However, the testimony cited by Mack did not even relate to MACSPEC 2001, and instead involved Mack's microfiche. (See Yavari Dep. at 42-43). More importantly, Mr. Yavari did not testify that PAI used the microfiche or any version of MACSPEC to determine which parts it should manufacture. To the contrary, Mr. Yavari testified that PAI used its customer requests to determine which parts to manufacture (see Yavari Dep. at 26), and that PAI did not use MACSPEC to reverse engineer any Mack part. (See Yavari Dep. at 197). In the testimony cited by Mack, Mr. Yavari merely indicated that PAI used the microfiche to identify the PAI part numbers that corresponded to Mack's part numbers to ensure that PAI ordered the correct parts from Toledo and supplied the correct parts to PAI's customers.

### E. Toledo Did Not Waive Its Objection To The Award Of Developmental Costs

Finally, Mack argues that Toledo failed to object to the Court's instruction regarding Mack's misappropriation of trade secrets claim and that this somehow estops Toledo from arguing that Mack failed to produce sufficient evidence to support its damages award. However, Toledo's argument is based on Mack's *own* failure to introduce competent evidence to support its damage claim, and not on the Court's jury instruction. Certainly, Toledo preserved this argument by moving for summary judgment and for judgment as a matter of law based on, among other grounds, Mack's failure to produce evidence of damages to support its misappropriation claim. In any event, contrary to Mack's argument, Toledo did in fact object to the Court's instruction on Mack's misappropriation claim. (See N.T. 10/11/06 at 161).

**III.     CONCLUSION**

      For all of the foregoing reasons, and those set forth in Toledo's initial Memorandum of Law in Support of its Renewed Motion for Judgment as a Matter of Law and for Other Post-Trial Relief, Toledo respectfully requests the entry of judgment as a matter of law in its favor on Mack's counterclaims, or in the alternative amendment or remittur of the jury award against Toledo, or a new trial on Mack's counterclaims. Toledo further respectfully requests a new trial on each of its claims against Mack.

                                                      Respectfully Submitted,

                                                      DUANE MORRIS LLP

Date:  November 17, 2006                   By: /s/Wayne A. Mack
                                                     Wayne A. Mack
                                                     J. Manly Parks
                                                     James H. Steigerwald
                                                     David A. Degnan
                                                   30 South 17th Street
                                                   Philadelphia, PA  19103-4196
                                                   215.979.1000

                                                   Attorneys for Plaintiff/Counterclaim Defendant Toledo Mack Sales & Service, Inc.

## CERTIFICATE OF SERVICE

      I, James H. Steigerwald, hereby certify that a true and correct copy of the foregoing Reply Brief Of Plaintiff Toledo Mack Sales & Service, Inc. In Further Support Of Its Renewed Motion For Judgment As A Matter Of Law On The Counterclaims Of Mack Trucks, Inc. And For Other Post-Trial Relief was served this 17th day of November, 2006, by hand delivery upon counsel of record as follows:

                Jeremy Heep, Esquire
                Pepper Hamilton LLP
                Two Logan Square, Suite 3000
                Eighteenth and Arch Streets
                Philadelphia, PA  19103

                                        /s/ James H. Steigerwald_____
                                        James H. Steigerwald