**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TOLEDO MACK SALES & | : | |
| SERVICE, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 02-4373 |
| | : | |
| v. | : | |
| | : | |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

---

| | |
|---|---|
| MACK TRUCKS, INC., | : |
| | : |
| Counterclaim Plaintiff, | : |
| | : |
| v. | : |
| | : |
| TOLEDO MACK SALES & | : |
| SERVICE, INC., | : |
| | : |
| Counterclaim Defendant. | : |

## <u>MEMORANDUM</u>

BUCKWALTER, S. J.                                        February 16, 2007


   Before the court are post-trial motions of plaintiff.

## I.

   A court should grant a new trial under Rule 59 to prevent a miscarriage of justice

only when the jury's "verdict is contrary to the great weight of the evidence," <u>Roebuck v. Drexel</u>

<u>Univ.</u>, 852 F.2d 715, 736 (3d Cir. 1988), or when a "court commits an error of law which

prejudices a substantial right of a party."  <u>Paul Morelli Design, Inc. v. Tiffany and Co.</u>, 200

F.Supp.2d 482, 484 (E.D. Pa. 2002).  With regard to jury trials, a court should only exercise its discretion to grant a new trial "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."  Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991).

## II.

Plaintiff's Rule 59 allegations of error in the trial of its case in chief are:

(1)    Toledo should be granted a new trial on all claims and counterclaims because highly prejudicial and irrelevant evidence was admitted regarding prior unrelated litigation.

(2)    Toledo is entitled to a new trial because judgment was erroneously entered against Toledo as a matter of law on Mack's claim for misappropriation of MACSPEC 2001.

(3)    Toledo is entitled to a new trial because judgment was erroneously entered against Toledo as a matter of law on its claim under Section 1 of the Sherman Act.

(4)    Toledo is entitled to a new trial because highly probative direct evidence of the illegal antitrust conspiracy was improperly excluded at trial.

(5)    Toledo is entitled to a new trial because summary judgment was erroneously entered against Toledo on its claim under the Robinson-Patman Act.

(6)    Toledo is entitled to a new trial on all of its claims because counsel for Mack engaged in prejudicial misconduct in her closing argument.

(7)    Toledo is entitled to a new trial on all claims and counterclaims because the court failed to provide counsel with the jury instructions prior to closing arguments as required by Federal Rule of Civil Procedure 51.

2

## III.

Evidence of the prior lawsuits (first issue) was relevant and its probative value outweighed any possible prejudice. It was probative for the very reason that plaintiff was blaming its sales decline on defendant's conduct when at other times the evidence clearly showed that the decline in business may well have been attributable to David Yeager's legal disputes with B.F.I. which adversely affected his ability to manage plaintiff.

## IV.

Judgment as a matter of law (second issue) was properly entered against plaintiff on Mack's claim for misappropriation of MACSPEC 2001.

Plaintiff's brief argument in this regard simply states that the Ohio Court of Appeals did not issue findings of fact that encompass every element of a claim for misappropriation of trade secrets under Pennsylvania law. A reading of that court's decision in Mack Truck, Inc. v. Motor Vehicle Dealers Board, Toledo Mack Sales & Services, Intervening, reported at 2006 WL 1495122 (Ohio App. 10d) reveals that plaintiff is incorrect. Encompassed within the opinion are the elements necessary to a claim of misappropriation of a trade secret.

## V.

The judgment as a matter of law was correctly entered against plaintiff on its Section 1 claim under the Sherman Act (third issue). Initially, David Yeager knew or had reason to know of the alleged conspiracy as early at 1989 and thus the suit filed 13 years later was barred by the four-year statute of limitations. He admits as much in response to opposing counsel's examination. In addition, he had two telephone conversations which he secretly recorded in 1989 which supported his conspiracy theory.

Plaintiff barely argues the statute of limitations issue in its brief. It does, however, strenuously argue that it should have been permitted to pursue its antitrust claim for all damages caused by the conspiracy after July 1, 1998, because it presented evidence of multiple overt acts in furtherance of the conspiracy during the statutory period.

In its brief filed with this court on September 28, 2006 (Document 141), some examples of what plaintiff claims follows:

(1)     Jack Lusty (Lusty), a Mack District Manager responsible for plaintiff and the Lakes District from 1998 to 2003 testified that there were gentlemen's agreements between dealers not to compete or if they did provide a quote, to maintain certain profit levels.

(2)     Hallie Giuliano, an employee at a consultant firm, testified that Mack executives indicated there were "gentlemen's agreements."

(3)     Mack continued to implement Bulletin 38-89 by continuing to discourage its dealers to sell outside their area of responsibility.

(4)     Lusty advised plaintiff on May 7, 2001 that it must cease "its predatory approach to customer prospecting" and to instead focus on its own area of responsibility.

(5)     Mack carefully monitored whether a dealer was selling inside or outside its area of responsibility.

(6)     Mack Vice-President Flaherty admitted discouraging dealers from selling outside of their areas of responsibility even though there was no official policy in this regard.

(7)     Mack Regional Vice-President Yellis complained about plaintiff's not playing by the rules when seeking sales assistance outside its area of responsibility.

4

(8)    Mack required dealers to inform it whether they were applying for sales assistance for a customer outside of their area of responsibility.

(9)    Lusty testified that Mack used sales assistance to protect certain dealers from competition from other Mack dealers in their area of responsibility.

(10)    Evidence at the trial also suggested that Mack was anxious to get rid of plaintiff as a dealer because its low price sales strategy upset other dealers.[1]

All of this, plaintiff argues, is evidence of an agreement between competitors not to compete and the mutual supplier enforcing the agreement or attempting to get others to abide by it.

Mack, in response, argues that there is no evidence of conspiracy.  It argues that the alleged conspiracy makes no economic sense because it did not have to enter into any conspiracy to keep its wholesale prices high – it could unilaterally raise them.

Citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), Mack argues it has no rational economic motive to conspire and its conduct is consistent with other equally plausible explanations.  Thus, no inference of conspiracy can arise.

In citing what it refers to as the seminal case of Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752 (1984), Mack argues that something more is needed than complaints from other dealers.  "There must be evidence that tends to exclude the possibility that the manufacturer and the non-terminated dealers were acting independently." Id. at 763-64.

---

1.  This list is not all inclusive of what plaintiff sets forth in its brief.  This court has considered plaintiff's entire argument even if not specifically referred to.

5

Plaintiff argues that the jury should determine what inferences should be drawn from Mack's conduct referred to by plaintiff, which, it argues, supports the finding of a conspiracy. This Circuit has stated in this regard:

> The extent of what constitutes a reasonable inference in the context of an antitrust case, however, is somewhat different from cases in other branches of the law in that "antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case." *Matsushita*, 475 U.S. at 588, 106 S.Ct. 1348. The acceptable inferences which we can draw from circumstantial evidence vary with the plausibility of the plaintiffs' theory and the danger associated with such inferences. *Petruzzi's* 998 F.2d at 1232. Therefore, the Supreme Court has held in the antitrust context "that conduct consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita*, 475 U.S. at 588, 106 S.Ct. 1348 (citing *Monsanto*, 465 U.S. at 764, 104 S.Ct. 1464). Thus, to withstand a motion for summary judgment "a plaintiff seeking damages for a violation of § 1 must present evidence that tends to exclude the possibility that the alleged competitors acted independently." *Id*. The reason, of course, is that mistaken inferences in such a context "are especially costly because they chill the very conduct the antitrust laws are designed to protect." *Matsushita*, 475 U.S. at 594, 106 S.Ct. 1348.

In Re Baby Food Antitrust Litigation, 166 F.3d 112, 124 (3d Cir. 1999).

The inferences plaintiff wants to draw fall short of reasonable ones in an antitrust context. The court's analysis in this regard is substantially similar to Mack's analysis as set forth both in its motion for judgment as a matter of law (Document 136) and its response to plaintiff's memorandum of law (Document 148). Thus, judgment as a matter of law was proper on plaintiff's Section 1 claim.

6

**VI.**

Highly probative evidence (fourth issue) was not erroneously excluded.  The evidence sought to be admitted was hearsay and while plaintiff sought its admission as the declaration of a co-conspirator, there was no evidence to remotely suggest that the speaker was a member of the alleged conspiracy of dealers and Mack against plaintiff.

**VII.**

Summary judgment was properly entered on the Robinson-Patman claim (fifth issue) as set forth in the court's opinion docketed as No. 94, dated August 16, 2006.

**VIII.**

There was no prejudicial misconduct in counsel's closing argument (sixth issue).  Counsel did not object at the time and never asked for a curative instruction.  The issue is waived.  Moreover, the remark could hardly be considered prejudicial.

The court itself explained in its charge (N.T. Day Sixteen at 136) that "the causes of action or claims which you must consider are two, which you've already been told by the attorneys and accurately so."

**IX.**

Plaintiff's final claim has to do with the court's failing to provide counsel with the jury instructions prior to closing argument (seventh issue).  This claim borders on the absurd.  This court spent hours going over its charge with counsel, allowed last minute changes and advised all counsel what its charge would be.  The example of how this supposed failure hurt plaintiff is disingenuous.  It fails to even state all of the court's instructions relative to inconsistencies.

**X.**

Finally, plaintiff spends a substantial part of its brief arguing why the entry of judgment against it on the counterclaim was contrary to law.  However, this argument is without merit as to liability.  The court's entry of judgment on one count and the jury's determination on the other are fully supported by the evidence.

**XI.**

With regard to damages, the court's charge, to which counsel took no exception, was as follows:

> If you find in favor of Mack on its claims for misappropriation of trade secret or misappropriation of confidential business information, you are also entitled to award as damages, the benefit to PAI from the misappropriation.  Mack contends that the benefit to PAI was the amount of money that is saved by not having to pay to develop for itself the database and software in MACSPEC 2001, the database and the microfiche or the compiled information in the price list.
> If Mack has proven to you the amount of money that it would cost to develop those items, then you may consider these development costs in determining what an appropriate amount of damages is to award.

In considering the development costs which the jury could have found to be $32,742,200 from 1988 until 2003 (*See* N.T. Day Thirteen at 51:13-17), the award of over 1/3 of that amount for an admitted use of 10 months only by PAI is excessive and represents, as plaintiff argues, a windfall to defendant.  While there is no formula to gauge what is appropriate, the award must bear some relationship to the span of time over which the development costs were incurred and the length of time of PAI's usage.

I will accordingly reduce the award to $1.6 million, which includes the credit of $50,000 to which, defendant agrees, plaintiff is entitled.  An order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TOLEDO MACK SALES & | : | |
| SERVICE, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 02-4373 |
| | : | |
| v. | : | |
| | : | |
| MACK TRUCKS, INC., | : | |
| | : | |
| Defendant. | : | |

---

| | |
|---|---|
| MACK TRUCKS, INC., | : |
| | : |
| Counterclaim Plaintiff, | : |
| | : |
| v. | : |
| | : |
| TOLEDO MACK SALES & | : |
| SERVICE, INC., | : |
| | : |
| Counterclaim Defendant. | : |

## <u>ORDER</u>

AND NOW, this 16th day of February, 2007, it is hereby ORDERED that

plaintiff's renewed motion for judgment as a matter of law on the counterclaims of Mack Trucks,

Inc. and for other post trial relief is DENIED, except the denial of a new trial as to the damages

awarded under the counterclaim is conditioned upon Mack filing a  remittitur in the amount of

$9,756,500.

BY THE COURT:


 *s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S.J.